UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOAQUIN R. WINFIELD,

                            Plaintiff,
                                                        9:09-CV-1055
v.                                                       (LEK/GHL)

WALTER BISHOP, DAVID LECLAIR,
NANCY MAROCCO,

                            Defendants.

_____

APPEARANCES:                                OF COUNSEL:

JOAQUIN R. WINFIELD, 97-A-5399
Plaintiff *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ERIC T. SCHNEIDERMAN              RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Joaquin R. Winfield alleges that Defendant Walter Bishop[1] subjected him to excessive

_____

    [1]      This defendant was identified in the original complaint as "John Doe Bishop."
Pursuant to a request from Defendants, I directed the Clerk to list his correct name on the docket.
(Dkt. No. 18.)   I will refer to him throughout this action as Walter Bishop.

force, that Defendant Nancy Marocco[2] conducted a flawed disciplinary hearing, and that

Defendant David LeClair wrongfully imposed a restricted diet on him and failed to respond

properly to his grievances.  The matter is currently before the Court for screening of Plaintiff's

amended complaint (Dkt. No. 38).

I.      FACTUAL AND PROCEDURAL SUMMARY

        A.      The Original Complaint

        Plaintiff's original complaint alleged that he was issued a misbehavior report on

November 26, 2006, for refusing to return his lunch tray.  (Dkt. No. 1 at 8, 10.)  Pending a

hearing on the misbehavior report, Defendant David LeClair authorized staff to place Plaintiff on

a restricted diet from November 27, 2006, to December 3, 2006.  *Id.* at 10.  The hearing on the

misbehavior report was held on December 7, 2006.  *Id.* at 9.  The hearing officer imposed a

penalty of seven days of restricted diet.  *Id*. at 11.  Defendant LeClair issued a memorandum to

the facility's health services director stating that Plaintiff would be on a restricted diet from

December 14 through December 20 as a result of the December 7 hearing.  *Id*. at 11-12.

Although it is not entirely clear from the complaint, it appears that Plaintiff continuously

received the restricted diet from November 27 through December 20.  Plaintiff's original

complaint alleged, essentially, that Plaintiff was punished more than once for the conduct alleged

in the misbehavior report because he received the restricted diet for longer than seven days.[3]

---

[2]      This defendant is identified in both the original and amended complaints as
"Nancy Machell."  Pursuant to a request from Defendants, I directed the Clerk to list her correct
name on the docket.  (Dkt. No. 18.)   I will refer to her throughout this action as Nancy Marocco.

[3]      Specifically, Plaintiff alleged that "though only verbally enlightened and *never*
checked incident to by any medical staff therein pursuant to Dept. protocols, the resulting

Plaintiff's original complaint alleged that Defendant Bishop subjected him to excessive force on December 5, 2006.  (Dkt. No. 1 at 4-5.)  Plaintiff alleges that he sent a written complaint about this incident to Defendant LeClair.  *Id*. at 6.

On December 14, 2006, Plaintiff was served with another misbehavior report.  (Dkt. No. 1 at 14-15.)  In preparation for his disciplinary hearing, Plaintiff requested a videotape of the incident.  *Id*. at 15.  Although it was not entirely clear, the original complaint appeared to allege that the videotape was lost or erased and thus was not provided to Plaintiff.  *Id*. at 7.  Defendant Nancy Marocco conducted the disciplinary hearing.  *Id*.  She adjourned and continued the hearing at least twice.  *Id*. at 17-18.  Ultimately, she denied Plaintiff's request to call an inmate witness, found a photograph of Plaintiff's wrist inadmissible, found Plaintiff guilty, and sentenced him to nine months of SHU confinement with loss of privileges and good time credits.  *Id*. at 15, 21.

Plaintiff's original complaint alleged that he informed Defendant LeClair of his "inferred fear . . . of further punitive informalities resulting from both the 8th U.S. Constitutional Amendment tort per se and also the past shown and highly prone history of losing/or erasing the B-1 c. (S.H.U.) video recordings of probative value."  (Dkt. No. 1 at 7.)

