JOAQUIN R. WINFIELD,

                      Plaintiff,

v.                                     9:09-CV-1055
                                             (LEK/TWD)

WALTER BISHOP and
NANCY MAROCCO,

                      Defendants.
───────────────────────────────────────────────

APPEARANCES:                                   OF COUNSEL:

JOAQUIN R. WINFIELD, 97-A-5399
Plaintiff pro se
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN            RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

     This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Joaquin R. Winfield alleges that Defendant Walter Bishop[1] subjected him to excessive

---

[1] This defendant was identified in the original complaint as "John Doe Bishop." Pursuant to a request from Defendants, the Clerk listed his correct name on the docket. (Dkt. No. 18.) I will refer to him throughout this action as Walter Bishop.

force and that Defendant Nancy Marocco[2] conducted a flawed disciplinary hearing. (Dkt. No. 38.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 77.) For the reasons discussed below, I recommend that the Court deny Defendants' motion as to the excessive force claim against Defendant Bishop and grant Defendants' motion as to the due process claims against Defendant Marocco.

## I. FACTUAL AND PROCEDURAL SUMMARY

### A. Facts Regarding Claim Against Defendant Bishop

Plaintiff alleges that Defendant Bishop, a correction officer, was assigned to escort Plaintiff to and from a disciplinary hearing on December 5, 2006. (Dkt. No. 38 at 4.) During the return trip from the hearing to Plaintiff's cell, a series of inmates greeted Plaintiff. *Id*. at 5. Defendant Bishop tugged at the chain restraint on Plaintiff's back and told him not to socialize with the other inmates. *Id*. When yet another inmate greeted Plaintiff, Plaintiff smiled and nodded. *Id*. at 6. Defendant Bishop tugged the chain restraint again and Plaintiff told him to "take it easy, Shorty." *Id*. Defendant Bishop replied, "I've got your . . . Shorty!" *Id*. Defendant Bishop then said, "Don't you spit!" and bashed Plaintiff's head against a wall. *Id*. Defendant Bishop put Plaintiff back in his cell without further incident. *Id*. at 7.

Plaintiff alleges that he was questioned by an unnamed lieutenant and interviewed by an unnamed sergeant on the morning after Defendant Bishop's alleged use of excessive force. (Dkt.

---

[2] This defendant is identified in both the original and amended complaints as "Nancy Machell." Pursuant to a request from Defendants, the Clerk corrected her name on the docket. (Dkt. No. 18.) I will refer to her throughout this action as Nancy Marocco.

No. 38 at 3.) Plaintiff wrote to Darwin LaClair,[3] the superintendent of Great Meadow, on December 6, 2006, regarding the alleged use of force. (Dkt. No. 77-25.) Plaintiff wrote to the Inspector General's office two days after the alleged use of force to describe and complain about the incident. (Dkt. No. 38 at 3; Dkt. No. 77-26.) An Assistant Inspector General interviewed Plaintiff on March 27, 2007, regarding the incident. (Dkt. No. 38 at 3; Dkt. No. 77-8 at 36:15-37:3.)

Plaintiff never filed a formal grievance regarding the alleged use of excessive force. (Dkt. No. 77-1 ¶¶ 12-13; Dkt. No. 77-8 at 107:14-18.) At his deposition, Plaintiff was asked whether anything prevented him from filing a formal grievance. (Dkt. No. 77-8 at 107:19-20.) Plaintiff stated that he "figured that it would be an exercise of futility as long as I notified the authorities." (Dkt. No. 77-8 at 107:22-24.)

On June 16, 2008, Plaintiff wrote a letter inquiring whether he was required to file a formal grievance regarding the excessive force incident despite being interviewed by the Inspector General.[4] (Dkt. No. 38 at 3; Dkt. No. 77-10 at 2.) Plaintiff asked, if he was so required, whether the facility would accept a late-filed grievance. *Id*. On July 29, 2008, the Deputy Superintendent of Programs at Great Meadow wrote to Plaintiff to inform him that it was

---

[3] Darwin LaClair was originally named as a defendant in this action. (Dkt. Nos. 1 and 38.) All claims against him were dismissed without leave to amend and he is no longer a party. (Dkt. No. 69.)