Plaintiff's original complaint alleged that Defendants' conduct violated his constitutional

---

misbehavior report *at least* provided an initial basis of/or for and/or by both § § 304.2 (c) of Title 7 N.Y.C.R.R.'s N.Y. State Dept. of Correctional Svcs. Directive 4933 of Ch. VI and § 138.5 of N.Y. States Correction Law.  Any properly corresponding punitive sanction would have been and was imposed and completed in a/the pre-hearing context commencing the morning meal of breakfast on November 27, 2006, and ending the evening/or dinner meal of December 3, 2006. Both the second encaptioned defendant Superintendent David LeClair's cognizance, as well as, twice (2x) the above allegations are demonstrated by the on record actions of Defendant D. LeClair's designated delegate Lt. K. Smith four days later on the date of December 7, 2006." (Dkt. No. 1 at 8-9, emphases in original.)

rights.  (Dkt. No. 1.)  Plaintiff alleged that Defendant LeClair, as the Superintendent of Great

Meadow Correctional Facility, should be held responsible because he "managed . . .  daily

operation[s] and executed both the N.Y. State Department of Corrections and the prison

policies."  (Dkt. No. 1 at 4.)

**B.      Dismissal of Original Complaint With Leave to Amend**

Defendant LeClair moved to dismiss the original complaint as it pertained to him.[4]  (Dkt.

No. 14.)  Plaintiff opposed the motion.  (Dkt. No. 19.)  On June 21, 2010, I recommended that

the complaint be dismissed as to Defendant LeClair with leave to amend two claims.  (Dkt. No.

22.)  Specifically, I found that (1) to the extent that Plaintiff claimed that Defendant LeClair was

liable for the acts of the other Defendants due solely to his position as the Superintendent of

Great Meadow Correctional Facility, any such claim should be dismissed without leave to amend

due to Defendant LeClair's lack of personal involvement; (2) the due process claim against

Defendant LeClair regarding the imposition of the restricted diet should be dismissed without

leave to amend because the diet did not constitute an atypical and significant hardship; (3) the

Eighth Amendment claim against Defendant LeClair regarding the imposition of the restricted

diet should be dismissed with leave to amend to add allegations that the diet "was nutritionally

inadequate, posed an imminent health risk, or physically injured" Plaintiff; (4) to the extent that

Plaintiff claimed that Defendant LeClair failed to respond to Plaintiff's grievance about

Defendant Bishop's alleged use of excessive force, the claim should be dismissed without leave

---

[4]      Defendants Bishop and Marocco answered the original complaint.  (Dkt. No. 15.)

to amend due to Defendant LeClair's lack of personal involvement;[5] and (5) the claim that

Defendant LeClair failed to respond to a grievance about Plaintiff's "inferred fear . . . of further

punitive informalities resulting from both the 8th U.S. Constitutional Amendment tort per se and

also the past shown and highly prone history of losing/or erasing the B-1c. (S.H.U.) video

recordings of probative value" should be dismissed with leave to amend to allege that Defendant

LeClair was aware of this "highly prone history" before Plaintiff's disciplinary hearing.  (Dkt. No.

22.)

On July 12, 2010, the Court approved and adopted the Report-Recommendation in its

entirety.  (Dkt. No. 28.)

### C.       Amendment of the Complaint

On September 2, 2010, the Court received a letter from Plaintiff requesting advice about

how to structure his amended complaint.  (Dkt. No. 29.)  In response, the Court issued a text

order advising Plaintiff that "his amended complaint should only include those claims for which

the July Order granted him leave to amend" and that any amended complaint should be filed on

or before September 30, 2010.  (Text Order, Sept. 2, 2010.)  On September 3, 2010, the Court

issued a text order clarifying that the amended complaint should include "(1) those claims against

Defendant LeClair for which the July 12, 2010, Order granted him leave to amend and (2) an

exact duplication of his claims against defendants Bishop and Marocco."  (Text Order, Sept. 3,

2010.)  The order advised Plaintiff that if he failed to file an amended complaint by September

30, 2010, his claims against Defendant LeClair would be dismissed without further order of the

---

[5]       In his amended complaint, Plaintiff states that he "*never* alleged a claim based
upon an ignored/or never responded to Walter Bishop grievance . . . " (Dkt. No. 38 at 10)
(emphasis in original).