[4] Plaintiff alleges that he sent this letter to officials at Great Meadow. (Dkt. No. 38 at 3.) William J. Abrunzo, the Inmate Grievance Program Supervisor at Elmira Correctional Facility, declares that Plaintiff sent the letter to "administration at Elmira." (Dkt. No. 77-2 ¶ 13.) It appears from the face of the letter that it may have been sent to the superintendents at both facilities. (Dkt. No. 77-10 at 2.) Plaintiff testified at his deposition that he could not remember to whom he sent the letter. (Dkt. No. 77-8 at 102:15-21.)

3

too late for him to file a grievance. (Dkt. No. 38 at 3; Dkt. No. 77-11 at 2.)

B. **Facts Regarding Claim Against Defendant Marocco**

Defendant Marocco conducted a disciplinary hearing on December 27 and 29, 2006, regarding charges against Plaintiff that were not related to the incident involving Defendant Bishop. (Dkt. No. 77-3 ¶¶ 2-3.) At the conclusion of the disciplinary hearing, Defendant Marocco sentenced Plaintiff to nine months in the Special Housing Unit ("SHU"), twelve months' loss of good time credits, and nine months' loss of package, commissary, and phone privileges. (Dkt. No. 77-12 at 2.)

Plaintiff appealed the decision. (Dkt. No. 77-17 at 3.) The decision was affirmed on March 9, 2007. (Dkt. No. 77-17 at 2.) Plaintiff had previously received a number of other disciplinary sentences that he was required to serve before serving the sentence imposed by Defendant Marocco. (Dkt. No. 77-16.) Therefore, he did not serve any portion of the sentence imposed by Defendant Marocco until November 2009. (Dkt. No. 77-16 at 10.[5]) Plaintiff ultimately served only thirty days of the sentence imposed by Defendant Marocco. *Id*.[6]

## II. APPLICABLE LEGAL STANDARDS

A. **Legal Standard Governing Motions for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[5] Citations to page numbers in Defendants' Exhibit I refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[6] Plaintiff appears to dispute the authenticity of the documents that Defendants submitted to show that he served only thirty days. (Dkt. No. 86 at n.20.) The documents are properly authenticated. (Dkt. Nos. 87-1 and 87-2.)

to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[7] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

      **B.**      **Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38

---

[7]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.    CLAIM AGAINST DEFENDANT BISHOP

Defendants argue that Plaintiff's claim against Defendant Bishop is barred because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (Dkt. No. 77-7 at 3-5.[8]) For the reasons discussed below, I recommend that the Court deny Defendants' motion because Plaintiff has raised a triable issue of fact that special circumstances justified his failure to properly exhaust his administrative remedies.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In New York state prisons, the Department of Corrections and Community Supervision ("DOCCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit.

---

[8] Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

7, § 701.5 (2013).

Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*Id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. at 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

DOCCS provides an "expedited" procedure for inmates who allege that they have been harassed by staff. *Id*. at § 701.8. The regulations define "harassment" as "employee misconduct meant to annoy, intimidate or harm an inmate." *Id*. at § 701.2(e). Under the expedited

procedure, the grievance is forwarded to the superintendent by the close of the same business day that it is submitted. *Id*. at § 701.8(b). If the superintendent determines that "the grievance is a bona fide harassment issue," the superintendent must initiate an in-house investigation, request an investigation by the inspector general's office, or request an investigation by the New York State Police. *Id*. at 701.8(d). Within twenty-five days of receiving the grievance, the superintendent must render a decision. *Id*. at 701.8(f). If the inmate disagrees with the decision or if the superintendent fails to issue a decision, the inmate may appeal to CORC. *Id*. at 701.8(g-h).

An inmate may seek an extension of the time limits in writing at any of the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2013). If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*.