Court.  *Id*.

On September 16, 2010, I granted Plaintiff's request for an extension of time to October

29, 2010, to file his amended complaint.  (Text Order, Sept. 16, 2010.)

On October 8, 2010, the case was stayed and referred to the Pro Se Prisoner Settlement

Program.  (Dkt. No. 33.)

On October 18, 2010, Plaintiff advised the Court that he would not be able to file an

amended complaint by October 29, 2010.  (Dkt. No. 35.)   Plaintiff filed his amended complaint

on December 29, 2010.[6]  (Dkt. No. 38.)

On March 18, 2011, the stay was lifted and the case was returned to the active docket.

(Text Order, Mar. 18, 2011.)

## II.     ANALYSIS

### A.     Eighth Amendment Claim

The original complaint alleged that Defendant LeClair violated Plaintiff's Eighth

Amendment rights by imposing a restricted diet on him.  (Dkt. No. 1 at 11-12.)  This claim was

dismissed because, under Second Circuit precedent, "allegations regarding the imposition of a

restricted diet do not state an Eighth Amendment claim absent an allegation that the diet was

nutritionally inadequate, posed an imminent health risk, or physically injured the prisoner."  (Dkt.

No. 22 at 8; Dkt. No. 28 at 3.)  The original complaint did not allege that the diet was

nutritionally inadequate, posed an imminent health risk, or physically injured Plaintiff.  Plaintiff

was granted to leave to amend to add such allegations.  *Id*.

---

[6]     Defendants asserted at one point that Plaintiff's amended complaint should be
rejected as untimely.  (Dkt. No. 39.)  Defendants withdrew that assertion in a later letter to the
Court.  (Dkt. No. 41 at 2.)

In the amended complaint, Plaintiff alleges at length that he was wrongfully subjected to several weeks of the restricted diet rather than the seven days to which he was sentenced.  (Dkt. No. 38 at 11-16.)  Plaintiff states that he "need not meet [the] vigorous standard to satiate 8th Amendment criteria.  Plaintiff need only show the reinfliction unnecessary/ or unwarranted." (Dkt. No. 38 at 29 n.34.)  As discussed below, Plaintiff apparently intends to assert his restricted diet claim as a due process issue rather than as an Eighth Amendment issue.  *Id*. at 28-29.  Given Plaintiff's *pro se* status, I must construe the amended complaint liberally, reading it to raise the strongest arguments it suggests.  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007).  I have, therefore, carefully reviewed the amended complaint to determine whether it states an Eighth Amendment claim, despite Plaintiff's assertion that he "need not meet" that standard.

Plaintiff alleges that on one occasion he expressed "qualms with regard to the browning perimeter of the machine shredded vegetation and the egregious condition of the bread-based parched meal."  (Dkt. No. 38 at 15.)  Plaintiff does not allege that any other meals he received were "browning" or "parched," that the restricted diet was nutritionally inadequate, that the diet posed an imminent health risk, or that it physically injured him.  Even if one assumes that the meal to which Plaintiff objected was entirely inedible, such an allegation is insufficient to state an Eighth Amendment claim.  *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (finding that complaint failed to state Eighth Amendment claim where prisoner alleged he was denied one meal).  Therefore, I find that the amended complaint does not comply with the Court's July 12, 2010, order and I recommend that the Court dismiss Plaintiff's Eighth Amendment claim without leave to amend.