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

Here, it is undisputed that Plaintiff did not properly exhaust his administrative remedies. (Dkt. No. 77-2 ¶ 11; Dkt. No. 86 at 2-3.[9]) Plaintiff's failure to exhaust, however, does not end

---

[9] Plaintiff attempts to dispute this fact by citing to his deposition testimony. (Dkt. No. 86 at n.4, citing Dkt. No. 77-8 at 104.) The portion of testimony to which Plaintiff refers discusses the fact that Plaintiff was interviewed by a lieutenant and a sergeant about the incident, wrote to the inspector general, and was interviewed by an inspector general. (Dkt. No. 77-8 at 104:11-23.) This evidence does not raise a triable issue regarding Plaintiff's proper exhaustion of administrative remedies because writing directly to the inspector general and/or being interviewed by staff is not the equivalent of filing a formal grievance. *Velez v. Kulhmann*, No. 02 Civ. 6062, 2003 U.S. Dist. LEXIS 14684, at *10-11, 2003 WL 22004899, at *3 (S.D.N.Y. Aug. 22, 2003).

9

the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[10]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id*. at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, as discussed above, administrative remedies were available to Plaintiff. Defendants asserted the exhaustion defense in their answer to the operative complaint and thus have not waived it. (Dkt. No. 72 ¶ 18; *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Alster v. Goord*, 745 F. Supp. 2d 317, 332 (S.D.N.Y. 2010).) Nothing in the record raises a triable issue that Defendants are estopped from asserting the exhaustion defense. *Cf. Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004) (district court directed to consider whether defendants were estopped from

---

[10] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011).

asserting exhaustion defense where inmate alleged that he failed to exhaust his administrative remedies because he was beaten, threatened, denied grievance forms, and transferred to another prison). In fact, Plaintiff testified at his deposition that the only thing that prevented him from filing a timely grievance was his sense that it would be "an exercise of futility." (Dkt. No. 77-8 at 107:19-23.) The issue, then, is whether Plaintiff has plausibly alleged special circumstances justifying his failure to properly exhaust his administrative remedies.

The special circumstances exception to the exhaustion requirement is generally applicable where an inmate alleges that "his failure to exhaust was based on a reasonable [] but erroneous interpretation of prison regulations." *McDowall v. Metro. Corr. Ctr.*, No. 08 Civ. 8329 (BSJ), 2010 U.S. Dist. LEXIS 15469, at *22-23 n.4, 2010 WL 649744, at *7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases). Courts have held that "a letter to the Superintendent who then commences an Inspector General investigation can constitute 'special circumstances' that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prisoner complaints internally." *Hairston v. LaMarche*, No. 05 civ. 6642 (KMW) (AJP), 2006 U.S. Dist. LEXIS 55436, at *32, 2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006).[11] Here, Plaintiff wrote to the superintendent and to the inspector general's office. (Dkt. Nos. 77-25 and 77-26.) An investigation was commenced. (Dkt. No. 77-8 at 36:15-37:3.) Nothing in the record currently before the Court indicates what the result of that investigation was, whether Plaintiff received a copy of any written report, or whether Plaintiff was advised that he was required to appeal any decision the inspector general reached. Based on the record as it currently stands,

---

[11] The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Plaintiff has raised a triable issue of fact that the investigation by the inspector general "understandably lead" him "to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). Therefore, I recommend that the Court deny Defendants' motion for summary judgment on exhaustion grounds and set this matter for an evidentiary hearing on all matters related to the issue of exhaustion.[12]

## IV.    CLAIM AGAINST DEFENDANT MAROCCO

Plaintiff claims that Defendant Marocco violated his right to due process during the disciplinary hearing she conducted on December 27 and 29, 2006. (Dkt. No. 38 at 29-38.) In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). Defendants argue that they are entitled to summary judgment because (a) Plaintiff was not deprived of a cognizable liberty interest; and (b) even if he was deprived of such an interest, he received all of the process to which he was due. (Dkt. No. 77-7 at 5-10.) I will address only Defendants' first argument, as it is dispositive.