B.      **Claim Regarding Loss of Video Recordings**

The original complaint alleged that Defendant LeClair violated Plaintiff's rights by failing to respond to a grievance that informed Defendant LeClair of Plaintiff's "inferred fear . . . of further punitive informalities resulting from both the 8th U.S. Constitutional Amendment tort per se and also the past shown and highly prone history of losing/or erasing the B-1 c. (S.H.U.) video recordings of probative value." (Dkt. No. 1 at 7.)  In that grievance, Plaintiff, apparently, objected to the fact that he was not able to receive a copy of the security video showing his encounter with Defendant Bishop and expressed his fear that he would face similar problems in the future. (Dkt. No. 1 at 15.)  The original complaint did not allege that Defendant LeClair was aware of the "highly prone history" of losing or erasing videotapes before Plaintiff's disciplinary hearing. (Dkt. No. 1.)  This claim was dismissed because when a prison official "is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to remedy a violation." (Dkt. No. 22 at 9) (quoting *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008)).   Plaintiff was granted leave to amend to add allegations that Defendant Le Clair was aware of an ongoing violation. *Id.*  The amended complaint does not include any facts plausibly suggesting that Defendant LeClair was personally involved in any alleged constitutional violation regarding the loss of the videotape.  Therefore, I recommend that the Court dismiss this claim without leave to amend.

C.      **New Claims**

In the amended complaint, Plaintiff appears to assert, for the first time, an equal protection claim and a retaliation claim.  (Dkt. No. 38 at 17-24.)  Specifically, Plaintiff alleges that:

> And though in possible discord with any failed connotations of the
> perhaps quasi-flagrant circumstantial applicability herein in any
> preceding REPORT RECOMMENDATION[S] and/or DECISION[S]
> & ORDER[S], surely some if not any prudent jurist of contemporary
> times concurs with the *City of Cleburne Living Center*, holding that
> "The Equal Protection Clause requires that the government treat all
> similarly situated people alike[.]" And though perhaps a member via
> ancestry, the failed provision by defendant of a supporting racially-
> based inference, en-junct with the fact of defendant LeClair's
> cognizance of my preceding history of written facility operation
> oriented complaint to Authorities in Albany as well as the fact that
> neither he nor any case-entailed defendant LeClair's counsel can cite
> so likewise irrationally violated part 304 of Directive No. 4933 of 7.
> N.Y.C.R.R's Ch. VI as in the sole instance herein, I will pursue what
> this Court in *Cohn v. New Paltz* declared "The less vigorous 'rational
> relationship' standard which requires that plaintiffs treatment was
> **rationally** related to a **legitimate** governmental interest."

(Dkt. No. 38 at 17-18) (citations omitted) (emphasis in original).

I will review these new claims separately pursuant to 28 U.S.C. § 1915(e)(2).  Section

1915(e)(2) directs that, when a plaintiff seeks to proceed *in forma pauperis*, " . . . the court shall

dismiss the case *at any time* if the court determines that  . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B) (emphasis

added).[7]  Although the court has the duty to show liberality towards *pro se* litigants, *Nance v.*

*Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in

ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and

the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir.

1983), there is a responsibility on the court to determine that a claim is not frivolous before

---

[7] In determining whether an action is frivolous, the court must look to see whether the
complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325
(1989).

permitting a plaintiff to proceed with an action *in forma pauperis*.  *See e.g. Thomas v. Scully*, 943

F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a

complaint *sua sponte* if the complaint is frivolous).

      1.        <u>Equal Protection Claim</u>

The Equal Protection Clause provides that "no State shall . . . deny to any person within

its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This is

"essentially a direction that all persons similarly situated should be treated alike."  *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause "bars

the government from selective adverse treatment of individuals compared with other similarly

situated individuals if 'such selective treatment was based on impermissible considerations such

as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

bad faith intent to injure a person.'"  *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)

(quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Governmental action may

also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff

"differently from others with no rational basis for the difference in treatment."  *Id*. (citing *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Thus, a plaintiff asserting an equal protection

claim must allege facts plausibly suggesting that (1) he was treated differently from similarly

situated individuals; and (2) the defendants treated him differently due to his membership in a

protected class, inhibited his exercise of a fundamental right, acted out of malice, or acted

irrationally and arbitrarily.

Here, Plaintiff does not assert that he is a member of a protected class.[8]  Nor has he

alleged facts plausibly suggesting that Defendants inhibited or punished his exercise of a

fundamental right.[9]  Plaintiff's equal protection claim is thus properly classified as a "class-of-

one" claim, alleging that Defendants acted either out of malice or irrationally and arbitrarily.

It is extremely difficult for class-of-one plaintiffs to allege facts plausibly suggesting that

they were treated differently from similarly situated individuals.  "[C]lass-of-one plaintiffs must

show an extremely high degree of similarity between themselves and the persons to whom they

compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006.)

Here, Plaintiff has not alleged the existence of any similarly-situated individuals, much

less any individuals with a "high degree of similarity" to Plaintiff.  The closest Plaintiff comes is

to allege that Defendant LeClair:

> singled Plaintiff out with unparalleled specificity and the Court
> should fail to see how the misbehavior report allegations of
> correspondence can justify the illegally reinflicted dietary sanctions

---

[8]      The closest Plaintiff comes to such an allegation is to say that "though perhaps a
member via ancestry, the failed provision by defendant of a supporting racially-based inference."
(Dkt. No. 38 at 17.)  This sentence fragment does not plausibly allege that Plaintiff is a member
of a protected class.

[9]      The fundamental rights protected by the Equal Protection Clause, as identified by
the United States Supreme Court, fall into six substantive categories: (1) the right to freedom of
association; (2) the right to vote; (3) the right to interstate travel; (4) the right to fairness in the
criminal process (which includes the right to counsel and the right of access to the courts); (5) the
right to procedural due process; and (6) the right to privacy "which includes various forms of
freedom of choice in matters relating to the individual's personal life" such as freedom of choice
in marital decisions, child bearing, and child rearing.  2 Ronald D. Rotunda & John E. Nowak,
Treatise On Constitutional Law Substance and Procedure, § 15.7 (4th ed. 2010).  Although
Plaintiff alleges that Defendant LeClair violated his right to procedural due process by
reimposing the restricted diet, as discussed in my previous Report-Recommendation, Plaintiff
fails to state a procedural due process claim regarding the restricted diet because he has not
alleged facts plausibly suggesting that he was deprived of a property or liberty interest.

> in the sole case herein.  In particular the Court should see *absolutely*
> **no justifying differences** between the founding misbehavior report
> allegations and/or circumstances of plaintiff and any other prisoner.

(Dkt. No. 38 at 24-25, emphasis in original.)  This does not plausibly allege that there were other

prisoners with a high degree of similarity to Plaintiff who were treated differently.  Therefore, I

recommend that the Court dismiss Plaintiff's equal protection claim.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is

not required where the plaintiff has already amended the complaint.  *See Advanced Marine Tech.*

*v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where

plaintiff had already amended complaint once).  Here, even a liberal reading of the proposed

amended complaint does not indicate that Plaintiff might state a valid equal protection claim.

Moreover, Plaintiff has already amended his complaint once.  Therefore, I recommend that the

Court dismiss the equal protection claim without leave to amend.

2.      Retaliation Claim

Plaintiff alleges that Defendant LeClair had "cognizance of [Plaintiff's] preceding history

of written facility operation oriented complaint to Authorities in Albany."  (Dkt. No. 38 at 17.)

Construed broadly, Plaintiff may be alleging that Defendant LeClair retaliated against him.

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389

F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting,

corrections officials may not take actions that would have a chilling effect upon an inmate's

exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease

with which claims of retaliation can be incanted, however, courts have scrutinized such

retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult
> to dispose of on the pleadings because they involve questions of intent
> and are therefore easily fabricated.   Second, prisoners' claims of
> retaliation pose a substantial risk of unwarranted judicial intrusion into
> matters of general prison administration.  This is so because virtually any
> adverse action taken against a prisoner by a prison official--even those
> otherwise not rising to the level of a constitutional violation--can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other*

*grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the

preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the

defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights; and (3)

there was a causal connection between the protected speech and the adverse action--in other

words, that the protected conduct was a "substantial or motivating factor" in the defendants'

decision to take action against the plaintiff.   *Mount Healthy City Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489,

492 [2d. Cir. 2001]).

Here, Plaintiff has alleged sufficient facts for his retaliation claim to survive initial

review.[10]  Plaintiff has alleged facts plausibly suggesting that he was engaged in protected

conduct.  The filing of a grievance against prison officials is constitutionally protected conduct.

*Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d

Cir. 1996).

Plaintiff has also alleged facts plausibly suggesting that Defendant LeClair took adverse

action against him.  The Second Circuit defines "'adverse action' *objectively, as* retaliatory

conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ...

constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(quoting *Davis v.*

*Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superceded by* 320 F.3d 346, 2003 WL 360053 (2d

Cir. Feb. 10, 2003)) (emphasis in original).  The Second Circuit has "made clear that this

objective test applies even where a particular plaintiff was not himself subjectively deterred; that

is, where he continued to file grievances and lawsuits."  *Gill*, 389 F.3d at 381.  For the purposes

of initial review, it is plausible that the imposition of a restricted diet for a longer period than that

to which he was sentenced could deter a similarly situated individual from exercising

constitutional rights.

Finally, Plaintiff has alleged facts plausibly suggesting, for the purpose of initial review, a

causal connection between the alleged protected activity and the alleged adverse action.  "A

plaintiff can establish a causal connection that suggests retaliation by showing that protected

activity was close in time to the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir.

2009).  Here, according to the amended complaint, the first grievance Plaintiff filed was a

---

[10]      I express no opinion regarding whether Plaintiff's retaliation claim is sufficiently
well-pleaded to survive a motion to dismiss.

December 7, 2006, letter to the Inspector General regarding Defendant Bishop's alleged use of excessive force.  (Dkt. No. 38 at 3, 7-8.)  Plaintiff alleges that Defendant LeClair issued a memorandum one week later authorizing a second seven-day period of restricted diet.  (Dkt. No. 38 at 15.)  Therefore, Plaintiff's retaliation claim is sufficiently well-pleaded to survive initial review.

### D.      Due Process Claim

In the amended complaint, Plaintiff continues to assert a due process claim regarding the imposition of the restricted diet.  (Dkt. No. 38 at 25-29.)  Plaintiff's due process claim regarding the restricted diet was dismissed pursuant to the Court's order of July 12, 2010.  (Dkt. No. 28.)  In dismissing the claim, the Court relied on the rule in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which holds that a prisoner asserting a procedural due process cause of action must allege that he was subjected to some "atypical and significant hardship."  (Dkt. No. 22 at 7; Dkt. No. 28 at 3.)  Under Second Circuit precedent, the imposition of a restricted diet does not impose an atypical and significant hardship on inmates.  *McEachin v. McGuinnis*, 357 f.3d 197, 200-01 (2d Cir. 2004).  The dismissal was with prejudice, and Plaintiff was not granted leave to amend.  I note that the vast majority of the cases that the amended complaint cites in support of the unauthorized renewal of the procedural due process claim predate *Sandin*.

**WHEREFORE**, it is hereby

**RECOMMENDED** that (1) Plaintiff's Eighth Amendment claim against Defendant LeClair be dismissed without leave to amend; (2) Plaintiff's claim regarding the loss of video recording be dismissed without leave to amend; and (3) Plaintiff's equal protection claim against Defendant LeClair be dismissed without leave to amend; and it is further

**RECOMMENDED** that Defendant LeClair be directed to respond to Plaintiff's

retaliation claim within thirty days of any order adopting this Report-Recommendation; and it is

further;

**RECOMMENDED** that Defendants Bishop and Marocco be directed to respond to the

amended complaint within thirty days of any order adopting this Report-Recommendation; and it

is further

**ORDERED** that all other deadlines in this case be adjourned without date; and it is

further

**ORDERED** that Defendants' requests for extensions of their time to respond to the

amended complaint and for scheduling orders (Dkt. Nos. 39, 41, and 43) are **DENIED AS**

**MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: June 1, 2011
       Syracuse, New York


George H. Lowe
United States Magistrate Judge