An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995);

---

[12]    I find that this case is distinguishable from *Goodson v. Silver*, No. 9:09-CV-0494 (GTS/DRH), 2012 U.S. Dist. LEXIS 137177, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012) for two reasons. First, the record in that case showed that the inspector general's investigation concluded that the prisoner's allegations were unfounded. 2012 WL 4449937, at *2. Second, the plaintiff testified at the exhaustion hearing conducted in that case that he had a "good understanding" of the grievance process. *Id*. at *7. In that case, then, the plaintiff had an unfavorable decision to appeal to CORC and an understanding of how the process worked. Here, there is no such evidence currently before the Court.

*Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In determining the duration, the "proper focus is on actual punishment." *Scott v. Albury*, 156 F.3d 283, 286 (2d Cir. 1998). Thus, courts do not look to the maximum possible punishment that might have been imposed when determining whether a liberty interest was implicated. *Id*. at 288. Rather, courts looks to the duration of the sentence that was actually served. *Palmer*, 364 F.3d at 62, 66 (court characterized duration of confinement as seventy-seven days where hearing officer sentenced prisoner to ninety day sentence, of which prisoner served only seventy-seven days). Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions."[13] *Id.* at 64.

Here, Plaintiff served only thirty days in disciplinary confinement as a result of the disciplinary hearing that Defendant Marocco conducted. (Dkt. No. 77-16 at 10.) Plaintiff has not produced any evidence raising a triable issue of fact that the conditions he experienced during that confinement were more severe than normal SHU conditions. Therefore, Plaintiff has not raised a triable issue of fact that his disciplinary sentence implicated any liberty interest.

Plaintiff's loss of package, commissary, and phone privileges does not implicate any

---

[13] "Normal" SHU conditions include the inmate being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

liberty interest. Courts have held that the loss of these privileges "does not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on an inmate." *Husbands v. McClellan*, 990 F. Supp. 214, 217 (W.D.N.Y. 1998) (citing *Frazier*, 81 F.3d at 317). Similarly, Plaintiff's loss of good time credits does not implicate a cognizable liberty interest. *Marino v. Klages*, 973 F. Supp. 275, 279 (N.D.N.Y. 1997). Even if it did implicate such an interest, a writ of habeas corpus is the sole remedy available for a prisoner challenging the loss of good time credits. *Griffin v. Selsky*, 326 F. Supp. 2d 429, 430 (W.D.N.Y. 2004). Thus, Plaintiff's loss of privileges and good time credits did not deprive him of any recognizable liberty interest.

Therefore, because Plaintiff was not deprived of any cognizable liberty interest, I recommend that the Court grant Defendants' motion for summary judgment of the due process claims against Defendant Marocco and terminate her from this action.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 77) be **GRANTED IN PART AND DENIED IN PART**. It is recommended that the Court (1) deny Defendants' motion as to the excessive force claim against Defendant Bishop and set this matter for an evidentiary hearing regarding the exhaustion of administrative remedies; and (2) grant the motion as to the due process claims against Defendant Marocco and terminate her as a Defendant in this action; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Goodson v. Silver*, No. 9:09-CV-0494 (GTS/DRH), 2012 U.S. Dist. LEXIS 137177, 2012 WL 4449937 (N.D.N.Y. Sept. 25, 2012); *Hairston v. LaMarche*, No. 05 civ. 6642 (KMW) (AJP), 2006 U.S. Dist. LEXIS 55436,

2006 WL 2309592 (S.D.N.Y. Aug. 10, 2006); *McDowall v. Metro. Corr. Ctr.*, No. 08 Civ. 8329, 2010 U.S. Dist. LEXIS 15469, 2010 WL 649744 (S.D.N.Y. Feb. 22, 2010); and *Velez v. Kulhmann*, No. 02 Civ. 6062, 2003 U.S. Dist. LEXIS 14684, 2003 WL 22004899 (S.D.N.Y. Aug. 22, 2003).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: July 31, 2013
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge