UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOAQUIN R. WINFIELD,

Plaintiff,

9:09-CV-1055
(LEK/TWD)

v.

WALTER BISHOP and
NANCY MAROCCO,

Defendants.

---

APPEARANCES: OF COUNSEL:

JOAQUIN R. WINFIELD, 97-A-5399
97-A-5399
Plaintiff *pro se*
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

RICHARD LOMBARDO, ESQ.
Assistant Attorney General

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**REPORT-RECOMMENDATION and ORDER**

## I. INTRODUCTION

In this *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, Plaintiff Joaquin R. Winfield alleges that Defendant Walter Bishop[1] subjected him to excessive

---

[1] This defendant was identified in the original complaint as "John Doe Bishop." Pursuant to a request from Defendant, the Clerk listed his correct name on the docket. (Dkt. No. 18.) I will refer to him throughout this action as "Walter Bishop" or "Bishop." The action was dismissed against Defendant Nancy Marocco on summary judgment. (Dkt. Nos. 92 and 93.)

force.  (Dkt. No. 38.)  Plaintiff pursued the action *pro se* through discovery.  Defendant Bishop's

motion for summary judgment was denied, but the Court set the matter for an evidentiary hearing

regarding the issue of exhaustion of administrative remedies.  (Dkt. Nos. 92 and 93.)  *Pro bono*

counsel for Plaintiff was assigned (Dkt. No. 100), and an evidentiary hearing on exhaustion of

administrative remedies was scheduled.  (Text Minute Entry and Text Notice 12/20/2013; Dkt.

No. 104.)  Plaintiff objected to counsel assignment (Dkt. No. 105), and new counsel was

thereafter assigned.  (Dkt. Nos. 112 and 119.)  The evidentiary hearing was rescheduled.  (Text

Notice 5/2/2014.)  Plaintiff's second assigned *pro bono* counsel moved to be relieved as counsel

due to "irreconcilable views on the appropriate legal strategy for the hearing," and Plaintiff filed

a letter indicating no opposition to that motion.  (Dkt. Nos. 126 and 131.)  Plaintiff's second

assigned *pro bono* counsel was relieved and Plaintiff appeared *pro se* at the evidentiary hearing.

(Dkt. Nos. 129, 132, and 143.)

        The Court previously determined that administrative remedies were available to Plaintiff,

and that Plaintiff did not properly exhaust those remedies.  (Dkt. No. 92 at 7-15; Dkt. No. 93.)

The Court also previously determined that Defendant was not estopped from asserting the

affirmative defense of failure to exhaust administrative remedies.  *Id.* at 10; Dkt. No. 93.

Therefore, an evidentiary hearing was held on June 20, 2014, on the limited issue of whether

special circumstances existed to excuse Plaintiff's failure to exhaust administrative remedies.

(Dkt. No. 143.)  Based upon the evidence presented at the hearing, the Court finds that Plaintiff

has not proved special circumstances necessary to provide a basis to excuse his failure to exhaust

such remedies.  Therefore, the Court recommends that Plaintiff's Amended Complaint (Dkt. No.

38) be dismissed in its entirety on this procedural basis, with prejudice, and without addressing

the merits of the excessive force claim.

## II.    BACKGROUND

Plaintiff alleges that Defendant Bishop, a correction officer, was assigned to escort Plaintiff to and from a disciplinary hearing at Great Meadow Correctional Facility ("Great Meadow") on December 5, 2006.  (Dkt. No. 38 at 4.)  During the return trip from the hearing to Plaintiff's cell, a series of inmates greeted Plaintiff.  *Id*. at 5.  Defendant Bishop tugged at the chain restraint on Plaintiff's back and told him not to socialize with the other inmates.  *Id*.  When yet another inmate greeted Plaintiff, Plaintiff smiled and nodded.  *Id*. at 6.  Defendant Bishop tugged the chain restraint again and Plaintiff told him to "take it easy, Shorty."  *Id*.  Defendant Bishop replied, "I've got your . . . Shorty!"  *Id*.  Defendant Bishop then said, "Don't you spit!" and bashed Plaintiff's head against a wall.  *Id*.  Defendant Bishop put Plaintiff back in his cell without further incident.  *Id*. at 7.  Plaintiff never filed a written grievance with the Inmate Grievance Review Committee ("IRGC") regarding the alleged use of excessive force.  (Dkt. No. 77-1 ¶¶ 12-13; Dkt. No. 77-8 at 107:14-18.)

## III.   HEARING TESTIMONY AND EVIDENCE

At the evidentiary hearing, the Court heard testimony from the Plaintiff, and DOCCS employees Sgt. Vincent Samolis, produced by Court order at the Plaintiff's request (*see* Dkt. No. 129), William Abrunzo, Chad Powell, and Kevin Reichelt.

### A.    Exhibits Received into Evidence

The Court received into evidence the following exhibits introduced by Plaintiff:

P-1.        Memo to Lt. Smith from Sgt. Hendry dated 12/7/06;

P-2.        Memo to Lt. Smith from Sgt. Vedder dated 12/6/06;

P-3. Memo to Sgt. Vedder from C.O. Bishop dated 12/6/06;

P-4. Action Tab to Capt. Eastman from P. VanGuilder, DSS dated "12/12/__"; and

P-5. Letter from Plaintiff to Richard Roy dated 12/7/06.

The Court received into evidence the following exhibits introduced by Defendant:

D-A. DOCCS Directive 4040 dated 7/12/06 with Revision Notice date of 2/23/07;

D-B. Inspector General's Investigation Report of alleged incident;

D-C. Letter from Plaintiff dated 6/16/08 about filing a grievance;

D-D. Memo from Karen LaPolt to Plaintiff dated 7/29/08;

D-E. List of grievances filed by Plaintiff at Elmira Correctional Facility ("Elmira");

D-F. List of all grievance appeals filed by Plaintiff;

D-H. Letter from Plaintiff to Superintendent LaClaire of Great Meadow dated 12/6/2006;

D-I. Letter from Plaintiff to Central Office Review Committee ("CORC") dated 7/16/08; and

D-J. Letter from CORC to Plaintiff dated 3/25/09.

The testimony and evidence at the hearing focused upon the issue of whether special circumstances existed to excuse Plaintiff's failure to properly exhaust his administrative remedies.

**B. Summary of Testimony**

1. Plaintiff

Plaintiff testified that he was in full compliance with DOCCS Directive 4040 Section 701.8(a) (Exhibit D-A) because he verbally reported the December 5, 2006, incident of alleged harassment that is the subject of the Amended Complaint to the Defendant's supervisor the day

after it happened. (Dkt. No. 143 ("T") at 23-24.) Plaintiff believed that a verbal complaint to the Defendant's immediate supervisor, Sgt. Vedder, shows that he complied with the Directive. (T. at 38.) His verbal complaint to the supervisor made on December 6, 2006, generated interdepartmental memos about the claimed harassment. (T. at 38, 51-52; Exhibits P-1 through P-4.) Once he made the verbal complaint to Sgt. Vedder, Plaintiff believed he did not have to file a grievance form. (T. at 36, 49.) Plaintiff also sent a letter about the alleged harassment and excessive force to Superintendent LaClaire at Great Meadow on December 6, 2006. (T. at 60-61; Exhibit D-H.) In addition, he made a written complaint to the Inspector General's ("IG") Office. (T. at 31; *see also* Exhibits P-5, D-B.) He was interviewed by an IG office member, but never heard back from that office. (T. at 33.) He never heard back from Sgt. Vedder after the verbal complaint was made.[2] (T. at 72.)

Plaintiff did not read Directive 4040 until sometime in 2008, when prompted by the lack of a response to his December 6, 2006, verbal complaint. (T. at 65.) Thereafter, on June 16, 2008, while Plaintiff was housed at Elmira, he wrote a letter to Great Meadow because he had not heard back from anyone about the verbal complaint he made to Sgt. Vedder. (T. at 49-50, 55, 65; Exhibit D-C.) Since Plaintiff received no response about the verbal complaint, he thought he had to file a form because he thought he did something wrong. (T. at 51-52.) Before June 16, 2008, he did not file a grievance about the December 5, 2006, incident because he believed he had already notified the authorities and "it would be an exercise of futility." (T. at 57-58.) He received a memo letter dated July 29, 2008, from the Deputy Superintendent of Programs at

---

[2]     It is unclear whether Plaintiff ever heard back from Superintendent LaClaire as no evidence was offered by either party in that regard.

Great Meadow which noted that the records of Great Meadow did not indicate that he filed any grievances there in 2006-2007, and he was told it was too late to file a grievance. (T. at 73-74; Exhibit D-D.)

However, Plaintiff was advised by another inmate that he was in compliance with Directive 4040 because he had verbally notified the Defendant's immediate supervisor about the alleged assault. (T. at 63-64.) On the advice of a different inmate, Plaintiff then wrote a letter dated July 16, 2008, to CORC about the alleged incident of harassment and excessive force because he had not received a response to his verbal complaint. (T. at 72; Exhibit D-I.) In response, Plaintiff received a letter from CORC dated March 25, 2009, which indicated his grievance was untimely. (T. at 75; Exhibit D-J.)

As an inmate, Plaintiff had a somewhat good understanding of the grievance process in December of 2006 when the alleged incident occurred. (T. at 70.) Plaintiff ultimately acknowledged that, according to Directive 4040, an inmate does not have to make a verbal complaint about harassment in order to file a written grievance. (T. at 78; Exhibit D-A at Section 701.8(a).)

2. <u>Sgt. Vincent Samolis</u>

Sgt. Samolis testified he was the grievance sergeant at the Clinton Correctional Facility for a period of six (6) months. (T. at 84.) If an inmate alleges he is being harassed, the inmate fills out a form and submits it. (T. at 85.) The inmate can also complain to the officer's immediate supervisor, or to anyone else to whom the inmate wants to complain. (T. at 87.) In order to properly follow the grievance process, an inmate fills out a form or any piece of paper to complain about what happened; it is assigned a grievance number; it is investigated and brought

to a committee; there is a response and the inmate can appeal the response if he is not happy with it. (T. at 88.) An inmate has to file a written form for it to be a grievance even if he has made a verbal complaint to the offending officer's supervisor. (T. at 89.) Directive 4040 at Section 701.8 does not require that a verbal complaint about harassment be made before an inmate can file a grievance about it. (T. at 92.) A written grievance is still required even if the inmate makes a verbal complaint. (T. at 92, 96.) An inmate must fill out a form or write something on a piece of paper and submit it to the grievance department in order to file a grievance. (T. at 93, 97.)

3. William Abrunzo

Mr. Abrunzo has been the inmate grievance supervisor at Elmira for four years and has worked for DOCCS for almost ten years. (T. at 101-102.) He confirmed that inmate grievances must be in writing, and that a verbal complaint of harassment is not a grievance within the meaning of Directive 4040. (T. at 103-04, 115, 119.) Directive 4040 Section 701.5 requires a grievance to be in writing. (T. at 122-23; Exhibit D-A.) He also confirmed the grievance process as explained by Sgt. Samolis. (T. at 105.) A verbal complaint of battery can be made to a supervisor, but that would not constitute a grievance being filed. (T. at 114.) Mr. Abrunzo reviewed a grievance log containing a list of grievances filed by Plaintiff after he was transferred to Elmira on February 6, 2007. (T. at 111; Exhibit D-E.) None of the grievances involved the incident in December of 2006 at Great Meadow. (T. at 111-112; Exhibit D-E.)

4. Chad Powell

Mr. Powell has been employed by DOCCS for eighteen years, and at the time of the hearing had worked as the assistant records access officer for nine years. (T. at 128-29.) The

CORC reviews appeals of grievances. (T. at 129.) CORC maintains records of all grievance appeals from all DOCCS facilities. (T. at 130.) When CORC receives an appeal, it is logged and put into a DOCCS computer database. *Id.* Mr. Powell identified a list of appeals to CORC by Plaintiff. (T. at 131-32; Exhibit D-F.) The list did not contain any appeals involving an incident of harassment or excessive force occurring in December of 2006. (T. at 132; Exhibit D-F.)

5. Kevin Reichelt

Mr. Reichelt has worked for DOCCS for approximately twenty years. (T. at 141.) At the time of the hearing, he was a correction officer, but he previously worked from 2001 to 2009 as an investigator at the Inspector General's ("IG") Office. *Id.* The IG's office investigates complaints from inmates, inmates' families, fellow employees, and anonymous complaints. (T. at 142.) If a complaint is initiated by an inmate, the inmate does not learn the outcome regardless of whether or not the complaint is substantiated. (T. at 143.) An inmate grievance does not have anything to do with an IG investigation of a complaint, nor does CORC have authority to review determinations made by the IG's Office. (T. at 144.)

In January of 2007, the IG's Office opened a file in response to a letter received from Plaintiff alleging Defendant used excessive force on him. (T. at 145-46, 157-58; Exhibits D-B and P-5.) Mr. Reichelt investigated the complaint and found it unsubstantiated. (T. at 147; Exhibit D-B.) The IGRC and the IG's Office are completely different from one other, and if an inmate files a grievance the facility does not need to notify the IG's Office. (T. at 143-44, 158-59.)

## IV.    APPLICABLE LEGAL STANDARDS

### A.    The Prison Litigation Reform Act of 1996

As succinctly outlined by my colleague, Magistrate Judge David E. Peebles:

> The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action . . . .  Proper exhaustion requires a plaintiff to procedurally exhaust his or her claims by complying with the system's critical procedural rules. Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken.

*Bailey v. Fortier*, 09-CV-0742 (GLS/DEP), 2012 WL 6935254, at *4, 2012 U.S. Dist. LEXIS 185178, at *11-13 (N.D.N.Y. Oct. 4, 2012) (citations and punctuation omitted).[3]

As noted, "[t]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution in which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*,

---

[3]    The Court will provide Plaintiff with copies of all unpublished decisions cited in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

548 U.S. 81, 88 (2006)).  In New York State prisons, DOCCS has a well-established three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the DOCCS IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days[4] of the alleged occurrence.  *Id.* at § 701.5(a).  A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id.* at 701.5(b)(1).  If there is no informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing.  *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  *Id*. at 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. at § 701.5(c)(3)(ii).  Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step.  *Id.* at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision.  *Id*. at 701.5(d)(1)(I).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. at 701.5(d)(3)(ii).

An inmate may seek an extension of the time limits in writing at any of the steps, but such

---

[4]        During the relevant time period involved in this case in 2006, grievances were to be filed within fourteen days of an occurrence.  *See* Ex. D-A.

a request must be made within forty-five days of the incident being grieved or the decision being appealed. *Id.* at 701.6(g). If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*.

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

**B. *Hemphill v. State of New York***

Because failure to exhaust is an affirmative defense, defendants bear the burden of showing by a preponderance of the evidence that a plaintiff has failed to exhaust available administrative remedies. *See Murray v. Palmer*, No. 9:03-CV-1010 (GTS/GHL), 2010 WL 1235591, at *4, 2010 U.S. Dist. LEXIS 32014, at *16 (N.D.N.Y. Mar. 31, 2010); *Bailey,* 2012 WL 6935254, at *6 (the party asserting failure to exhaust bears the burden of proving its elements by a preponderance of the evidence); *see also Andrews v. Whitman*, No. 06-2447-LAB (NLS), 2009 WL 857604, at *6, 2009 U.S. Dist. LEXIS 30017, at *16 (S.D. Cal. Mar. 27, 2009) (defendant must prove non-exhaustion of administrative remedies by a preponderance of the evidence).

If a defendant meets that burden, however, a plaintiff's failure to exhaust does not end the review. "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then 'counter' Defendants' assertion by showing exhaustion unavailability, estoppel, or 'special circumstances' [under *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)]." *Murray,* 2010 WL 1235591, at *4. *Hemphill* sets forth a three-

part inquiry for district courts. First, courts must determine if administrative remedies were in fact available to plaintiff. Second, courts must determine if the defendants are estopped from presenting non-exhaustion as an affirmative defense because they prevented the plaintiff inmate from exhausting his administrative remedies by "'beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility.'" *Hemphill*, 380 F.3d at 688 (citing *Ziemba v. Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)). Third, the Second Circuit explained in *Hemphill* that there are certain "special circumstances" in which even though administrative remedies may have been available and the defendants may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified.[5] *Hemphill*, 380 F.3d at 686. "Special circumstances" have been found to include an incorrect but reasonable interpretation of DOCCS' regulations or failing to file a grievance in the precise manner prescribed by DOCCS as a result of threats. *See, e.g., Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (failure to exhaust was justified where plaintiff inmate's interpretation of regulations was reasonable and prison official threatened inmate).

---

[5] Subsequent to *Hemphill*, the Supreme Court decided *Woodford v. Ngo*, 548 U.S. 81 (2006). The question addressed in *Woodford* was whether "a prisoner can satisfy the [PLRA's] exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id*. at 83-84. The Supreme Court resolved the question in the negative, explaining that the PLRA requires "proper exhaustion"    "using all steps that the agency holds out, and doing so properly (so that the agency addressed the issues on the merits)." *Id*. at 90 (citation omitted). Although the Second Circuit has acknowledged that there is some question as to whether the estoppel and special circumstances inquiries in *Hemphill* survived *Woodford*, the Court has as yet found it unnecessary to decide the issue and appears to still be considering all three *Hemphill* inquiries in exhaustion cases. *See, e.g., Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011) (finding it unnecessary to decide whether *Hemphill* is still good law because plaintiff had failed to establish that defendants were estopped from raising non-exhaustion as an affirmative defense).

## V. ANALYSIS

### A. Plaintiff Did Not Establish Special Circumstances Justifying His Failure to Exhaust Administrative Remedies

The Court previously determined that administrative remedies were available to Plaintiff, and that Plaintiff did not properly exhaust those remedies. (Dkt. No. 92 at 7-15; Dkt. No. 93.) The Court also previously determined that Defendant was not estopped from asserting the affirmative defense of failure to exhaust administrative remedies. *Id.* at 10; Dkt. No. 93. Therefore, the Court turns to the limited issue of whether special circumstances existed to excuse Plaintiff's failure to exhaust administrative remedies.

#### 1. Plaintiff's Interpretation of Directive 4040

At the evidentiary hearing held on June 20, 2014, and in his closing argument submissions, Plaintiff asserted that he believed a verbal complaint to an employee's direct supervisor constituted a grievance under Section 701.8(a) of Directive 4040. (T. at 23-24, 38, 36, 49; Dkt. No. 150 at 2; Exhibit D-A.) Plaintiff further asserted that his verbal complaint to the offending officer's direct supervisor made on December 6, 2006, about the December 5, 2006, incident generated interdepartmental memos about the claimed harassment, and therefore it constituted a grievance within the meaning of Directive 4040. (T. at 38, 51-52; Exhibits P-1 through P-4.) Essentially, Plaintiff argues special circumstances exist excusing his failure to exhaust because he misunderstood the grievance procedures.

Section 701.8(a) of Directive 4040 governing allegations of employee harassment provides that:

> (a) An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.5(a), above.
>
> > Note: An inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.

(Exhibit D-A at 12.) Section 701.5(a) clearly states that an inmate must submit a written grievance to the Inmate Grievance clerk. *Id.* at 5. Plaintiff also believed that because he filed a written complaint with the IG's Office, and he was interviewed by someone from that office, he did not have to file a grievance. (T. at 31, 33; *see also* Exhibits P-5, D-B.)

Under the *Hemphill* analysis, the Second Circuit has described "special circumstances" excusing a failure to comply with the administrative grievance procedures as "a reasonable misunderstanding of the grievance procedures." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006); *see also Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010) ("Among the circumstances potentially qualifying as 'special' under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute cannot be grieved."); *Bryant v. Williams*, No. 08-CV-778S, 2009 WL 1706592, at *6, 2009 U.S. Dist. LEXIS 51151 (W.D.N.Y. June 17, 2009) (noting Second Circuit cases in which special circumstances have been held to exist, including cases involving an inmate's reasonable albeit erroneous interpretation of prison regulations, and an inmate's reliance upon the court's earlier construction of the law); *Clarke v. Thornton*, 515 F. Supp. 2d 435,439 (S.D.N.Y. 2007) ("Such special circumstances have previously been found to include threats of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process.") (citing *Giano v. Goord*, 380 F.3d 670, 676 (2d Cir. 2004)).

2. Reasonableness of Plaintiff's Interpretation of Directive 4040

The question for this Court then becomes whether Plaintiff's interpretation of Section 701.8(a) of Directive 4040 was reasonable under the circumstances. For the reasons that follow, the Court finds that Plaintiff's interpretation was not reasonable.

As noted above, Plaintiff complained to the offending officer's immediate supervisor, which generated interdepartmental memorandums. (T. at 26-29, 41, 47.) Section 701.8(a)(1) provides that "[a]n inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.5(a) above." The Note below the text of Section 701.8(a)(1) does provide that an inmate who feels he has been the victim of harassment should report the incident to the employee's immediate supervisor. However, it clearly states "this is not a prerequisite for filing a grievance with the IGP." (Exhibit D-A at 12.) The only reasonable interpretation of this section is that an inmate is *not* required to make a verbal report before filing a grievance. In fact, at the hearing, Plaintiff conceded that Section 701.8(a) means "you don't have to make a verbal complaint in order to file a written grievance." (T. at 78.)

Given the clear instruction to inmates in Section 708.1(a) that any inmate who wants to file a complaint about harassment "*shall* follow the procedures set forth in section 701.5(a)," which outlines the entire three-step grievance procedure and the necessity for filing a written grievance, there is no way the Note can reasonably be interpreted as excusing an inmate who complains to a supervisor from complying with the written grievance requirement (emphasis supplied). (Exhibit D-A at 12; Exhibit D-A at 5.)

Sgt. Samolis and William Abrunzo confirmed that verbal complaints are not grievances

within the meaning of Directive 4040. (T. at 92, 96, 103-04, 115, 119, 122-23; Exhibit D-A.) Kevin Reichelt testified that an IG investigation of a complaint is not related to the inmate grievance process. (T. at 143-44.) Plaintiff testified that another inmate advised him that as long as he verbally notified the Defendant officer's immediate supervisor of the complaint, he did not have to file a written grievance. (T. at 63-64.) Plaintiff did not look at Directive 4040 at the time the other inmate told him this information, but Plaintiff conceded he understood the grievance process in December of 2006. (T. at 64, 70.)

Additionally, Plaintiff did not claim he was threatened, or that he was denied forms or writing materials. *See, e.g., Giano* 380 F.3d at 675-76 (failure to exhaust was justified under "special circumstances" where plaintiff inmate's misinterpretation of regulations was reasonable and prison official threatened inmate); *Sandlin v. Poole,* 575 F. Supp. 2d 484, 488 (W.D.N.Y. 2008) (court found the facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals . . . effectively rendered the grievance appeal process unavailable to him" and noted that "[s]uch facts . . . support a finding that defendants are estopped from relying on the exhaustion defense, as well as 'special circumstances' excusing plaintiff's failure to exhaust.").

Under all of these circumstances, the Court finds Plaintiff's misinterpretation of Directive 4040 is not reasonable.

**B. Plaintiff's Credibility**

The Court also finds Plaintiff's claimed interpretation of Directive 4040 is not credible. Plaintiff testified he believed in December of 2006 that a verbal complaint to the employee's immediate supervisor constituted a grievance based upon Section 701.8 of Directive 4040. (T. at

63-64.) However, he also testified he had not read Directive 4040 at that time, and that he was advised by another inmate that a verbal complaint to Defendant's supervisor constituted compliance with Directive 4040. *Id.*

At the hearing, Plaintiff testified he sent a letter to Great Meadow on June 16, 2008, because he did not receive a response to the verbal complaint he made on December 6, 2006. (T. at 28, 49-52, 54-55, 65, 68; Exhibit D-C.) At his deposition, however, he testified that the June 16, 2006, letter was his attempt to file a "belated" grievance about Defendant's alleged use of excessive force on December 5, 2006. (T. at 57.) He did not indicate in the letter that he was sending it because he did not receive a response to his verbal complaint, nor did he indicate at his deposition that he sent it because he had not received a response to his verbal complaint. (T. at 65; Exhibit D-C.)

Plaintiff also claimed at the hearing that his July 16, 2008, letter to CORC was sent because he had not received a response to his verbal complaint. (T. at 72; Exhibit D-I.) However, the content of the letter indicates Plaintiff was attempting to file a late grievance. (Exhibit D-I.) According to Plaintiff, he did not understand the process of appealing to CORC in July of 2008, but he sent that letter on the advice of another inmate. (T. at 72.) However, the testimony of Chad Powell and the list of CORC appeals confirm that Plaintiff had filed grievance appeals to CORC in March of 2007 and September of 2007. (T. at 131-32; Exhibit D-F.) Clearly, he understood the appeal process to CORC well before he wrote the July 16, 2008, letter to that office regarding the alleged assault of December 5, 2006.

**C. Plaintiff Did Not Follow All of the Grievance Procedures**

Even if Plaintiff's verbal complaint to the Defendant's immediate supervisor, or his

complaint to the IG's office, or the December 6, 2006, letter to the Great Meadow Superintendent were construed as valid grievances concerning the December 5, 2006, alleged use of excessive force, Plaintiff still had an obligation to timely exhaust all appeals before his grievance is considered exhausted. *George v. Morrison-Warden*, 06 CIV. 3188 (SAS), 2007 WL 1686321, at *3, 2007 U.S. Dist. LEXIS 42640 (S.D.N.Y. June 11, 2007). In order to prevail on an argument that there were special circumstances because the officials did not file the grievances or respond to them, Plaintiff must show that he nonetheless followed the grievance procedures through all of the steps in the DOCCS regulations. *See, e.g., Belile v. Griffin*, No. 9:11-CV-0092 (TJM/DEP), 2013 WL 1776086, at *3-4, 7, 2013 U.S. Dist. LEXIS 47137, at *10, 22-23 (N.D.N.Y. Feb. 12, 2013) (plaintiff failed to exhaust his administrative remedies because he had not followed through on all of the steps, *i.e.*, he did not appeal to the superintendent of the facility or appeal any unfavorable decision of the superintendent to CORC; plaintiff alleged he had filed two grievances by placing the grievances in his meal slot to be filed by corrections officers, but claimed they were intercepted or discarded, and never received a determination on the grievances); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *Atkins v. Menard*, No. 9:11-CV-0366 (GTS/DEP), 2012 WL 4026840, at *4, 2012 U.S. Dist. LEXIS 130059, *13 (N.D.N.Y. Sept. 12, 2012) (finding that plaintiff failed to exhaust where he had the "ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process."); *Murray*

*v. Palmer*, No. 03-CV-1010, (DNH/GLS), 2008 WL 2522324, at *16, 18, 2008 U.S. Dist. LEXIS 47933 (N.D.N.Y. June 20, 2008) (finding that in order to exhaust available administrative remedies with regard to his grievance, plaintiff had to file an appeal with the superintendent from the IGRC's nonresponse, which included a failure to acknowledge the receipt of a grievance and assign it a number); *Gill v. Frawley*, No. 02-CV-1380, 2006 WL 1742738, at *11 & n. 67, 2006 U.S. Dist. LEXIS 41984 (N.D.N.Y. June 22, 2006) (Lowe, M.J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance.").

Here, Plaintiff has failed to make that showing.  The Court finds that Plaintiff's June 16, 2008, letter to Great Meadow and his July 16, 2008, letter to CORC, both written over a year and a half after the alleged assault, are untimely.  Plaintiff never sought permission to extend his time to appeal, which had long since passed by the time he wrote those letters in 2008.  No extensions of the time frames set forth in Directive 4040 were requested or granted.  Plaintiff has not provided any reasonable explanation for his delay of a year and a half after the alleged assault before writing to the Great Meadow facility or CORC about the assault and the lack of response to his verbal complaint.  The regulations specify time limitations for each step and provide for extensions and exceptions, *see* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g), but exceptions to time limits set forth in the grievance procedures may not be granted more than 45 days after an alleged occurrence.  *Id.*; *see also Saunders v. Goord*, 98 Civ. 8501 (JGK), 2002 WL 1751341, at *3, 2002 U.S. Dist. LEXIS 13772, at * 9 (S.D.N.Y. July 29, 2002) ("Even if the plaintiff did not receive responses directed towards some grievances, the plaintiff was required, at a minimum, to

make reasonable attempts to appeal those grievances before bringing an action in federal court

. . . .").  It is undisputed that Plaintiff never sought an extension of any of the deadlines set forth

in Directive 4040, despite being apparently versed in filing grievances (*see* Exhibit D-E) and

appeals (*see* Exhibit D-F) as shown by the multiple grievances and two appeals he filed to CORC

between December of 2006, the date of the alleged subject harassment, and July of 2008, when

he finally wrote to CORC inquiring as to whether it was too late to file an appeal.  (Exhibits D-A,

D-F, D-I.)  Therefore, the Court concludes that Plaintiff did not make a reasonable or timely

attempt to appeal the subject complaint of harassment and, as such, has failed to show he

exhausted all administrative remedies.

## VI.    CONCLUSION

Based upon the evidence presented at the hearing, the Court recommends that Plaintiff's

Complaint be dismissed with prejudice and without addressing its merits because an

administrative grievance process was available to him and he failed to exhaust those

administrative remedies.  Plaintiff has offered no reasonable or credible special circumstances to

excuse his failure to exhaust administrative remedies.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal

without prejudice is appropriate if the time permitted for pursuing administrative remedies has

not expired.  *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004).  However, if a prisoner has failed

to exhaust administrative remedies or provide a valid excuse for failure to do so, and the time in

which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice

because any attempt to exhaust would be futile.  *Id*. at 86; *see also Hilbert v. Fischer*, No. 12

Civ. 3843 (ER),  2013 WL 4774731, at *7, LEXIS 126881, at *23-24 (S.D.N.Y. Sept. 4, 2013)

(where the time to file a grievance and request an exception to the time limit has long since expired, and plaintiff has failed to establish an excuse for his failure to exhaust, dismissal with prejudice is proper).  Because Plaintiff has failed to establish a credible excuse for his failure to exhaust, the Court recommends that the dismissal of his Complaint be with prejudice.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 38) in this action be **DISMISSED**, **WITH PREJUDICE**, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a); and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of all unpublished decisions cited in this Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 19, 2014
      Syracuse, NY

Therèse Wiley Dancks
United States Magistrate Judge

Page 1

Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)
**(Cite as: 2009 WL 857604 (S.D.Cal.))**

H
Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
David Raymond ANDREWS, Plaintiff,
v.
M.C. WHITMAN; G.J. Janda; M.E. Bourland; T. Ochoa; C. Butler; W.C. Roberts; F. Rutledge; California Department of Corrections, Defendants.

No. 06–2447–LAB (NLS).
Dkt. Nos. 78, 94, 96.
March 27, 2009.

West KeySummary **Civil Rights 78 1420**

78 Civil Rights
78III Federal Remedies in General
78k1416 Weight and Sufficiency of Evidence
78k1420 k. Criminal Law Enforcement; Prisons. Most Cited Cases

A state prisoner's objection to the dismissal of his civil rights action on the grounds that defendants were required to prove non-exhaustion by clear and convincing evidence was overruled. The prisoner alleged he was sexually assaulted, prison officials retaliated against him, and he was prevented from fully exhausting his claim. The prisoner failed to submit the proper reports about the incident or any charges of staff misconduct even though the forms were made available, and that was sufficient to show the prisoner failed to exhaust his administrative remedies by a preponderance of the evidence, the correct legal standard. 28 U.S.C.A. § 1915(a).

David Raymond Andrews, Crescent City, CA, pro se.

Stephen A. Aronis, Office of the Attorney General, San Diego, CA, for Defendants.

**ORDER OVERRULING OBJECTIONS TO REPORT AND RECOMMENDATIONS;**
**ORDER ADOPTING REPORT AND RECOMMENDATIONS;**
**ORDER DENYING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; AND ORDER OF DISMISSAL**

LARRY ALAN BURNS, District Judge.

**I. Procedural History**

***1** Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis,* filed his original complaint in this civil rights action on November 3, 2006. Defendants moved to dismiss, and on March 28, 2008, the Court issued an order (the "Dismissal Order") dismissing certain claims with prejudice and others without prejudice.

The Dismissal Order dismissed with prejudice all claims against the California Department of Corrections and Rehabilitation ("CDCR") and Plaintiff's Eighth Amendment claims that Defendants transferred him back into the general prison population in 2006. All other claims were dismissed without prejudice, and Plaintiff was permitted to file an amended complaint. The Dismissal Order also cautioned Plaintiff that he was not to add unexhausted or otherwise non-meritorious claims and that if he did so, they would be subject to *sua sponte* dismissal under 28 U.S.C. § 1915(a).

Plaintiff then filed his First Amended Complaint ("FAC"), and Defendants filed a motion to dismiss (the "Motion to Dismiss"). The FAC is 63 pages long, with an additional 62 pages of exhibits attached. Pursuant to 28 U.S.C. § 636 and Civil Local Rule 72.1(d), the Motion to Dismiss was referred to Magistrate Judge Nita L. Stormes for report and recom-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

mendation. On October 8, 2008, Judge Stormes issued her report and recommendation (the "R & R") finding Plaintiff had failed to exhaust his administrative remedies and recommending Defendants' Motion to Dismiss be granted on that basis or, in the alternative, because the FAC fails to state a claim. The R & R recommended not charging Plaintiff with a strike under 28 U.S.C. § 1915(g).

Defendants filed objections, requesting that the FAC be dismissed for failure to state a claim and charged with a strike. Plaintiff then filed a series of motions, including a "Motion to Strike the Defendants' Affirmative Defense of Failure to Exhaust Administrative Remedies," (Dkt. no. 94), an "Ex Parte Request to File a Second Amended Complaint," (Dkt. no. 96), and a "Motion to Strike the Defendants' Objection to the Report and Recommendation." (Dkt. no. 104). Because the first two of these motions go to the substance of the R & R, the Court construes them as objections to the R & R. The Court ruled separately on the third motion (Dkt. no. 104), which was based on matters not directly related to the R & R or the substance of the Motion to Dismiss. Plaintiff filed his objections to the R & R on December 12, 2008, and on December 19, 2008, he filed a reply to Defendants' objections.

**II. Legal Standards**

A district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed.R.Civ.P. 72(b); *see also* 28 U.S.C. § 636(b)(1). An objecting party may "serve and file specific written objections to the proposed findings and recommendations," and "a party may respond to another party's objections." Rule 72(b).

***2** In reviewing an R & R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (when objections are made, the court must make a de novo determination of the factual findings to which there are objections). "If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States,* 602 F.2d 207, 208 (9th Cir.1979). Objections must, however, be specific, not vague or generalized. *See* Fed.R.Civ.P. 72(b)(2) (requiring "specific" objections); *Palmisano v. Yates,* 2007 WL 2505565, slip op. at *2 (S.D.Cal. Aug. 31, 2007).

The Court has reviewed de novo the legal standards set forth in the R & R, and finds them to be correct. The Court will therefore apply the standards set forth there without again citing them at length here.

**III. Screening**

Because Plaintiff is a prisoner and proceeding *in forma pauperis,* the Court is obligated pursuant to 28 U.S.C. §§ 1915(e) (2) and 1915A, and 42 U.S.C. § 1997e(c) to dismiss the FAC to the extent it is frivolous or malicious, seeks monetary relief against a Defendant who is immune, or fails to state a claim. As noted, the Dismissal Order dismissed with prejudice all claims against the CDCR. Without leave, Plaintiff has again named the CDCR as a Defendant. The Court therefore **REAFFIRMS** its previous dismissal of these claims and will not consider them further.

The FAC raises claims against Defendants in both their individual and official capacities (FAC at 4), and Defendants have raised Eleventh Amendment immunity. (Mem. in Supp. of Motion to Dismiss, 8:5–22.) The R & R recommends dismissing these claims to the extent Plaintiff seeks damages, and the Court agrees. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that the Eleventh Amendment bars damages actions against state officials acting in their

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

official capacity).

**IV. Exhaustion of Administrative Remedies**

**A. Requirements and Legal Standards**

Exhaustion of available administrative remedies is a prerequisite to bringing suit under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Porter v. Nussle,* 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Claims must be exhausted before filing suit; exhaustion after filing suit will not suffice. *McKinney v. Carey,* 311 F.3d 1198, 1198 (9th Cir.2002).

Defendants may raise this defense in a non-enumerated motion under Fed.R.Civ.P. 12(b), and bear the burden of raising and proving non-exhaustion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003). To prevail, Defendants must show Plaintiff had available administrative remedies he did not utilize. *Id.* They may go beyond the pleadings and provide evidence to support their argument, but Plaintiff must be provided an opportunity to develop the record to refute Defendants' showing. *Id.* at 1120 n. 14. The Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Id.* at 1119–20 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir.1988) (per curiam)).

***3** The exhaustion requirement takes on particular significance in this case because Defendants submitted evidence Plaintiff never properly exhausted *any* claims he now raises. The Court denied without prejudice Defendants' earlier motion to dismiss on the basis of non-exhaustion, finding they had not provided adequate details or evidence to refute Plaintiff's claim they thwarted his efforts to file his administrative complaint, or to explain how they were able to send Lt. Stratton to investigate Plaintiff's complaint against Sgt. Galban. In this renewed motion, Defendants again contend Plaintiff failed to properly exhaust his administrative remedies by pursuing an administrative complaint against Defendant Galban for allegedly assaulting Plaintiff, and against other Defendants for actions they allegedly took in the aftermath. As the Court explained in its Dismissal Order, Plaintiff could not have exhausted his administrative remedies for later alleged violations of his rights. (Dismissal Order at 7:1–27.)

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules. *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In California, this means

> a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed. [15 Cal.Code Regs.] § 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office. *Id.,* § 3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review, *id.,* § 3084.5(c), which is conducted by the institution head or designee. *Id.* § 3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, § 54100.11, "Levels of Review[.]"

*Nichols v. Logan,* 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004).

Because a plaintiff must follow applicable regulations, using some alternative means or procedure to lodge or pursue a complaint does not satisfy exhaustion requirements. Under 15 Cal.Code Regs. § 3084.2 prisoners must use Form 602 to advance their grievances. The Cal. Dep't of Corrections Operations

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Manual, § 54100.25.1, requires use of the form even when allegations of staff misconduct are being separately investigated. (Grannis Suppl. Decl., ¶ 6.)

The Supreme Court has recognized this requirement may create harsh results, but has also emphasized the relative informality and simplicity of California's system, *Woodford,* 548 U.S. at 103, as well as the important concerns underlying the exhaustion requirement. *Porter,* 534 U.S. at 524–25.

Plaintiff need only exhaust *available* remedies, however. Any theoretically available remedies Defendants prevented him from pursuing, such as by withholding required forms or refusing to process forms, need not be exhausted. *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003) (citing *Miller v. Norris,* 247 F.3d 736,740 (8th Cir.2001) (holding that remedies prisoner officials prevent a prisoner from utilizing are not "available" for § 1997e(a) purposes)).

**B. The R & R's Findings**

***4** The R & R focuses on Plaintiff's claim that Sgt. Galban sexually assaulted him and prison officials retaliated against him. Plaintiff claims he either exhausted these and other claims or filed them but was prevented from fully exhausting them, and that Lt. Stratton investigated them. As the R & R correctly points out, the questions now before the Court concerning exhaustion are 1) whether whatever complaint Lt. Stratton investigated satisfied the exhaustion requirement, and 2) whether Defendants prevented Plaintiff from utilizing administrative remedies.

Previously, Defendants submitted evidence Plaintiff never submitted a Form 602 complaining of sexual assault and retaliation. In the Motion to Dismiss, they again submit evidence, but also provide detailed explanation of what happened. The R & R reviews this evidence in great detail. (R & R, 10:6–12:15.) In essence, Defendants have presented evidence to show Plaintiff never submitted a Form 602 complaint, and Lt. Stratton was investigating a spoken, not written, complaint. (Stratton Decl. ¶¶ 3, 6.) They also present evidence to show charges of serious staff misconduct may be investigated even when not submitted on the required Form 602, but a separate investigation does not substitute for the normal appeal process. (Grannis Suppl. Decl. ¶ 6.) Plaintiff himself, when communicating with officials, described his complaint as a "citizen's complaint," [FN1] not a 602 appeal or any equivalent term, and specifically cites 15 Cal.Code Regs. § 3391(d). (Stratton Decl. ¶ 5, Ex. C.)

FN1. Regulations provide for the submission of citizens' complaints, 15 Cal.Code Regs. § 3391, but only by non-inmates.

Defendants have submitted evidence showing a search was made for all 602 appeals Plaintiff submitted from November 1, 2002 to November 3, 2006, the date the original complaint was filed in this matter. (Edwards Suppl. Decl., ¶ 4.) Most of the appeals were screened because Plaintiff had attempted to bypass steps in the appeals process or because of other procedural defects he could have remedied but never did. (*Id.*)

Two 602 appeals are of particular interest. First, on November 6, 2005 Plaintiff appealed procedural irregularities in the October 7, 2005 disciplinary hearing, of which he said he was notified November 3, 2005. (Edwards Suppl. Decl., ¶ 4(c) and Ex. B.) Plaintiff's description of the problem, set forth on the form, describes only failure to hold an adequate hearing, appeals the finding of "guilty," and requests only the opportunity to appear and present evidence at a new hearing. (*Id.,* Ex. B.) The evidence shows this appeal was *granted* on April 10, 2006 and Plaintiff was provided with a new hearing as he requested. (*Id.*) The evidence indicates he lodged no appeal concerning the new hearing. This particular 602 appeal would have put prison officials on notice of a possible procedural due process violation, but as the R & R cor-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

rectly noted, the FAC does not raise such a claim. (R & R at 19:16–23; *see also* FAC at 25–26 (discussing events of early October, 2005), 29 (briefly discussing events of November, 2005).) The appeal did not identify the basis for any claim raised in the FAC. *See Griffin v. Arpaio,* 557 F.3d 1117, 2009 WL 539982, slip op. at *2–*3 (9th Cir. Mar. 5, 2009) (explaining that, to exhaust administrative remedies, a grievance must contain sufficient details to put prison officials on notice of the nature of the wrong for which redress is sought).

***5** Second, Plaintiff maintained to the Director's Level a 602 appeal complaining against unspecified officials concerning a different disciplinary proceeding. The disciplinary proceeding concerned charges of refusing a cellmate, and began May 10, 2006. The appeal, which was denied at the Director's Level, was not exhausted until November 30, 2006, nearly a month *after* Plaintiff filed this action. (Edwards Suppl. Decl. ¶ 4(g); Grannis Decl. ¶ 7(a).) Also, the R & R correctly notes this appeal would not have put Defendants on notice regarding allegations that Sgt. Galban sexually assaulted Plaintiff and staff prevented him from filing a complaint about it. (R & R, 13:5–22.)

The evidence therefore shows no appeals that would have put prison officials on notice of the grievances underlying claims raised in the FAC, either those involving Sgt. Galban, or official retaliation, or any other claim. (Edwards Suppl. Decl. ¶ 4.) Furthermore, the evidence shows Plaintiff was able to submit multiple 602 appeals, which were considered and, in one case, granted. (*Id.*)

The R & R also credited declarations showing Plaintiff never submitted a Third Level appeal against any Defendant. (R & R, 12:1–3.) Thus, even if Plaintiff had submitted an appeal on a Form 602 concerning his claims raised in the FAC, the R & R found he had not pursued it through all required levels.

The R & R found administrative remedies were available. On its face, the evidence indicates the screening out of certain appeals was not arbitrary, contrary to applicable rules, or designed to thwart Plaintiff's ability to bring or maintain appeals. (Edwards Suppl. Decl. ¶ 4.) Plaintiff says officials initially refused to provide him with a blank Form 602 so he could file a grievance and initially refused to allow him to file a grievance other than on a Form 602. (FAC at 17, 20, 24–25.) The FAC makes clear, however, that Plaintiff obtained this form from the prison library. (*Id.* at 26.)

Thus, assuming the R & R's findings of facts are correct, Plaintiff had administrative remedies available for claims he raises in the FAC but failed to exhaust them as to any claim raised in the FAC.

**C. Plaintiff's Objections to the R & R**

As discussed above, Plaintiff filed extensive and detailed objections to the R & R, most of which are irrelevant to the issue of exhaustion, and many of which are irrelevant to any material issue. The objections go line by line through the R & R, critiquing each sentence or paragraph. In large part, the objections find fault with the level of factual and legal detail provided in the R & R, or quibble baselessly with its wording. The Court will not address these objections, which have no bearing on the outcome of this case and which are thus moot. In only a few instances, which are addressed below, are Plaintiff's objections relevant to the issue of exhaustion of administrative remedies.

**1. Objection: The R & R Applied the Wrong Legal Standards**

***6** Plaintiff lodges two general objections regarding the standards the R & R applied. First, he argues the R & R was bound to apply the Rule 12(b)(6) standard to Defendants' defense of non-exhaustion by accepting his pleadings as true and drawing inferences in his favor rather than considering

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

evidence. (*See, e.g.,* Obj. to R & R at 13, 29 ("The R & R assumes a matter in dispute.").)

As discussed above, this objection relies on the wrong standard. In deciding a non-enumerated Rule 12 motion to dismiss for failure to exhaust available administrative remedies, the Court may consider the parties' submissions outside the pleadings and decide disputed issues of fact. *Wyatt,* 315 F.3d at 1119–20. Defendant has been afforded an opportunity to develop the record, and has done so by pointing to and discussing extensive documentation to support his arguments. *Id.* at 1120 n. 14.

Second, Plaintiff argues Defendants were required to prove non-exhaustion by clear and convincing evidence (Obj. to R & R at 35–36 ("They are required to establish by clear and convincing proof ...."); 44 ("The Defendants have not submitted clear and convincing proof of unexhausted available remedies and this is what is required in order to satisfy the allocated burden of proof.")

It would be extraordinary if defendants in civil actions were required to prove the nonoccurrence of an event by clear and convincing evidence, especially because weightier matters such as liability and jurisdiction need only be proved by a preponderance of the evidence. Thus, not surprisingly, the R & R did not state what standard it was applying. The correct standard is, however, that Defendants must prove non-exhaustion of administrative remedies by a preponderance of the evidence. *See Kelley v. DeMasi,* 2008 WL 4298475, slip op. at *4 (E.D.Mich, Sept. 18, 2008) (citing *Lewis v. District of Columbia,* 535 F.Supp.2d 1, 5 (D.D.C.2008)). *See also Dale v. Poston,* 548 F.3d 563, 564 (7th Cir.2008) (noting with approval that jury was asked to determine whether defendants in PLRA case had proven non-exhaustion by a preponderance of the evidence). The R & R did not err.

These objections are therefore **OVERRULED.**

**2. Objection: The R & R Relied on Inadmissible Evidence**

Plaintiff argues in various places that the R & R relied on incompetent evidence submitted by Defendants. He contends Lt. Stratton would have had no personal knowledge of the matters attested to in his declaration, such as who submitted which reports or who received various letters attached as exhibits to his declaration. (Obj. to R & R at 30–31.) He also claims, without much explanation, that Lt. Stratton would not have had time to conduct an actual investigation. (*Id.* at 35.)

These objections are largely frivolous and those that are not are trivial. Lt. Stratton would have had personal knowledge of what kind of investigation he was asked to conduct, what paper documentation he was provided, what he and Plaintiff talked about, and what reports he submitted after interviewing Plaintiff. (Stratton Decl. ¶¶ 3, 4.) The letters he was provided (*id.*, Ex. C) are attached as exhibits, with addressed and postmarked envelopes, and their contents speak for themselves. Plaintiff does not question the authenticity of any letter he himself wrote or sent. The letter from Warden L.E. Scribner, which is also attached, is substantially similar to the letter Plaintiff himself attached as FAC Ex. 31,[FN2] and in any event is offered merely to show what Plaintiff was told and not for the truth of the matters asserted therein.

FN2. The wording in the body of each letter is identical. The letter submitted as an exhibit to the Stratton declaration appears to be an administrative file copy; it uses different type for the date, a designation indicating Warden Scribner's signature on the original was administratively affixed, and identifying numerical information near the top.

***7** Lt. Stratton also provided a factual basis,

grounded primarily in his own experience, for his conclusions that Plaintiff filed no Form 602 appeals relating to accusations against Sgt. Galban, or against other staff for failing to process complaints of staff misconduct. (Stratton Decl. ¶ 6.) The only possibly incompetent testimony consists of characterizations of the attached letters and a report of a brief conversation with an administrator, but these are merely cumulative of other evidence and do not affect the outcome.

These objections are therefore **OVERRULED.**

**3. Objection: Defendants Are Estopped from Arguing Non–Exhaustion**

Plaintiff has filed a separate motion to strike ("Motion to Strike") which, as noted above, the Court construes as part of Plaintiff's objections. The objections themselves repeatedly make reference to the estoppel argument. (*See, e.g.*, Obj. to R & R at 57.) The motion itself, however, provides the most detailed argument.

Plaintiff claims Defendants misled him into believing his claims were exhausted, and no more remedies were available. (Motion to Strike at 3; Obj. to R & R at 53.) In support of his position, he cites Cal. Evid.Code § 623 (concerning estoppel) and *Brown v. Valoff,* 422 F.3d 926, 935 (9th Cir.2005). (Motion to Strike at 2.)

Plaintiff cites a particular letter in support of this argument, a letter from Warden Scribner, dated January 27, 2006, stating that Plaintiff's allegations were not sustained and further questions should be referred to administrative assistant R. Madden. (Obj. to R & R at 38, 53 (citing FAC, Ex. 31).) Plaintiff contends this letter reliably informed him that no remedies were available. *See Brown,* 422 F.3d at 935 and n. 10.

Plaintiff misreads the letter, however. It informs him Warden Scribner was responding to a "recent letter" from Plaintiff in which Plaintiff says that on October 18, 2005 he submitted a "written Citizen's Complaint in regards to Correctional Sergeant S. Rutledge." (FAC Ex. 31.) The letter further informs Plaintiff:

> A "fact-finding" was conducted into these and related allegations that you had previously made. The result of the "fact-finding" was that the allegations are NOT SUSTAINED, and that staff have acted and treated you in a professional manner.

*Id.*

This letter does not, as Plaintiff argues, inform him no remedies are available for him to exhaust. Rather, it tells him Warden Scribner was responding to a letter concerning a citizen's complaint sent to the Director of Corrections—not a 602 appeal pursued through established channels. Plaintiff's letter of complaint is apparently the letter attached as Exhibit C to the Stratton Declaration, which is discussed above.

Plaintiff's letter charges that the complaint was never processed, that Plaintiff spoke to officials, and that no appropriate response was forthcoming. (Stratton Decl. ¶ 5, Ex. C.) It therefore requests a Director's Review and an investigation. (*Id.*) Whatever Plaintiff may have intended to say or do, the letter he addressed to the Director of Corrections is not a 602 appeal, and Warden Scribner's reply can only reasonably be construed as discussing an investigation made pursuant to other kinds of complaints, outside the established grievance process. It does not, as Plaintiff believes, inform him that remedies for the type of injury he alleges are unavailable through the established grievance process. It neither forbids nor discourages filing a 602 appeal.

***8** In a sense Plaintiff seems to be arguing that after receiving this letter there was no point in filing a 602 appeal. The Supreme Court's holding in *Woodford,* 548 U.S. at 94–95, however, explains why this

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

argument must fail. The Supreme Court's holding makes absolutely clear a prisoner must follow the established prison grievance system, not some other system of his own devising. Nor may a prisoner satisfy the exhaustion requirement by bypassing the administrative process or violating its requirements until his complaint at last falls flat. *Id.* at 95, 97.

This objection is therefore **OVERRULED.**

**4. Objection: The R & R Should Have Considered FAC Exhibit 45**

This is the most substantial of Plaintiff's objections. Plaintiff points to a 602 form attached as Exhibit 45 to the R & R (the “Retaliation 602”). In the area of the form where Plaintiff was asked to describe the problem, he wrote:

> Emergency Appeal Pursuant to CCR Title 15, 3084.7. Circumstances are such that regular appeal time presents a threat to my safety. Classification committee CHo'd me to general population double cell. The action places me at risk. I have attempted to make a complaint against corrections officers and have been issued CDC 115's and 128's in retaliation.

(FAC Ex. 45.) In the area where he was to indicate the actions he was requesting, he wrote: “Stay of release to GP double cell and new Committee hearing and audit of my file.” (*Id.*) The form is dated December 15, 2005 and date-stamped as having been received by the appeals office on December 21, 2005.

Plaintiff repeatedly cites to the Retaliation 602 as evidence Defendants made administrative remedies unavailable to him. (Obj. to R & R at 18, 36–37 (accusing Appeals Coordinator D. Edwards of omitting pertinent details in his declaration and arguing this appeal was “undu[ ]ly rejected under the direction of the Defendants”), 40.)

This 602 form, if it had been properly filed and the appeal pursued, would have exhausted Plaintiff's retaliation claim and possibly notified Defendants of other claims in the FAC. Edwards' supplemental declaration (Dkt. no. 78–6) submitted in support of Defendants' Motion to Dismiss explains why it was not: “On December 21, 2005, my office received an appeal from Inmate Andrews which was screened out on December 22, 2005, because he could only submit one non-emergency appeal per week.” (Edwards Suppl. Decl., ¶ 4(d).)

The declaration's previous paragraph, 4(c), identifies the other non-emergency appeal Plaintiff submitted, a 602 appeal concerning a disciplinary matter which had previously been submitted on November 6, 2005 and was resubmitted on December 15, 2005. This is attached as Exhibit B to the supplemental declaration. This other appeal is dated as having been resubmitted on December 15, 2005 and is date-stamped as having been received in the appeals office on December 21, 2005.[FN3] It was this appeal that was eventually granted at the second level.

> FN3. The declaration erroneously indicates this appeal was received on December 22, 2005, but the date stamp indicates the correct date was December 21. (Edwards Suppl. Decl., ¶ 4(c).) This appears to be a typographical error because other than this, all nine appeals are listed in chronological order.

***9** These two 602 forms, then, were signed by Plaintiff and received by the appeals office on the exact same days. The Retaliation 602, which was screened out the day after it was received, is accompanied by a letter explaining:

> The enclosed documents are being returned to you for the following reasons:
>
> ***You may only submit one (1) non-emergency appeal within a seven-calendar day period.***

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

> ***Furthermore, you failed to attach a copy of your most recent CDC 128G Classification chrono to the appeal. This appeal does not meet the Emergency Appeal requirement set forth in [15 Cal Code Regs. § 3084.7]. Resubmit this appeal after 12/29/05.***

(FAC, Ex. 44 (emphasis in original).)

The Supreme Court's holding in *Woodford* explains:

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90–91. If, as the letter indicates, the Retaliation 602 was properly screened out for either of the reasons set forth in the rejection letter, Plaintiff failed to comply with procedural rules and Defendants cannot rightly be blamed for screening it out rather than processing and acting on it.

Although the Retaliation 602 asserts it is an emergency, the record as a whole makes clear it is not. Since at least September, 2005, Plaintiff had been telling prison officials he thought he would not be safe if he were moved to a double cell in the general population, and had been disciplined for refusing to leave administrative segregation. (*See, e.g.,* FAC, Ex. 32–33.) This particular request has every appearance of a repetition of older claims. The additional claim that officers were retaliating against him by issuing CDC 115's and 128's, though new, is likewise not an emergency. There is no suggestion that having the allegedly false reports dismissed or stopping the filing of new reports was a matter of any urgency, and Plaintiff did not ask for any relief concerning this charge.

Applicable regulations deal with the obvious potential for the submission of excessive appeals by prisoners by requiring the suspension of second and subsequent non-emergency appeals filed within the same seven-day calendar period. 15 Cal.Code Regs. § 3084.4(a)(1). Because neither 602 appeal received on December 21, 2005 was an emergency appeal, one of the two was therefore improperly filed and required to be screened out. By submitting two non-emergency appeals on the same day, Plaintiff was failing to comply with applicable rules.

Accepting the resubmitted 602, which had obviously been pending longer than the Retaliation 602 and which was not primarily a rehash of earlier complaints, was proper. On top of this, Plaintiff failed to attach his Classification chrono to the Retaliation 602 so the reviewing officer would have relevant information concerning his placement. Plaintiff was also specifically told he could cure his errors by resubmitting his Retaliation 602 after December 29, 2005, but he did not do so. And finally, a notice at the bottom of the rejection letter explains the procedure for correcting a screening error; thus, if he thought the wrong appeal was screened out he could have attempted to correct his error, though the pleadings make clear he did not do so.

***10** The Court therefore holds Plaintiff did not properly submit his Retaliation 602, which was correctly screened out. Although he had the opportunity to do so, he never resubmitted it. Plaintiff thus failed to exhaust claims raised in this Form 602, and he—not prison officials—was responsible for this.

This objection is therefore **OVERRULED.**

**5. Objection: The FAC Did Allege a Due Process Claim**

The R & R found Plaintiff had not alleged a due process claim in the FAC. (R & R at 19:16–23.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff objects that he did in fact bring equal protection and due process claims. (Obj. to R & R at 48) and in his Motion to Amend suggests he stands ready to plead due process violations. (Motion to Amend, ¶ 20.) As discussed above, the only potential claim Plaintiff exhausted before filing suit was a possible procedural due process claim arising from a disciplinary hearing, log number 09–05–B08, which he complained he was not permitted to attend or present evidence at, although he had not waived these rights. (*See* Edwards Suppl. Decl., ¶ 4(c) and Ex. B (Form 602, submitted December 15, 2005, and related documents).) He also alleges other possible due process or equal protection claims, but clearly he has not exhausted any of these.

Even if Plaintiff could show his procedural due process rights were violated and even if he could show he was injured by the violation, neither the FAC nor the objections nor his Motion to Amend give any suggestion he is attempting to bring a claim based on this disciplinary hearing. Rather, he complains of "false writings." (Obj. to R & R at 48.) The "false writing" is identified as Grannis' declaration, which Plaintiff believes wrongly includes a reference to an ultimate finding of a disciplinary violation. (*Id .,* Motion to Amend ¶ 19.) The Grannis declaration Plaintiff is referring to, however, mentions a later conviction, log number 05–A5–06–005, dated May 10, 2006, and not the earlier disciplinary hearing. (Grannis Suppl. Decl. ¶ 4(a).) Plaintiff also refers generally to Defendants' refusal to report complaints of staff misconduct to the office of internal affairs, a duty he argues is statutorily mandated for prisoners' protection. (Obj. to R & R at 48.)

Plaintiff also vaguely refers to "other procedural and substantive due process violations," and says he has "irrefutable evidence of exhaustion and prevented availability," but says he is "unsure how to plead" them. (Motion to Amend, ¶ 20.) Whatever due process violations the objections may be referring to, it is clear they do not refer to the one possible claim the Court has identified as exhausted, because Plaintiff was able to summarize that claim easily in a Form 602.

Whether the Court construes this as an objection or a request for leave to amend, it must fail. Objections must be specific, not vague and general, and Plaintiff has not shown he can successfully amend to add the claims he wishes to bring. If anything, his Motion to Amend suggests the amendment would be insufficient because, even now, Plaintiff does not know what shape his amendments would take.

***11** These objections are therefore **OVERRULED.**

**6. Objection: Lt. Stratton's Report Was Improperly Withheld**

Plaintiff objects to Lt. Stratton's assertion of privilege in his declaration. (Obj. to R & R at 32, 56.) Apparently he means two things by this: first, that the omission of some information renders Lt. Stratton's declaration suspect, and second, that the investigative reports Lt. Stratton refers to should have been disclosed.

Lt. Stratton's declaration refers to reports from "a full fact-finding review into Inmate Andrews' allegations" of an assault by Sgt. Galban and subsequent retaliation and cover-up. "Privilege" is a misnomer here; Lt. Stratton actually said the reports were confidential, though he cited evidence he found (or looked for and did not find), on which he based his report. Lt. Stratton is correct in stating that reports concerning an investigation of a law enforcement officer's alleged misconduct are treated as confidential. *See, e.g., Williams v. Malfi,* 2008 WL 618895, slip op. at *8 n. 11 (C.D.Cal. Jan. 25, 2008) (discussing procedures used to safeguard confidential law enforcement personnel files before disclosing them to litigants). In any event, it is the evidence underlying the report, and not the report itself that Lt. Stratton mentions.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

To the extent Plaintiff is objecting to Defendants' failure to produce these files during discovery, he does not show he ever sought these reports, and in any case his objection comes much too late.

This objection is therefore **OVERRULED.**

**7. Objection: Plaintiff Should Be Permitted to Amend to Add Claims and Defendants**

The R & R recommended denying Plaintiff leave to amend his complaint a second time to add multiple Defendants. Plaintiff then filed a motion for leave to amend (Dkt. no. 96) ("Motion to Amend"), which the Court construes as part of his objections. He also included this in his objections to the R & R. (Obj. to R & R at 24, 49.)

Plaintiff's Motion to Amend is based on claims that he could not properly file the FAC because he was "under distress and fear" and he would now like to add claims he omitted in the FAC. He describes in great detail the emotional turmoil he suffered when, in connection with a transfer, his legal materials were lost. (*See* Decl. in Supp. of Motion to Amend, ¶ 5.) He mentions loss of his legal materials as a factor in his failing to file as good an amended complaint as he had hoped to. Then, unexpectedly, his materials turned up before the Court adopted the first report and recommendation in its Dismissal Order. (*Id.,* ¶ 7.) For some reason, however, Plaintiff claims this was no real help to him, and merely caused him additional stress and delay. (*Id.,* ¶ 9.)

Plaintiff also discusses the Dismissal Order, which the Court initially issued, then withdrew and modified. He says the issuance of the modified order caused him additional turmoil and distress because, he claims, the modified order "completely changed its previous determinations [and] I was required to start completely over." (*Id.,* ¶ 8.)

***12** With regard to the Court's order, this is completely untrue. Plaintiff's claimed turmoil, fear, and distress is either exaggerated or else a gross overreaction. The second, corrected Dismissal Order was issued a mere ten days after the first. It dismissed more claims than the first did, and left unaltered the Court's dismissal of Plaintiff's due process and equal protection claims. Therefore, it is difficult to see how Plaintiff lost very much of his work, if he lost any at all. A reasonable response would have been to leave the initially undismissed claims alone and work on the dismissed ones. When the second order replaced the first, Plaintiff would have realized he had more work than he originally thought, but he would not have had to throw his work out entirely. Even assuming Plaintiff worked assiduously in those ten days, the emotional stress of losing the benefit of some of that work would not reasonably cause emotional disability as Plaintiff now claims it did.

If Plaintiff needed more time to amend, he could have sought it, as evidenced by the fact that his unopposed motion for an extension of time in which to file his FAC was granted. If he filed the FAC too hastily and made errors, he could have sought leave to correct them in light of the Court's order granting him more time in which to amend. Plaintiff identifies no adequate reason to treat the original complaint and FAC as trial runs and allow him to amend again.

In the FAC, Plaintiff attempts to add Defendants, accusing them of being complicit in some kind of conspiracy against him to manipulate cell assignments to cause him harm. (FAC at 55.) He also seeks to add officials whom he accuses of retaliating against him by transferring him to Pelican Bay State Prison. (FAC at 56.) He mentions these claims in his objections to the R & R as well. (Obj. to R & R at 24, 49.) All these proposed claims are unexhausted, so granting leave to add them would be futile.

These objections are therefore **OVERRULED.**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**V. Defendants' Objections**

Defendants object to the R & R's recommendation that the FAC be dismissed because Plaintiff has not exhausted administrative remedies, rather than for failure to state a claim, and that Plaintiff not be charged with a strike.

As provided in 28 U.S.C. § 1915(g),

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Here, the FAC is being dismissed without leave to amend for failure to exhaust administrative remedies, not on the grounds that it is frivolous, or malicious, or fails to state a claim.

***13** Defendants have not cited any authority, however, nor is the Court aware of any, requiring the Court to first reach the issue of whether a complaint states a claim before reaching the exhaustion question, when the same motion urges dismissal on both grounds. *See, e.g., O'Neal v. Price,* 531 F.3d 1146, 1154 n. 9 (9th Cir.2008) (citing with approval the observation of *Tafari v. Hues,* 473 F.3d 440, 444 (2d Cir.2007) that an appeal may be dismissed as premature even though it later proves to be frivolous).

The Ninth Circuit has apparently not addressed the issue of whether dismissal for failure to exhaust administrative remedies counts as a strike under § 1915(g), although a number of other circuits have. *See Daniels v. Woodford,* 2008 WL 2079010, slip op. at *5 (C.D.Cal., May 13, 2008) (citing cases). *Compare also Kalinowski v. Bond,* 358 F.3d 978, 979 (7th Cir.2004) (holding dismissal for failure to exhaust constitutes strike under § 1915(g)); *Steele v. Federal Bureau of Prisons,* 355 F.3d 1204, 1213 (10th Cir.2003) (same); *Rivera v. Allin,* 144 F.3d 719, 731 (11th Cir.1998) (same); and *Patton v. Jefferson Correctional Ctr.,* 136 F.3d 458, 460 (5th Cir.1998) (same) *with Owens v. Isaac,* 487 F.3d 561, 563 (8th Cir.2007) (holding dismissal for failure to exhaust does not count as a strike); *Green v. Young,* 454 F.3d 405, 406 (4th Cir.2006) (same); *Snider v. Melindez,* 199 F.3d 108, 115 (2nd Cir.1999) (same).

The Ninth Circuit's favorable citation of *Snider* and its progeny *Tafari* in *O'Neal* at 1154 n. 9 for a related point, together with the court's reasoning in *Daniels* persuade the Court dismissal for failure to exhaust should not be counted as a strike under § 1915(g).

Defendants' objections are therefore **OVERRULED.** Bearing in mind future rulings may clarify the law on this point, however, neither Defendants nor any other parties are barred from seeking to have this dismissal counted as a strike for § 1915(g) purposes as appropriate at a later time.

**VI. Conclusion and Order**

For the reasons set forth above, the Court **ADOPTS** the R & R, with the additional explanations set forth above. Plaintiff's request for judicial notice of 15 Cal Code Regs. § 3401.5 is **GRANTED.** All claims against Defendants for money damages are **DISMISSED WITH PREJUDICE.** The Court also **REAFFIRMS** its previous dismissal of all claims against the CDCR. In all other respects the FAC is hereby **DISMISSED WITHOUT PREJUDICE** but **WITHOUT LEAVE TO AMEND,** for failure to exhaust administrative remedies. Plaintiff's request for leave to add claims and Defendants is **DENIED.** Defendants' request that Plaintiff be charged with a strike under § 1915(g) is **DENIED WITHOUT PREJUDICE.**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**IT IS SO ORDERED.**

DAVID RAYMOND ANDREWS, Plaintiff,

v.

M.C. WHITMAN, Corrections Counselor; G.J. JANDA, Chief Deputy Warden; M.E. BOURLAND, Chief Deputy Warden; T. OCHOA, Chief Deputy Warden; C. BUTLER, Captain; W.C. ROBERTS, Captain; F. RUTLEDGE, Sergeant; CALIFORNIA DEPARTMENT OF CORRECTIONS, a public entity; ET ALIA UNIDENTIFIED DEFENDANTS, Defendants.

**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

NITA L. STORMES, United States Magistrate Judge.

***14** David Raymond Andrews (Plaintiff), a California prisoner proceeding pro se, filed an initial complaint under 42 U.S.C. sections 1983 and 1985 on November 3, 2006. The Court dismissed the complaint without prejudice and granted Plaintiff leave to amend. Plaintiff filed a first amended complaint (FAC) against officials at Calipatria State Prison. He alleges that defendants California Department of Corrections and Rehabilitation (CDCR), T. Ochoa, M. Whitman, C. Butler, S. Rutledge III, G. Janda and W.C. Roberts (Defendants) violated his rights to due process, equal protection, petition the court, and to be free from cruel and unusual punishment. FAC at 5.

Defendants filed a motion to dismiss the FAC on these bases: (1) Plaintiff failed to exhaust the required administrative remedies under the Prison Litigation Reform Act (PLRA); (2) the FAC fails to state a claim against any Defendant; and (3) Defendants are entitled to qualified immunity. Defendants also renewed their request that Plaintiff be charged a “strike” for filing a frivolous and malicious lawsuit, pursuant to 28 U.S.C. § 1915(g). Plaintiff opposes.

This Court has reviewed all the pleadings and filings in this case, and **RECOMMENDS** that Defendants' motion be **GRANTED.**

***BACKGROUND***

***The Original Complaint.***

Plaintiff's original complaint centered on his allegations that on September 15, 2005, Sergeant Galban sexually abused and threatened Plaintiff in housing unit B–5. Compl. at 7. Over the next several days Plaintiff was shuttled between administrative segregation and the general population due to his threat to the safety and security of the institution. Compl. at 7–8, 15. Plaintiff detailed his thwarted attempts to file an administrative complaint regarding Sergeant Galban's conduct. He alleged due process, equal protection, eighth amendment and first amendment retaliation claims against Defendants.

***Order Dismissing the Original Complaint.***

The Court issued an order on March 28, 2008 that dismissed all the original claims in the complaint, including some with prejudice. [Doc. No. 70.] It dismissed Plaintiff's due process, equal protection and first amendment retaliation claims and one eighth amendment claim without prejudice. The Court dismissed with prejudice the remaining eighth amendment claims involving Defendants' transfer of Plaintiff back into the general population in 2006.

Regarding exhaustion, the Court found that Plaintiff could not have exhausted claims relating to Defendants' transfer of Plaintiff back to the general prison population in 2006. The Court found that exhaustion would have been impossible because Plaintiff alleged he filed an administrative complaint on October 18, 2005, before the claims based on acts in 2006 could have arisen. Mar. 28 Order, p. 7. The Court determined that because Plaintiff could not now exhaust those 2006 claims, he could not have leave to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

amend them for this suit. *Id.*

***15** The Court also noted that Plaintiff did not state any claims against defendant Bourland because Bourland was never served in the action. Mar. 28 Order, p. 8. It also dismissed the CDCR as a Defendant on sovereign immunity grounds. *Id.*

Finally, the Court denied without prejudice Defendants' motion to dismiss for failure to exhaust because Defendants had not met their burden of proving non-exhaustion. Mar. 28 Order, p. 9.

***Plaintiff's First Amended Complaint.***

In general, Plaintiff realleges in the FAC his over-arching claim that Calipatria prison staff prevented him from filing a complaint against Sergeant Galban in 2005 for sexual misconduct, and for a conspiracy to organize stabbings and assaults of selected prisoners by inmates. FAC at 7. He claims Defendants engaged in cruel and unusual punishment by first placing him in Calipatria's administrative segregation and then eventually placing him in the Security Housing Unit (SHU) at Pelican Bay State Prison. Plaintiff alleges that every administrative act—including issuing and hearing various rules violation reports regarding Plaintiff's failure to abide by prison policies and procedures—was done in retaliation for his pursuing a complaint against Sergeant Galban. His allegations span events occurring from 2005 to 2008.

Plaintiff attaches several exhibits to the FAC. Those exhibits show, among other things, results of investigations into Plaintiff's complaints, rules violation reports, reasons for disciplinary decisions and placement notices.

Here, the Court assumes the following alleged facts in the FAC as true. [FN1]

FN1. In a Rule 12(b)(6) motion to dismiss, the court must accept as true all material allegations in the complaint, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002).

**1. Events Before October 18, 2005.**

Plaintiff was assaulted, stabbed and hospitalized in August 2003. FAC at 13. But Plaintiff does not identify who stabbed or assaulted him, nor implicates any Defendants in the matter. *Id.* As with the original complaint, Plaintiff does not appear to sue over this incident.

In the days following the incident with Sergeant Galban on September 15, 2005, various prison officials—including some not named as defendants—refused to process Plaintiff's complaint against Sergeant Galban. FAC at 16–20. Plaintiff requested a full Institution Classification Committee (ICC) hearing to discuss the incident. FAC at 16. He complains of correctional officers crafting false rules violation reports during this period. *See, e.g.,* FAC at 21. Also during this time Plaintiff was placed in the “hole” (administrative segregation). FAC at 17.

Plaintiff was transferred back to the general population on September 29, 2005, where he was ridiculed and threatened. FAC at 22–25. The threats and retaliation caused him permanent psychological trauma and suffering, mental stress disorder and a nervous breakdown. FAC at 23.

On September 30, 2005, defendant Roberts refused to take Plaintiff's statement regarding his complaint against Sergeant Galban. FAC at 24. Plaintiff appeared before the ICC again on October 6, 2005. FAC at 25. The ICC was hostile toward Plaintiff and refused to document or acknowledge the circumstances of his complaint. FAC at 25. That day, defendant Whitman directed the drafting of a false rules violation report that falsely accused Plaintiff of re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

fusing to leave administrative segregation on September 29, 2005. FAC at 26. The rules violation report was executed and delivered to Plaintiff on October 7, 2005. FAC at 26.

***16** On October 11, 2005, Plaintiff obtained a 602 administrative grievance form from the prison library. FAC at 26.

Plaintiff received his fourth placement notice for administrative segregation on October 11, 2005. FAC at 26. He said defendant Whitman wrote the notice in retaliation for Plaintiff obtaining forms 1858 and 602 from the law library earlier that day. FAC at 26.

At another ICC hearing on October 14, 2005, Plaintiff was unduly accused of several rule violations and threatened with being deemed a program failure. FAC at 27.

**2. Submission of Complaint.**

On October 18, 2005, defendant Rutledge came to investigate Plaintiff's complaint against Sergeant Galban. FAC at 26–27. Plaintiff says he gave Rutledge a handwritten complaint that day. FAC at 27. Plaintiff never specifies whether the complaint was on the 602 form he had acquired. The complaint was never processed. FAC at 28–29.

Many of Plaintiff's allegations throughout the FAC allege that Defendants thwarted his attempts to follow up with or prosecute his written complaint.

**3. Events After October 18, 2005.**

Certain prison officials, including some not named as defendants, altered some of Plaintiff's rules violation reports. FAC at 21–22. Plaintiff did not learn of these acts until November 3, 2005. FAC at 21.

Plaintiff appeared before the ICC on December 8, 2005. He told them that any reports of rule violations were written in retaliation for inquiring about the status of the complaint he gave to defendant Rutledge on October 18, 2005. FAC at 29–30. Plaintiff's complaint regarding Sergeant Galban was ignored and he was placed one step closer to being “deemed a program failure.” FAC at 30.

On December 14, 2005, Lieutenant Stratton told Plaintiff he was investigating the complaint against Sergeant Galban, and that he would send Plaintiff a copy of the results of his investigation. FAC at 30–31. Plaintiff appeared before the ICC on December 15, 2005. FAC at 31. Defendant Bourland “pretended” to read from a piece of paper that allegedly reported the results of Stratton's investigation and the finding of no misconduct. FAC at 31. Plaintiff saw the paper Bourland was referring to and thought it was actually a blank sheet. FAC at 31. Plaintiff eventually saw the results of Stratton's investigation and believes the papers are false and purposefully misrepresented the actual circumstances. FAC at 38.

Plaintiff alleges that after the ICC hearing Defendants transferred him “to Facility C in order to provide Sergeant Galban with easier access to Plaintiff.” FAC at 32, 34. The transfer, however, apparently did not occur. On December 28, 2005 Plaintiff “was issued an administrative segregation unit placement notice despite never having left.” FAC at 32, 34.

Within four days of the December 15 hearing, Plaintiff submitted additional grievances—including one mailed to the Director of Corrections in Sacramento—complaining about (1) the conspiracy to set Plaintiff up; (2) Sergeant Galban's sexual misconduct; (3) Defendants' refusal to receive, file or record Plaintiff's complaints; and (4) Defendants' issuance of false rules violations reports. FAC at 33–34.

***17** At another ICC hearing on December 29, 2005, Plaintiff was threatened with being placed for two years minimum in the Security Housing Unit (SHU) unless he stopped submitting complaints about

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Sergeant Galban. FAC at 34. After the hearing, Plaintiff was given a contrived, backdated rules violation report by a non-defendant written in retaliation for his complaints. FAC at 35. Plaintiff was unjustly found guilty of this rules violation report on January 23, 2006. FAC at 37.

In February 2006, in retaliation for his complaint against Galban, Defendants caused guards to send dangerous and aggressive inmates to Plaintiff's cell door so they could terrorize him. FAC at 39. These events emotionally traumatized Plaintiff to the point of insanity. FAC at 40.

On June 12, 2007, a non-defendant correctional officer twisted Plaintiff's arm and threatened him to not file an opposition to Defendants' first motion to dismiss filed in this case or to file complaints against any other correctional officer. FAC at 41. The officer threatened Plaintiff 12 other times over the next month. FAC at 41. Then, in retaliation for filing his opposition to the first motion to dismiss, Plaintiff was transferred to the SHU in Pelican Bay State Prison. FAC at 42.

**4. Conspiracy Allegations.**

Plaintiff alleges each Defendant is a member of the Green Wall prison guard gang and has entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff. FAC at 45–56. He alleges Defendants acted “in a deliberate and calculated campaign of intimidation, threat, collusion, complicity, deceit, false record production.” FAC at 46. Specifically, he alleges they organized the production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation and assault, and—with deliberate indifference to Plaintiff's safety—conspired to injure and/or murder him by using “pencil whipping” techniques and assenting to cell assignments that exposed Plaintiff to substantial risk of injury. FAC at 45–46, 47–51.

**5. Claims Against the CDCR.**

Plaintiff renews his claims against the CDCR. FAC at 9. He alleges the CDCR engages in coverups of interdepartmental practices and retaliated against Plaintiff. FAC at 53–54.

**6. Plaintiff's Injuries.**

Plaintiff alleges—though not in relation to any specific claim—that he suffered physical injury in the form of “permanent impairment of ability, bone fracture permanent disfigurement and continuing physical and emotional pain and suffering.” FAC at 57. He claims Defendants' evil motives exacerbated his emotional pain and suffering, which includes “permanent stress disorder, extreme anxiety, panic attacks, uncontrollable physical tremors, intermittent convulsive muscle contractions, hyperventilation and social phobia.” FAC at 57–58.

**7. Plaintiff's Attempt to Substitute In Defendants.**

Plaintiff alleges the unidentified Defendants are members of the Green Wall prison gang. FAC at 52. He then tries to amend his complaint to also include these correctional officers as Defendants: Galban, Keener, Reynolds, German, Sanchez, Catlett, Heuy, Imada, Sanders, Malcomb, Colio, Trujillo and Pagaza for being complicit in the conspiracy to manipulate Plaintiff's cell assignments to cause him harm. FAC at 55. Plaintiff does not allege specific actions by these Defendants nor relates them to any specific claim.

***18** Plaintiff also attempts to add Deputy Director T. Schwartz and Classification Services Chief E. Arnold for transferring him to the SHU in Pelican Bay State Prison in retaliation for exercising his first amendment rights. FAC at 56.

**8. Prayer for Relief.**

Plaintiff requests this relief: a declaration that Defendants' acts and omissions violated Plaintiff's rights; nominal damages in the amount of $1.00; compensatory damages in the amount of $10,000.00

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

against each Defendant; punitive damages in the amount of $10,000.00 against each Defendant; and costs. FAC at 61. He also seeks a preliminary and permanent injunction ordering Defendants to, essentially, stop fabricating papers and allegations against Plaintiff, stop exposing Plaintiff to dangerous or violent inmates in a non-general population housing unit, refrain from retaliatory actions, expunge any negative entries in Plaintiff's record, and instill a plan where the CDCR itself no longer directly receives complaints against any CDCR employees. FAC at 61–63.

***DISCUSSION***

**I. *Eleventh Amendment.***

The Eleventh Amendment prohibits damages actions against state officials acting in their official capacities. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). It does not, however, "bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." *Chaloux v. Killeen,* 886 F.2d 247, 252 (9th Cir.1989) (internal quotations omitted). Nor does it bar damages actions against state officials in their personal capacities. *See Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). The Eleventh Amendment prohibits only damages actions against the "official's office"—actions that are in reality suits against the state itself—rather than against its individuals. *See id.* at 26; *Will,* 491 U.S. at 71; *Stivers v. Pierce,* 71 F.3d 732, 749 (9th Cir.1995).

Here, Plaintiff sued Defendants in their individual and official capacities for both money damages and injunctive and declaratory relief. FAC at 4, 61. Because of the bar on damages actions against individuals acting in their official capacities, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED.**

**II. *Exhaustion of Administrative Remedies.***

**A. The PLRA.**

Exhaustion is a prerequisite to bringing suit under the PLRA. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Lira v. Herrera,* 427 F.3d 1164, 1169 (9th Cir.2005). In a non-enumerated Rule 12(b) [FN2] motion to dismiss for failure to exhaust administrative remedies, defendants "have the burden of raising and proving exhaustion." *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003). Defendant, and not plaintiff, bears the burden of proving the plaintiff had available administrative remedies that he or she did not utilize. *Id.*

FN2. Unless otherwise noted, all future references to "Rule(s)" reference the Federal Rules of Civil Procedure.

***19** To show failure to exhaust, defendants may go outside the pleadings and submit supporting affidavits or declarations. *Id.* The plaintiff, however, must be provided an opportunity to develop a record to refute defendants' prima facie showing of non-exhaustion. *Id.* at 1120 n. 14. In a non-enumerated Rule 12(b) motion to dismiss, the court may look at both parties' submissions outside the pleadings to resolve factual issues regarding exhaustion. *Id.*

The PLRA requires that a plaintiff exhaust only "available" administrative remedies. 42 U.S.C. § 1997(e)(a). For example, if an inmate's appeal is granted at a lower level, the inmate need not appeal because there is nothing left to exhaust. *See Brady v. Attygala,* 196 F.Supp.2d 1016, 1022–23 (C.D.Cal.2002) (finding further exhaustion not required where appeal was granted at the second level); *Gomez v. Winslow,* 177 F.Supp.2d 977, 985 (N.D.Cal.2001) (allowing an inmate to file suit where he had "won" his inmate appeal by receiving a "partial grant" at the second level). Also, refusing to give an inmate grievance forms could raise the inference the

prisoner "exhausted" his administrative remedies. *See Mitchell v. Horn,* 318 F.3d 523, 529 (3rd Cir.2003) (reversing a district court's dismissal of a section 1983 case because it did not consider Plaintiff's allegation that prison officials refused to provide him with the grievance forms); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) (concluding that any remedy prison officials prevent a prisoner from utilizing is not an "available" remedy as section 1997(e)(a) defines that term).

**B. The Exhaustion Process.**

"Any inmate ... may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." Cal.Code Regs. tit. 15 § 3084 .1(a). An inmate must complete these steps to exhaust at the administrative level: (1) attempt to informally resolve the problem with the staff member involved, *Id.* at § 3084.5(a); (2) submit a grievance on the CDCR inmate 602 form, *Id.* at § 3084.5(b); (3) appeal to the institution head or his/her designee for a second level of review, *Id.* at § 3084.5(c); and (4) appeal to the Director of CDCR or his/her designee for a third and final level of review, Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan,* 355 F.Supp.2d 1155, 1161 (S.D.Cal.2004). Prisoners must submit their appeal within 15 working days of the event or lower decision being appealed. Cal.Code Regs. tit. 15 § 3084.6(c).

To properly exhaust, a prisoner must complete the administrative review process according to the applicable rules, including meeting deadlines and complying with other critical procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). If a prisoner concedes that he or she did not exhaust, that concession is a valid ground for dismissal so long as no exception to exhaustion applies. *Wyatt,* 315 F.3d at 1120.

**C. Plaintiff's Attempt to Exhaust.**

***20** In the original complaint, Plaintiff alleged he submitted a complaint regarding Sergeant Galban's conduct but that the complaint was never processed. In their first motion to dismiss, Defendants presented evidence that Plaintiff did not submit a 602 form regarding Sergeant Galban's alleged misconduct or Defendants' subsequent alleged misconduct. *See* Edwards Supp'l Decl. ¶ 7, Grannis Supp'l Decl. ¶¶ 4–5. But Defendants left unexplained other issues regarding exhaustion. First, Defendants did not refute the allegation they thwarted Plaintiff's efforts to file his administrative complaint. Second, they did not explain how—if no complaints were received—they learned of Plaintiff's complaint against Sergeant Galban and sent Lieutenant Stratton to investigate it. Mar. 28 Order, p. 8, ll.24–26. The Court denied without prejudice Defendants' motion to dismiss for failure to exhaust because Defendants did not meet their burden of showing non-exhaustion. Mar. 28 Order, pp. 8–10.

Now, the remaining questions regarding exhaustion are: (1) whether the complaint Lieutenant Stratton investigated satisfied the administrative requirements against the Defendants; and (2) whether Defendants made the required administrative remedies unavailable to Plaintiff.

**1. *Lieutenant Stratton's Investigation of Plaintif's Complaint.***

Defendants submit new evidence in this motion to dismiss the FAC to rebut Plaintiff's assertion that he submitted a written complaint regarding Sergeant Galban's conduct. Most relevant, they bring forth the Declaration of Lieutenant Stratton, who explains he was investigating a verbal—and not a written—complaint regarding the alleged incident with Sergeant Galban. On December 14, 2005, Lieutenant Stratton, at the direction of Captain Roberts, interviewed Plaintiff regarding his verbal allegations about the incident with Sergeant Galban. Stratton Decl. ¶ 3. At the time, no paper documentation supported Plaintiff's claims. *Id.* During the interview Stratton advised Plaintiff of the CDCR appeals process and how to properly use the 602 form. *Id.* After the interview, Stratton recommended a single-cell placement and a

mental health review for Plaintiff. Stratton Decl. ¶ 4; *see* FAC attachment pp. 25–26.

Next, Plaintiff sent letters to the CDCR Director on December 15 and December 18, 2005 claiming he submitted a citizen's complaint to Sergeant Rutledge in October 2005. Stratton Decl. ¶ 5, Ex. C. The CDCR Director re-directed the letters to Calipatria's warden, who then tasked Stratton with conducting a fact-finding review into Plaintiff's complaints. Stratton Decl. ¶¶ 5–6, Ex. C. While Stratton did not disclose the full report of that investigation to this Court because of its confidential nature, he shares these specific results from his fact-finding review:

> Andrews did not file a CDCR Form 602 related to his allegations against Sergeant Galvan, or against other staff for their alleged refusal to process his complaints of staff misconduct. I know this for three reasons. First, my confidential reports do not contain any notation indicating an Administrative Appeal Log Number associated with the underlying allegations. It is my practice and custom to record the corresponding Administrative Appeal Log Number for each administrative appeal I am assigned to investigate. The lack of an Administrative Appeal Log Number in my confidential reports indicates that Inmate Andrews did not file a CDCR Form 602 to advance these allegations. Second, Inmate Andrews' own hand-written documentation, in his letter to the Director of CDCR, dated September 15, 2005, shows that he alleges he submitted a citizen's complaint, reference in the California Code of Regulations, Title 15, section 3391(d), to Sergeant Rutledge, rather than a CDCR Form 602. Third, as part of my fact-finding review, I contacted H. Fasolo, then the Appeals Coordinator at Calipatria, who informed me that although Inmate Andrews had previously made use of the administrative appeals process, he had not filed any administrative appeal regarding his allegations against Sergeant Galvan or other prison officials related to the alleged misconduct.

***21** Stratton Decl. ¶ 6.

Plaintiff rebuts Stratton's assertions. While he acknowledges that Stratton interviewed him on December 14, Plaintiff says the interview occurred based on previously-submitted written, and not verbal, complaints. Andrews Decl., p. 2. The next day, Plaintiff appeared before the ICC and learned the investigation of his complaints was completed on December 14. *Id.*

Defendants submit two other declarations in further support of their argument that Stratton investigated a verbal, non–602 form complaint. First, Sergeant Rutledge does not ever remember Plaintiff or any inmate presenting him with a 602 form, or any other written complaint, alleging that another sergeant committed sexual assault. Rutledge Decl. ¶ 2. If Rutledge had received a written complaint, he would have forwarded it to his lieutenant or captain for investigation. Rutledge Decl. ¶ 3. Further, it is not unusual for prison officials to investigate allegations of staff misconduct even when those complaints are not submitted on the required 602 form. Supp. Grannis Decl. ¶ 6. A complaint not presented on the required form may be investigated where they allege serious violations of prison procedures and regulations and contain sufficient detail to be investigated. *Id.*

Investigating a non–602 form complaint does not supplant the required administrative exhaustion process. *Id.* First, the CDCR Department Operations Manual § 54100.25.1 requires inmates to use the 602 form even when allegations of staff misconduct are being separately investigated. *Id.* Second, inmates are routinely advised during the investigation that they have the right to, and should, pursue the administrative grievance process so that they can properly advance their claims. *Id.* Finally, staff complaints investigated outside the administrative appeals process rarely go beyond the institution where they arise. *Id.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Court finds that Defendants have presented sufficient evidence to explain how Lieutenant Stratton came to investigate Plaintiff's complaint without Plaintiff's submission of a 602 form. The newly-submitted Stratton Declaration complements the initial Declarations of Grannis, the Chief of the Inmate Appeals Branch, and Edwards, the Appeals Coordinator at Calipatria. These declarations revealed (1) Plaintiff did not submit a Third Level inmate appeal to the CDCR office against any of the defendants in this lawsuit, or against any prison officer or official concerning any staff conspiracy to cover up staff misconduct (Grannis Decl. ¶¶ 7, 8, 10); and (2) after a search in the Inmate/Parolee Appeals Tracking System for all appeals Plaintiff filed from November 1, 2002 to the date of the initial complaint, no appeal was submitted against defendants Whitman, Janda, Ochoa, Butler or Rutledge, or against any prison officer or official concerning any staff conspiracy to cover up staff misconduct (Edwards Decl. ¶¶ 4, 5). Further, in a supplemental declaration, Edwards explains the subjects of the nine appeals that Plaintiff filed at the second level of formal appeal, describes Plaintiff's letter to the Office of the Director of the CDCR relating to a citizen's complaint Plaintiff allegedly filed against Calipatria prison staff,[FN3] and affirms Defendants did not locate any appeals alleging that Sergeant Galban sexually assaulted Plaintiff or otherwise acted inappropriately toward him. Edwards Supp. Decl. ¶¶ 4–7.

FN3. Only non-inmates may file a citizen's complaint. *See* 15 Cal.Code Regs. § 3391(b), (c). Therefore, Plaintiff's allegation that he filed a citizen's complaint could not in any way be construed to supplant the required administrative grievance process that employs the 602 form.

***22** The totality of the new plus the previously-submitted evidence provided together in this renewed motion to dismiss leads this Court to conclude that Plaintiff did not submit the required 602 form as the administrative grievance process requires. Therefore, Plaintiff could not have exhausted any of the claims in this lawsuit, unless exhaustion was made unavailable to Plaintiff.

**2. *Whether Defendants Made Administrative Remedies Unavailable.***

Plaintiff alleges that on October 18, 2005, he gave Sergeant Rutledge a written complaint that Defendants never processed. At issue is whether Defendants thwarted Plaintiff's efforts to file that complaint.

Even if the Court assumes that Plaintiff alleges the complaint he submitted was on a 602 form, Defendants presented evidence that they never received it. Sergeant Rutledge explained that he never received a complaint from Plaintiff regarding a prison official's sexual misconduct. Rutledge Decl. ¶¶ 2–3. Even if Plaintiff had submitted a 602 form complaint to Rutledge, by at least December 14, 2005 Plaintiff was on notice the complaint was never received or processed. First, he never received a 602 form in return informing him about proceeding to the next level. Second, Lieutenant Stratton told Plaintiff on December 14 there was no written record of his complaint and advised him to comply with the administrative grievance process and how to properly use the 602 form. Stratton ¶ 3. Third, Plaintiff was aware of the administrative grievance process during this relevant time, as he submitted three other administrative appeals from November to December 2005. Edwards Supp. Decl. ¶¶ 4(b),(c),(d).

Finally, Plaintiff appears to claim that one of the administrative appeals he advanced through all three formal levels of review satisfies the exhaustion requirement here. *See* Director's Level Decision, FAC attachment p. 2. Plaintiff's administrative complaint for Log No. CAL 06–01961 related to Plaintiff being written-up for a rules violation for his refusal to accept a cellmate. *Id.* While in that appeal Plaintiff complained about staff manipulating Plaintiff's cell

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

placements so that he would be with inmates who would attack him at a staff member's direction, that allegation alone is not sufficiently tied to Plaintiff's over-arching claim at the root of the FAC—that Sergeant Galban sexually assaulted Plaintiff in 2005 and the Calipatria prison staff prevented him from filing a complaint regarding that sexual misconduct.

Though the complaint about staff manipulation may relate to some of Plaintiff's conspiracy claims in the FAC, those FAC claims appear to tie together to a conspiracy against Plaintiff *in retaliation* for his filing, or attempting to file, a complaint against Sergeant Galban. But in the exhausted appeal, Plaintiff did not allege any sexual assault or attempts to thwart Plaintiff's efforts to file a complaint regarding Sergeant Galban. Neither did Plaintiff mention a conspiracy. Finally, Plaintiff did not receive a final decision regarding this appeal until November 30, 2006. Grannis Supp. Decl. ¶ 4(a). Plaintiff had already filed this lawsuit on November 3, 2006. Therefore, even if the administrative appeal could be construed as exhausting Plaintiff's claims—which is not the case—Plaintiff brought the lawsuit prior to exhausting that claim.

***23** For the foregoing reasons, this Court **RECOMMENDS** that Defendants' motion to dismiss based on exhausted be **GRANTED.**

**III. *Rule 12(b)(6) Motion.***

Defendants seek to dismiss Plaintiff's FAC for failure to state a claim on these grounds: (1) the first amendment retaliation claims are barred by the favorable termination doctrine; (2) Plaintiff fails to allege a lack of probable cause in his retaliation claim; (3) Plaintiff does not allege any eighth amendment cruel and unusual punishment claims; and (4) Plaintiff does not state a fourteenth amendment equal protection claim.

**A. Legal Standard.**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's claims. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). The Court must assume all material factual allegations of the complaint as true and all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). Dismissal is proper only where there are insufficient facts to support a cognizable legal theory. *Navarro,* 250 F.3d at 732 (citation omitted).

**B. First Amendment Retaliation Claim.**

Plaintiff alleges Defendants retaliated against him for attempting to prosecute his complaint regarding the alleged incident with Sergeant Galban. He alleges Defendants manufactured false disciplinary charges and rules violation reports against him, which led to Plaintiff's confinement in administrative segregation. In the initial Report and Recommendation, this Court recommended finding that Plaintiff adequately stated a first amendment retaliation claim. Defendants objected to this finding, arguing that Plaintiff failed to show his disciplinary convictions were invalid, thereby not fulfilling the requirements of the favorable determination doctrine under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). They also objected that Plaintiff failed to allege the absence of probable cause under *Hartman v. Moore,* 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). The district judge sustained these objections and dismissed Plaintiff's first amendment claims with leave to amend. Mar. 28 Order, p. 6. The Court specifically directed Plaintiff to respond to these two objections. *Id.*

**1. *Favorable Termination Doctrine.***

The "favorable termination" requirement applies to civil rights actions filed against state actors under 42 U.S.C. § 1983. *Heck,* 512 U.S. at 483–484. The doctrine bars a plaintiff from suing, under any constitutional theory, "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff first

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

"proves that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. The favorable determination doctrine may also apply to an inmate's claims that challenge a disciplinary proceeding that has affected the fact or duration of the inmate's confinement. *Edwards v. Balisok,* 520 U.S. 641, 646–647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). But insofar as the disciplinary action affects only a condition of confinement—which includes any deprivation that does not affect the fact or duration of a sentence—the favorable termination doctrine does apply. *Ramirez v. Galaza,* 334 F.3d 850, 856 (9th Cir.2003) (finding the favorable termination doctrine did not apply to a challenge to a prison disciplinary sanction of administrative segregation).

***24** Here, Plaintiff alleges he suffered prison disciplinary convictions in retaliation for attempting to exercise a constitutional right. As a result of these convictions, Defendants imposed the punishment of sending Plaintiff to administrative segregation. In the FAC Plaintiff never alleges that the fact or duration of his sentence was affected. Defendants generally argue that the rules violation convictions "resulted in forfeiture of behavioral credits and thus impacted his term of incarceration." Reply, p. 4, ll.26–28. Defendants, however, do not cite to any specific reports that show Plaintiff lost good-time credits. And upon reviewing the attachments to Plaintiff's complaint, this Court has not found an express forfeiture of behavioral credits. *See, e.g.,* FAC Attachment p. 4 (based on Plaintiff's continued refusal to share a cell with another inmate the ICC recommended Plaintiff be sent to the SHU); FAC Attachment p. 12 (stating that as a result of being placed in administrative segregation Plaintiff's credit earning was "subject to change").

Plaintiff has not plead, Defendants have not pointed out, and the Court has not found, an express revocation or impact on the length of Plaintiff's sentence due to his placement in administrative segregation. Because Plaintiff alleges only a deprivation of the conditions of his confinement, as opposed to the duration of his sentence, the favorable termination doctrine does not apply.

**2. *Absence of Probable Cause.***

In *Hartman,* the Supreme Court held that, under either a *Bivens* or a section 1983 action based on a malicious or wrongful criminal prosecution, the plaintiff must plead and show the absence of probable cause for prosecuting the underlying criminal charges. *Hartman,* 547 U.S. at 252, 263–266. Specifically, the plaintiff must show the absence of probable cause against criminal investigators for inducing a prosecution in retaliation for protected speech. *Id.* This pleading element applies only to "a particular subcategory of retaliation claims: retaliatory prosecution claims." *Skoog v. County of Clackamas,* 469 F.3d 1221, 1233 (9th Cir.2006).

Defendants did not present, and this Court has not found, a Ninth Circuit case that applies the lack of probable cause element to a retaliation claim in the prison disciplinary context. Further, this Court finds that imposing such a requirement in the prison context would probably be futile. First, Plaintiff already must prove that he suffered an "adverse action"—here, the rules violation reports—that did not have a "legitimate correctional purpose" or advance any "legitimate correctional goal." *Rhodes v. Robinson,* 408 F.3d 559, 567–568 (9th Cir.2005). In other words, Plaintiff must prove that Defendants launched their disciplinary proceedings to punish him for exercising his first amendment right to file a complaint, that the proceedings had a "chilling effect" on him, and that Defendants had no other legitimate purpose or goal in conducting those proceedings, so that their only purpose was to squelch his free speech. In practical terms, satisfying these elements under *Rhodes* essentially shows there was no probable cause to launch the disciplinary proceedings.[FN4]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN4. This Court has already addressed Plaintiff's satisfying the pleading requirements for a first amendment retaliation claim under *Rhodes. See* Aug. 16, 2007 Rep. & Rec.

***25** Based on the lack of authority before it, this Court declines to impose the additional element of pleading lack of probable cause. The requirement under *Hartman* applies to a particular subcategory of criminal prosecutorial retaliation claims based on malicious or wrongful criminal prosecutions. This Court will not recommend applying that requirement to a general retaliation claim in the prison context.

In sum, the FAC adequately addresses Defendants' two objections. First, Plaintiff never pleads that the discipline imposed affected the length of his sentence, so the favorable termination doctrine does not apply. Second, Plaintiff does not allege that the prison disciplinary proceedings were, by nature, malicious or wrongful criminal prosecutions, and this Court has not aware of any relevant authority so stating. Therefore, if the district court rejects this Court's recommendation to grant Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's first amendment retaliation claims be **DENIED.**

**C. Eighth Amendment Claims.**

Judge Burns' Order addressing the eighth amendment claims in the initial complaint broke down the claims between (1) those based on Defendants' transfer of Plaintiff back to the general population in 2006; (2) conspiracy claims against the named and Doe Defendants; and (3) Defendants' failure to protect Plaintiff from further attacks.

**1. *Claim Previously Dismissed with Prejudice.***

This Court has already dismissed, with prejudice, Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006. Mar. 28 Order at 10. Plaintiff could not have exhausted these claims because he alleges the acts took place long after he submitted a complaint. Thus, these claims could not have been exhausted. This Court **RECOMMENDS** that the district court **AFFIRM** its prior order that Plaintiff's eighth amendment claims based on Defendants transferring Plaintiff back to the general population in 2006 are **DISMISSED with prejudice.**

**2. *Conspiracy Claim.***

A plaintiff must plead conspiracy claims with enough specificity to put defendants on notice of the claims against them. *Burns v. County of King,* 883 F.2d 819, 821 (9th Cir.1989). Regarding the conspiracy claims in the initial complaint, Judge Burns found that Plaintiff did not allege any specific facts other than the existence of the Green Wall gang and Officer Galban's assault on him. Mar. 28 Order, p. 4. He did not allege who conspired to attack him, how the conspiracy resulted in Officer Galban's attack, or that Officer Galban was a member of the gang. *Id.* Judge Burns found that no Defendant or potential Defendant had been given adequate notice of the conspiracy claims against them and dismissed those claims without prejudice. *Id.* at 4–5.

In the FAC, Plaintiff alleges that each Defendant is a member of the Green Wall prison guard gang and has entered a secret agreement to conspire with the other Defendants to terrorize Plaintiff. FAC at 45–56. More specifically, he alleges they organized the production of false records, used inmates to inflict cruel and unusual punishment of terror, intimidation and assault, and—with deliberate indifference to Plaintiff's safety—conspired to injure and/or murder him by using “pencil whipping” techniques and assenting to cell assignments that exposed Plaintiff to substantial risk of injury. FAC at 45–46, 47–51. Plaintiff attaches to the FAC the rules violation and investigatory reports that he alleges are false. Plaintiff does not, however, provide any new details of any alleged conspiracy that resulted in Officer Galban's attack.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

***26** This Court finds that Plaintiff has not provided enough new details to sufficiently plead a conspiracy by Defendants to violate Plaintiff's eighth amendment rights. He does not allege who specifically conspired to attack him or how the conspiracy resulted in Sergeant Galban's alleged assault. He does not tie Sergeant Galban to the conspiracy. He does not allege how the production of false records and inmate intimidation resulted in him suffering from cruel and unusual punishment. While he says he suffered physical injury, he does not tie that injury to any specific claim or incident. FAC at 57. And through the FAC, the only injury he says he suffered was in 2003, related to an alleged stabbing by inmate Smith. Plaintiff, however, does not implicate any Defendants in the matter and does not appear to sue over this incident.

Defendants, therefore, are not on notice of any events they participated in that caused any physical injuries to Plaintiff. Therefore, if the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claims based on a conspiracy be **GRANTED** and the claims be **DISMISSED with prejudice.**

**3.** ***Failure to Protect Claim.***

The district judge found that Plaintiff did not adequately allege an eighth amendment claim for Defendants' failure to protect Plaintiff from further attacks because Plaintiff did not allege any facts showing there was any substantial risk after the attack by Galban, that Plaintiff was attacked again or otherwise suffered other harm, or that Defendants actually inferred Plaintiff was at further risk. Mar. 28 Order, p. 5. The Court gave Plaintiff leave to amend this claim. *Id.*

A plaintiff may plead an eighth amendment claim for cruel and unusual punishment by alleging failure to take reasonable measures to protect an inmate from serious risk to health and safety. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prisoner claiming such an eighth amendment violation must show: (1) the deprivation he suffered was "objectively, sufficiently serious" (objective element); and (2) the defendant possessed a sufficiently culpable state of mind (subjective element). *Id.* at 834. Where the claim is predicated upon the failure to protect, the deprivation is deemed to be sufficiently serious if there was a substantial risk that the prisoner would suffer serious harm. *Id.* Regarding the subjective element, a prison official can only be held liable if he (1) is aware of the facts from which he could infer a substantial risk of serious harm, and (2) actually drew that inference. *Id.* at 837.

Plaintiff first alleges he was transferred back to the general population on September 29, 2005, where he was ridiculed and threatened. FAC at 22–25. The attachments to the FAC, however, contradict this allegation.[FN5] Further, Plaintiff alleges the threats and retaliation due to this move caused him permanent psychological trauma and suffering, mental stress disorder and a nervous breakdown. FAC at 23. Even if the Court assumes the move back to the general population to be true, this general allegation of harm does not amount to the required showing that Plaintiff suffered a deprivation that was objectively, sufficiently serious or that Defendants possessed a culpable state of mind when they transferred Plaintiff back to the general population.

FN5. A report from the Departmental Review Board notes that it was not until September 19, 2006 that Plaintiff was released from administrative segregation, and that he refused to leave it. FAC Attachment, pp. 4, 5.

***27** On his second attempt at this eighth amendment claim, Plaintiff does not adequately allege he suffered any harm that would rise to a deprivation of a constitutional right or that Defendants inferred he

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

was at risk of suffering such a deprivation. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice.**

**D. Fourteenth Amendment Claims.**

Judge Burns dismissed Plaintiff's due process and equal protection claims with leave to amend. Mar. 28 Order, p. 10. Plaintiff, however, did not reallege those claims. He only generally alleges on one page of the FAC that Defendants acted "for the purpose of denying Plaintiff the equal protection and due process of law as contemplated in the fourteenth amendment." FAC, p. 3. Plaintiff does not allege any of the other elements required to plead such claims. Therefore, if the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the claims be **DISMISSED with prejudice.**

**IV. *Remaining Issues.***

**A. Qualified Immunity.**

State officials are protected from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To analyze a qualified immunity claim, a court must first determine whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendants violated the claimant's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If the answer is no, the analysis ends. If, on the other hand, the answer is yes, the court must then consider whether the defendants are entitled to qualified immunity. *See id.; Robinson v. Solano County,* 278 F.3d 1007, 1013 (9th Cir.2002) (en banc); *Valdez v. Rosenbaum,* 302 F.3d 1039, 1044 (9th Cir.2002). The second step requires determining "whether the right was clearly established." *Saucier,* 533 U.S. at 201. The relevant inquiry focuses on "what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." *Id.* at 208. The plaintiff bears the burden of proving that the right allegedly violated was clearly established at the time of the violation. *See Sorrels v. McKee,* 290 F.3d 965, 969 (9th Cir.2002).

Here, Plaintiff has adequately alleged a first amendment claim. During the time period of the alleged acts, an inmate's right to be free of retaliation for filling out an administrative grievance was clearly established by existing case law. The question, however, of whether any or all of the Defendants could reasonably have believed that their conduct was lawful is more properly resolved on a motion for summary judgment or at trial, when Defendants are entitled to present evidence on their behalf and the Court may properly consider such evidence. Thus, for the purposes of the instant motion, the Court cannot resolve the issue of whether any or all of the Defendants is entitled to qualified immunity as to the first amendment claim. Further, if the district court adopts this Court's recommendation as to the exhaustion issue, then the question of qualified immunity becomes moot. Therefore, the Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice.**

**B. Claims Against the CDCR.**

***28 AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED** with prejudice, per Judge Burns' Order of March 28, 2008 Order at 10.

**C. Attempt to Amend the Complaint to Add Additional Defendants.**

To the extent on page 55 of the FAC Plaintiff intends to identify defendants previously sued as

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Does, or to add 20 new defendants, he was not granted permission to add those defendants. *See* Mar. 28 Order, p. 11 (granting leave only to amend claims and not to add new defendants). Further, a review of the docket shows that Plaintiff has not served, and cannot serve, those proposed defendants within 120 days of filing the complaint, as required by Rule 4(m). Finally, even if Plaintiff could add those new defendants, such an act would be futile because this Court recommends dismissing Plaintiff's FAC for failure to exhaust. This Court **RECOMMENDS** that Plaintiff's attempt to add 20 new defendants to this action be **DENIED.**

**D. Request to Charge Plaintiff with a Strike.**

Defendants again urge the Court to charge Plaintiff with a strike under 28 U.S.C. § 1915(g). They argue Plaintiff filed the lawsuit to punish prison officials for their efforts to hold Plaintiff accountable for his refusal to accept a cellmate, and that it has created a tremendous amount of work for the Court and the Defendants. They also argue that Plaintiff's false accusation that Defendants prevented him from exhausting his administrative remedies goes to the malicious nature of the lawsuit.

An inmate may be charged with a strike if a complaint is dismissed for being frivolous, malicious, or for failing to state a claim. An inmate charged with three strikes cannot bring further civil rights actions. 28 U.S.C. § 1915(g).

This action appears to be Plaintiff's first section 1983 action to proceed in this Court.[FN6] Upon reviewing the file in this case, Plaintiff's claim that he attempted to exhaust his administrative grievance, but was prevented from doing so, does not appear to rise to the level of maliciousness that Defendants claim. And, there is no sufficient showing that Plaintiff intended to punish prison officials by bringing this suit. Further, Defendants had the burden to prove the defense of non-exhaustion. They did not do so in their first motion to dismiss, which is what brought this case to another round of briefing for a second motion to dismiss. Considering all these facts, the Court **RECOMMENDS** that Defendants' request to charge Plaintiff with a strike be **DENIED.**

FN6. In 2006 Plaintiff filed a different section 1983 action that the Court dismissed sua sponte for lack of proper venue. *See Andrews v. Coyle,* 06cv2278 BEN (JMA).

**E. Plaintiff's Request for Judicial Notice.**

Plaintiff asks that this Court take judicial notice of 15 Cal.Code Reg. § 3401.5. Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "A court shall take judicial notice if requested by a party and supplied with the necessary information. Fed.R.Evid. 201(c). The Court **RECOMMENDS** that Plaintiff's request for judicial notice of 15 Cal.Code Reg. § 3401.5 be **GRANTED,** as its content is capable of accurate determination.

***CONCLUSION***

***29** For all of the above reasons, the Court **RECOMMENDS** the following:

1. Defendants' motion to dismiss Plaintiff's claims for money damages against Defendants in their official capacities be **GRANTED.**

2. Defendants' motion to dismiss based on exhausted be **GRANTED.**

3. If the district court rejects this Court's recommendation to grant Defendants' motion to dismiss based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's first amendment retaliation claim be **DENIED.**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

4. **AFFIRM** that Plaintiff's eighth amendment claims based on Defendants transferring him back to the general population in 2006 are **DISMISSED** with prejudice, per Judge Burns' Order of March 28, 2008 Order at 10.

5. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim based on a conspiracy be **GRANTED** and the claim be **DISMISSED with prejudice.**

6. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's eighth amendment claim for failure to protect be **GRANTED** and the claim be **DISMISSED with prejudice.**

7. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's fourteenth amendment claims for equal protection and due process be **GRANTED** and the claims be **DISMISSED** with prejudice.

8. If the district court declines to dismiss this action based on exhaustion, this Court **RECOMMENDS** that Defendants' claim that they are entitled to qualified immunity be **DENIED without prejudice.**

9. **AFFIRM** that Plaintiff's claims against the CDCR are **DISMISSED with prejudice,** per Judge Burns' Order of March 28, 2008 Order at 10.

10. Plaintiff's attempt to amend the complaint to add 20 new defendants to this action be **DENIED.**

11. Defendants' request to charge Plaintiff with a strike be **DENIED.**

12. Plaintiff's request for judicial notice of 15 Cal.Code Reg. § 3401.5 be **GRANTED.**

This report and recommendation of the undersigned Magistrate Judge is submitted pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than ***October 31, 2008*** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than ***November 10, 2008.*** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

***30 IT IS SO ORDERED.**

S.D.Cal.,2009.
Andrews v. Whitman
Not Reported in F.Supp.2d, 2009 WL 857604 (S.D.Cal.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Michael ATKINS, Plaintiff,
v.
D. MENARD, Sergeant, Clinton Corr. Facility; B. Hayes, Corr. Officer, Clinton Corr. Facility; Russell, Corr. Officer, Clinton Corr. Facility; L. Martin, Officer, Clinton Corr. Facility; Moak, Officer, Clinton Corr. Facility; Allen, Lieutenant, Clinton Corr. Facility; and John Does 1–4, Defendants.

No. 9:11–CV–0366 (GTS/DEP).
Sept. 12, 2012.

Michael Atkins, Rome, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of New York, Christopher W. Hall, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***MEMROANDUM–DECISION and ORDER***

GLENN T. SUDDABY, District Judge.

***1** Currently before the Court, in this *pro se* prisoner civil rights action filed by Michael Atkins ("Plaintiff") against the ten above-captioned New York State correctional employees ("Defendants"), are the following: (1) Defendants' motion for partial summary judgment seeking dismissal of Plaintiff's failure-to-protect claim against Defendant Allen due to Plaintiff's failure to exhaust his available administrative remedies before filing that claim (Dkt. No. 34); and (2) United States Magistrate Judge David E. Peebles' Report–Recommendation recommending that Defendants' motion be granted (Dkt. No. 41). No objections have been filed to the Report–Recommendation, and the deadline by which to do so has expired. For the reasons set forth below, the Report–Recommendation is accepted and adopted in its entirety, and Defendants' motion is granted.

## I. RELEVANT BACKGROUND

Generally, construed with the utmost of special liberality, Plaintiff's Complaint alleges that, on July 18 and July 21, 2008, while Plaintiff was incarcerated at Clinton Correctional Facility, Defendants violated his rights under the Eighth Amendment by (1) using excessive force against him, and (2) failing to protect him from the use of excessive force. (*See generally* Dkt. No. 1, at ¶ 6.) For a more detailed recitation of the factual allegations giving rise to Plaintiffs' claims, the Court refers the reader to the Complaint in its entirety, and to Magistrate Judge Peebles' Report–Recommendation, which accurately recites those factual allegations. (Dkt. No. 1; Dkt. No. 41, at Part 1.)

Generally, in their motion for partial summary judgment, Defendants argue that the Court should dismiss Plaintiff's failure-to-protect claim against Defendant Allen due to Plaintiff's failure to exhaust his available administrative remedies before filing that claim. (Dkt. No. 34.) More specifically, Defendants present evidence that (1) Plaintiff filed no grievance with respect to Defendant Allen's alleged failure to protect him on July 21, 2008, and/or (2) Plaintiff appealed that grievance to the Superintendent and the Central Office Review Committee. (*Id.*)

Generally, in his response in opposition to Defendants' motion, Plaintiff argues that (on July 22, 2008) he submitted a grievance with respect to incident on July 21, 2008, but that prison officials (other than Defendant Allen) thwarted the processing of that grievance through tampering with Plaintiff's mail. (Dkt. No. 38.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2012 WL 4026840 (N.D.N.Y.)
**(Cite as: 2012 WL 4026840 (N.D.N.Y.))**

Generally, in his Report–Recommendation, Magistrate Judge Peebles recommends that Defendants' motion for partial summary judgment be granted for the following two reasons: (1) Plaintiff's assertion that he submitted a grievance regarding the incident on July 21, 2008, is neither notarized nor properly sworn pursuant to 28 U.S.C. § 1746; and (2) in any event, even if Plaintiff's assertion had the force and effect of sworn testimony, it would be insufficient to create a genuine dispute of material fact due to the exception to the rule against making credibility determinations on motions for summary judgment, set forth in *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir.2005). (Dkt. No. 41, at Part III.B.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review Governing a Report–Recommendation

***2** When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c).[FN1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[FN2]

FN1. *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

FN2. *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a por-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

tion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition.[FN3] Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[FN4] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [FN5]

FN3. *See also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *2–3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999).

FN4. *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at *1, n. 1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at *3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

FN5. *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

**B. Standard of Review Governing a Motion for Summary Judgment**

In his Report–Recommendation, Magistrate Judge Peebles accurately recites the legal standard governing motions for summary judgment. (Dkt. No. 34, at Part III.A.) As a result, this standard is incorporated by reference in this Decision and Order, which (again) is intended primarily for the review of the parties.

**III. ANALYSIS**

Because Plaintiff did not submit an objection to the Report–Recommendation, the Court reviews the Report–Recommendation only for clear error, as described above in Section II.A. of this Decision and Order. After carefully reviewing the relevant filings in this action, the Court can find no clear error in the Report–Recommendation. Magistrate Judge Peebles employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. (Dkt. No. 34) As a result, Magistrate Judge Peebles' Report–Recommendation recommending dismissal of Plaintiff's failure-to-protect claim against Defendant Allen is accepted and adopted in its entirety for the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2012 WL 4026840 (N.D.N.Y.)
**(Cite as: 2012 WL 4026840 (N.D.N.Y.))**

reasons stated therein. (*Id.*) Indeed, Magistrate Judge Peebles' thorough and correct Report–Recommendation would survive even a de novo review.

***3** The Court adds six brief points. First, as a threshold basis for adopting the Report–Recommendation, the Court relies on the fact that, despite having received adequate notice of the consequences of failing to properly oppose Defendants' motion (*see* Dkt. No. 34), Plaintiff failed to file (1) a Response to Defendants' Rule 7.1 Statement of Material Facts, and (2) an opposition memorandum of law. (*See generally* Dkt. No. 38.) [FN6] As a result, (1) the properly supported factual assertions contained in Defendants' Rule 7.1 Statement are deemed admitted by Plaintiff, and (2) the facially meritorious legal arguments contained in Defendants' memorandum of law are deemed consented to by Plaintiff. *Cusamano v. Sobek,* 604 F.Supp.2d 416, 452–54 (N.D.N.Y.2009) (Report–Recommendation of Lowe, M.J., adopted by Suddaby, J.). These factual assertions and legal arguments clearly warrant the granting of partial summary judgment in Defendant Allen's favor.

FN6. While Plaintiff has filed a document purporting to be a "statement of material facts," that statement does not contained denials of the factual assertions contained in Defendants Rule 7.1 Statement in matching numbered paragraphs followed by citations to the record, as required by Local Rule 7.1(a)(3). (Dkt. No. 38, Attach.2.) The same is true with regard to the purported "affidavit" filed by Plaintiff. (Dkt. No. 38, at 2–3.) Moreover, while Plaintiff has filed a document purporting to be a "memorandum," that document merely repeats the factual assertions contained in Plaintiff's other submissions, and does not contain any legal arguments or citations to any legal authorities (or even a table of contents), as required by Local Rule 7.1(a)(1). (Dkt. No. 38, Attach.1.) Rather, that document purports to be certified, like a declaration. (*Id.*)

Second, in the alternative, even if the Court were to proceed to a sua sponte scouring of the record in search for a genuine dispute of material fact, the Court would find no such genuine dispute. The Court notes that Plaintiff's insertion of the note "28 U.S.C. 1746" beside his signature on various documents is not sufficient to transform those document into sworn declarations for purposes of a motion for summary judgment. (Dkt. No. 38, at 3; Dkt. No. 38, Part 1, at 1, 3.) *See also* 28 U.S.C. § 1746 (requiring that the certification state, in sum and substance, that "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."). Moreover, although Plaintiff's form Complaint is sufficient sworn to pursuant to 28 U.S.C. § 1746, that Complaint makes no mention of having exhausted his administrative remedies with regard to his failure-to-protect claim against Defendant Allen. (Dkt. No. 1.) Moreover, even if the Complaint did make mention of such a fact, the Court would reject that assertion as patently incredible, for the same reasons that Magistrate Judge Peebles recommends such an assertion in Plaintiff's response papers, under *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir.2005).

Third, even if Plaintiff had adduced admissible record evidence establishing that he submitted a grievance regarding Defendant Allen, Plaintiff has not adduced admissible record evidence that it was *Defendant Allen* (as opposed to some other correction officer) who interfered with the processing of that grievance. The Court notes that the second step of the Second Circuit's three-part exhaustion standard regards, in pertinent part, whether a defendant should be estopped from asserting failure to exhaust as a defense due to *his or her own* actions in preventing the exhaustion of plaintiff's remedies. "Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

administrative remedies based on the actions (or inactions) of other individuals." *Murray v. Palmer,* 03–CV–1010, 2010 WL 1235591, at *5 & n. 26 (N.D.N.Y. March 31, 2010) (Suddaby, J.) (collecting cases).[FN7]

FN7. *See also Taylor v. Thames,* 09–CV–0072, 2010 WL 3614191, at *4 (N.D.N.Y. Sept. 8, 2010 ("[T]here is no allegation or argument that *Defendant* did anything to inhibit Plaintiff's exhaustion of remedies so as to estop Defendant from raising Plaintiff's failure to exhaust as a defense.") (Suddaby, J.) (emphasis in original); *McCloud v. Tureglio,* 07–CV–0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Report–Recommendation of Lowe, M.J., adopted by Mordue, C.J.) ("None of those documents allege facts plausibly suggesting that Defendant's own actions inhibited Plaintiff's exhaustion of remedies during the time in question.").

***4** Fourth, even if Plaintiff had adduced admissible record evidence that Defendant Allen had interfered with the initial processing of his grievance, Plaintiff had the ability, and indeed the duty, to appeal the IGRC's nonresponse (to his grievance) to the next level, including CORC, to complete the grievance process. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n. 4 [collecting cases].[FN8] Here, there is no admissible record evidence establishing that he did so.

FN8. The Court notes that there appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number. *Murray,* 2010 WL 1235591, at *2 & n. 5 [citing cases]. After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative. *Id.* at *2 & n. 6 [citing cases].

Fifth, the Court rejects Plaintiff's attempt to raise the specter of a retaliation claim in his opposition to Defendants' motion for partial summary judgment as unduly prejudicial to Defendants, a gross waste of judicial resources, and a violation of both Fed.R.Civ.P. 15(a) and the Court's Pretrial Scheduling Order. *See Brown v. Raimondo,* 06–CV–0773, 2009 WL 799970, at *2, n. 2 (N.D.N.Y. March 25, 2009) (Report–Recommendation of Treece, M.J., adopted by Suddaby, J.) ("The Court notes that opposition papers [on summary judgment motions] are not the proper vehicle to instill new causes of action or add new defendants."), *aff'd,* 373 F. App'x 93 (2d Cir.2010). [FN9]

FN9. *See also Smith v. Greene,* 06–CV–0505, 2011 WL 1097863, at *3, n. 5 (N.D.N.Y. Feb. 1, 2011) (Baxter, M.J.) ("[P]laintiff should not be allowed to assert any new claims at this stage of the case, particularly through his response to a summary judgment motion."), *adopted by,* 2011 WL 1097862 (N.D.N.Y. March 22, 2011) (Suddaby, J.); *Jackson v. Onondaga Cnty,* 549 F.Supp.2d 204, 219–20 (N.D.N .Y.2008) (McAvoy, J., adopting Report–Recommendation of Lowe, M.J.) (finding that pro se civil rights plaintiff's complaint should not be effectively amended by his new allegations presented in his response to defendants' motion for summary judgment); *Shaheen v. McIntyre,* 05–CV–0173, 2007 WL 3274835, at *1, 9 (N.D.N.Y. Nov. 5, 2007) (McAvoy, J., adopting Report–Recommendation of Lowe, M.J.) (finding that pro se civil rights plaintiff's complaint should not be effectively amended by his new allegations presented in his response to defendants' motion for summary judgment); *Harvey v. New York City*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

> *Police Dep't,* 93–CV–7563, 1997 WL 292112, at *2 n. 2 (S.D.N.Y. June 3, 1997) ("To the extent plaintiff attempts to assert new claims in his opposition papers to defendants' motion, entitled 'Notice of Motions in Response and Opposing Defendant'(s) Summary Judgment Motions,' the Court finds that 'it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment' and accordingly disregards such claims.") (citing *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 170 F.R.D. 111, 119 [S.D.N.Y.1997] ).

Sixth, and finally, in future such motions, defense counsel is respectfully advised to (1) cite and apply Second Circuit's the Second Circuit's three-part exhaustion standard (*see* Dkt. No. 41, at Part III.B.), and (2) serve the plaintiff with a copy of the Northern District's "Notification fo the Consequence of Failing to Respond to a Summary Judgment Motion" (*see* http:// www.nynd.uscourts.gov /documents/Notification_Consequences_Failure_to_ Respond_ to_Summary_Judgment_Motion_FINAL_000.pdf) rather than defendants' version of that notice.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Peebles' Report–Recommendation (Dkt. No. 41) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 34) is ***GRANTED,*** such that Plaintiff's failure-to-protect claim against Defendant Allen is ***DISMISSED,*** and the clerk is directed to terminate Defendant Allen from this action and that at the conclusion of this case that judgment be entered in Defendant Allen's favor; and it is further

**ORDERED** that Pro Bono Counsel be appointed for the Plaintiff for purposes of trial only; any appeal shall remain the responsibility of the plaintiff alone unless a motion for appointment of counsel for an appeal is granted; and it is further

**ORDERED** that upon assignment of Pro Bono Counsel, a final pretrial conference with counsel will be scheduled in this action, at which time the Court will schedule for trial Plaintiff's excessive force claim against Defendants Menard, Hayes, Russell, Martin and Moak. The parties are directed to appear at the final pretrial conference with settlement authority.

N.D.N.Y.,2012.
Atkins v. Menard
Not Reported in F.Supp.2d, 2012 WL 4026840 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 1

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Everton BAILEY, Plaintiff,
v.
M. FORTIER, Defendant.

Civ. Action No. 9:09–CV–0742 (GLS/DEP).
Oct. 4, 2012.

Hancock Estabrook LLP, Michael J. Sciotti, Esq., Robert Thorpe, Esq., of Counsel, Syracuse, NY, for Plaintiff.

Hon. Richard S. Hartunian, United States Attorney, Charles E. Roberts, Esq., Assistant U.S. Attorney, of counsel, Syracuse, NY, for Defendant.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

***1** Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens*[FN1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

> FN1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his complaint be dismissed on this procedural basis, without addressing its merits.

I. *BACKGROUND*

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10–4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84.[FN2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

> FN2. The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ____".

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8–9; *see also* VanWeelden

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Decl. (Dkt. No. 10–4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier to return to his cell in light of an impending inmate count. *Id.* at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face.[FN3] Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10–4) Exh. D; Tr. 100, 145. Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days. Complaint (Dkt. No. 1) ¶¶ 13–14; Tr. 32, 84–85. Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility. Tr. 59–60, 85.

FN3. According to Bailey, there were no corrections officers present in his cell unit at the time of the assault. Complaint (Dkt. No. 1) ¶ 13.

***2** The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment. Tr. 10; 28 C.F.R. § 542.10 *et seq.; see also Macias v. Zenk,* 495 F.3d 37, 42 (2d Cir.2007). In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue. 28 C.F.R. § 542.13(a); *see also Johnson v. Testman,* 380 F.3d 691, 693 (2d Cir.2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP–8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66–67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP–9 form, within twenty calendar days of the event that generated the inmate's complaint.[FN4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson,* 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances.[FN5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP–10 form, within twenty calendar days of the date the grievance is denied by the facility warden. Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson,* 380 F.3d at 693. An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP–11 form, within twenty calendar days of the date of the Regional Director's response. Tr. 22; 28 C.F.R. § 542.15(a).

FN4. Plaintiff was aware of the twenty-day limitation for filing a BP–9 form to initiate the formal grievance process. Tr. 103.

FN5. Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP–9. *See* Tr. 34, 43.

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it. Tr. 101–02, 106. Bailey claims that he requested the appropriate forms for com-

mencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook. Tr. 86–88, 91, 93–95, 107–09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them. *See* Tr. 72, 131, 146–47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea). I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to secure the necessary grievance forms. In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[FN6] Tr. 46, 86, 140–41. Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him. *See, e.g.,* Tr. 126, 129–30, 140–41, 165.

> FN6. Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP. Tr. 140, 163.

***3** Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU. Tr. 35. For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members. Tr. 35, 55. When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs. Tr. 57. In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility "pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP–8, BP–9, BP–10, BP–11 and cop-out forms, earning her the nickname "the form lady." Tr. 70–71, 120, 124–27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161–62, 166, 49–50, 72, 132, 144, 154–55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met. Tr. 133. When asked on that occasion whether he needed anything, Bailey replied, "No." [FN7] *Id.*

> FN7. During the hearing Bailey testified that he did not recall Darrah visiting him. *See* Tr. 114. Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

II. *PROCEDURAL HISTORY*

Bailey commenced this action on June 29, 2009. Dkt. No. 1. His complaint identifies Corrections Of-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ficer M. Fortier as the sole named defendant, and alleges that she violated his constitutional rights by failing to protect him from foreseeable harm. *Id.*

On January 8, 2010, prior to answering, Fortier moved to dismiss Bailey's complaint for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for summary judgment pursuant to Rule 56. Dkt. No. 10. The sole basis for Fortier's motion was her contention that Bailey's complaint is subject to dismissal based upon his failure to exhaust available administrative remedies before commencing suit, as required under 42 U.S.C. § 1997e(a). That motion resulted in my issuance of a report on August 30, 2010, recommending that the motion be denied, based upon the existence of genuine disputes of material fact to be resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated. Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010. Dkt. No. 21.

***4** Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia,* that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23. All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready. In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord,* 652 F.3d 305 (2d Cir.2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement. *See* Text Entry 11/02/11. That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[FN8], [FN9]

FN8. The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure. *See Rivera v. Santirocco,* 814 F.2d 859, 862 (2d Cir.1987). At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing. *See* Tr. 3.

FN9. Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing. The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

## III. *DISCUSSION*

### A. *Governing Legal Principles*

The Prison Litigation Reform Act of 1996 (“PLRA”), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that “[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.” 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006); *Hargrove v. Riley,* No. CV–04–4587, 2007 WL 389003, at *5–6 (E.D.N.Y. Jan.31, 2007). “[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). An inmate plaintiff's complaint is subject to dismissal if the evidence establishes that he or she failed to properly exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 548 U.S. at 94–95, 126 S.Ct. at 2387–88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388; *see also Macias,* 495 F.3d at 43 (citing *Woodford* ). Complete exhaustion has not occurred, for purposes of the PLRA, until all of the steps of that available process have been taken. *Macias,* 495 F.3d at 44; *see also Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009); *Strong v. Lapin,* No. 90–CV–3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan.15, 2010) ("Until the BOP'S Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

***5** In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[FN10,FN11] *Id.*

FN10. In *Macias,* which, like this action, involved an Eighth Amendment claim under *Bivens,* as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.,* defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias,* 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368, requires proper procedural exhaustion through the available grievance channels. *Id.* at 41. The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford,* a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill. Id.* at 44–45. The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford*

Page 6

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules. *See Amador v. Superintendents of Dep't of Correctional Serv.,* No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec.4, 2007). It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry. *Id.* at *7.

FN11. In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove,* 2007 WL 389003, at *8 n. 14; *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

B. *Burden of Proof*

Before applying the foregoing legal principles, I must first consider who bears the burden of proof, and whether that burden shifts throughout the analysis prescribed under *Hemphill.*

As an affirmative defense, *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), exhaustion is a claim upon which the party asserting it typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *Soria v. Girdich,* No. 9:04–CV–727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing *McCoy v. Goord,* 255 F.Supp.2d 233, 247 (S.D.N.Y.2003)); *McEachin v. Selsky,* No. 9:04–CV–83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug.30, 2005) (Scullin, C.J.) (citing *Howard v. Goord,* No. 98–CV–7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part,* 225 F. App'x 36 (2d Cir.2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts—such as estoppel, for example—that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel ...."); *In re Heflin,* 464 B.R. 545, 554 (D.Conn.2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.,* 86 F.2d 637, 640 (2d Cir.1936)).

***6** Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer,* No. 9:03–CV–1010 (GTS/GHL), 2010 WL 1235591, at * 4 and n. 17 (N.D.N.Y. Mar.31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw,* No. 9:09–CV–1354, 2011 WL 4345299, at *5 and n. 5 (N.D.N.Y. Aug.10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted,* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.,* 713 F.Supp.2d 143, 155 (E.D.N.Y.2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.). Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production,* or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion.*

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

proof with regard to all elements of a *Hemphill* analysis. In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an exhaustion defense. *See Macias,* 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* ....") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria,* 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

C. *Application of Governing Legal Principles*

1. *Availability of Administrative Remedy*

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the forms necessary to file an ARR and pursue the grievance to culmination. Having considered the competing testimony, however, I conclude that Fortier has established, by a preponderance of the evidence, that the forms necessary to pursue a grievance in accordance with the ARP in place at FCI Ray Brook were available to Bailey through several sources, but were not requested. As such, Fortier has satisfied the first *Hemphill* factor.

2. *Presentation of Defense/Estoppel*

***7** The focus of the second prong of the *Hemphill* analysis is upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted). In her answer, Fortier raised exhaustion as a defense in a timely fashion. *See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his failure to follow the prescribed grievance process was a direct result of the refusal of prison officials to cooperate in his efforts to grieve the matter.

" 'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.' " *Atkins v. Menard,* No. 9:11–CV–9366, 2012 WL 4026840, at *3 (N.D.N.Y. Sept.12, 2012) (Suddaby, J.) (citing *Murray,* 2010 WL 1235591, at *5 and n. 26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway,* 2011 WL 4345299, at *4 (citing *Bennett v. James,* 737 F.Supp.2d 219, 226 (S.D.N.Y.2010), *aff'd,* 441 F. App'x 816 (2d Cir.2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

In this instance, Bailey does not allege that Fortier engaged in a campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier. Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion. *Atkins,* 2012 WL 4026840, at * 3. Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

3. *Special Circumstances*

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated. *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676–77; *Hargrove,* 2007 WL 389003, at *10. Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano* ). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at *6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

***8** During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

IV. *SUMMARY AND RECOMMENDATION*

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement. Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)
**(Cite as: 2012 WL 6935254 (N.D.N.Y.))**

report. Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2012.
Bailey v. Fortier
Not Reported in F.Supp.2d, 2012 WL 6935254 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Joseph J. BELILE, Plaintiff,
v.
C.O. GRIFFIN, et al., Defendants.

Civ. Action No. 9:11–CV–0092 (TJM/DEP).
Feb. 12, 2013.

Joseph J. Belile, Attica, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the State of New York, James Seaman, Esq., Assistant Attorney General, Albany, NY, for Defendants.

*REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

***1** *Pro se* plaintiff Joseph J. Belile, a New York State prison inmate, has commenced this action against several corrections employees stationed at the facility in which he was housed at the relevant times, including its superintendent, pursuant to 42 U.S.C. § 1983, complaining of multiple violations of his civil rights. In his amended complaint, plaintiff alleges that, as a result of being denied his request for placement into protective custody, he was attacked by a fellow inmate. Belile also alleges that some of the named-defendants encouraged other inmates to attack him, and that he was assaulted by other named-defendants on two separate occasions.

Currently pending before the court in connection with this action is a motion by the defendants for the entry of summary judgment dismissing plaintiff's amended complaint. Defendants base their motion on (1) plaintiff's alleged failure to exhaust his administrative remedies before commencing suit, (2) their contention that plaintiff's claims fail on the merits, and (3) in the alternative, their claim of entitlement to qualified immunity. For the reasons set forth below, I recommend that plaintiff's amended complaint be dismissed for failure to exhaust available administrative remedies.

I. *BACKGROUND*[FN1]

FN1. Although plaintiff opposed defendants' motion for summary judgment, he did not file an opposition to defendants' Local Rule 7.1 statement of material facts that complies with Local Rule 7.1(a) (3). Specifically, defendants filed an eleven-page statement of material facts that contains eighty-two paragraphs and complies with the citation requirements of Local Rule 7.1(a)(3). Defs.' L.R. 7.1 Statement (Dkt. No. 55, Attach.18). In response, plaintiff filed a two-page statement of material facts that contains only five paragraphs, neither admits nor denies any of the paragraphs contained in defendants' statement of material facts, and fails to cite to any record evidence. Dkt. No. 57 at 6–7. Plaintiff was warned of the consequences of failing to properly respond to defendants' statement of material facts. Dkt. No. 56, Attach. 1. The court therefore accepts defendants' facts to the extent that they are supported by accurate citations to the record. *See* N.D .N.Y. L.R. 7.1(a)(3) (*"The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."* (emphasis in original)); *see also, e.g., El-gamil v. Syracuse Univ.,* No. 99–CV–0611,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases and deeming all of the facts asserted in the defendant's statement of material facts as admitted where the plaintiff did not specifically admit or deny any of the assertions and "failed to contain a single citation to the record").

Plaintiff Joseph Belile is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Am. Compl. (Dkt. No. 37) at 1. Although now confined elsewhere, at the times relevant to this action, plaintiff was held in keeplock confinement at the Great Meadow Correctional Facility ("Great Meadow"), a maximum security prison located in Comstock, New York.[FN2] Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 1. Upon his arrival at Great Meadow, plaintiff was assigned to a cell located on the fourth tier of the B-block, a housing unit comprised of four floors of cells, all of which are oriented in the same direction and face an open area. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 18.

FN2. "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989), *accord, Warburton v. Goord,* 14 F.Supp.2d 289, 293 (W.D.N.Y.1998); *Tinsley v. Greene,* No. 95–CV–1765, 1997 WL 160124, at *2 n. 2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., adopting report and recommendation by Homer, M.J.) (citing *Green v. Bauvi,* 46 F.3d 189, 192 (2d Cir.1995)). "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends." ***Lee v. Coughlin,*** 26 F.Supp.2d 615, 628 (S.D.N.Y.1998). Although, as a keeplocked inmate, plaintiff was entitled to leave his cell for one hour each day for the purpose of exercise, *Lee,* F.Supp.2d at 628, he did not avail himself of that opportunity. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 51–52.

On or about April 23 or 24, 2009, while in his cell on B-block, Belile overheard two inmates yelling that he would be killed if he came out of his cell. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 19–20. Although plaintiff was not able to identify any of the inmates involved because of the orientation of the cells in B-block, he believes that the threats came from one floor below his cell. *Id.* at 19, 85–86. The next day, plaintiff wrote letters to defendant Charles F. Kelly, Jr., the Deputy Superintendent of Security at Great Meadow, and the B-block sergeant, requesting that he be placed in protective custody ("PC"). *Id.* at 16, 19; Am. Compl. (Dkt. No. 37) at 9; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 8; Kelly Decl. Exh. A (Dkt. No. 55, Attach.10). That same day, defendant Kelly assigned defendant Donald Maguire, a corrections sergeant at the facility, to investigate the matter. Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 9.

***2** After receiving the assignment to review plaintiff's PC request and obtaining relevant background information, defendant Maguire interviewed Belile on the evening of April 27, 2009. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶¶ 5, 8. During that interview, plaintiff was unable to provide specific information to support his belief that he was in danger, or to identify any inmate at Great Meadow that might want to harm him.[FN3] *Id.* at ¶¶ 9–10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 23–25. Finding no basis to conclude that plaintiff faced a credible threat to his safety, defendant Maguire denied plaintiff's request for PC, had him returned to his keeplock cell, and prepared a report to defendant Kelly concerning the results of his investigation. Maguire Decl. (Dkt. No. 55, Attach.12)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

at 2; Kelly Decl. (Dkt. No. 55, Attach.9) at ¶ 10; Kelly Decl. Exh. B (Dkt. No. 55, Attach.11); Plaintiff's Dep. Tr. (Dkt. No. 55, Attach.2) at 26, 29.

FN3. Although Belile named two inmates, defendant Maguire determined that neither was presently confined at Great Meadow. Maguire Decl. (Dkt. No. 55, Attach.12) at ¶ 9.

Upon completion of the interview by defendant Maguire, plaintiff was escorted back to his B-block cell by a corrections officer identified by him as defendant Griffin, a corrections officer at Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 29. When plaintiff arrived at the foot of the stairs leading to his fourth-floor cell, he dropped the bags that he was carrying “to catch [his] breath.” Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 31. At that moment, defendant Griffin asked plaintiff what he was convicted of that resulted in his incarceration, and, when plaintiff answered him, defendant Griffin kicked plaintiff in the left thigh area and told him to move up the stairs. *Id.* at 31. Plaintiff felt what he describes as a sharp pain for a few moments after being kicked by the corrections officer, but the pain subsided by later that night, and he never sought medical treatment for the injury. *Id.* at 33.

On or about April 27, 2009, the day after plaintiff's interview with defendant Maguire, defendant Murphy, a corrections officer assigned to supervise B-block inmates' transit to the Great Meadow mess hall for breakfast, stated to his accompanying officer, defendant John Doe # 1, when reaching plaintiff's cell for escort, “Belile B–4–29 is a rapo and he tried to sign into PC last night.” Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 33–34; Am. Compl. (Dkt. No. 37) at 10. Plaintiff claims that, while defendant Murphy pretended to direct that statement to defendant John Doe # 1 standing next to him, he actually said it loud enough so that other inmates could hear him as well. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 34–35. Later on April 28, 2009, after the evening meal, an unknown inmate screamed out “29 Cell tried to sign into PC. He's a rat. We'll get him when he comes out.” *Id.* at 21–22.

On May 1, 2009, while plaintiff was watching television, another inmate splashed a hot liquid into his cell, causing him to suffer burns that required medical treatment. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 44–47. After receiving treatment for his injuries, plaintiff was escorted to PC, which is located on the D-block of Great Meadow. Am. Compl. (Dkt. No. 37) at 10; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 53–55.

***3** Following his arrival in PC, plaintiff received four bags of personal property from defendants Dimick and Brockley, two other corrections officers at the facility, both of whom were known to plaintiff from an earlier period in 2006 when plaintiff was confined in a Behavioral Health Unit program at Great Meadow. Am. Compl. (Dkt. No. 37) at 10–11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 56–59. After delivering plaintiff's property, defendants Dimick and Brockley kicked plaintiff in the genitals and punched him in the head. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 61. The officers then threw the four property bags at plaintiff and left his cell. Am. Compl. (Dkt. No. 37) at 11; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62. Plaintiff did not seek medical treatment for the injuries resulting from the actions of defendants Dimick and Brockley. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 62.

Within a couple of days of arriving in PC, plaintiff wrote a grievance and placed it in the meal slot of his cell gate to be picked up by a corrections officer. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64, 66. The grievance was, in fact, picked up, but plaintiff does not know precisely who retrieved it. *Id.* at 66, 67. On or about May 20, 2009, after plaintiff did not receive a response to his first grievance, he wrote a second grievance, which again was picked up from his meal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

slot by an unknown individual. *Id.* at 66, 67. Plaintiff did not receive a response to the second grievance. *Id.* at 66. Other mail that plaintiff placed in his meal slot to be sent out while he was in PC did reach its destination. *Id.* at 69–70. There is no DOCCS record of plaintiff filing these two grievances, nor is there a record that plaintiff appealed any grievance relating to the matters now in issue to the relevant appellate entity within DOCCS. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8; Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9.

II. *PROCEDURAL HISTORY*

Plaintiff commenced this action on January 26, 2011. Complaint (Dkt. No. 1). Following a period of pretrial discovery, during which plaintiff attempted to identify the defendants previously sued only as "Doe" defendants, he filed an amended complaint on November 8, 2011. Am. Compl. (Dkt. No. 37). Plaintiff's amended complaint names, as defendants, Great Meadow Superintendent Bezio; [FN4] Great Meadow Deputy Superintendent of Security Kelly; Corrections Sergeant Maguire; and Corrections Officers Griffin, Murphy, Dimick, Brockley, and defendant "John Doe # 1." *Id.* at 2–3. Construed with the utmost liberality, plaintiff's amended complaint asserts a due process claim under the Fourteenth Amendment, and excessive force, failure to protect, and deliberate indifference claims under the Eighth Amendment, all pursuant to 42 U .S.C. § 1983. *Id.* at 12–13.

> FN4. While Norman Bezio is named by Belile as a defendant, and is identified as the superintendent at the facility in issue, during his deposition, Belile acknowledged that Bezio was not in fact the superintendent at any time relevant to the events giving rise to this action. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 90.

On May 31, 2012, following the completion of discovery, defendants filed a motion for summary judgment seeking dismissal of plaintiff's amended complaint based on several grounds, generally arguing that plaintiff failed to exhaust his administrative remedies, that plaintiff's amended complaint fails on the merits, and, alternatively, that all defendants are entitled to qualified immunity. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–17. On June 7, 2012, plaintiff filed his opposition to that motion, Plf.'s Resp. (Dkt. No. 56), and defendants subsequently filed their reply on June 14, 2012, Defs.' Reply (Dkt. No. 58).

***4** Defendants' motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local 72.3(c). *See* Fed.R.Civ.P. 72(b).

III. *DISCUSSION*

A. *Summary Judgment Standard*

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,* 391 F.3d 77, 82–83 (2d Cir.2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248; *see also Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005) (citing *Anderson* ). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson,* 477 U.S. at 250 n. 4; *Sec. Ins. Co.,* 391 F .3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324; *Anderson,* 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys,* 426 F.3d at 553; *Wright v. Coughlin,* 132 F.3d 133, 137–38 (2d Cir.1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan,* 311 F.3d 501, 507–08 (2d Cir.2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. *Failure to Exhaust*

Defendants argue that plaintiff is precluded from pursuing his claims in this action as a result of his failure to exhaust available administrative remedies before filing suit. Defs.' Memo. of Law (Dkt. No. 55, Attach.19) at 4–5. In support, defendants offer declarations from Jeffrey Hale, Assistant Director of the DOCCS Inmate Grievance Program ("IGP"), and Jason Hoagland, Acting IGP Supervisor at Great Meadow. Dkt. No. 55, Attachs. 14, 15. Hale avers that, based upon a search of available DOCCS records, plaintiff did not, in accordance with the available grievance procedures in place at Great Meadow while plaintiff confined there, pursue an appeal to the DOCCS Central Office Review Committee ("CORC") related to the denial of plaintiff's request to be placed in PC. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. Similarly, Hoagland avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. In response, plaintiff argues that "there is not any available administrative remedie[s] when an assault and harm have already occurred," and that the exhaustion requirement only applies to " 'prison conditions' under the P.L.R.A.," which plaintiff is not challenging. Plf. Resp. (Dkt. No. 57) at ¶ 2.

1. *Legal Principles Governing Exhaustion*

***5** The Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), which imposes restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) ("Exhaustion is ... mandatory. Prisoners must now exhaust all 'available' remedies[.]" (internal citations omitted)); *Hargrove v. Riley,* No. 04–CV–4587, 2007 WL 389003, at *5 (E.D.N.Y. Jan. 31, 2007) ("The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983."). [FN5] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). [FN6]

FN5. Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff. [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

FN6. In this case, the Supreme Court's decision in *Porter* effectively forecloses plaintiff's argument that claims of the past-use of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

excessive force are not subject to the exhaustion requirement. *Porter,* 534 U.S. at 532.

In the event the defendant establishes that the inmate-plaintiff failed "to fully complete[ ] the administrative review process" prior to commencing the action, the plaintiff's complaint is subject to dismissal. *Pettus v. McCoy,* No. 04–CV–0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also* *Woodford,* 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [FN7] *Woodford,* 548 U.S. at 95; *see also* *Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (citing *Woodford* ).

FN7. While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " in order to satisfy the PLRA, an inmate-plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies by complying with the grievance procedures in place at the relevant correctional facility. *Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (quoting *Johnson v. Testman,* 380 F.3d 691, 697–98 (2d Cir.2004) (emphasis omitted)).

In accordance with the PLRA, the DOCCS has made the IGP available to inmates, which is comprised of a three-step procedure that inmates must use when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. § 701.5; *Mingues v. Nelson,* No. 96–CV–5396, 2004 WL 234898, at *4 (S.D.N.Y. Feb. 20, 2004). The IGP procedure is accurately described in Hale's declaration, Dkt. No. 55, Attach. 14, and embodied in 7 N.Y.C.R.R. § 701. Under the IGP, an inmate must first file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. *Id.* A representative of the facility's inmate grievance resolution committee ("IGRC") has up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. *Id.* at § 701.5(c). The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal.[FN8] *Id.* at § 701.5(c)(i), (ii).

FN8. Depending on the type of matter complained of by the grievant, the superintendent has either seven or twenty days after receipt of the grievant's appeal to issue a decision. *Id.* at § 701.5(c) (i), (ii).

***6** The third and final step of the IGP involves an appeal to the CORC, which must be taken within seven days after receipt of the superintendent's written decision. *Id.* at § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. *Id.* at § 701.5(d)(2)(i).

Accordingly, at each step of the IGP process, a decision must be entered within a specified time period. Significantly, "[a]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can—and must—be appealed to the next level, including CORC, to complete the grievance process." *Murray v. Palmer,* No. 03–CV–1010, 2010 WL 1235591, at *2 (N.D.N.Y. Mar. 31, 2010) (Hurd, J. adopting report and recommendation by Lowe, M.J.) (citing, *inter alia,* 7 N.Y.C.R .R. § 701.6(g)(2)).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Generally speaking, if a plaintiff fails to follow each of the required three steps of the above-described procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *See Ruggerio v. County of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (internal quotation marks omitted)).

2. *Application of Legal Principles*

Initially, the court notes that plaintiff alleges that he only filed two grievances on or about May 2, 2009, and May 20, 2009, both of which, when liberally construed, complain that, as a result of denials by defendants Maguire and Kelly of his request to be placed in PC, he was assaulted by another inmate. Am. Compl. (Dkt. No. 37) at 5–6. The grievances also complain that defendants Murphy and Doe improperly disclosed to other inmates that plaintiff was convicted of rape in the third degree, and allege that defendants Dimick and Brockley assaulted plaintiff immediately after arriving in PC. *Id.* Because these two grievances do not include any complaints about defendant Griffin's assault on plaintiff when he escorted plaintiff back from defendant Maguire's office, and because there is no record evidence that plaintiff ever filed a grievance as it relates to this allegation, I find that plaintiff failed to exhaust his available administrative remedies regarding any excessive force claim against defendant Griffin, in violation of the Eighth Amendment. However, because each of the other named-defendants are implicated in plaintiff's grievances, the court proceeds to discuss whether plaintiff exhausted available administrative remedies as it relates to the claims asserted against the remaining named-defendants.

After carefully reviewing the record evidence, I find that there is a dispute of fact as to whether plaintiff actually filed a grievance with the IGP clerk that relates to any of the allegations giving rise to this action.[FN9] Specifically, plaintiff's amended complaint alleges that, while he filed two grievances, both were intercepted by correctional officers at Great Meadow. Am. Compl. (Dkt. No. 37) at 3. Similarly, at his deposition, plaintiff testified that he placed two written grievances in his meal slot to be filed by corrections officers. Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 66–67. According to plaintiff, after a corrections officer retrieves a grievance from an inmate, the grievance is supposed to be forwarded to the appropriate officials. Am. Compl. (Dkt. No. 37) at 3. However, Hoagland, the Acting IGP Supervisor at Great Meadow, avers that a search of the grievance records at Great Meadow does not reveal any grievance filed by plaintiff "at any time." Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 8. Moreover, Hale, the DOCCS IGP Assistant Director, states that a search of the relevant DOCCS records shows that plaintiff did not file an appeal to CORC arising from any incident while at Great Meadow. Hale Decl. (Dkt. No. 55, Attach.14) at ¶ 9. These conflicting pieces of evidence demonstrate that there is a dispute of fact as to whether plaintiff initiated the IGP process at Great Meadow by filing a grievance relating to the allegations giving rise to this action.

> FN9. As will be discussed more completely below, however, because Belile failed to pursue the alleged grievance to completion, this fact is not material in that it does not preclude the entry of summary judgment against him on this issue.

***7** Whether or not plaintiff did attempt to lodge grievances in accordance with the IGP, however, is immaterial because there is no dispute that he failed to "properly exhaust" his administrative remedies by complying with the IGP's requirement that he appeal any denial to the superintendent of the facility, and then appeal any unfavorable decision from the superintendent to CORC. *Woodford,* 548 U.S. at 95; *Ruggerio,* 467 F.3d at 176. Plaintiff does not argue,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

nor does he offer any proof in his amended complaint, at his deposition, or in opposition to defendants' motion for summary judgment, that he pursued his grievances to completion. For this reason, I find that no reasonable factfinder could conclude that plaintiff exhausted available administrative remedies as it relates to any of the allegations giving rise to this action. *See Goodson v. Silver,* No. 09–CV–0494, 2012 WL 4449937, at *4 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.) ("[I]f a prisoner has failed to follow each of the required ... steps for the ... grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies.").

Despite finding that plaintiff did not file and pursue to completion a grievance regarding the claims he now raises in this action, the exhaustion inquiry is not ended. In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[FN10] *Macias,* 495 F.3d at 41; *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the Second Circuit's test, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such remedies were available to the plaintiff, the court must next examine "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust defense." *Hemphill,* 380 F.3d at 686, *accord*, *Macias,* 495 F.3d at 41. Finally, in the event the proffered defense survives these first two levels of scrutiny, the court must examine whether special circumstances "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[FN11] *Id.*

FN10. Whether the Second Circuit's test in *Hemphill* survives following the Supreme Court's decision in *Woodford* has been a matter of some speculation. *See, e.g., Newman v. Duncan,* No. 04–CV–0395, 2007 WL 2847304, at *2 n. 4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, J., adopting report and recommendation by Homer, M.J.).

FN11. Though distinct in theory, in practice, the application of the three prongs of the prescribed test admit of overlap. *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004); *see also Hargrove v.. Riley,* No. CV–04–4587, 2007 WL 389003, at *8 n. 14 (E.D.N.Y. Jan. 31, 2007) ("Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies 'unavailable' to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.").

a. *Availability of Remedy*

As was discussed above, in New York, the DOCCS has implemented the three-step IGP in accordance with the requirements under the PLRA. 7 N.Y.C.R.R. § 701.5. Despite an inmate's entitlement in most instances to file and pursue a grievance in accordance with the IGP, there are circumstances in which the grievance procedure nonetheless is deemed unavailable to an inmateplaintiff. *Hemphill,* 380 F.3d at 686. For example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove,* 2007 WL 389003, at *8 (internal citation omitted); *see also Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (holding that, where a prisoner's favorable decision is not properly implemented, and the time to appeal the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 9

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

decision has expired, the prisoner's available administrative remedies had been exhausted).

***8** Here, plaintiff does not argue that he was "unaware of the grievance procedures or did not understand it." *Hargrove,* 2007 WL 389003, at *8. *See* Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 72 ("Q: So you're familiar with the Inmate Grievance Program; right? A: Yes."). Rather, he alleges that the grievance procedure was unavailable to him because corrections officers intercepted and discarded the two grievances that he left in his meal slot shortly after arriving in PC. Am. Compl. (Dkt. No. 37) at 3–4; Plf.'s Dep. Tr. (Dkt. No. 55, Attach.2) at 64–68. Plaintiff admitted at his deposition, however, that he is only speculating when he alleges that the officers who picked up his mail discarded those grievances. *Id.* at 70–71. Similarly, plaintiff admitted that he does not know who retrieved his grievances, which means he does not know whether any of the named-defendants were responsible for, or aware of, the alleged interception of his grievances. *Id.* at 68. Plaintiff also acknowledged that other mail that he sent from PC did reach the intended addressees. *Id.* at 69–70.

Plaintiff's mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation, including any evidence that identifies which defendant, in particular, is responsible for discarding the grievances, are insufficient to excuse his failure to comply with the IGP. *See Butler v. Martin,* No. 07–CV–0521, 2010 WL 980421, at *5 (N.D.N.Y. Mar. 15, 2010) (Scullin, J.) (finding that the plaintiff was not excused from failing to avail himself of the administrative procedures where he alleged that his grievances were discarded but did not offer any evidence "that a particular officer discarded the[m]"); *Winston v. Woodward,* No. 05–CV–3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) ("In light of Plaintiff's failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered ... mail tampering, ... the Court finds, even taking the evidence in the light most favorable to Plaintiff, that he has not put forth sufficient evidence to sustain his burden [.]"); *Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.2004) ("Even assuming [the plaintiff] did submit grievances, he offers no evidence that any particular officer thwarted his attempts to file[.]"); *Nunez v. Goord,* 172 F.Supp.2d 417, 429 (S.D.N.Y.2001) (finding the plaintiff's allegation that his failure to file grievances was due to " 'the practice of certain officers' " to destroy them "stand[s] alone and unsupported").

In any event, there is no dispute that, even assuming that any of the defendants did, in fact, intercept and discard plaintiff's grievances, there were other avenues available to plaintiff for pursuing his grievances. For example, in his declaration, Hoagland notes that, at least weekly, either the IGP supervisor or the sergeant assigned to the grievance office at Great Meadow makes rounds through the entire facility, including in D-block, where PC inmates are confined, to address grievance-related questions or issues. Hoagland Decl. (Dkt. No. 55, Attach.15) at ¶ 5. During those rounds inmates may hand grievances directly to the person making the rounds.[FN12] *Id.* at ¶ 6. Accordingly, even assuming that plaintiff's grievances were intercepted, there was an available, alternative avenue for submitting those grievances directly to the IGP supervisor.

FN12. Again, because plaintiff has not disputed defendants' Local Rule 7.1 statement of material facts, which is, in part, supported by Hoagland's declaration, the court assumes the truth of the statements made in Hoagland's declaration.

***9** Finally, under the IGP, even if plaintiff's grievances were intercepted and not filed with the IGP clerk, "he had the ability—and the duty to—file an appeal regarding the non-processing of th[ose] grievance[s]." *Sidney,* 2012 WL 1380392, at *5 (collecting cases and finding that the plaintiff failed to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

exhaust available administrative remedies where he argued that a second grievance was " 'pilfered by theivery hands' "); *Butler,* 2010 WL 980421, at *6 ("Plaintiff was obligated to appeal to the next administrative level once it became clear to him that a response to his grievances was not forthcoming." (citing, *inter alia,* 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."))); *Veloz,* 339 F.Supp.2d at 516 ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

For all of these reasons, I conclude that the grievance process was available to plaintiff.

b. *Estoppel*

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted). Exhaustion of remedies is an affirmative defense that must be raised by a defendant in response to an inmate suit. *Jones v. Block,* 549 U.S. 199, 216 (2007). Here, defendants have properly preserved the exhaustion defense by asserting it as an affirmative defense in their answers. Answer (Dkt. No. 39) at ¶ 15; Answer (Dkt. No. 45) at ¶ 15. Turning to estoppel, I find no basis in the record to support a finding that defendants should be precluded from relying upon the defense. "Estoppel will be found where an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston,* 2008 WL 2263191, at *9 (internal quotation marks omitted) (collecting cases). "[A] plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures." *Id.* (citing, *inter alia, Hemphill,* 380 F.3d at 688–89).

As was discussed above, although plaintiff argues that the two grievances he left in his meal slot were discarded by corrections officers, for all of the same reasons that this argument fails when analyzing whether administrative remedies were "available" to plaintiff, it similarly falls short in establishing that defendants should be estopped from asserting the exhaustion defense. *See Giano,* 380 F.3d at 677 n. 6 ("We note that the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, [and] (b) situations in which administrative remedies are not 'available' to the plaintiff[.]"); *see also Hargrove,* 2007 WL 389003, at *8 n. 14. The court would only add that, because plaintiff does not allege, or provide any evidence that, a named-defendant acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense, he has failed to establish a dispute of material fact as to whether any of defendants are estopped from asserting the exhaustion defense. *See Atkins v. Menard,* No. 11–CV–9366, 2012 WL 4026840, at *3 (N .D.N.Y. Sept. 12, 2012) (Suddaby, J.) ("Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.").

c. *Special Circumstances*

***10** The third, catchall factor to be considered under the Second Circuit's exhaustion test focuses upon whether special circumstances exist to justify excusing a plaintiff's failure to exhaust available ad-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ministrative remedies, notwithstanding the fact that the administrative remedies were available, and the defendants are not estopped from asserting the defense. *Hemphill,* 380 F.3d at 689; *Giano,* 380 F.3d at 676–77. Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials, and leads the plaintiff to conclude that the dispute is not grievable. *Giano,* 380 F.3d at 676–77, *accord, Hargrove,* 2007 WL 389003, at *10.

Here, there is no allegation that special circumstances exist to excuse plaintiff's failure to exhaust available administrative remedies, nor does plaintiff offer any evidence of potentially applicable special circumstances. As a result, I find that plaintiff is not excused from his failure to exhaust administrative remedies before commencing this action, and I recommend that his amended complaint be dismissed on this procedural basis alone.[FN13]

FN13. In recommending dismissal of plaintiff's amended complaint in its entirety, I include the defendant identified as "John Doe # 1" who has neither been identified nor appeared in the action. Because that defendant is not specifically alleged to have been, nor is there record evidence to establish that he was, involved in the interception and discarding of plaintiff's grievances, I find he would not be estopped from asserting the exhaustion defense and thus, like the named-defendants, would be entitled to dismissal on the basis of plaintiff's failure to exhaust. Alternatively, I recommend dismissal of all claims against defendant Doe, *sua sponte,* based upon plaintiff's failure to properly identify and serve him, as required under both Federal Rules of Civil Procedure and this court's local rules, despite the fact that this case has been pending for more than two years, and based on plaintiff's failure, prior to the close of discovery, to ascertain the identity of that individual. Fed.R.Civ.P. 41(b),(m); *see also Butler,* 2010 WL 980421, at *6–7.

IV. *SUMMARY AND RECOMMENDATION*

It is undisputed that, prior to commencing this action, plaintiff failed to exhaust his administrative remedies by pursuing to completion any grievance related to the events giving rise to this action. In light of this failure, and finding no basis to conclude that plaintiff's compliance with the IGP should be excused, I recommend dismissal of plaintiff's amended complaint in its entirety on this basis alone, without addressing either the merits of his claims, or the qualified immunity argument advanced by defendants in support of their motion for summary judgment. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 55) be GRANTED, and that plaintiff's amended complaint be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

N.D.N.Y.,2013.
Belile v. Griffin
Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 12

Not Reported in F.Supp.2d, 2013 WL 1776086 (N.D.N.Y.)
**(Cite as: 2013 WL 1776086 (N.D.N.Y.))**

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Riland BRYANT, Plaintiff,
v.
Melvin WILLIAMS & R. Reynolds, Defendants.

No. 08–CV–778S.
June 17, 2009.

West KeySummary**Prisons 310 318**

310 Prisons
310II Prisoners and Inmates
310II(H) Proceedings
310k316 Exhaustion of Other Remedies
310k318 k. Particular Cases. Most Cited Cases

Inmate failed to exhaust his administrative remedies, thus his excessive force claim was dismissed. Inmate claimed officials dragged him across the floor, kicked him in the head, and forced him to eat a bagel off the floor in front of other detainees. Grievance procedures existed at the drug treatment campus, and inmate did not show that officials hindered his ability to exercise those regimes. Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

Riland Bryant, Moravia, NY, pro se.

David Joseph State, Nys Attorney General's Office, Buffalo, NY, for Defendant.

**ORDER**

WILLIAM M. SKRETNY, District Judge.

***1** 1. On October 21, 2008, Plaintiff Riland Bryant, an inmate proceeding *pro se,* commenced this action by filing a Complaint in this Court against Defendants, alleging excessive force. (Docket No. 1.) On December 26, 2008, Defendants filed a Motion to Dismiss. (Docket No. 4.) This Court referred the matter to the Honorable Hugh B. Scott, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(C). (Docket No. 5.)

2. On April 29, 2009, Judge Scott filed a Report and Recommendation recommending that Plaintiff's motion be granted based upon Plaintiff's failure to exhaust his administrative remedies. (Docket No. 14.) Judge Scott alternatively recommended that, in the event the Court reached the merits of Defendants' motion, the motion should be granted as to Defendant Melvin Williams on the failure to allege personal involvement, and denied as to Defendant R. Reynolds. (*Id.*) No objections to the Report and Recommendation were received from either party within ten (10) days from the date of its service, in accordance with 28 U.S.C. § 636(b) (1)(C) and Local Rule 72.3(a)(3).

3. This Court has carefully reviewed Judge Scott's Report and Recommendation as well as the underlying papers and will accept Judge Scott's recommendation that Defendants' motion be granted on the grounds that Plaintiff failed to exhaust his administrative remedies.

IT HEREBY IS ORDERED, that this Court accepts Judge Scott's Report and Recommendation (Docket No. 14) in its entirety, including the authorities cited and the reasons given therein.

FURTHER, that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

SO ORDERED.

**Report & Recommendation**

HUGH B. SCOTT, United States Magistrate Judge.

This matter has been referred to the undersigned pursuant to 28 U .S.C. § 636(b)(1)(C) (Docket No. 5). The instant matter before the Court is defendants' motion (Docket No. 4 [FN1]) to dismiss. Responses to this motion initially were due by February 5, 2009, and any reply was due by February 18, 2009, and the motion was deemed submitted (without oral argument) on February 18 (Docket No. 6). On plaintiff's motion for extension of time to respond (Docket No. 9) and due to his hospitalization, the response deadline was extended to April 3, 2009, with reply due by April 24, 2009, and the motion was deemed submitted on April 24, 2009 (Docket No. 10).

FN1. In support of this motion, defendants filed their notice of motion with *Irby* notice to a *pro se* litigant, W.D.N.Y. Loc. Civ. R. 56.2; *see Irby v. New York City Transit Auth.,* 262 F.3d 412 (2d Cir.2001), memorandum of law, Docket No. 4, and defense counsel's reply declaration with exhibits, Docket No. 13, including the declaration of Captain Brian McCauley of Willard, *id.* Ex. A, and inmate grievance coordinator at Five Points Correctional Facility Patrick O'Neill, *id.,* Ex. C.

In opposition, plaintiff sent a letter (with attachments) that was filed by the Court, Docket No. 7, and then sent another letter outlining his attempts at administratively resolving his claims, Docket No. 8. He also filed an affidavit, Docket No. 12, and a response, Docket No. 11, including what appears to be a notice of motion for summary judgment, *id.,* with exhibits attached.

**BACKGROUND**

Plaintiff, an inmate proceeding *pro se,* commenced this civil rights action alleging excessive force at Willard Drug Treatment Campus (hereinafter "Willard") on April 9, 2008 (Docket No. 1, Compl. at 4). He claims that he went to breakfast and, when he was almost done "he grabbed me in the collar of my sweatshirt pulled me to the floor then dragged me across the floor and then he kicked me twice in the back" (*id.* at 5, First Claim). He then claims that "they made me eat a bagel off the floor in front of over (100) one hundred parolee's [sic.] who were afraid to say that they had seen what happened," (*id.* at 6, Second Claim), and, when he went to sick call for pain in his back, he taken into a "rubber room" (*id.; see* Docket No. 4, Defs. Memo. at 1). He later claims that both these allegations are assault and sexual assault (Docket No. 1, Compl. at 5, 6), although no specific allegation of a sexual nature was made in that pleading. He is suing defendant Williams, the superintendent at Willard, in his official capacity, and defendant Reynolds, a corrections officer at Willard, both individually and in his official capacity (*id.* at 2). Plaintiff alleged in his First Claim that he did not exhaust his administrative remedies for this claim because he had problems accessing the law library (*id.* at 5). He also alleged that he failed to exhaust his administrative remedies for the Second Claim but explained that he did not know what his remedies for that claim were (*id.* at 6).

***2** He seeks damages for his pain and suffering and damages totaling $1 million (*id.* at 5, 6).

*Defendants' Motion to Dismiss*

In their pending motion (Docket No. 4), defendants first contend that plaintiff admitted that he did not exhaust his administrative remedies prior to commencing this action, thus the case should be dismissed under the Prison Litigation Reform Act, 42 U.S.C. § 1997e (Docket No. 4, Defs. Memo. at 1, 2–3). They also contend that the Complaint does not detail the personal involvement of either named defendant (the superintendent of Willard and a corrections officer) in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the alleged activities (*id.* at 3, 4).

*Plaintiff's Letter and Response*

Plaintiff's letter appears to be a motion seeking the relief that can be granted (Docket No. 7, at 2), apparently a motion for summary judgment (*see id.* at 4). Plaintiff did not include a statement of material facts not in issue, *see* W.D.N.Y. Loc. Civ. R. 56.1(a). Plaintiff here asserts the forms of personal involvement recognized in this Circuit (*id.* at 3). Plaintiff states that defendant Reynolds was the defendant involved in the two claims plaintiff alleged (*id.* at 1). He amplifies the allegations in the Complaint, stating that, on April 9, 2008, defendant Reynolds was angry (for some reason unknown to plaintiff) and picked plaintiff apparently because he was the first inmate available. In addition to what was alleged in his pleading, plaintiff claims in his letter that Reynolds grabbed plaintiff, pulled him out of his chair and dragged him across the floor of the mess hall and then kicked plaintiff twice in the back. (*Id.* at 2.) The next morning, plaintiff reported to sick call, when he was taken into the rubber room by Reynolds and two other unnamed officers (*id.*). He claims that after this he became "a marked person on the compound," receiving Tier II tickets (*id.*).

Plaintiff also argues that "administrative remedies as are available are exhausted and is [sic] not required for a claim" (*id.* at 1). He contends that Willard did not have grievance forms so he wrote to the superintendent and the deputy superintendent without success. Then he wrote to the Commissioner and Deputy Commissioner of the Department of Corrections Services, who replied that they would inform defendant Williams. Plaintiff states that he next wrote to the Inspector General, who interviewed him, took his complaint and advised him to get a lawyer. Plaintiff was removed from the program at Willard and later transferred to Five Points Correctional Facility, where he filed a formal grievance. The lieutenant there took the grievance, interviewed him, but never got back to plaintiff. Plaintiff again wrote to the Commissioner, Deputy Commissioner, and Inspector General, received similar responses, and he then commenced an action in the New York State Court of Claims, Claim No. 115993, and filed this federal action. (Docket No. 8.) He concludes by asking "if that is not considered exhausting remedies?" (*Id.*)

***3** Plaintiff then supplemented this response by filing additional documents, wherein he claims that the three-tier grievance process (common at Department of Correctional Services' facilities) did not exist at Willard (Docket No. 11, Pl. Response at 1; Pl. Notice of Motion at 1–2). Plaintiff contends that grievances were heard by the sergeant for apparent informal resolution (*see id.,* Pl. Response at 1). Plaintiff instead wrote to the defendant superintendent and attempted to appeal the superintendent's inaction to the Commissioner (*id.*), as well as writing to state court judges, the inspector general, the Seneca County District Attorney, and the United States Department of Justice (Docket No. 12, Pl. Response at 2). He complains that he sought review of his program evaluations (Docket No. 11, Pl. Response at 1–2) to no avail. Plaintiff also complained about the military regime of the Willard program and his inability to complete such a program given his age (*see* Docket No. 12, Pl. Response at 3).

*Defendants' Reply*

Defendants argue that Willard had a grievance procedure (Docket No. 13, Defs. Atty. Decl. ¶ 4, Ex. A, McCauley Decl. ¶ 2, Ex. B, Directives 4041, 4040). According to the parolee manual for Willard detainees (*id.*, Ex. A, McCauley Decl. ¶ 3, exhibit to McCauley Decl., "Parolee Handbook, Willard Drug Treatment Campus," Jan. 2007), a grievant airs his or her grievance at community meetings or "clearings"; if resolution is not reached there, then he or she may direct the complaint to the Treatment Team, Security Supervisor, and ultimately to the Executive Team. If still not remedied, the parolee "will be provided with grievance form 2131 and follow the guidelines set forth in Directive # 4041," with such grievance forms available by writing the captain who has been desig-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

nated to handle all parolee grievances (*id.,* at 14). Willard's internal procedure is intended "to supplement, not replace, existing formal or informal channels of problem resolution," to promote mediation and conflict resolution and not support an adversarial process (*id* . at 15). Captain Brian McCauley is the official charged with overseeing the grievance program at Willard (*id.,* Ex. A, McCauley Decl. ¶ 1).

Authorities at neither Willard nor Five Points Correctional Facility have any record of a grievance being filed by plaintiff arising from this incident (*id.,* Ex. A, McCauley Decl. ¶ 3, Ex. C, O'Neill Decl. ¶¶ 2–3).

**DISCUSSION**

I. Standard of Review

Defendants have moved to dismiss the Complaint on the grounds that it states a claim for which relief cannot be granted. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face," *id.,* 127 S.Ct. at 1974 (rejecting longstanding precedent of *Conley, supra,* 355 U.S. at 45–46); *Hicks v. Association of Am. Med. Colleges,* No. 07–00123, 2007 U.S. Dist. LEXIS 39163, at *4, 2007 WL 1577841 (D.D.C. May 31, 2007). To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," *Bell Atlantic, supra,* 127 S.Ct. at 1965; *Hicks, supra,* 2007 U.S. Dist. LEXIS 39163, at *5, 2007 WL 1577841. A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference. *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985). In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the Complaint. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57 (2d Cir.1985). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions,* 235 F.Supp.2d 123 (N.D.N.Y.2002).

***4** The pleading of a *pro se* plaintiff, however, is to be liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

> "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* [550 U.S. 554, ——, ,] 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, – – – – , (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at ——, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) ."

*Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). In *Erickson,* the Court held that the Tenth Circuit departed

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

from the liberal pleading standards of Rule 8(a) (2) by dismissing a *pro se* inmate's claims.

> "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is 'to be liberally construed,' [ *Estelle v. Gamble,* 429 U.S., 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid.* (internal quotation marks omitted). *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

127 S.Ct. at 2200; *see Boykin, supra,* 521 F.3d at 213–14.

II. Prison Litigation Reform Act

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), *rev'g, Nussle v. Willette,* 224 F.3d 95 (2d Cir.2000). The Supreme Court found that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *Nussle, supra,* 534 U.S. at 524–25. The act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court" *id.* at 528, and clarify the contours of the controversy once it is litigated, *id.* at 525.

A. Second Circuit Law of Exhaustion

***5** Plaintiff has an obligation under the PLRA to exhaust "such remedies when Congress has specifically mandated that he do so." *Giano v. Goord,* 250 F.3d 146, 150–51 (2d Cir.2001) (*"Giano I"* ). The fact that plaintiff was in Willard Drug Treatment Center is of no moment, the obligations under the PLRA reach him when he was in Willard as well, *see Ruggerio v. County of Orange,* 467 F.3d 170, 174–75 (2d Cir.2006).

Exhaustion under the PLRA, however, is not jurisdictional in this Circuit, *Richardson v. Goord,* 347 F.3d 431, 434 (2d Cir.2003); *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004); it is an affirmative defense for defendants to assert, *Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999); *Ziemba, supra,* 366 F.3d at 163, subject to certain defenses such as estoppel, *Ziemba, supra,* 366 F.3d at 163; *Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004) (defendants' threats estopped exhaustion defense).

The Second Circuit held, on the issue of whether the provision of the PLRA that "such administrative remedies **as are available** are exhausted," 42 U.S.C. § 1997e(a) (emphasis added), that inmate plaintiffs could be excused from non-compliance with administrative procedures or use alternative means to exhaust their administrative remedies from the three-tier grievance and appeal process now available from the DOCS, *see Giano v. Goord,* 380 F.3d 670 (2d Cir.2004) (*"Giano II"* ) (special circumstances establish plaintiff's exhaustion); *Hemphill, supra,* 380 F.3d 680; *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (defendants waived PLRA exhaustion defense); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004) (defendants' behavior sometime renders administrative remedies unavailable for exhaustion purposes, such as plaintiff prevailing in the grievance process but defendants not implementing the grant of the relief); *see also Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004) ( *"Ortiz II"* ) (total exhaustion not required for mix of

Page 6

Not Reported in F.Supp.2d, 2009 WL 1706592 (W.D.N.Y.)
**(Cite as: 2009 WL 1706592 (W.D.N.Y.))**

exhausted and unexhausted claims).

Although not expressly part of the Second Circuit's three-step inquiry, these cases established an initial inquiry that the Court must make before beginning the three-step process, whether plaintiff "plausibly seeks to counter defendants' contention that the prisoner failed to exhaust available administrative remedies," *Hemphill, supra,* 380 F.3d at 686. If plaintiff has done this, this Court then is required to conduct the three-part inquiry. *Id* . Under this three-step inquiry, first, the Court must ask whether administrative remedies existed, and if so whether defendants' actions rendered those remedies unavailable to plaintiff. *Id.; Abney, supra,* 380 F.3d 663. Second, the Court must consider whether defendants forfeited the affirmative defense of exhaustion either by waiving it or by interfering with plaintiff's efforts to exhaust. *Johnson, supra,* 380 F.3d 691; *Ziemba, supra,* 366 F.3d 161. Third, if the Court finds that administrative remedies were available to plaintiff and that defendants have not forfeited the exhaustion defense, then the Court must ask whether there exist "special circumstances" which justify plaintiff's failure to exhaust. *Giano II supra,* 380 F.3d 670; *Rodriguez v. Westchester County Jail Correctional Dep't,* 372 F.3d 485 (2d Cir.2004); *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2003).

***6** The Second Circuit did not set forth what instances qualify as "special circumstances" but stated that courts must determine whether such circumstances exist "by looking at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Giano II, supra,* 380 F.3d at 678. The Circuit Court considered whether "special circumstances" existed in these cases and found they exist upon an inmate's reasonable (if erroneous) interpretation of DOCS regulations, *Giano II, supra,* 380 F.3d at 689–91; *see Hemphill, supra,* 380 F.3d at 689–91 (remanded on question whether regulations were clear as to effect of writing directly to superintendent and whether threat of one defendant constitutes a special circumstance). The Second Circuit also recognized an inmate's reliance upon the court's earlier construction of the law (even if later found to be erroneous) was a justifying "special circumstances." *See Rodriguez, supra,* 372 F.3d at 487 (order denying rehearing), *cited in Giano II, supra,* 380 F.3d at 675; *cf. Berry, supra,* 366 F.3d at 87–88 (in absence of justification for not following administrative remedies, dismissal of inmate's action appropriate).

B. Application of Second Circuit Standard

In the Complaint, plaintiff admits to not grieving his claims, based upon either not having access to the law library or not being aware of his remedies (*see* Docket No. 1, Compl. at 5, 6). From the record before the Court, plaintiff appears to have failed to grieve these incidents but attempted to seek relief by informal means due to his belief that there were no grievance forms or grievance procedure available at the Willard facility.

1. Grievance Procedure Available at Willard

In order to make the determination of whether an inmate has exhausted his administrative remedies, review of the process available to him is required. Correctional facilities in New York State have a three-tier grievance procedure that consists of filing a grievance with the facility's Inmate Grievance Resolution Committee ("IGRC"); then an appeal to the superintendent; then an appeal of the superintendent's decision to the Central Office Review Committee. N.Y. Comp.Codes R. & Regs. tit. 7, pt.701 (Docket No. 13, Defs. Atty. Reply Decl., Ex. B (also referred to as Dir. No. 4040)); *see Harris v. Totten,* 244 F.Supp.2d 229, 233 (S.D.N.Y.2003). The first step has the inmate filing an Inmate Grievance Complaint Form, 7 N.Y.C.R.R. § 701.5(a)(1), within twenty-one days of the incident, *id.;* N.Y. Corr. Law § 139. The facility's IGRC then reviews the grievance and attempts to resolve it informally and, if resolved to the satisfaction of the grievant inmate, the resolution shall be entered on the grievance, 7 N.Y.C.R.R. §

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2009 WL 1706592 (W.D.N.Y.)
**(Cite as: 2009 WL 1706592 (W.D.N.Y.))**

701.5(b)(2). This inmate grievance program is intended to supplement existing formal and informal channels for problem resolution, *Id.* § 701.1(b). The inmate is "encouraged to resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance," *id.* § 701.3(a). If an Inmate Grievance Complaint Form (Form # 2131) "is not readily available, a complaint may be submitted on plain paper," *id.* § 701.5(a)(1).

***7** The issue here is whether Willard has this three-tier grievance procedure as other state correctional facilities. Plaintiff claims that Willard Drug Treatment Campus does not have inmate grievance forms (Docket No. 7, Pl. Ltr. at 1, at page 6 of 7) or the three-tier grievance process (Docket No. 11, Pl. Response at 1; Pl. Notice of Motion at 1–2). Instead, plaintiff wrote to the defendant Superintendent Williams and the deputy superintendent directly and apparently received no response to his letters (Docket No. 7, Pl. Ltr. at 1, at page 6 of 7), and then plaintiff apparently did not appeal their inaction. Plaintiff later filed a grievance once he was transferred to another facility, although the viability of a grievance filed in a second facility for events in the first facility is questionable, *cf. Rosario v. Kurtz,* No. 02CV134, 2004 U.S. Dist. LEXIS 18051, at *7–10, Docket No. 38, Order of Jan. 4, 2004, at 5–6 (W.D.N.Y.2004) (Scott, Mag. J.).

Defendants argue generally that the three-tier grievance procedure exists (Docket No. 4, Defs. Memo. at 2–3), and later argue that this procedure was available in Willard (Docket No. 13, Defs. Atty. Reply ¶ 4), producing the parolee handbook which elaborated the facility's internal grievance procedure and its reference (essentially as an appeal) to the DOCS grievance procedure (*id.* Ex. A). It should be noted that other inmates at Willard were able to file grievances, *see, e.g., Nieblas v. Ricci,* No. 03CV6225, 2008 U.S. Dist. LEXIS 3404, at *10, 2008 WL 163686 (W.D.N.Y. Jan.16, 2008) (Siragusa, J.); *Lynch v. Dennison,* No. 07CV134, 2007 U.S. Dist. LEXIS 38033, at *5, 2007 WL 1556869 (W.D.N.Y. May 23, 2007) (Siragusa, J.) (*in forma pauperis* Order).

Plaintiff did not use either the internal Willard grievance procedures (by raising it at community meetings or clearings, appealing to the Treatment Team, Security Supervisor, or Executive Team, unless the executive team consists of the Superintendent in which case plaintiff did write to him in the first instance about this incident) or seek a grievance form from the Captain or file such a form about this matter. Thus, plaintiff failed to exhaust the internal grievance processes at Willard as well as the formal DOCS grievance procedures.

Plaintiff claims that he wrote to the Superintendent, the Commissioner, Deputy Commissioner and Inspector General, as well as filing a Court of Claims action (among other avenues of relief sought) seeking redress prior to commencing this action (*see* Docket No. 8; Docket No. 12, Pl. Response at 3), although he did not produce copies of the documents showing his attempts at seeking relief. Even if the informal procedure at Willard is as plaintiff represents (making a complaint with the sergeant, *cf.* Docket No. 11, Pl. Response, Jan. 3, 2009, at 1), plaintiff fails to show he exhausted this informal avenue. Plaintiff writes that an "issue being grieved never goes past the [sergeant, sic], who attempts to remedy but if that [doesn't, sic] work your days at Willard are numbered!" (*Id.*). Here, plaintiff never claims that he attempted to grieve these claims through the sergeant.

***8** Regarding the first Second Circuit step, the grievance procedures (both Willard's local processes and DOCS's grievance scheme) existed and plaintiff has not shown that defendants have hindered his ability to exercise those regimes. Ignorance of the grievance procedures does not excuse plaintiff's failure to follow them. Furthermore, plaintiff's reference to the sergeant as being a potential gatekeeper for grievances does not establish that defendants barred his ability to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

grieve since plaintiff does not name the sergeant as a defendant or as hindering his means to grieve these complaints or showed that he tried to use the sergeant to raise these grievances. Similarly, as for the second step, plaintiff generally allege that complaints raised to the sergeant go nowhere, but does not allege more specifically hindering by defendants or officials at Willard of plaintiff's ability to grieve. Defendants raised the exhaustion defense early in this motion to dismiss before filing a responsive pleading. As for the third step, the issue is whether "special circumstances" justify plaintiff's failure to exhaust. The Court next addresses the existence of such "special circumstances" here.

2. Existence of Special Circumstances

The fact that defendant superintendent Williams did not respond to plaintiff's letter, or even refer it to the appropriate grievance officials within Willard, may constitute a special circumstance for the Court to conclude that plaintiff in effect exhausted his administrative remedies, *see Abney, supra,* 380 F.3d at 667. Plaintiff does not contend that a sergeant barred him from raising these claims administratively. Instead, it appears that plaintiff was not aware of these grievance procedures. While reliance on reasonable interpretation of the grievance process has been found to constitute special circumstances, *Hemphill, supra,* 380 F.3d at 686, 689–90, ignorance or disregard of such procedures is not an excusing special circumstance.

As a result, plaintiff should be deemed **to have not exhausted** his administrative remedies and defendants' motion to dismiss on this ground should be **granted.** For a complete report, the Court next considers defendants' alternative defense regarding the personal involvement of Superintendent Williams and plaintiff's vague allegations as to the involvement of defendant Reynolds.

III. Personal Involvement

Defendants alternatively argue that the Complaint fails to allege personal involvement to state a claim against either defendant (Docket No. 4, Defs. Memo. at 3–5). First, the Complaint does not allege who performed the actions against plaintiff that caused him harm and, second, it fails to allege Superintendent Williams' personal involvement in this incident (*id.* at 4–5). Personal involvement of a defendant is a prerequisite to award damages for a claimed constitutional deprivation, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1979) (Docket No. 4, Defs. Memo. at 4).

***9** The Complaint does not specify which of the defendants did the acts alleged in either claim. Plaintiff's subsequent letter clarifies that he alleges defendant Reynolds as the actor (*see* Docket No. 11, Pl. Motion at 2, Ex. (Aug. 20, 2008, pl.letter)). But construing *pro se* papers liberally, *see Erickson, supra,* 127 S.Ct. at 220; *Boykin, supra,* 521 F.3d at 213–14, the Complaint should be construed as naming Reynolds as the alleged perpetrator in both claims. The Complaint states on its face a claim against Reynolds for his alleged involvement. Thus, as for Reynolds such claims against him that survive on exhaustion grounds, his motion to dismiss on the basis of lack of alleged personal involvement (or for plaintiff's vague allegations regarding the accused) should be **denied.**

But, as for Superintendent Williams, plaintiff makes no allegation of his role in these incidents. Plaintiff later only alleges some form of supervisory liability, claiming that Williams was the "Boss" of the facility (Docket No. 11, Pl. Notice of Motion at 2). In his letter (Docket No. 7, at 3, at pages 6 and 7 of 7) and his subsequent response (Docket No. 11, Pl. Notice of Motion at 2), plaintiff lists five types of involvement recognized by the Second Circuit, direct involvement, failure to remedy the violation after notice, creation of a policy or custom which permitted the incident, actions that constitute gross negligence in management, and actions exhibiting deliberate indifference by failing to act on information that unconstitutional acts were occurring, *see Colon v. Coughlin,* 58 F.3d 865,

873 (2d Cir.1995) (*see* Docket No. 4, Defs. Memo. at 4). Plaintiff, however, fails to allege facts to support Williams had any of these types of involvement. The only named actor (in plaintiff's subsequent letter) directly involved was Reynolds; he made no allegation that Williams was directly involved in either incident. Plaintiff does not allege furnishing any notice to Williams prior to the incident to make him responsible for remedying a subsequent violation or any notice of unconstitutional acts that Williams ignored, save possibly plaintiff's notice of the incidents themselves. Plaintiff also does not allege the existence of any custom or policy that supports the incident, save stating that Williams was the "Boss" of the facility. Finally, plaintiff does not allege any management action or inaction by Williams that would constitute gross negligence in allowing the incidents to occur. All plaintiff now contends is that Williams was the "Boss" of the facility, arguably asserting some form of supervisory liability that is not sufficient to state a claim of personal involvement to keep Williams in this case, *Colon, supra,* 58 F.3d at 973 (in summary judgment motion, plaintiff's verified complaint alleging that he wrote to defendant superintendent and no action was taken fails to raise an issue of fact as to that defendant's personal involvement). Thus, on failure to allege personal involvement, the motion to dismiss the Complaint as for Williams should be **granted.**

## CONCLUSION

***10** Based upon the above, it is recommended that defendants' motion to dismiss (Docket No. 4) be **granted as to defendant Ricky Reynolds and defendant Williams on the grounds of plaintiff's failure to exhaust his administrative remedies.** Alternatively, if reached, defendants' motion to dismiss should **granted as to defendant Melvin Williams on failure to allege personal involvement and granted,** but dismissal of claims against Reynolds based upon failure to allege personal involvement should be **denied.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d Cir.1995); *Wesolak v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See Patterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.***

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Not Reported in F.Supp.2d, 2009 WL 1706592 (W.D.N.Y.)
**(Cite as: 2009 WL 1706592 (W.D.N.Y.))**

SO ORDERED.

W.D.N.Y.,2009.
Bryant v. Williams
Not Reported in F.Supp.2d, 2009 WL 1706592 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


C
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Robert GEORGE, Jr., Plaintiff,
v.
MORRISSON-WARDEN, Lieutenant Shepard, Officer Munchy, Officer Dupred, and Guilty Officer, Defendants.

No. 06 Civ. 3188(SAS).
June 11, 2007.

Robert George, New York, New York, Plaintiff, pro se.

Robert William Yalen, Assistant United States Attorney, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.

***1** Robert George, Jr., a pre-trial detainee at the Metropolitan Correctional Center in New York ("MCC"), proceeding pro se, brings suit under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* [FN1] against defendants James Dupree, Guy Guirty, Miguel Monge, Marvin Morrisson, and Courtney Shepard,[FN2] all of whom are present or former employees of the Federal Bureau of Prisons ("BOP").[FN3] George alleges several violations of his constitutionally protected rights arising from incidents of mistreatment by defendants and other BOP employees between January 10, 2006 and May 5, 2006.[FN4] He seeks $150,000,000.00 in damages, as well as injunctive relief with regard to his claim that the defendants failed to place him in protective custody.[FN5]

FN1. 403 U.S. 388 (1971).

FN2. Defendants Dupree, Guirty, and Monge are sued incorrectly herein as "Officer Dupred," "Guilty Officer," and "Officer Munchy," respectively.

FN3. Although George's Amended Complaint ("Am.Compl.") alleges a claim under section 1983 of Title 42 of the United States Code, the defendants are named in their personal capacities as present and former employees of the BOP. As such, they are not persons acting under color of *state* law for purposes of section 1983, which does not create a cause of action against persons acting under color of *federal* law. *See* 42 U.S.C. § 1983; *Bivens,* 403 U.S. at 398. In view of George's pro se status, I will construe his section 1983 claim as an action under *Bivens. See Tavarez v. Reno,* 54 F.3d 109 (2d Cir.1995) (approving district court's recasting of a section 1983 claim brought by a pro se inmate against federal officers as a *Bivens* claim).

FN4. *See* Am. Compl. ¶ II(C).

FN5. *See id.* ¶ V.

Defendants have moved to dismiss for failure to exhaust administrative remedies before bringing suit,[FN6] for failure to state a claim under which relief can be granted,[FN7] and for failure to allege any personal involvement by the individual defendants. Plaintiff opposed this motion. For the following reasons, defendants' motion is granted and this case is dismissed.

FN6. *See* 42 U.S.C. § 1997e(a).

FN7. *See* Federal Rule of Civil Procedure 12(b)(6).

I. BACKGROUND

A. Facts

For purposes of this motion, the factual allegations contained in George's Amended Complaint are taken to be true. Between January 10, 2006 and May 5, 2006, while detained at the MCC, George was subjected to several claimed violations of his constitutionally protected rights.[FN8] Specifically, George was: (1) transferred without cause or due process [FN9] into the Special Housing Unit of the MCC by the prison's Special Investigative Supervisors; [FN10] (2) denied protective custody by defendants Morrison and Shepard; [FN11] (3) poisoned by prison food that he received from defendants Dupree, Guirty, and Monge, as well as five John Does, five Jane Does, and several other individuals not named as defendants; [FN12] and (4) sexually abused by defendant Guirty.[FN13] George had earlier alleged four additional violations of his rights-verbal abuse, insufficient access to a law library, insufficient attorney telephone calling privileges, and insufficient non-attorney telephone calling privileges-but these claims were dismissed by then-Chief Judge Michael B. Mukasey.[FN14]

FN8. *See* Am. Compl. ¶¶ II(C)-(D).

FN9. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.Opp.") at 1.

FN10. *See* Am. Compl. ¶ III(D).

FN11. *See id.*

FN12. *See id.*

FN13. *See id.*

FN14. *See* Order dated July 19, 2006 ("July 19 Order").

George initially sought administrative redress under the MCC's grievance process for the alleged constitutional violations by filing a "cop-out," [FN15] which is prison slang for an informal complaint.[FN16] Subsequently, George filed a BP-8 grievance form,[FN17] to which he received no response.[FN18] George then filed a form BP-9 [FN19] to pursue his grievance with the acting warden of the MCC (Morrisson).[FN20] Again receiving no respons, George abandoned the administrative grievance program and brought suit.[FN21]

FN15. *Id.* ¶ IV(C).

FN16. *See Baez v. Kahanowicz,* No. 03 Civ. 4658, 2007 WL 102871, at *1 (S.D.N.Y. Jan. 17, 2007) (describing "cop-outs").

FN17. *See id.* at *1 n. 3 (differentiating cop-outs from form BP-8, which is the "initial, informal grievance filing required under the Federal Bureau of Prisons Administrative Remedy Program").

FN18. *See* January 22, 2007 Letter from Plaintiff to the Court ("1/22/07 Ltr.") at 1.

FN19. *See* 28 C.F.R. § 542.14(a) (identifying form BP-9).

FN20. *See* Am. Compl. ¶ IV(F).

FN21. *See* 1/22/07 Ltr. at 1.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

B. Procedural History

George's initial Complaint in this matter, dated February 11, 2006, was received by the Court's Pro Se Office on February 15, 2006. The initial Complaint was dismissed without prejudice on April 25, 2006, by Judge Mukasey. On May 9, 2006, George filed an Amended Complaint. Four of the claims included in the Amended Complaint were dismissed *sua sponte.*[FN22] The case was then transferred to this Court on July 26, 2006. George submitted an application seeking the appointment of pro bono counsel, which was denied in an Order dated February 28, 2007. On March 20, 2007, defendants filed the instant motion to dismiss.

FN22. *See* July 19 Order.

II. LEGAL STANDARD

A. Motion to Dismiss

***2** "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary...." [FN23] When a complaint is attacked by a Rule 12(b)(6) motion to dismiss, the plaintiff need not provide "detailed factual allegations." [FN24] To survive a motion to dismiss, it is enough that the complaint "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." [FN25] Furthermore, when the plaintiff is proceeding pro se, the complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." [FN26] This is particularly important where a pro se plaintiff alleges a civil rights violation.[FN27]

FN23. *Erickson v. Pardus,* 551 U.S. ____, slip op. at 5 (2007).

FN24. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007).

FN25. *Id.*

FN26. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citation omitted).

FN27. *See Phillips v. Girdich,* 408 F.3d 147, 128 ("But as low as the requirements are for a complaint drafted by competent counsel, we hold *pro se* complaints to an even lower standard.") (citing *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam)).

The task of the court is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." [FN28] When deciding a defendant's motion to dismiss under Rule 12(b)(6), a judge must "accept as true all of the factual allegations contained in the complaint" [FN29] and "draw all reasonable inferences in plaintiff's favor." [FN30] While there are legitimate reasons to dismiss a case under Rule 12(b)(6), "[t]he case cannot, however, be dismissed on the ground that petitioner's allegations of harm were too conclusory to put these matters in issue." [FN31] Thus, the court must take the plaintiff's allegations as true, but "the claim may still fail as a matter of law if it appears ... that the plaintiff can prove no set of facts in support of its claim which would entitle [him] to relief, or if the claim is not legally feasible." [FN32]

FN28. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 176 (2d Cir.2004) (quotation marks and citation omitted).

FN29. *Bell Atlantic,* 550 U.S. 544, 127 S.Ct. at 1975 (citation omitted).

FN30. *Ofori-Tenkorang v. American Int'l Group, Inc.,* 460 F.3d 296, 298 (2d Cir.2006).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2007 WL 1686321 (S.D.N.Y.)
**(Cite as: 2007 WL 1686321 (S.D.N.Y.))**

FN31. *Erickson,* slip op. at 7 (2007).

FN32. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 457 F.Supp.2d 455, 459 (S.D.N.Y.2006) (citing *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir.2006)).

B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") mandates exhaustion by prisoners of all administrative remedies before bringing an action regarding prison conditions.[FN33] Unlike previous versions of the PLRA, which encompassed only section 1983 suits, exhaustion is now required for all "action[s] ... brought with respect to prison conditions," whether under section 1983 or "any other Federal law." [FN34] Thus, federal prisoners suing under *Bivens* must satisfy the PLRA exhaustion requirement, just as state prisoners must when suing under section 1983.[FN35]

FN33. *See* 42 U.S.C. § 1997e(a), which provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

FN34. *Porter v. Nussle,* 534 U.S. 516, 524 (2002).

FN35. *See id.*

The PLRA's exhaustion requirement is mandatory.[FN36] Failure to exhaust is an absolute bar to an inmate's action in federal court: "[section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims to court *at all."* [FN37] Because the plain language of section 1997e(a) states "no action shall be brought," an inmate must have exhausted his claims at the time of the initial filing, given that "[s]ubsequent exhaustion after suit is filed ... is insufficient." [FN38] Moreover, the exhaustion of administrative remedies must be *proper*-that is, in compliance with a prison grievance program's deadlines and other critical procedural rules-in order to suffice.[FN39] Furthermore, the United States Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [FN40]

FN36. *See id.* at 516. *See also Booth v. Churner,* 532 U.S. 732, 739 (2001).

FN37. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) (quotation marks and citation omitted, emphasis in original).

FN38. *Id.*

FN39. *See Woodford v. Ngo,* 126 S.Ct. 2378, 2386-87 (2006).

FN40. *Porter,* 534 U.S. at 532.

***3** Before bringing suit in federal court, an inmate must fully present his claim for internal resolution within the correctional facility and the BOP. The Administrative Remedy Program ("ARP") is the administrative vehicle used by the BOP.[FN41] The ARP provides a four-step process that allows an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement." [FN42] If an inmate receives a denial of-or otherwise unsatisfactory response to-his grievance at any of the first three levels of the ARP, the inmate may bring his grievance to the next level for reconsideration.[FN43] If, at any level, no response to the grievance is provided within the statutory period, an inmate may consider the grievance denied at that level.[FN44]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN41. *See* 28 C.F.R. Part 542. The ARP process begins with the filing of form BP-8, an informal presentation of the inmate's grievance to the staff. *See id.* § 542.13. If the inmate finds the result of the informal resolution process unsatisfactory, the inmate may bring his grievance to the facility's warden by filing a formal Administrative Remedy Request-form BP-9-within twenty days of the occurrence of the event which forms the basis of the grievance. *See id.* § 542.14. If the inmate finds the Warden's response unsatisfactory, the inmate may submit an Appeal-form BP-10-to the Regional Director within twenty days of the Warden's response. *See id.* § 542.15. Finally, an inmate who is not satisfied with the Regional Director's response may submit an Appeal-form BP-11-to the General Counsel within thirty days of the Regional Director's response. *See id.*

FN42. 28 C.F.R. § 542.10.

FN43. *See id.* §§ 542.14-542.15.

FN44. *See id.* § 542.18. *Accord* *Williams v. United States,* No. 02 Civ. 6523, 2004 WL 906221, at *7 (S.D.N.Y. Apr. 28, 2004) ("The BOP's failure to respond to a grievance within the specified time period constitutes a denial of the grievance and permits the inmate to appeal the decision to the next highest level.").

In order to survive a motion to dismiss, an inmate/plaintiff must have fully exhausted administrative remedies at all levels of appeal .[FN45] In sum, an inmate/plaintiff must file a grievance and follow it through all three levels of appeal offered by the BOP before bringing suit in Federal court. [FN46] Thus, an inmate/plaintiff's claim is not exhausted until he appeals to the BOP's General Counsel and receives a final decision regarding his grievance.[FN47]

FN45. *See* *Mendez v. Artuz,* No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) ("[T]he exhaustion requirement is not satisfied until the administrative process has reached a final result.").

FN46. *See* *Francis v. Zavadill,* No. 06 Civ. 249, 2006 WL 3103324, at *3 (S.D.N.Y. Oct. 30, 2006).

FN47. *See* *Mendez,* 2002 WL 313796, at *2.

III. DISCUSSION

Even if George's allegations concerning his filing of grievances are taken to be true, it is clear that George did not fully exhaust the ARP. Although the applicability of the PLRA's exhaustion requirement is indisputable,[FN48] George failed to file the requisite appeals to the Regional Director and General Counsel of the BOP before bringing this action.[FN49] Plaintiff's own statements demonstrate that an appeals process was available to him [FN50] and that he was aware of the BOP's regulatory requirements . [FN51] However, after submitting an initial informal request for resolution, and then filing an Administrative Remedy Request with the Warden, George failed to exhaust the remaining two levels of appeal. For this reason, George's Amended Complaint must be dismissed.

FN48. Indeed, the form complaint used by George to initiate this action quotes the PLRA's exhaustion requirement. *See* Am. Compl. ¶ IV.

FN49. *See id.* ¶ IV(C), (F)(3).

FN50. George's Amended Complaint initially denies the existence of an administrative grievance procedure, *see id.* ¶ IV(B), but

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

then acknowledges George's partial use of such a procedure. *See id* . ¶ IV(F). In his opposition papers, however, plaintiff recognizes that the ARP was available. *See* Pl. Opp. at 2.

FN51. *See* Pl. Opp. at 2 ("Even if BOP regulations require the four-step process ...").

The Second Circuit does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not appeal to the highest available level of administrative review and provides no justifiable explanation for his failure to do so.[FN52] In his opposition papers, George attempts to justify his failure to meet the exhaustion requirement on the ground that he was "stone-walled" in his attempts to utilize the ARP,[FN53] and that in light of the Warden's failure to respond to his BP-9 submission, he could not "be expected to pursue this issue." [FN54] It is well-settled, however, that *"even when an inmate files a grievance and receives no response,* he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." [FN55] Moreover, the ARP, with which George has admitted familiarity, [FN56] specifically addresses situations in which a grievant receives no response within the statutory period.[FN57] Thus, George's attempt to excuse his failure to exhaust by arguing that he could not "be expected to pursue this issue" administratively given the Warden's lack of response, is unavailing.[FN58] Because George has provided no justifiable explanation for his failure to appeal, his case must be dismissed for failure to exhaust administrative remedies.

FN52. *See Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2004) (stating that "in the absence of any justification for not pursuing available remedies," plaintiff/inmate's federal lawsuits were properly dismissed for failure to exhaust).

FN53. Pl. Opp. at 2.

FN54. *Id.*

FN55. *Bligen v. Griffen,* No. 06 Civ. 4400, 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007) (emphasis added). *See also Williams v. City of New York,* No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N .Y. Nov. 1, 2005) ("Even where an inmate files a grievance yet receives no response, the inmate must nevertheless exhaust his appeals.").

FN56. *See* Pl. Opp. at 2.

FN57. *See* 28 C.F.R. § 542.18 (allowing inmates to "consider the absence of a response to be a denial at that level" if the allotted time expires).

FN58. Pl. Opp. at 2.

***4** While George cannot *justify* his failure to fully exhaust the administrative process before bringing this action, he did take reasonable steps in pursuit of administrative redress in conformity with the ARP-namely, the filing of forms BP-8 and BP-9-before bringing this action.[FN59] In this regard, George's case is similar to *Rhames v. Federal Bureau of Prisons,* in which the inmate/plaintiff followed his grievance through the second (BP-9) level, in addition to making "persistent complaints" to BOP personnel, before bringing suit.[FN60] In *Rhames,* as here, the inmate/plaintiff had received no response to his administrative grievances. [FN61] The court noted that while it "is important that prisoners comply with administrative procedures designed by the [BOP] ... it is equally important that form not create a *snare of forfeiture* for a prisoner seeking redress for perceived violations of his constitutional rights." [FN62] With those considerations in mind, the *Rhames* court concluded that the inmate/plaintiff had indeed satisfied the PLRA's exhaustion requirement by pursuing his grievance to the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

BP-9 level.

FN59. *See id. See also* Am. Compl. ¶ IV(F).

FN60. 2002 WL 1268005, at *5 (S.D.N.Y. Jun. 6, 2002).

FN61. *See id.* at *3.

FN62. *Id.* (emphasis added).

The Supreme Court has since instructed that the exhaustion requirement can only be satisfied with *proper* exhaustion.[FN63] Under this standard, George's claims cannot be considered exhausted, as he only pursued his grievances to the second of four available levels. Nonetheless, I conclude that dismissing George's Amended Complaint with prejudice-and thereby denying him any possibility of redress for his perceived wrongs [FN64]-would not be equitable. Such a result creates a perverse incentive for prison administrators by rewarding them for ignoring an inmate's grievances, causing the inmate to either give up or prematurely file suit and suffer dismissal based on failure to exhaust administrative remedies, thereby foreclosing possibility of redress. [FN65] A dismissal of George's complaint with prejudice would indeed create a “snare of forfeiture.” [FN66]

FN63. *See Woodford,* 126 S.Ct. at 2387.

FN64. The ARP requires that an inmate dissatisfied with the response his grievance receives at the BP-9 level file an appeal within twenty days of the filing of that response. *See* 28 C.F.R. § 542.15. Since the absence of a response within the statutory time period constitutes a de facto denial at that level, *see id.* at § 542.14, George's BP-9 was denied twenty days after he filed it. In the time between the denial of his BP-9 submission and the signing of this Order, George's window for appealing his grievance to the BP-10 level has closed, and the ARP no longer offers him the possibility of redress.

FN65. It is worth noting that the ARP explicitly places responsibility on the Warden and various other officials to “[a]cknowledge receipt of a Request ... submitted by an inmate[,]” *id.* at § 542.11(a)(1), and to “[r]espond to and sign all Requests....” *Id.* at § 542.11(a)(4). George's allegations indicate that defendants have ignored the mandates of the same statute they invoke in support of their motion to dismiss.

FN66. *Rhames,* 2002 WL 1268005, at *5.

Prison officials are entitled under the PLRA to demand conformity with the administrative grievance procedures offered to prisoners.[FN67] The case law mandates that an inmate's failure to fully exhaust before bringing suit requires dismissal.[FN68] However, George's alleged attempts to utilize the ARP have earned him a response from the MCC. Therefore, assuming that George did indeed file grievances that were pursued to the BP-9 level, should George decide to appeal the de facto denial of his grievance to the BP-10 level within thirty (30) days of this Order, the BOP is hereby ordered to consider his appeal timely for purposes of the ARP and issue a response within thirty (30) days of receipt thereof. If and when George satisfies the exhaustion requirements of the PLRA, by appealing to the fourth (BP-11) level, he may again file suit in federal court.

FN67. *See Williams,* 2005 WL 2862007, at *10.

FN68. *See Neal,* 267 F.3d at 122.

Furthermore, plaintiff's request for injunctive relief is denied. A permanent injunction may only be

issued after a valid adjudication of the merits and a showing of actual success on the merits.[FN69] Because plaintiff's case has been dismissed, his request that he be placed in "protective custody" [FN70] must be denied.[FN71]

FN69. *See Francis,* 2006 WL 3103324, at *4 (citing *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12 (1987)).

FN70. Am. Compl. ¶ V.

FN71. As George's non-compliance with the PLRA sufficiently disposes of this motion, I need not address defendants' alternative grounds for dismissal at this time.

IV. CONCLUSION

***5** For the reasons stated above, defendants' motion to dismiss is granted and this case is dismissed without prejudice. The Clerk of the Court is directed to close this motion (Document # 20) and this case.

SO ORDERED:

S.D.N.Y.,2007.
George v. Morrison-Warden
Not Reported in F.Supp.2d, 2007 WL 1686321 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Anthony G. GILL, Plaintiff,
v.
Kathleen FRAWLEY, R.N., Elmira C.F.; Charlie Peet, Correction Officer, Elmira C.F.; and S. Graubard, Inmate Grievance Program Supervisor, Elmira C.F., Defendants.

No. 9:02-CV-1380.
June 22, 2006.

Anthony G. Gill, Comstock, NY, Plaintiff, Pro Se.

Eliot L. Spitzer, Attorney General for the State of New York, Senta B. Siuda, Esq., Assistant Attorney General, Syracuse, NY, for Defendants.

**DECISION & ORDER**

THOMAS J. McAVOY, Senior United States District Judge.

***1** This *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 was referred to the Honorable George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c).

The Report-Recommendation dated May 9, 2006 recommended that Defendants' motion for summary judgment be granted. The Plaintiff filed objections to the Report-Recommendation, essentially raising the same arguments presented to the Magistrate Judge.

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Having reviewed the record *de novo* and having considered the issues raised in Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Lowe for the reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that Defendants' motion for summary judgment is **GRANTED** and Plaintiff's complaint is **DISMISSED** in its entirety. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

GEORGE H. LOWE, Magistrate Judge.

***REPORT-RECOMMENDATION***

This matter has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule N.D.N.Y. 72.3(c). In this *pro se* civil rights complaint brought under 42 U.S.C. § 1983, Inmate Anthony G. Gill ("Plaintiff") alleges that Elmira Correctional Facility ("Elmira C.F.") Nurse Kathleen Frawley, Elmira C.F. Correction Officer ("C.O.") Charlie Peet, and Elmira C.F. Inmate Grievance Program Supervisor Sheryl Graubard (collectively "Defendants") violated his rights under the First, Eighth, and Fourteenth Amendments when (1) on April 23, 2002, Defendants

Frawley and Peet recklessly and without cause confiscated Plaintiff's medically authorized custom-made arch supports with metal inserts, and subsequently lost or destroyed those arch supports, and (2) at some point between April 29, 2002, and July 12, 2002, Defendant Graubard failed to file, process and hold a hearing on Plaintiff's April 29, 2002, grievance against Defendants Frawley and Peet regarding those arch supports. (Dkt. No. 1.)

Currently before the Court is Defendants' motion for summary judgment. (Dkt. No. 55.) Generally, Defendants' motion raises the following four issues: (1) whether Plaintiff has failed to establish (or even state) a claim against Defendant Graubard under the First and/or Fourteenth Amendments for improperly handling his grievance; (2) whether Plaintiff has failed to establish (or even state) a claim against Defendants Frawley and Peet under the Eighth Amendment for deliberate indifference to a serious medical need; (3) whether Plaintiff has failed to exhaust his administrative remedies with regard to his claim under the Eighth Amendment that Defendants Frawley and Peet improperly confiscated his arch supports; and (4) whether Defendants are entitled to qualified immunity. (Dkt. No. 55, Part 6 [Defs.' Mem. of Law].)

***2** For the reasons discussed below, I answer the first two questions in the affirmative (and thus do not have to reach the second two questions). As a result, I recommend that Defendants' motion for summary judgment be granted.

### I. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material [FN1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

FN1. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986). The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 477 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ross v. McGinnis,* 00 Civ. 0275, 2004 WL 1125177, *8 (W .D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

Imposed over this general burden-shifting framework is the generous perspective with which the Court must view a *pro se* plaintiff's pleadings and papers, and a civil rights plaintiff's pleadings and papers. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta,* 867 F.2d 146, 148 (2d Cir.1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 467 (S.D.N.Y.1998) (*pro se* civil rights action), *aff'd in part, vacated in part on other grounds,* 205 F.3d 1324 (2d Cir.2000) (unpublished decision). For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, the Court must construe the plaintiff's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2006 WL 1742738 (N.D.N.Y.)
**(Cite as: 2006 WL 1742738 (N.D.N.Y.))**

complaint and opposition papers liberally so as to raise the strongest arguments that they suggest. *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir.2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F.Supp. 794, 799 (W.D.N.Y.1997) (motion for summary judgment in civil rights case).

***3** However, although "[t]he work product of *pro se* litigants should be generously and liberally construed, ... [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual." *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994). In other words, "[p]roceeding pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for summary judgment ." *Bussa v. Aitalia Line Aeree Italiane S.p.A.,* 02-CV10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord, Durran v. Selsky,* 251 F.Supp.2d 1208, 1211 (W.D.N.Y.2003) [citations omitted].

Moreover, "there are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude." *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n. 10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in the Northern District alone); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n. 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 lawsuits in Northern District alone).[FN2] I note that, in such cases, the overly litigious inmate is not subjected to a heightened pleading requirement, only denied the leniency normally afforded to *pro se* litigants and civil rights litigants.

FN2. *See also Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to afford a *pro se* civil rights inmate the sort of lenient treatment normally afforded *pro se* civil rights litigants, because the inmate was "an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements," who at one point had at least 30 simultaneously pending lawsuits); *Johnson v. Eggersdorf,* 97-CV-0938, Report-Recommendation, at 1, n. 1 (N.D.N.Y. Apr. 28, 1999) (Smith, M .J.) (denying leniency to *pro se* civil rights inmate who at one point had 12 simultaneously pending lawsuits in Northern District), *adopted,* 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *aff'd,* 8 Fed. Appx. 140 (2d Cir. May 17, 2001) (unpublished opinion); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000) (applying *Davidson* to *pro se* civil rights inmate who had 10 suits pending in district); *Brown v. Selsky,* 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n. 1 (W.D.N.Y. Jan. 10, 1995) (denying leniency to *pro se* civil rights inmate who had seven cases pending in district); *but see McFadden v. Goord,* 04-CV-0799, 2006 WL 681237, at *1, n. 3 (N.D.N.Y. March 14, 2006) (Kahn. J.) (refusing to deny leniency to *pro se* civil rights inmate, despite fact that he had seven cases pending in other districts in mid-1990s).

Here, the circumstances warrant denying Plaintiff the leniency normally afforded to *pro se* civil rights litigants, for the reasons stated by Defendants in their Memorandum of Law. (Dkt. No. 55, Part 6, at 2-4 [Defs.' Mem. of Law].) Most notably, the Second Circuit has recognized Plaintiff as "no stranger either to the grievance system or to the federal courts." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir.2004). Furthermore, this Court recently denied Plaintiff the leniency normally afforded to *pro se* civil rights litigants. *Gill v. Riddick,* 03-CV-1436, 2005 U.S. Dist.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

LEXIS 5374, at *7 & note 3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (listing 20 cases filed by Mr. Gill in this District alone). I would add only that, in addition to the 20 or more cases that Plaintiff has filed in this District, Plaintiff has filed at least five other cases in the Southern District of New York.[FN3]

FN3. *See Gill v. DeFrank,* No. 00-0235, 2001 U.S.App. LEXIS 7103 (2d Cir. Apr. 16, 2001) (affirming order of U.S. District Court for Southern District of New York granting summary judgment to defendants); *Gill v. Jones,* 95-CV-9031, 2001 U.S. Dist. LEXIS 17674 (S.D.N.Y. Oct. 31, 2001) (granting defendants' motion for summary judgment); *Gill v. Bracey*, 99-CV-10429, 2001 U.S. Dist. LEXIS 9875 (S.D.N.Y. July 11, 2001) (granting defendants' motion for summary judgment); *Gill v. PACT Org.,* 95-CV-4510, 1997 U.S. Dist. LEXIS 13063 (S.D.N.Y. Aug. 28, 1997) (granting defendants' motion for summary judgment); *Gill v. Gilder*, 95-CV-7933, 1997 U.S. Dist. LEXIS 1236 (S.D.N.Y. Feb. 10, 1997) (granting defendants' motion for summary judgment).

Based on a cursory review of these cases, it appears that Plaintiff currently has two “strikes” pending against him for purposes of 28 U.S.C. § 1915(g)'s “three strikes rule.” *See Gill v. DeFrank,* 8 Fed. Appx. 35 (2d Cir.2001) (affirming district court's grant of summary judgment to defendants); *Gill v. Pflueger*, 02-CV-0130, Report-Recommendation (N.D.N.Y. Nov. 14, 2002) (DiBianco, M.J.) (recommending that district judge grant defendants' motion to dismiss for failure to state a claim), *adopted by* Order (N.D.N.Y. Jan. 30, 2003) (Hurd, J.).

## II. STATEMENT OF MATERIAL FACTS

***4** The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record [FN4] and are not specifically controverted by the non-movant.[FN5] A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[FN6] In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[FN7]

FN4. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243-245 (2d Cir.2004) (“If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented.... [I]n determining whether the moving party has met this burden ..., the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.”) [citation omitted]; *see, e.g .,* *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (“In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3). Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.”) [emphasis added].

FN5. *See* Local Rule 7.1(a)(3) ( *“Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*”).

FN6. *See Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002) (“We agree with those circuits that have held that Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.”) (citations omitted);

*accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN7. *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d. Cir.2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson,* 251 F.3d 345, 361 (2d Cir.2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied,* 536 U.S. 922 (2002); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed.R.Civ.P. 56(c) ("The judgment sought shall be rendered forthwith if the ... affidavits ... show that there is no genuine issue as to any material fact....").

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge." [FN8] An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[FN9] In addition, such an affidavit (or verified complaint) must not be conclusory.[FN10] An affidavit (or verified complaint) is conclusory if, for example, its assertions lack any supporting evidence or are too general.[FN11] Moreover, "[a]n affidavit must not present legal arguments." [FN12]

FN8. Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.,* 44 F.3d 1082, 1084 (2d Cir.1995) [citations omitted], *cert. denied sub nom., Ferrante v. U.S.,* 516 U.S. 806 (1995).

FN9. *See Patterson,* 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'... [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."); *Sellers v. M .C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir.1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon information and belief.... Because there is no way to ascertain which portions of [Defendant's] affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top Assoc., Inc.,* 425 F.2d 92, 97 (2d Cir.1970) (rejecting affidavit made on "suspicion ... rumor and hearsay"); *Spence v. Maryland Cas. Co.,* 803 F.Supp. 649, 664 (W.D.N.Y.1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd,* 995 F.2d 1147 (2d Cir.1993).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN10. *See* Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate,* 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

FN11. *See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ), *cert. denied,* 474 U.S. 829 (1985); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

FN12. N.D.N.Y. L.R. 7.1(a)(2).

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." FN13

FN13. *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-555 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 Fed. Appx. 383 (2d Cir.2005) (unreported decision).

While I apply these legal principles below in the Analysis section of this Report-Recommendation (to the extent necessary), I pause to make three general observations. First, Defendants' Rule 7 .1 Statement is very brief. (Dkt. No. 55, Part 3.) Second, Plaintiff's Rule 7.1 Response violates Local Rule 7.1(a)(3) by not mirroring Defendants' Rule 7.1 Statement in matching numbered paragraphs, and by often not setting forth a specific citation to the record where an (alleged) factual issue arises. (Dkt. No. 58 [attaching document entitled "Plaintiff's Affirmation / 7.1(e) Statement"].) Third, although Plaintiff's Complaint is verified, several paragraphs of that Verified Complaint are made on "information and belief." (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 4, 5, 21, 27, & n. 1, 3.)

## III. ANALYSIS

### A. Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendant Graubard Under the First and/or Fourteenth Amendments for Improperly Handling His Grievance

Plaintiff asserts the following allegations against Defendant Graubard: (1) that, during the days and weeks following the filing of Plaintiff's grievance against Defendants Frawley and Peet on April 29, 2002 (regarding their confiscation of Plaintiff's arch supports on April 23, 2002), Defendant Graubard failed to "process," and hold a hearing on, that grievance, and (2) that, at some point, between April 29, 2002, and July 12, 2002 (when Defendant Graubard wrote a memorandum to Plaintiff stating that she could find no such grievance at Elmira C.F.), Defendant Graubard destroyed or lost that grievance, claiming on July 12, 2002 that it had never been filed.[FN14] Plaintiff alleges that, through these actions, Defendant Graubard "violated plaintiff ['s] [rights under the] 1st and 14th Amendment of the U.S. Constitution [and] DOCS' Directive 4040." [FN15]

FN14. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26, 30, 31, n. 4, & Exs. G, H [Plf.'s Compl.].)

FN15. (Dkt. No. 1, Attached "Statement of Facts," ¶ 31 [Plf.'s Compl.].)

***5** Defendants argue that Plaintiff has failed to establish (or even state) a claim against Defendant Graubard under the First or Fourteenth Amendments with regard to the handling of Plaintiff's (alleged) April 23, 2002 grievance, because, even if Defendant Graubard failed to comply with New York State grievance procedures (as set forth in DOCS Directive No. 4040), such a failure would not constitute a violation of the First or Fourteenth Amendments. [FN16]

FN16. (Dkt. No. 55, Part 6 at 6-7 [Def.'s Mem. of Law].)

Plaintiff fails to respond to this argument.[FN17] Defendants are correct to the extent that they argue that, by failing to respond to Defendants' argument, Plaintiff may be deemed to have "consented" to that argument under Local Rule of Practice 7.1(b)(3).[FN18] However, Defendants are incorrect to the extent they argue that this failure by Plaintiff *automatically* results in the dismissal of Plaintiff's First and Fourteenth Amendment claims against Defendant Graubard with

regard to the handling of Plaintiff's (alleged) April 23, 2002 grievance.[FN19] As a threshold matter, of course, the Court must always determine whether a movant's legal argument has merit.[FN20] As a result, I must pass on the merits of Defendants' argument.

FN17. (Dkt. No. 58 [Plf.'s Response Papers].)

FN18. *See Beers v. GMC,* 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3] ); N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia,* a memorandum of law); *cf.* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so *respond,* summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

FN19. (Dkt. No. 59, Part 1, ¶ 12 [Defs.' Reply Affirm.].)

FN20. *See* Fed.R.Civ.P. 56(e) ("If the adverse party does not ... respond [with affidavits or other papers setting forth specific facts showing that there is a genuine issue for trial], summary judgment, *if appropriate,* shall be entered against the adverse party."); N.D.N.Y. L.R. 7.1(b)(3) (providing that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown," *only where* the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."); *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically.").

I agree with Defendants that the manner and timing in which grievances are *investigated* and *decided* (e.g., as set forth in DOCS Directive No. 4040) do not create a protected liberty interest.[FN21] (Indeed, I would add that the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [FN22] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [FN23]) Clearly, however, the right to *file* a prison grievance is protected by the First and Fourteenth Amendments .[FN24] Here, part of Plaintiff's claim against Defendant Graubard is that she interfered with Plaintiff's properly filed grievance, losing or destroying that grievance (and, in effect, rendering that grievance "not filed").

FN21. *See, e.g., Odom v. Poirier,*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *35-38 (S.D.N.Y. Dec. 10, 2004) ("[T]he manner in which grievance investigations are conducted [as set forth in DOCS Directive No. 4040] do not create a protected liberty interest."); *Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) ("The corrections officers' failure to properly address [plaintiff's] grievance by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest."); *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 389, n. 3 (W.D.N.Y.1998) (dismissing claim in which inmate alleged that director of inmate grievance program "violated his 14th Amendment rights by lying and forging documents and by failing to conduct a fair and impartial investigation into grievances that [the inmate] filed against certain correction officers"); *Harris v. Keane,* 962 F.Supp. 397, 406 (S.D.N.Y.1997) ("[T]he prison regulations requiring that a grievance disposition be returned with 15 days does not create an interest to which due process rights attach.").

FN22. *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

FN23. *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

FN24. *See United Mine Workers v. Illinois State Bar Ass'n,* 389 U . S. 217, 222 (1967) ("[T]he right[ ] to ... petition for a redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights."); *Morales v. Mackalm,* 278 F .3d 126, 131 (2d Cir.2002) ("Filing a grievance is protected activity."); *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[Plaintiff's] filing of a grievance ... is constitutionally protected.... Retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right."); *Odom v. Poirier,* 99-CV-4933, 2004 U.S. Dist. LEXIS 25059, at *37 (S.D.N.Y. Dec. 10, 2004) ("[T]he filing of grievances is constitutionally protected...."); *Salahuddin v. Mead,* 95-CV-8581, 2002 U.S. Dist. LEXIS 15827, at *9 (S.D.N.Y. Aug. 26, 2002) ("Filing a grievance against a prison officer is protected by the First and Fourteenth Amendments of the U.S. Constitution.... Because filing a grievance is constitutionally protected, retaliation against prisoners who file grievances is actionable under § 1983."); *Walker v. Pataro,* 99-CV-4607, 2002 U.S. Dist. LEXIS 7067, at *60 (S.D.N.Y. Apr. 23, 2002) ("The law is clear that prison officials may not retaliate against an inmate for exercising his constitutional rights, including the right to file a prison grievance.").

However, Plaintiff's claim against Defendant Graubard for interfering with Plaintiff's right to file a grievance still fails because, to succeed on such a claim (whether it is asserted under the First or Fourteenth Amendments), Plaintiff must allege and establish that Defendant Graubard acted intentionally or deliberately; FN25 and, here, no such allegation or evidence exists. Rather, *at most,* the evidence might indicate some neglect on the part of Defendant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Graubard. However, negligence is not enough to give rise to an action under Section 1983.[FN26]

FN25. *See, e.g., Graham,* 89 F.3d at 80 ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") [internal quotation marks, ellipses and citations omitted]. For example, to the extent that Plaintiff is alleging that Defendant Graubard *retaliated* against Plaintiff (by losing or destroying Plaintiff's grievance) for Plaintiff having exercised his First Amendment right to file a grievance, if Plaintiff does not allege and establish that Defendant Graubard was acting intentionally, he cannot meet the *causation* element of the three-part retaliation test, i.e., that it was the filing of the grievance (and not, say, simple neglect or an excusable mistake) that *caused* Defendant Graubard to lose or destroy Plaintiff's grievance.

FN26. *See Herrera v. Scully,* 815 F.Supp. 713, 726 (S.D.N.Y.1998) ("[E]ven if [the inmate's] allegations are held to support the claim that the Defendants acted negligently in violating the Directives [including DOCS Directive No. 4040], such negligent violations of [that Directive] still does not give rise to a § 1983 cause of action] ).

For example, noticeably absent from this case is any evidence (or even an allegation) that, during the expiration of the 14-day time period in which Plaintiff had to file his grievance, (1) Defendant Graubard instructed Inmate Grievance Sergeant Volker or an Inmate Grievance Clerk to represent to Plaintiff that his grievance had been received and filed, and that a hearing was imminent, or (2) Defendant Graubard even knew that those two individuals had (allegedly) been making such representations. Plaintiff does not even expressly and non-conclusively allege that Defendant Graubard was *aware* that Plaintiff had filed a grievance on April 29, 2002.

***6** The closest Plaintiff comes to alleging any personal involvement of Defendant Graubard in the apparent misunderstanding or mistake following the apparent filing of Plaintiff's grievance on April 29, 2002 is when Plaintiff alleges, in an attachment to his Complaint, that (1) Defendant Grabuard "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell for an "interview," and (2) on May 28, 2002, Plaintiff wrote to Defendant Graubard inquiring about the status of his grievance.[FN27] However, these allegations are not verified. I am not inclined to treat them as verified by deeming them incorporated by reference in the Verified Complaint, given Plaintiff's loss of special status as a *pro se* civil rights litigant (due to his litigiousness). Even if I were so inclined, the allegations would not create an issue of fact. Plaintiff does not allege that the reason Defendant Graubard (allegedly) "regularly sent" the Inmate Grievance Clerk in question to Plaintiff's cell to interview, or be interviewed by, Plaintiff was to talk to Plaintiff *about Plaintiff's April 29, 2002 grievance* (as opposed to some other subject).[FN28] Furthermore, Plaintiff does not attach a copy of his alleged May 28, 2002 letter to Defendant Graubard, or even allege that Defendant Graubard even read the letter (indeed, Plaintiff admits that Defendant Graubard did not respond to the letter).[FN29]

FN27. (Dkt. No. 1, Ex. H [Plf.'s Grievance No. MHK-6858-02].)

FN28. (*Id.*)

FN29. (*Id.*)

As a result, I recommend that the Court dismiss Plaintiff's First Amendment claim and Fourteenth Amendment claim against Defendant Graubard.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**B. Whether Plaintiff Has Failed to Establish (or Even State) a Claim Against Defendants Frawley and Peet under the Eighth Amendment for Deliberate Indifference to a Serious Medical Need**

Defendants correctly recite the legal standard that governs Plaintiff's claim of inadequate medical care under the Eighth Amendment. Generally, to prevail on such a claim, Plaintiff must show two things: (1) that Plaintiff had a *sufficiently serious* medical need; and (2) that Defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Defendants argue that Plaintiff's claim for deliberate indifference to his "deformity in both feet" should be dismissed because Plaintiff has failed to establish either that (1) his deformity constituted a *sufficiently serious* medical condition for purposes of the Eighth Amendment, or (2) any Defendant exhibited the sort of reckless disregard necessary to show *deliberate indifference* to that serious medical condition for purposes of the Eighth Amendment.[FN30]

FN30. (Dkt. No. 55, Part 6 at 8-17 [Def.'s Mem. of Law].)

**1. Serious Medical Need**

I agree with Defendants that Plaintiff's medical condition does not constitute a serious medical need for purposes of the Eighth Amendment, although I reach this conclusion based on somewhat different reasons than those offered by Defendants.

Plaintiff alleges (and the evidence indicates) that, at the time of the alleged deprivation in question, he had (1) a birth defect consisting of "deformity in both feet" which resulted in, at various times, prescriptions for orthopedic footwear (e.g., custom-made arch supports, a/k/a "orthoses" or "orthotics," with extra-deep boots), and (2) a bulging disc in his spine ("spondylosis"), arthritis in both knees, and lower back pain.[FN31]

FN31. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 1, 3, 7, 10, 11, 23, 29 & Exs. A, B, D, E, F [Plf.'s Verified Compl., often associating his foot condition with his knee condition and back pain, and attaching his medical records]; Dkt. No. 55, Parts 3-4, ¶¶ 8-10 & Exs. E-G [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records]; Dkt. No. 58, Exs. A-E [Plf.'s Rule 7.1 Response, attaching Plf.'s medical records]; Dkt. No. 55, Part 4, at 22, 29-30 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg,* 02-CV-0082, N.D.N.Y .]; Dkt. No. 55, Part 4, at 65 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero,* 01-CV-0082, N.D.N.Y.) ]; *see also* Dkt. No. 26 at 1 [Order of Judge McAvoy, dated 9/26/03, including Plf.'s spondylosis, knee arthritis, and lower back pain among facts material to motion to dismiss].)

***7** After carefully considering the relevant case law, I conclude that Plaintiff's medical conditions, even when considered together, do not constitute a sufficiently serious medical condition for purposes of the Eighth Amendment because they do not constitute a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996). Specifically, in reaching my conclusion, I rely on numerous cases that are factually analogous to the present case.[FN32] Plaintiff does not, in his response papers, offer any case law or evidence that leads me to another conclusion.[FN33]

FN32. *See, e.g., Veloz v. State of New York,* 339 F.Supp.2d 505, 511, 522-527 (S.D.N.Y.2004) (painful and degenerative spondylosis was not serious medical need, but physical ailments resulting from botched

Page 12

Not Reported in F.Supp.2d, 2006 WL 1742738 (N.D.N.Y.)
**(Cite as: 2006 WL 1742738 (N.D.N.Y.))**

surgery to alleviate that back problem, which ailments included loss of feeling from waist down and severe bladder problems, was serious medical need); *McKinnis v. Williams*, 00-CV-8357, 2001 U.S. Dist. LEXIS 10979, at *2, 9-10 (S.D.N.Y. Aug. 7, 2001) (prisoner's foot problem, which required "medical shoes" that were flat, was not sufficiently serious); *Chatin v. Artuz,* 95-CV-7994, 1999 U.S. Dist. LEXIS 11918, at *4-6, 11 & n. 5 (S.D.N.Y. Aug. 4, 1999) (prisoner's foot condition, which involved pain and swelling and required "orthotic" arch supports, was not sufficiently serious), *aff'd,* No. 99-0266, 2002 U.S. Dist. LEXIS 86 (2d Cir. Jan. 3, 2002) (unpublished opinion); *Veloz v. New York,* 35 F.Supp.2d 305, 309, 312 (S.D.N.Y.1999) (prisoner's foot problem, which involved arthritis and pain, and which required "a better shoe and sneaker with a built-in arch support" was not sufficiently serious); *Alston v. Howard,* 925 F.Supp. 1034, 1038-1040 (S.D.N.Y.1996) (prisoner's ankle condition, which caused pain in ankle and foot, and which caused Plaintiff to receive a prescription for orthopedic boots, was not sufficiently serious); *Cole v. Scully*, 93-CV-2066, 1998 U.S. Dist. LEXIS 5127, at *3-7, 12-20 (S.D.N.Y. Apr. 18, 1995) (prisoner's foot problem, and resulting pain, which required him to wear special footwear, including extra-wide boots and sneakers, was not sufficiently serious), *aff'd,* No. 95-2274, 1995 U.S.App. LEXIS 39859 (2d Cir. Nov. 21, 1995) (unpublished opinion); *see also Dixon v. Nusholtz,* No. 98-1637, 1999 U.S.App. LEXIS 13318, at *1, 5 (6th Cir.1999) (prisoner's need for orthopedic shoes was not a "grave medical need" under Eighth Amendment); *Jackson v. O'Leary*, 89-CV-7139, 1990 U.S. Dist. LEXIS 17249, at *2, 4 (1990) (N.D.Ill.Dec. 17, 1990) (prisoner's foot problem requiring him to wear only soft gym shoes was not one of "especially grave concern" for purposes of Eighth Amendment).

FN33. (Dkt. No. 58, ¶¶ 31-38 & Ex. A [Plf.'s Rule 7.1 Response].)

I note that my conclusion that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment is further supported by certain of Plaintiff's deposition and trial testimony submitted by Defendants-specifically, that (1) on June 4, 2003, Plaintiff testified that he "never" uses a wheelchair,[FN34] and (2) on April 29, 2003, and June 4, 2003, Plaintiff testified that he walks on a treadmill and does squats (among other things) for exercise.[FN35]

FN34. (Dkt. No. 55, Part 4, at 29-30, 67-68 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg,* 02-CV-0082, N.D.N.Y.].)

FN35. (Dkt. No. 55, Part 4, at 65-66, 71 [Ex. D to Defs.' Rule 7.1 Statement, attaching Apr. 29, 2003 trial testimony of Plaintiff from *Gill v. Butero,* 01-CV-0082, N.D.N.Y.) ].)

However, I also note that I do not rely on certain other deposition testimony offered by Defendants, in which (1) Plaintiff admits that he played football, tennis and baseball in high school,[FN36] and (2) in listing his physical disabilities on June 4, 2003, he included several conditions (e.g., a bulging disc or spondylosis) but not any condition regarding his feet.[FN37] The materiality of the first piece of testimony appears suspect, in my opinion, given that Plaintiff was 47 years of age at the time of the alleged deprivation-presumably about 30 years after he apparently played sports in high school. Also appearing suspect, in my opinion, is the materiality of the second piece of testimony.[FN38] The proffered materiality of this tes-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

timony appears to be that it supports the conclusion that Plaintiff's foot condition was not a "disabling medical condition." [FN39] However, I do not understand how that issue (regarding whether Plaintiff's foot condition was "disabling") relates to the issue at hand in this litigation (regarding whether Plaintiff's condition was "sufficiently serious" for purposes of the Eighth Amendment). In any event, it appears beyond reasonable dispute that Plaintiff has adduced at least *some* evidence that he had a foot deformity at the time in question (although that deformity does not rise to the level of a sufficiently serious medical condition for purposes of the Eighth Amendment).

FN36. (Dkt. No. 55, Part 4, at 53 [Ex. B to Defs.' Rule 7.1 Statement, attaching Plf.'s Feb. 6, 2002 deposition testimony from *Gill v. Calscibetta*, 00-CV-1553, N.D.N.Y.].)

FN37. (Dkt. No. 55, Part 4, at 22 [Ex. C to Defs.' Rule 7.1 Statement, attaching Plf.'s June 3, 2003 deposition testimony from *Gill v. Steinberg*, 02-CV-0082, N.D.N.Y.].)

FN38. I will assume, for the sake of argument, that this testimony is consistent with Plaintiff's prior and subsequent testimony at his June 4, 2003 deposition (only page 22 of this testimony is included, not the pages immediately before and after that page), and that Plaintiff did not (when offering this testimony) intend to imply that his bulging disc problem somehow included his foot deformity.

FN39. (Dkt. No. 55, Part 6, at 9 [Defs.' Mem. of Law].)

Because I find that Plaintiff's medical condition is not sufficiently serious for purposes of the Eighth Amendment, I need not reach Defendants' alternative argument that Plaintiff has failed to establish deliberate indifference. However, for the sake of thoroughness, I will briefly address that argument.

**2. Deliberate Indifference**

I find that, even if Plaintiff's medical condition were sufficiently serious, Plaintiff has adduced no evidence establishing that Defendants Frawley or Peet acted with deliberate indifference when, on April 23, 2002, they confiscated Plaintiff's arch supports and subsequently refused to return them.[FN40] I reach this conclusion for the same reasons as advanced by Defendants in their motion papers.[FN41]

FN40. (*See, e.g.*, Dkt. No. 58, ¶¶ 14-16, 31-38 & Exs. A-D [Plf.'s Rule 7.1 Response].)

FN41. (Dkt. No. 55, Part 6, at 12-17 [Defs.' Mem. of Law].)

***8** In particular, I note three facts. First, the confiscation of Plaintiff's arch supports by Defendants Frawley and Peet was not wholly arbitrary but apparently premised on a legitimate security concern-(1) the arch supports, which contained metal inserts, could be used to manufacture a shank or weapon,[FN42] (2) Defendant Peet had come to understand that, while incarcerated, Plaintiff had been convicted of possessing a weapon and/or committing an assault,[FN43] and (3) Defendant Frawley could find no indication in Plaintiff's medical records that he needed arch supports with *metal* inserts (as opposed to arch supports with plastic inserts).[FN44] Second, Plaintiff was seen by medical professionals for various reasons at least eight times over the six weeks following the confiscation.[FN45] For example, on June 3, 2002, when Plaintiff complained to medical professionals of pain, he was excused from school and work, was allowed to eat in his cell, and was permitted to walk with a cane.[FN46] Third, by at least May 21, 2002, Plaintiff was permitted to use another pair of custom-made arch supports, which were already in his possession (i.e., ones

with plastic inserts); FN47 and by July 1, 2002, Plaintiff was provided over-the-counter arch supports (as opposed to custom-made arch supports).FN48

FN42. (Dkt. No. 1, Attached "Statement of Facts," ¶ 15 [Plf.'s Verified Compl.]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/23/02, by Nurse Frawley, concerning security concerns from Plf.'s metal arch supports].)

FN43. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 15-16 [Plf.'s Verified Compl.].)

FN44. (Dkt. No. 1, Attached "Statement of Facts," ¶ 16 [Plf.'s Verified Compl.]; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed "a pair of new boots," not specifying that they were to contain *metal* inserts]; Dkt. No. 55, Part 4, at Ex. E-1 [Defs.' exhibits, attaching Plf.'s medical record dated 4/9/02, indicating merely that Plaintiff had received a prescription for "arch supports ... for size 9 boots," not for arch supports with metal inserts, as opposed to plastic inserts]; Dkt. No. 55, Part 4, at Ex. E-2 [Defs.' exhibits, attaching Plf.'s medical record dated 4/18/02, indicating that Plaintiff had requested permit for "metal braces & metal arch supports," apparently acknowledging need for such a permit].)

FN45. (Dkt. No. 55, Part 4, at Exs. E-2, E-3 [Defs.' exhibits, attaching Plf.'s medical records dated 5/14/02, 5/17/02, 5/21/02, 5/30/02, 5/31/02, 6/3/02, 6/7/02, and 6/10/02]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl.].)

FN46. (Dkt. No. 55, Part 4, at E-5 [Ex. E to Def.'s Mem. of Law, attaching Plf.'s medical record dated 6/3/02].)

FN47. (Dkt. No. 55, Part 4, at Ex. E-3 [Defs.' exhibits, attaching Plf.'s medical record dated 5/21/02]; Dkt. No. 1, Ex. A [Plf.'s Verified Compl., attaching medical record dated 11/3/93, regarding prescription of "custom-made Aliplast/plastazote laminate orthoses"]; Dkt. No. 1, Ex. B [Plf.'s Verified Compl., attaching medical records date 2/8/01, indicating that he was prescribed the new arch supports, i.e., the ones with metal inserts, because the former arch supports, i.e., the ones with plastic inserts, had "worn out" on or before 2/8/01]; Dkt. No. 1, ¶¶ 20-21 & Ex. F [Plf.'s Verified Compl., asserting occurrence of medical visit on 5/21/02 regarding arch supports].)

FN48. (Dkt. No. 55, Part 4, at F-2, F-3 [Defs.' Rule 7.1 Statement, attaching Plf.'s medical records dated 6/21/02, 6/24/02 and 7/1/02]; Dkt. No. 58, ¶ 7 [Plf.'s Supp. Opp. to Defs.' Motion].)

Under the circumstances, *at most*, the evidence indicates that there may have been a hint of negligence on the part of Defendants Frawley and/or Peet. However, even if true, such negligence would not be enough to make Defendants Frawley or Peet liable to Plaintiff under the Eighth Amendment.FN49

FN49. *Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence.").

As a result, I recommend that the Court dismiss

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 15

Not Reported in F.Supp.2d, 2006 WL 1742738 (N.D.N.Y.)
**(Cite as: 2006 WL 1742738 (N.D.N.Y.))**

Plaintiff's Eighth Amendment claim against Defendants Frawley and Peet.

**C. Whether Plaintiff Has Failed to Exhaust His Administrative Remedies with Regard to His Claim that Defendants Frawley and Peet Improperly Confiscated His Arch Supports**

In the alternative, Defendants argue that Plaintiff's claim against Defendants Frawley and Peet should be dismissed because Plaintiff did not exhaust his available administrative remedies with regard to his claim that Defendants Frawley and Peet improperly confiscated his arch supports.[FN50] Because I have already concluded that the Court should dismiss Plaintiff's claim against Defendants Frawley and Peet (*see, supra,* Part III.B.), I need not reach this argument. However, in the interest of thoroughness, I will do so.

FN50. (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

Defendants contend that Plaintiff never filed a grievance with regard to this claim. In support of this argument, they offer an unlabelled, unsigned two-page document (presumably a computer print out) listing 26 grievances filed by Plaintiff between March 11, 2002, and November 21, 2002, but listing no grievance filed by Plaintiff regarding any confiscation of his arch supports. [FN51] Defendants further argue that Plaintiff has adduced no evidence (only an "unsupported allegation") that he filed a grievance with regard to that improper confiscation.[FN52]

FN51. (*See* Dkt. No. 55, Part 3, ¶ 4 [Defs.' Rule 7.1 Statement, citing to "Exhibit A," attached at Dkt. No. 55, Part 4] .)

FN52. (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law].)

***9** With some reluctance, I must disagree with Defendants. It is true that Plaintiff's opposition papers are woefully inadequate, as Defendants point out in their reply papers.[FN53] It is further true that the Court has no duty to conduct an independent review of the record to find proof of a factual dispute. However, the Court certainly retains the discretion to conduct such an independent review. I believe that this discretion is no more appropriately exercised than when, as here, the factual dispute is rather glaring.

FN53. (Dkt. No. 59, Part 1 [Defs.' Reply Affirm.].)

Specifically, I cannot help but notice that Plaintiff's *Verified* Complaint specifically alleges that (1) "[o]n or about April 29, 2002, plaintiff filed an institutional grievance for the return of his medical arch supports," (2) "[u]pon filing this grievance against defendants Frawley and Peet, plaintiff inquired countless times [of Inmate Grievance Sergeant Volker and an Inmate Grievance Clerk regarding] the status of this grievance, wherein plaintiff was informed by both [the Sergeant and the Clerk that] the grievance was received, filed and an upcoming hearing would be held," and (3) "on or about July 12, 2002, ... defendant [Graubard] informed plaintiff she was unable to find plaintiff's grievance regarding Nurse Frawley['s] confiscation of plaintiff's arch supports." [FN54]

FN54. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4 [Plf.'s Verified Compl.].)

Verified allegations such as these constitute *sworn assertions* (much like those contained in an affidavit), and may be used to defeat a motion for summary judgment.[FN55] Here, the sworn assertions in question appear to be based on personal knowledge, and are sufficiently specific-providing dates, identities of persons, and subject matter of conversations.[FN56] I note that the representations allegedly made to Plaintiff about the status of his grievance (i.e., that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

grievance had been received and filed, and that an upcoming hearing would be held) would not be hearsay to the extent they were offered for a purpose other than to show the truth of the matters asserted (e.g., to show the reasonableness of Plaintiff's reliance on those representations, or to explain why he did not attempt to file another grievance within the 14-day deadline for such grievances).

FN55. *See, e.g., Patterson,* 375 F.3d at 229-230 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegation that a lieutenant engaged in intimidating behavior that was "notoriously racist," together with other evidence, created an issue of material fact as to plaintiff's hostile work environment claim under 42 U.S.C. § 1983-specifically, with respect to whether the lieutenant's conduct was sufficiently humiliating to alter the conditions of the plaintiff's employment); *Fitzgerald,* 251 F.3d at 362-363 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegations of a defendant's "constant stream of unjustified criticisms of her work described specific, related instances of harassment" were sufficient to create an issue of material fact as to the plaintiff's hostile work environment claim under 42 U.S.C. § 1983), *cert. denied,* 536 U.S. 922 (2002); *Colon,* 58 F.3d at 872 (partially vacating and remanding decision issued by Northern District of New York because the plaintiff's verified allegations regarding the temporal proximity between the filing of disciplinary charges against the plaintiff and the filing of two lawsuits by the plaintiff were sufficient to create an issue of material fact as to the plaintiff's retaliation claim under 42 U.S.C. § 1983).

FN56. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4 [Plf.'s Verified Compl.].)

Furthermore, Plaintiff attached to his Verified Complaint (1) a copy of a July 12, 2002, communication from Defendant Graubard, stating, "[w]e have been unable to find any grievance from you concerning Nurse Frawley confiscating your arch supports," and (2) a copy of what Plaintiff claims is the grievance he filed on April 29, 2002.[FN57] I note that Plaintiff offered duplicate copies of these two documents in his papers in opposition to Defendants' motion.[FN58] Under the circumstances, I simply cannot find that Plaintiff has adduced no evidence that he exhausted his administrative remedies with respect to his grievance that Defendants Frawley and Peet improperly confiscated his arch supports.

FN57. (Dkt. No. 1, Exhibits G, H at 2 [Plf.'s Verified Compl.].)

FN58. (Dkt. No. 58, at Exhibits F, G at 2 [Plf.'s Response Papers].)

This finding of a factual dispute is not inconsistent with Local Rule 7.1(a)(3), which states that facts set forth in a defendant's Rule 7.1 Statement "shall be deemed admitted" unless specifically controverted by the opposing party. That Local Rule does not require an opposing party to "specifically controvert" defendant's factual assertions *through the use of a Rule 7.1 Response.* Such an approach is, without doubt, the preferred method of creating a factual dispute; and (as indicated above) the Court has no *duty* to go beyond an opposing party's Rule 7.1 Response to find proof of a factual dispute. However, the Court has the *discretion* to go beyond an opposing party's Rule 7.1 Response to find proof of a factual dispute; and Local Rule 7.1 does not deprive the Court of that discretion.[FN59] I am mindful that Rule 56(e) expressly provides that, "[i]f the adverse party does not ... re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

spond [with affidavits or other papers setting forth specific facts showing that there is a genuine issue for trial], summary judgment, *if appropriate,* shall be entered against the adverse party." FN60 I simply cannot find it *appropriate* to grant summary judgment to Defendants on the basis of a failure to exhaust, where conspicuous evidence exists sufficient to create a factual dispute on the issue.FN61

FN59. *See Monahan v. N.Y.C. Dept. of Corr.,* 214 F.3d 275, 292 (2d Cir.2000) (holding that similar local rule in Southern and Eastern Districts of New York, i.e., "Local Rule 56.1," did not deprive district court of discretion to *sua sponte* "conduct an assiduous review of the record"). For example, Local Rule 7.1(b)(3) provides that "the non-moving party's failure to file or serve ... [opposition] papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause is shown," *only where* the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein." N.D.N.Y. L.R. 7.1(b)(3).

FN60. Fed.R.Civ.P. 56(e) [emphasis added].

FN61. As the Second Circuit has held, "[t]he fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). "Such a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that ... the moving party is entitled to a judgment as a matter of law.' " *Champion,* 76 F.3d at 486.

***10** Furthermore, my treatment of Plaintiff's verified allegations as sworn assertions is not inconsistent with my finding that Plaintiff, due to his litigiousness, does not deserve the special solicitude normally afforded to *pro se* civil rights litigants. The rule that verified complaints shall be treated as affidavits for purposes of summary judgment motions has nothing to do with a non-movant's status as a *pro se* litigant or as a civil rights litigant. FN62

FN62. *See, e.g., Robinson v. Gov't of Malaysia,* 269 F.3d 133, 144, 147, n. 14 (2d Cir.2001) (applying rule in non-civil rights case in which the plaintiff had been represented by counsel during district court's decision on defendants' motion to dismiss under Rule 12[b][1] ); *Adirondack Cycle & Marine, Inc. v. Am. Honda,* 00-CV-1619, 2002 WL 449757, at * 1 (N.D.N.Y. March 18, 2002) (McAvoy, J.) (applying rule in non-civil rights case in which the plaintiff had been represented by counsel during decision on defendant's motion for summary judgment); *cf. Patterson,* 375 F.3d at 229-230 (applying rule in civil rights case in which the plaintiff had been represented by counsel during decision on defendants' motion for summary judgment, *see* 00-CV-1940, 2002 WL 31677033 [N.D.N.Y. Oct. 30, 2002] ); *Fitzgerald,* 251 F.3d at 362-363 (applying rule in civil rights case in which the plaintiff had been represented by counsel during decision on defendants' motion for summary judgment, *see* 36 F.Supp.2d 490 [N.D.N.Y.1998] ).

Finally, I will analyze Defendants' lack-of-evidence argument in the context of the Second Circuit's three-part test for exhaustion. The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [FN63] The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

FN63. 42 U.S.C. § 1997e.

> First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.
>
> *White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7). Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [FN64]

FN64. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N .Y.2002).

However, the Second Circuit has recently held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

**1. Availability of Administrative Remedies**

***11** "When an inmate's reasonable attempts to exhaust available administrative remedies are impeded by a correctional officer, the remedy may be deemed unavailable, thereby excusing the inmate from technically exhausting his remedies." *Veloz v. New York,* 339 F.Supp.2d 505, 515-516 (S.D.N.Y.2004) [citations omitted].[FN65] Some courts have suggested that an inmate has exercised a *reasonable* effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official.[FN66] However, other courts have indicated that an inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a *reasonable* effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance.[FN67]

FN65. *See also Thomas v. N.Y.S. Dep't of Corr. Servs.,* 00-CV-7163, 2002 WL 31164546, at *3 (S.D.N.Y. Sept. 30, 2002) ("[W]here a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are

not ‘available’ to the prisoner....”); *O'Connor v. Featherstone,* 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) (“[A]n inmate may ... defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where ... an inmate has makes a ‘reasonable attempt’ to exhaust his administrative remedies....”); *Rodriguez v. Hahn,* 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *4 (S.D.N.Y. Nov. 22, 2000) (denying defendants' motion to dismiss for failure to exhaust administrative remedies where inmate's efforts “evidence[d] a reasonable attempt to exhaust [his administrative remedies]”); *Baughman v. Harless,* 142 Fed. Appx. 354, 359 (10th Cir.2005) (“If prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted.”); *Brown v. Croak,* 312 F.3d 109, 112-113 (3d Cir.2002) (because “[prison] officials thwarted [plaintiff's] efforts to exhaust his administrative remedies ... the formal grievance proceeding required by [the prison grievance system] was never ‘available’ to [plaintiff] within the meaning of [the PLRA]”), *cited by Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004); *Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) (“[A] remedy that prison officials prevent a prisoner from utilizing is not an ‘available’ remedy under [the Prison Litigation Reform Act].”), *cited by Abney v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004) (holding that “[t]he defendants' failure to implement the multiple rulings in [plaintiff's] favor rendered administrative relief ‘unavailable’ under the PLRA.”).

FN66. *See, e.g., Thomas v. N.Y.S. Dep't of Corr. Servs.,* 00-CV-7163, 2002 WL 31164546, at *2-3 (S.D.N.Y. Sept. 30, 2002) (genuine issue of material fact existed about whether prisoner made “reasonable attempt” to file a grievance, where prisoner adduced some evidence that he had filled out grievance, had attempted to file it, but had been denied a pass enabling him to file it); *O'Connor v. Featherstone,* 01-CV-3251, 2002 U.S. Dist. LEXIS, at *5 (S.D.N.Y. Apr. 29, 2002) (“[A]n inmate may ... defeat a motion to dismiss even when the requirements of administrative remedies have not technically been exhausted where ... an inmate has made a ‘reasonable attempt’ to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts.”); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006) (“[A] remedy becomes ‘unavailable’ if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.”) [citations omitted]; *Baughman,* 142 Fed. Appx. at 359 (“[A]dministrative remedies may be found unavailable ... where the prisoner supports his allegations that he placed his grievances in the mail, but they were lost or destroyed and therefore his efforts to exhaust available administrative remedies were impeded by correctional officers.”).

FN67. I note that all of these decisions were issued by the Southern District, and all but one were issued before the creation of Second Circuit's three-part exhaustion analysis in August of 2004. *See Veloz,* 339 F.Supp.2d at 515-516 (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because “there was no evidence

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," there was "no evidence that any particular officer thwarted his attempts to file," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Nunez v. Goord,* 172 F.Supp.2d 417, 428-429 (S.D.N.Y.2001) (rejecting inmate's argument that the prison's grievance procedure had been rendered ineffective by the practice of prison officials' losing or destroying grievances, because, instead of filing a grievance with respect to his failure-to-protect claim, inmate wrote a letter to superintendent and did not follow up when he received no response); *cf. Martinez v. Williams,* 186 F.Supp.2d 353, 357 (S.D.N.Y.2002) (inmate who received no response to grievance "could have and should have appealed grievance in accord with grievance procedure"), *accord, Waters v. Schneider,* 01-CV5217, 2002 WL 727025, at *1-2 (S.D.N.Y. Apr. 23, 2002).

Of course, here, Plaintiff alleges (and introduces at least some evidence indicating) that he made *more* than simply an initial effort to file a grievance about the (alleged) confiscation of his arch supports by Defendants Frawley and Peet. For example, he also alleges (and introduces at least some evidence indicating) that (1) in the days and weeks following April 29, 2002, he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent, (2) after being transferred to another prison, he twice wrote to Defendant Graubard regarding the issue, and was advised (more than two months after the events in question) that Defendant Graubard was unable to find Plaintiff's grievance, and (3) on August 6, 2002, Plaintiff filed a grievance containing an implicit request for an exception to the 14-day filing requirement, which request was subsequently either denied or not addressed by the Mohawk C.F. Superintendent and CORC.[FN68]

FN68. Defendants argue that Plaintiff's efforts to grieve the confiscation of his arch supports did not include his filing of an August 6, 2002, grievance at Mohawk C.F. (Dkt. No. 59, Part 1, ¶ 10 [Defs.' Reply Affirm.]; Dkt. No. 1, Ex. H at 1 [Plf.'s Verified Compl., attaching the August 6, 2002, grievance]; Dkt. No. 58, Ex. G at 1 [Plf.'s Response Papers, attaching the August 6, 2002, grievance].) I agree with Defendants that, rather than focusing mainly on the confiscation of his arch supports, Plaintiff's August 6, 2002, grievance focused mainly on Defendant Graubard's (alleged) malfeasance with regard to the loss or destruction of Plaintiff's (allegedly) properly filed April 29, 2002, grievance. (*Id.*) However, Plaintiff's August 6, 2002, grievance (1) attached a copy of his April 29, 2002, grievance, and (2) implicitly but intelligibly requested, in the "Action Requested" portion of the grievance, an exception to the normal 14-day filing deadline (for that April 29, 2002, grievance) imposed by 7 N.Y.C.R.R. § 701.7(a)(1). (*Id.* [erroneously citing this regulation as "7 N.Y.C.R.R. § 707.7(a)(1)."].) *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) (requiring merely "notice pleading" for exhaustion to be achieved; adding that "[a]ll the grievance need do is object intelligibly to some asserted shortcoming."). Subsequently, both the Mohawk C.F. Superintendent and CORC either failed to address or implicitly denied this request for an extension of the 14-day filing deadline. (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.) *See Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001) (remedies not "available" to prisoner where officials failed to respond to his grievance), *cited by Abney*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 21

Not Reported in F.Supp.2d, 2006 WL 1742738 (N.D.N.Y.)
**(Cite as: 2006 WL 1742738 (N.D.N.Y.))**

*v. McGinnis,* 380 F.3d 663, 669 (2d Cir.2004).

Under the circumstances, I find that Plaintiff has exercised a reasonable effort to exhaust his administrative remedies, and that at least a question of fact exists about whether those efforts were impeded by correctional officers (other than Defendant Graubard) sufficient to render Plaintiff's administrative remedies unavailable under the circumstances. I believe that my finding is supported by this Court's recent decision in *Hoover v. Hardman,* 99-CV-1855, 2005 WL 1949890 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.).

In *Hoover,* this Court held that an inmate had created an issue of fact on the issue of availability of administrative remedies when he argued that his grievances had been "lost in the system," and he supported that argument by adducing (1) sworn testimony that the prison's Inmate Grievance Review Committee had not been operating adequately at the time in question, and (2) evidence that he had submitted a September 27, 1999, grievance for filing but that the grievance had never in fact been filed or investigated. *Hoover v. Hardman,* 99-CV-1855, Report-Recommendation, at 10-13 (N.D.N.Y. Nov. 11, 2004) (Lowe, M.J.), *adopted,* 2005 WL 1949890, at *3 (N.D.N.Y. Aug. 15, 2005) (Scullin, C.J.).[FN69]

FN69. I believe that my finding is also supported by other district court decisions in this Circuit. *See, e.g., Rodriguez v. Hahn,* 99-CV-11663, 2000 U.S. Dist. LEXIS 16956, at *3-5 (S.D.N.Y. Nov. 22, 2000) (inmate made reasonable attempt to exhaust his administrative remedies where he sent various letters regarding his complaint, and corrections officers never filed some of the inmate's grievances).

***12** In reaching my conclusion, I respectfully reject Defendants' argument that "Plaintiff [has] admit[ted] the availability of an administrative grievance process in his Complaint." [FN70] Defendants are correct insofar as they point out that, in his Verified Complaint, Plaintiff answered "Yes" to the questions "Is there a prisoner grievance procedure at this facility?" and "[D]id you present the facts relating to your complaint in this grievance program." [FN71] However, I do not see how these two verified allegations are inconsistent with Plaintiff's other verified allegations that (1) he filed a grievance on or about April 29, 2002, (2) he was subsequently assured that grievance had been filed, and (3) he was subsequently informed that no record existed of the grievance having been filed.[FN72] In any event, even if Plaintiff's two verified allegations in Paragraph 4 were inconsistent with his other verified allegations, that inconsistency, under the circumstances, would merely create an issue of fact for a jury.

FN70. (Dkt. No. 55, Part 6 at 5 [Defs.' Mem. of Law, citing Paragraph 4 of Plaintiff's Complaint].)

FN71. (Dkt. No. 1, ¶¶ 4.a., 4.b. [Plf.'s Compl.].)

FN72. (Dkt. No. 1, Attached "Statement of Facts," ¶¶ 19, 26 & n. 4, Exhibits G, H at 1 [Plf.'s Compl.].)

For these reasons, I would find that Plaintiff has created an issue of fact with regard to whether the administrative remedies (allegedly) not pursued by him were in fact "available" to him.

**2. Estoppel**

Because of my finding above in Part III. C.1., I need not reach the issue of whether Defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether Defendants' own actions inhibiting Plaintiff's exhaustion of remedies may estop one or more of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Defendants from raising Plaintiff's failure to exhaust as a defense. However, I note that, if I were to reach this issue, I would find that Defendants Frawley and Peet would not be estopped from asserting this defense.

Specifically, Defendants Frawley and Peet have preserved their affirmative defense of non-exhaustion by raising it in their Answer.[FN73] Moreover, no evidence exists that either Defendant Frawley or Defendant Peet is estopped from raising this defense because of his or her actions inhibiting Plaintiff's exhaustion of remedies. Indeed, it was Inmate Grievance Sergeant Volker and an Inmate Grievance Clerk (and not either Defendant Frawley or Defendant Peet) who allegedly represented to Plaintiff that the grievance had been filed; it was Defendant Graubard (and not either Defendant Frawley or Defendant Peet) who allegedly failed to process (or lost) the grievance.

FN73. (Dkt. No. 29, Part 1, ¶ 14 [Defs.' Answer].)

**3. "Special Circumstances" Justifying Failure to Exhaust**

Again, because of my finding above in Part III.C.1., I need not reach the issue of whether "special circumstances" have been plausibly alleged that justify Plaintiff's failure to comply with the administrative procedural requirements. However, I note that, if I were to reach this issue, I would find that such special circumstances have been plausibly alleged (and supported).

Specifically, Plaintiff has alleged (and adduced at least some evidence indicating the existence of) the following facts: (1) he filed a grievance at Elmira C.F. regarding the confiscation of his arch supports on April 29, 2002; (2) in the days and weeks following April 29, 2002 (during the period in which he had to grieve the confiscation), he sought and received assurances from two corrections officers (other than Defendant Graubard) that his grievance had been received and filed, and that a hearing was imminent; (3) on or about June 10, 2002, he was transferred to the Walsh Regional Medical Unit at Mohawk C.F.; and (4) before and after his transfer, he more than once wrote to Defendant Graubard regarding the issue, and was finally informed, on July 12, 2002, that Defendant Graubard was unable to find Plaintiff's grievance. As a result, by the time he learned that his grievance had been lost, he was many miles removed from the location of the confiscation at issue (having been transferred to a different correctional facility), and was some 80 days removed from the date of the confiscation at issue-all apparently due to events that were mostly outside his control.

***13** Under the circumstances, I would find that a question of fact has been created about whether special circumstances exist justifying Plaintiff's failure to exhaust his administrative remedies. Again, I believe that my finding would be supported by this Court's recent decision in *Hoover,* which held that, even if an inmate's administrative remedies had been available to him at the time in question, the inmate had created an issue of fact on the issue of whether special circumstances existed excusing his failure to exhaust those remedies when he argued (and adduced evidence indicating) that his grievances had been "lost in the system." [FN74] In addition, I believe that my finding would be supported by this Second Circuit's recent decision in *Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080 (2d. Cir. May 3, 2006), which appears to suggest that, under the circumstances, Plaintiff did not even have a duty to request an exception to the usual 14-day deadline for the filing of such grievances, as authorized by 7 N.Y.C.R.R. § 701.7(a)(1).[FN75]

FN74. *Hoover,* 99-CV-1855, Report-Recommendation, at 10-13, *adopted,* 2005 WL 1949890, at *3.

FN75. In *Brownell,* a prisoner claimed that prison officials had lost his property (in-

cluding legal materials) during a prison transfer. Subsequent actions by prison officials delayed the date on which the prisoner obtained reason to believe that the loss of his property was intentional. By the time he discovered the evidence, it was several months after his property had disappeared, which placed him outside of the 14-day time limit for filing a grievance. The Second Circuit held that, although the prisoner could have, at that point, sought an exception to the 14-day time limit but did not do so, "[n]onetheless, we conclude that [the prisoner's] failure to seek the further administrative remedies that were available to him were reasonable." *Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *6 (2d. Cir. May 3, 2006).

Although I do not believe that my finding needs any further factual support, I believe that my finding is further supported by the fact that, on or about August 6, 2002, Plaintiff did in fact request an exception to the usual 14-day grievance-filing deadline, as authorized by 7 N.Y.C.R.R. § 701.7(a)(1). [FN76] Specifically, at the end of his August 6, 2002, grievance, he stated: "Action Requested: [S]ince mitigating circumstances exist[ ], that the attached grievance originally filed April 29, 2000, which has not been resolved, be filed accordingly and resolved appropriately ... pursuant to DOCS' Directive 4040. *See,* 7 N.Y.C.R.R. § 707.7(a)(1) [sic]." [FN77] Given the Second Circuit's recent pronouncements in *Brownell v. Krom,*[FN78] I believe that this request was sufficiently intelligible to deserve an explicit response from the Mohawk C.F. Superintendent and CORC. However, that request either was not addressed or was implicitly denied by the Mohawk C.F. Superintendent and CORC.[FN79] I believe that this a failure to explicitly decide the issue is an additional "special circumstance" excusing Plaintiff's failure to exhaust.[FN80]

FN76. (Dkt. No. 1, Ex. H-1 [Plf.'s Compl., attaching Grievance No. MHK-6858-02]; Dkt. No. 58, Ex. G-1 [Plf.'s Response Papers, attaching Grievance No. MHK-6858-02].)

FN77. (*Id.* [erroneously citing pertinent regulation as "7 N.Y.C .R.R. § 707.7(a)(1)" which should have been 7 N.Y.C.R.R. § 701.7(a)(1) ].)

FN78. *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *4 (2d. Cir. May 3, 2006) ("All the grievance need do is object intelligibly to some asserted shortcoming.").

FN79. (Dkt. No. 1, Ex. H-3; Dkt. No. 58, Exs. G-3, G-4.)

FN80. *See Brownell v. Krom,* 04-CV-6364, 2006 WL 1174080, at *6-7 (2d. Cir. May 3, 2006) (concluding that "special circumstances" existed based, in part, on the fact that prison officials erroneously decided that the grievance the plaintiff filed "deserved no consideration").

Because I reject Defendants' failure-to-exhaust argument, I need not, and do not, analyze their additional argument that Plaintiff's exhausted claim should be dismissed along with his unexhausted claim (*see* Dkt. No. 55, Part 6, at 6), except to emphasize the existence of binding Second Circuit precedent rejecting such an argument. *See Oritz v. McBride,* 380 F.3d 649, 656, 663 (2d. Cir.2004) ("The question, then, is whether the district court was therefore required, under a so-called 'total exhaustion' rule, to dismiss the action in its entirety despite the presence of an otherwise viable, fully exhausted claim. We think not."), *cert. denied,* 125 S.Ct. 1398 (2005).

**D. Whether Defendants Are Entitled to Qualified Immunity**

In the alternative, Defendants argue that Plain-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

tiff's claim against all three Defendants should be dismissed because they are entitled to qualified immunity. [FN81] Because I have already concluded that the Court should dismiss Plaintiff's claims against all three Defendants (*see*, *supra*, Parts III.A., III.B.), I need not, and do not, reach this argument, except to make three points.

FN81. (Dkt. No. 55, Part 6 at 17-20 [Defs.' Mem. of Law].)

***14** First, Defendants correctly recite the general law regarding qualified immunity. Second, although I disagree with Defendants to the extent they argue that an inmate's right to *file* a grievance is not clearly established constitutional right, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendant Graubard was not, at any time, violating that right. Third, I agree with Defendants to the extent they argue that, at the very least, corrections officers of reasonable competence could have concluded that Defendants Frawley and Peet did not violate any of Plaintiff's clearly established rights.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 55) be ***GRANTED.***

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2006.

Gill v. Frawley
Not Reported in F.Supp.2d, 2006 WL 1742738 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



C
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Stanley HILBERT, Plaintiff,
v.
Brian FISCHER, et al., Defendants.

No. 12 Civ. 3843(ER).
Sept. 5, 2013.

**OPINION AND ORDER**

EDGARDO RAMOS, District Judge.

***1** Plaintiff Stanley Hilbert ("Plaintiff"), proceeding *pro se,* brings this action pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act and the Rehabilitation Act against Brian Fischer, Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"); Green Haven Correctional Facility ("Green Haven") Superintendent William Lee; and various Green Haven "contractors and employees" (collectively, the "Defendants").[FN1] Presently before the Court is Defendants' motion to partially dismiss Plaintiff's Amended Complaint.[FN2] Doc. 65. Specifically, Defendants seek dismissal of Plaintiff's claim of deliberate medical indifference for failure to exhaust administrative remedies. Defendants Fischer and Lee move in the alternative to dismiss Plaintiff's deliberate indifference claim because Plaintiff has failed to demonstrate that they were personally involved in the alleged Constitutional violation. For the reasons discussed below, Defendants' motion for partial dismissal of the Amended Complaint is GRANTED.

FN1. On June 5, 2012, the Court dismissed DOCCS as a Defendant in this action. Doc. 6.

FN2. Plaintiff filed a Notice of Motion along with his opposition papers for an "Order pursuant to Rule 7(b) of the Federal Rule[s] of Civil Procedure granting a trial concerning the complaint." Doc. 77. As the motion is procedurally improper, the Court assumes that Plaintiff filed the Notice of Motion in further support of his opposition to Defendants' motion to dismiss, and will consider it accordingly.

**I. Factual Background**

The Court accepts the factual allegations in the Amended Complaint as true for purposes of Defendants' motion. *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir.2010).

In September 2011, Plaintiff was incarcerated at Marcy Correctional Facility's ("Marcy") Residential Mental Health Unit ("RMHU"). Amended Complaint ("Am.Compl.") ¶ 42. Plaintiff sought mental health treatment at that facility; however, due to the unavailability of observational cells, he was transferred to Green Haven.[FN3] *Id.* ¶¶ 42–43. On September 27, 2011, at approximately 10:40 am, while still at Green Haven, Plaintiff complained of chest pains and was escorted to the facility infirmary. *Id.* ¶ 45. After Plaintiff had been examined, Defendants Kowalchuk, Rodriguez and Surprenant escorted him back to his cell. *Id.* ¶ 47. On the way back to the cell, Surprenant told Plaintiff that he was "full of shit," that he was "bullshitting and wasting his time," and that "this ain't Marcy [and] we have another way to treat mental illness and you're going to find out soon enough." *Id.* ¶¶ 48–50. Upon hearing this, Plaintiff requested that Surprenant allow him to see a mental health therapist. *Id.* ¶ 51. Defendant Rodriguez then interjected and said that "we got some therapy for you" and that "your [sic] going to need a physical therapist to teach you

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2013 WL 4774731 (S.D.N.Y.)
**(Cite as: 2013 WL 4774731 (S.D.N.Y.))**

how to walk again." *Id.* ¶ 52.

FN3. The exact date on which Plaintiff was transferred to Green Haven is not clear from the face of the Amended Complaint.

Upon returning to his cell, Plaintiff was ordered to face the wall, which he did. *Id.* ¶ 53. Surprenant then instructed Plaintiff, who was still in restraints, to turn around and face him. *Id.* ¶ 54. After Plaintiff complied, Surprenant "got nose to nose" with him and stated, "you played games and wasted my time. I told you we have another way to treat mental illness." *Id.* ¶ 55. At that point, Rodriguez "[s]uddenly" punched Plaintiff in the left eye. *Id.* ¶ 56. Defendants Kowalchuk, Rodriguez and Surprenant then began beating Plaintiff "mercilessly with their hands and feet," and "punched and kicked [him] repeatedly about the body, face and head." *Id.* ¶¶ 57–58. Plaintiff alleges that upon information and belief, Defendant Rodriguez then "stepped on [his] lower back while Defendants Surprenant, Tillotson, Kowalchuk, Keran [sic], and Brothers held [him] down and removed the restraints." *Id.* ¶ 59. Defendants then left the cell and locked it behind them. *Id.* ¶ 61.

***2** Plaintiff alleges that he then informed Defendant Kowalchuk that he was in "excruciating pain and need[ed] medical attention," *id* . ¶ 60; however, Kowalchuk refused Plaintiff's request. *Id.* ¶ 62. Approximately one hour later, Defendant Miller, a nurse, arrived at Plaintiff's cell with a corrections officer to take photographs. *Id.* ¶ 63. At that point, Plaintiff's nose was bleeding profusely, he was bleeding out of his left eye, and he could barely stand up. *Id.* ¶ 64. Plaintiff informed Miller that he was in excruciating pain, but she did not "even [perform] a cursory examination ... [and] told Plaintiff that there was nothing wrong." *Id.* ¶¶ 64–65. Plaintiff alleges that Miller told him to "stop whining" and that crying is what babies do. *Id.* ¶ 66. She then exited the cell with the corrections officer. *Id.* ¶ 67.

Over the next two days, from September 27 to 29, 2011, Plaintiff alleges that he requested medical assistance for his injuries from Defendants Morlas, Patil, Panuto, Zwillinger, O'Conner, Brandow, Hannd, Sposato, Santoro, Edwards, Kutz, Kowalchuk, Lamay, and Gotsch, and that these Defendants all denied his requests. *Id.* ¶¶ 68–81. On the morning of September 29, 2011, a doctor came to Plaintiff's cell and, after examining him, determined that he was seriously injured and in need of immediate medical attention. *Id.* ¶ 82. Plaintiff was then transferred to an outside hospital, Westchester County Medical Center, where he was treated and later released. *Id.* ¶ 83. Plaintiff claims that he suffers from frequent migraines, "extreme debilitating back pain," loss of vision and a broken nose. *Id.* ¶ 84.

**II. Plaintiff has not Exhausted Administrative Remedies with Respect to his Eighth Amendment Deliberate Medical Indifference Claim**

Plaintiff claims that Defendants violated his Eighth Amendment rights by using unnecessary and excessive force against him and by acting with "deliberate indifference or reckless disregard toward [his] serious medical needs by failing to take the steps necessary to ensure that [he] received treatment for his injuries." Am. Compl. ¶ 87. Defendants argue that Plaintiff's deliberate medical indifference claim should be dismissed because he failed to exhaust the administrative remedies available under DOCCS' three-tiered Inmate Grievance Program ("IGP"). Specifically, Defendants argue that Plaintiff's grievance only alleged that he was assaulted by several officers at Green Haven, and did not include any allegations that Defendants were deliberately indifferent to his medical needs.

**a. Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock,* 549 U.S. 199, 202 (2007) (citations omitted). The PLRA's ex-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

haustion requirement is "mandatory," *Porter v. Nussle,* 534 U .S. 516, 524 (2002), and " 'applies to all inmate suits about prison life.' " *Johnson v. Killian,* 680 F.3d 234, 238 (2d Cir.2012) (quoting *Porter,* 534 U.S. at 532). The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." *Id.* (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2007)) (internal quotation marks omitted). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (quoting *Jones,* 549 U.S. at 218).

***3** In New York, prisoners must exhaust each level of the three-tiered IGP. *Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D .N.Y.2010). Under the IGP, an inmate must: (i) file a complaint with the grievance clerk; (ii) appeal an adverse decision by the Inmate Grievance Resolution Committee ("IGRC") to the superintendent of the facility; and (iii) appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC"). N.Y. Comp.Codes R. & Regs. ("NYCRR") tit. 7, § 701.5. The IGP regulations provide that an inmate must submit a complaint on an inmate grievance complaint form, or on plain paper if the form is not readily available. 7 NYCRR § 701.5(a)(1). The regulations further require that "the grievance ... contain a concise, specific description of the problem and the action requested." 7 NYCRR § 701.5(a)(2).

Although failure to exhaust is "an absolute bar to an inmate's action in federal court," *George v. Morrison–Warden,* No. 06 Civ. 3188(SAS), 2007 WL 1686321, at *2 (S.D.N.Y. June 11, 2007), the Second Circuit has recognized three grounds for exceptions to the exhaustion requirement. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). First, a court must ask "whether administrative remedies were in fact 'available' to the prisoner." *Id.* (citation omitted). Second, a court must determine whether the defendant forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendant's own actions estop him from raising the affirmative defense of non-exhaustion. *Id.* Finally, if the court finds that administrative remedies were available to the plaintiff, and that the defendant is not estopped and has not forfeited his non-exhaustion defense, a court should consider whether any " 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Id.* (quoting *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004)).

**b. The Court May Consider Extrinsic Material Because Plaintiff was on Notice that Defendants' Motion to Dismiss Might be Converted to One for Summary Judgment and had the Opportunity to Submit Evidence Relevant to the Issue of Exhaustion**

Defendants move to dismiss Plaintiff's deliberate indifference claim pursuant to Fed.R.Civ.P. 12(b)(6). Along with their moving papers, Defendants submit the declaration of Jeffery Hale, as well as a copy of the grievance Plaintiff filed at Marcy, numbered MCY–15928–12. *See* Doc. 68. On a Rule 12(b)(6) motion, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Accordingly, courts in this district have held that where non-exhaustion is clear from the face of a complaint, a court should dismiss the complaint under Rule 12(b)(6). *See Mateo v. Bristow,* No. 12 Civ. 5052(RJS), 2013 WL 3863865, at *3 (S.D.N.Y. July 16, 2013) (citing *Kasiem,* 756 F.Supp.2d at 575; *McCoy v.. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)). However, where non-exhaustion is not clear from the face of the complaint, courts should convert a Rule 12(b) motion into a Rule 56 motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about ... whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *Id.* (quoting *McCoy,* 255 F.Supp.2d at 251). Before converting a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Rule 12(b)(6) motion into a Rule 56 motion, courts must notify the parties and "afford [them] the opportunity to present supporting material." *Id.* (quoting *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000)). Such notice and opportunity are "especially important when a plaintiff is *pro se." Id.* (quoting *McCoy,* 255 F.Supp.2d at 251).

***4** Here, non-exhaustion is not clear from the face of Plaintiff's complaint. Accordingly, the Court must convert the current motion to one for summary judgment and look to extrinsic evidence. Before converting the motion, however, the Court must determine whether Plaintiff has been given "unequivocal notice" of his obligation to submit evidentiary materials and an opportunity to do so. *See McCoy,* 255 F.Supp.2d at 255.

The Court finds that Plaintiff has been given both notice and opportunity. First, Defendants moved to dismiss specifically on the ground of failure to exhaust and notified Plaintiff that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it, he would need to submit evidence, such as affidavits. Doc. 67 (Notice to Pro Se Litigant); *see Kasiem,* 756 F.Supp.2d at 575 (holding that formal notice of conversion was not necessary where defendants attached as exhibits to their motion the records they had of plaintiff's grievances and appeals and notified plaintiff that the court might treat the motion to dismiss as one for summary judgment and that plaintiff must therefore submit evidence to oppose the motion); *see also McCoy,* 255 F.Supp.2d at 255–56 (holding that formal notice was not necessary where defendants moved to dismiss specifically on the ground of exhaustion and where plaintiff directly addressed exhaustion in his opposition papers and referred the court to documentary evidence). Additionally, in his opposition papers, Plaintiff directly addresses the issue of exhaustion and refers the Court to documentary evidence, including a copy of Plaintiff's hospital records and "Special Watch Log Book # S1533," attached to his brief as exhibits. *See* Doc. 80. Accordingly, the Court finds that Plaintiff had "unequivocal notice" that the Court might convert Defendants' motion to dismiss to one for summary judgment and that Plaintiff had the opportunity to submit extrinsic materials pertinent to that issue.

**c. Plaintiff did not Exhaust Administrative Remedies with Respect to his Claim of Deliberate Indifference to his Medical Needs**

Defendants argue that Plaintiff has not exhausted administrative remedies with respect to his claim of deliberate medical indifference because his grievance does not contain any allegations regarding Plaintiff's medical care; rather, Plaintiff's grievance only alleges that he was subjected to excessive force by several of the Defendants. Accordingly, Defendants argue that Plaintiff's grievance failed to " 'alert[ ] the prison to the nature of the wrong for which redress is sought,' " thereby failing to afford it "time and opportunity to address [his] complaints internally before allowing the initiation of a federal case." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004) (quoting *Porter,* 534 U.S. at 524–25; *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002)).

The Second Circuit has held that "a claim may be exhausted when it is closely associated with, but not explicitly mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe v. Julien,* No. 08 Civ. 893(SAS), 2009 WL 2223070, at *4, *4 n. 9 (S.D.N.Y. July 24, 2009) (citing *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (holding that the plaintiff's claim for denial of medical care was exhausted by a grievance alleging excessive force and retaliation, explaining, "while Espinal's grievance ... does not explicitly discuss the misconduct by medical personnel which is alleged in the complaint, it is clear that the State considered these allegations when reviewing Espinal's grievance," because denial of medical care was addressed in the grievance's denial)).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Ultimately, the question for the Court is "whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the individual or individuals specifically named in the grievance. *Id.*

***5** Here, Plaintiff's grievance merely alleges that he was subjected to excessive force by Defendants Surprenant, Rodriguez, Tillotson, Brothers, Krein, and Kowalchuk; [FN4] it does not allege that Defendants were deliberately indifferent to Plaintiff's medical needs. *See* Hale Decl., Ex. A. Indeed, the *only* reference in the grievance to Plaintiff's medical care is his allegation that on September 29, 2011, he was taken to Westchester Medical Center "for a cat scan for [his] left eye and a broken nose." *Id.* The Court also notes that Plaintiff's subsequent communications with prison officials regarding his grievance failed to mention any allegations of deliberate indifference to Plaintiff's medical needs. For example, in a December 26, 2011 letter to DOCCS' employee Teri Thomas, Plaintiff refers to his grievance as a "grievance of assault." *Id.* Similarly, in a January 14, 2012 letter to Karen Bellamy, Director of the IGP, regarding the status of his grievance, Plaintiff states that he "was assaulted in Green Haven Facility on 9/27/11" and makes no mention of Defendants' alleged denials of his requests for medical care. *Id.* Moreover, the Court's review of Plaintiff's grievance file indicates that the State did not investigate Plaintiff's allegation of deliberate indifference.[FN5] Indeed, the grievance file contains memoranda specifically regarding the alleged use of force by only those Defendants actually named in Plaintiff's grievance. Accordingly, the Court finds that Plaintiff's grievance did not "sufficiently alert[ ] prison officials that [Plaintiff] was alleging some wrongdoing beyond" the allegation that he was subjected to excessive force by Defendants Surprenant, Kowalchuk, Brothers, Krein, Tillotson, and Rodriguez.

FN4. The grievance mistakenly refers to Defendants Krein, Kowalchuk and Surprenant as "Keran," "Wallchuck" and "Suprintnay," respectively.

FN5. As Defendants mention in their motion papers, a September 27, 2011 memorandum from Defendant Surprenant to Defendant Lee regarding the incident states that "RN Miller reported to PSU to conduct the medical exam of inmate Hilbert in the cell. Swelling to his left eye and a small abrasion on the right arm was reported on the medical exam. All injuries were deemed minor in nature and the inmate remained in MH–OB–004 on the 1 to 1 watch." Hale Decl., Ex. A. Defendant Surprenant's reference to Plaintiff's medical examination and status immediately following the alleged excessive use of force does not suggest that the State investigated Plaintiff's claim of deliberate indifference. Moreover, Defendant Surprenant's description of Plaintiff's medical exam by Defendant Miller would not put the State on notice of any potential allegations regarding Defendants' alleged refusal of Plaintiff's requests for medical care. Additionally, Plaintiff's grievance file includes the medical report by Defendant Miller, dated September 27, 2011, describing the nature of Plaintiff's injuries. That report, however, also does not suggest that the State investigated or considered Plaintiff's claim of deliberate indifference; nor would the report have put the State on notice of such a claim.

Moreover, the Court finds that none of the three exceptions to the exhaustion requirement articulated by the Second Circuit in *Hemphill,* 380 F.3d at 686, are applicable to Plaintiff's case. First, administrative remedies were clearly "available" to Plaintiff, as he filed a grievance at Marcy on December 8, 2011, which was subsequently investigated by the Inspector General's Office. Hale Decl., Ex. A. Second, Defendants have not forfeited the affirmative defense of

non-exhaustion, nor are they estopped from asserting it. Estoppel is found where “an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible.” *Winston v. Woodward,* No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (citations omitted). As such, the Second Circuit has held that a plaintiff's non-exhaustion may be excused on the grounds of estoppel where the plaintiff was misled, threatened or otherwise deterred from fulfilling the requisite procedures. *Id.* (citing *Hemphill,* 380 F.3d at 688–89; *Ziemba v. Wezner,* 366 F.3d 161, 163–64 (2d Cir.2004)). Here, Plaintiff does not allege that Defendants improperly deterred him from filing a grievance regarding the alleged deliberate indifference, and the record does not evidence the existence of any such threats or misconduct on the part of Defendants.

***6** With respect to the third exception, the Second Circuit has held that “there are certain ‘special circumstances,’ “ such as a reasonable misunderstanding of grievance procedures, “in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified.” *Hemphill,* 380 F.3d at 689 (citations omitted). While Plaintiff does not specifically allege any “special circumstances” justifying his failure to exhaust administrative remedies, he states in his opposition papers that he “was told that his grievance was untimely” when he attempted to file it at Marcy, and that he believed he had “taken all the proper steps” by filing a complaint “with risk management at CNYPC [Central New York Psychiatric Center] for the excessive force claim and medical negligence.” PL's Affirmation in Support of Motion (Doc. 78); *see also* PL's Mem. L. Opp. 6 (stating that Plaintiff filed a complaint concerning his “medical issues” with the risk management office at CNYPC on October 14, 2011). In light of its obligation to interpret Plaintiff's submissions as raising the strongest arguments that they suggest, *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006), the Court will treat Plaintiff's argument regarding his failure to exhaust administrative remedies as a request to excuse his non-exhaustion under the third *Hemphill* exception.

A review of the grievance file indicates that Plaintiff remained at Green Haven until October 13, 2011, where he was in a psychiatric observation cell in the Mental Health Unit and did not have access to any writing tools. Hale Deck, Ex. A. Plaintiff was then transferred to CNYPC, where he claims to have filed a complaint with “risk management.” *Id.* After Plaintiff returned to Marcy on December 8, 2011, his grievance regarding the September 27, 2011 assault was rejected as untimely. *Id.* However, after prison officials confirmed that Plaintiff did not have access to the grievance process while at Green Haven and determined that he had shown “mitigating circumstances,” Plaintiff's grievance was filed at Marcy on January 27, 2012. *Id.* Accordingly, the record indicates that despite initially being informed that his grievance was untimely, Plaintiff was ultimately permitted to file his grievance upon his return to Marcy.

Moreover, to the extent that Plaintiff argues that his attempt to file a complaint while at CNYPC constitutes a “special circumstance” justifying his failure to exhaust administrative remedies, the Court disagrees. First, Plaintiff failed to provide the Court with a copy of the complaint that he allegedly filed at CNYPC, and the declaration of Jeffery Hale, Assistant Director of the IGP for DOCCS, states that after conducting a “diligent search for grievances and appeals filed by [Plaintiff] based on grievances filed at the facility level,” Mr. Hale determined that Plaintiff “did not file a grievance alleging that defendants were deliberately indifferent to his medical needs while at Green Haven in September 2011.” Hale Decl. ¶ 10. Plaintiff's unsupported allegation that he filed a grievance at CNYPC is insufficient to withstand a motion for summary judgment. *See Santiago v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Slip Copy, 2013 WL 4774731 (S.D.N.Y.)
**(Cite as: 2013 WL 4774731 (S.D.N.Y.))**

*Murphy,* No. 08 Civ.1961(SLT), 2010 WL 2680018, at *2–*3 (E.D.N.Y. June 30, 2010) (dismissing complaint where declarations submitted by defendant stated that there was "no record of any grievance" for the alleged incident and holding that plaintiff's unsupported allegation that he filed a grievance is insufficient to withstand a motion for summary judgment). Second, even assuming that Plaintiff did file a complaint with the risk management office at CNYPC, that complaint was clearly not exhausted. The IGP requires that inmates file grievances "with an IGP clerk." 7 NYCRR § 701.2(a); *see also id.* §§ 701.4(g), 701.5. Accordingly, Plaintiff's complaint to the risk management office was not properly filed. Additionally, Plaintiff does not assert that he appealed from the denial of that grievance, nor is there any record of such appeal. *Santiago,* 2010 WL 2680018, at *3. Finally, even if at the time of allegedly filing his complaint at CNYPC Plaintiff misunderstood the grievance procedure, his failure to exhaust administrative remedies would still not be justified. Upon his return to Marcy, Plaintiff clearly had an understanding of the grievance procedure sufficient enough to allow him to properly file a grievance regarding the excessive force allegation in accordance with the IGP. Plaintiff has provided the Court with no explanation to justify his failure to include in that grievance the allegation regarding Defendants' alleged deliberate indifference to his medical needs. Accordingly, as the record establishes that Plaintiff is aware of and has shown that he is capable of following the correct grievance procedure, the Court finds that he has failed to demonstrate the existence of "special circumstances" sufficient to excuse his non-exhaustion. [FN6] *See Kasiem,* 756 F.Supp.2d at 577–78 (holding that the plaintiff failed to demonstrate the existence of "special circumstances" justifying his non-exhaustion where he had previously shown that he was capable of following the correct grievance procedure).

FN6. The Court notes that the exhibits attached to Plaintiffs' opposition papers, which include a copy of Plaintiff's hospital records and "Special Watch Log Book # S1533," do not compel a different outcome, as they do not go to the issue of exhaustion.

***7** The Court therefore finds that Plaintiff has failed to exhaust administrative remedies with respect to his deliberate medical indifference claim and that none of the three exceptions to the exhaustion requirement apply. Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Prisoners have 21 days from the date of the alleged occurrence to initiate the first formal step of the IGP, subject to exceptions "based on mitigating circumstances." 7 NYCRR §§ 701.5(a)(1), 701.6(g)(1)(i)(a). However, an exception to the time limit may not be granted if the request is made more than 45 days after the alleged occurrence. 7 NYCRR § 701.6(g)(1) (i)(a). Accordingly, because the time to both file a grievance and request an exception to the time limit has long expired, and because Plaintiff has not offered any reason for his delay in filing a grievance with respect to his deliberate indifference claim, the claim is dismissed with prejudice.[FN7] *See Santiago,* 2010 WL 2680018, at *3 (dismissing complaint with prejudice because "[a]ny grievance or appeal would now be untimely under 7 NYCRR § 701.5, and the time limit for seeking an exception to the time limitations under 7 NYCRR § 701.6 has also passed"); *see also Bridgeforth v. Bartlett,* 686 F.Supp.2d 238, 240 (W.D.N.Y.2010) (dismissing complaint with prejudice where the time limits for plaintiff to file an administrative appeal had long since passed and plaintiff did not allege "any facts excusing his failure to exhaust").

FN7. The Supreme Court has held that the PLRA does not require dismissal of an entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. *Jones,* 549 U.S. at 223–24.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Accordingly, although the Court finds that Plaintiff's deliberate indifference claim should be dismissed for non-exhaustion, his remaining exhausted claims may proceed.

**d. Fischer and Lee are Dismissed as Defendants**

Defendants move in the alternative to dismiss the Amended Complaint against Defendants Fischer and Lee. Plaintiff's sole allegation with respect to these Defendants relates exclusively to his deliberate medical indifference claim. *See* Am. Compl. ¶ 5. Accordingly, because the Court finds that Plaintiff has failed to exhaust administrative remedies with respect to his deliberate indifference claim, Defendants' motion to dismiss with respect to Defendants Fischer and Lee is granted.

Moreover, to the extent that Plaintiff seeks to hold Defendants Fischer and Lee liable for his excessive force claim, that claim is also dismissed against them. Case law is clear that supervisors may not be held vicariously liable for their subordinates' violations. *See Rahman v. Fisher,* 607 F.Supp.2d 580, 584–85 (S.D.N.Y.2009). It is therefore "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id.* at 585 (citation omitted). Neither the factual allegations contained in the Amended Complaint nor the grievance file submitted by Defendants indicate that Defendants Fischer or Lee were "personally involved" in the alleged violation, either by directly participating in it or by failing to stop it. Although a review of Plaintiff's grievance file indicates that Defendant Lee received a memorandum from Defendant Surprenant regarding the alleged excessive use of force, case law is clear that "[a]fter the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation." *Id.*

**III. Conclusion**

***8** For the reasons set forth above, Defendants' partial motion to dismiss is GRANTED. Accordingly, Plaintiff's First Cause of Action for Deliberate Indifference to an Inmate's Medical Needs in Violation of the Eighth and Fourteenth Amendments is DISMISSED with prejudice.[FN8] The only remaining claims are those for unnecessary and excessive use of force in violation of the Eighth Amendment; violations of the Americans with Disabilities Act; and violations of the Rehabilitation Act. The only remaining Defendants in this action are Surprenant, Tillitson, Brothers, Krein, Kowalchuk, and Rodriguez.

FN8. Although Defendants Santoro, Krein and Rodriguez did not join in Defendants' partial motion to dismiss, because the Court finds that Plaintiff failed to exhaust administrative remedies with respect to his deliberate medical indifference claim, that claim is dismissed as to those Defendants as well.

The Clerk of the Court is respectfully directed to terminate the motions. Docs. 65, 77. The parties are directed to appear for a status conference on October 2, 2013 at 9:30 am.

It is SO ORDERED.

S.D.N.Y.,2013.
Hilbert v. Fischer
Slip Copy, 2013 WL 4774731 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


H
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER, Corrections Officer, Great Meadow Correctional Facility; S. Griffin, Corrections Officer, Great Meadow Correctional Facility; M. Terry, Corrections Officer, Great Meadow Correctional Facility; F. Englese, Corrections Officer, Great Meadow Correctional Facility; Sergeant Edwards, Great Meadow Correctional Facility; K. Bump, Sergeant, Great Meadow Correctional Facility; K.H. Smith, Sergeant, Great Meadow Correctional Facility; A. Paolano, Facility Health Director: and Ted Nesmith, Physicians Assistant, Defendants.

No. 9:03-CV-1010 (DNH/GLS).
June 20, 2008.

James Murray, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, James Seaman, Esq., Asst. Attorney General, of Counsel, Albany, NY, for Defendants.

***ORDER***

DAVID N. HURD, District Judge.

***1** Plaintiff, James Murray, brought this civil rights action pursuant to 42 U.S.C. § 1983. In a 51 page Report Recommendation dated February 11, 2008, the Honorable George H. Lowe, United States Magistrate Judge, recommended that defendants' motion for summary judgment be granted in part (i.e., to the extent that it requests the dismissal with prejudice of plaintiff's claims against defendant Paolano and Nesmith); and denied in part (i.e., to the extent that it requests dismissal of plaintiff's claims against the remaining defendants on the grounds of plaintiff's failure to exhaust available administrative remedies) for the reasons stated in the Report Recommendation. Lengthy objections to the Report Recommendation have been filed by the plaintiff.

Based upon a de novo review of the portions of the Report-Recommendation to which the plaintiff has objected, the Report-Recommendation is accepted and adopted. *See* 28 U.S.C. 636(b)(1).

Accordingly, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. Plaintiff's complaint against defendants Paolano and Nesmith is DISMISSED with prejudice;

3. Defendants' motion for summary judgment is DENIED, to the extent that their request for dismissal of plaintiff's assault claims under the Eighth Amendment against the remaining defendants on the grounds of plaintiff's failure to exhaust available administrative remedies as stated in the Report-Recommendation.

IT IS SO ORDERED.

JAMES MURRAY, Plaintiff,

-v.-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

R. PALMER, Corrections Officer, Great Meadow C.F.; S. GRIFFIN, Corrections Officer, Great Meadow C.F.; M. TERRY, Corrections Officer, Great Meadow C.F.; F. ENGLESE, Corrections Officer, Great Meadow C.F.; P. EDWARDS, Sergeant, Great Meadow C.F.; K. BUMP, Sergeant, Great Meadow C.F.; K.H. SMITH, Sergeant, Great Meadow C.F.; A. PAOLANO, Health Director, Great Meadows C.F.; TED NESMITH, Physicians Assistant, Great Meadows C.F., Defendants.

R. PALMER, Corrections Officer, Great Meadow C.F.; S. GRIFFIN, Corrections Officer, Great Meadow C.F.; M. TERRY, Corrections Officer, Great Meadow C.F.; Counter Claimants,

-v.-

JAMES MURRAY, Counter Defendant.

***ORDER and REPORT-RECOMMENDATION***

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently pending before the Court is Defendants' motion for summary judgment. (Dkt. No. 78.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

**A. Plaintiff's Second Amended Complaint**

In his Second Amended Complaint, James Murray ("Plaintiff") alleges that nine correctional officials and health care providers employed by the New York State Department of Correctional Services ("DOCS") at Great Meadow Correctional Facility ("Great Meadow C.F .") violated his rights under the Eighth Amendment on August 17, 2000, when (1) Defendants Palmers, Griffin, Terry, and Englese assaulted him without provocation while he was incapacitated by mechanical restraints, (2) Defendants Edwards, Bump, and Smith witnessed, but did not stop, the assault, and (3) Defendants Paolano and Nesmith failed to examine and treat him following the assault despite his complaints of having a broken wrist. (Dkt. No. 10, ¶¶ 6-7 [Plf.'s Second Am. Compl.].)

**B. Defendants' Counterclaim**

***2** In their Answer to Plaintiff's Second Amended Complaint, three of the nine Defendants (Palmer, Griffin and Terry) assert a counterclaim against Defendant for personal injuries they sustained as a result of Plaintiff's assault and battery upon them during the physical struggle that ensued between them and Plaintiff due to his threatening and violent behavior on August 17, 2000, at Great Meadow C.F. (Dkt. No. 35, Part 1, ¶¶ 23-30 [Defs.' Answer & Counterclaim].)

I note that the docket in this action inaccurately indicates that this Counterclaim is asserted also on behalf of Defendants Englese, Edwards, Bump, Smith, Paolano, and "Nejwith" (later identified as "Nesmith"). (*See* Caption of Docket Sheet.) As a result, at the end of this Report-Recommendation, *I direct the Clerk's Office to correct the docket sheet to remove the names of those individuals as "counter claimants" on the docket.*

I note also that, while such counterclaims are unusual in prisoner civil rights cases (due to the fact that prisoners are often "judgment proof" since they are without funds), Plaintiff paid the $150 filing fee in this action (Dkt. No. 1), and, in his Second Amended Complaint, he alleges that he received a settlement payment in another prisoner civil rights actions in 2002. (Dkt. No. 10, ¶ 10 [Plf.'s Second Am. Compl.].) Further investigation reveals that the settlement resulted in a payment of $20,000 to Plaintiff. *See Murray v. Westchester County Jail,* 98-CV-0959 (S

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

.D.N.Y.) (settled for $20,000 in 2002).

## II. DEFENDANTS' MOTION AND PLAINTIFF'S RESPONSE

### A. Defendants' Motion

In their motion for summary judgment, Defendants argue that Plaintiff's Second Amended Complaint should be dismissed for four reasons: (1) Plaintiff has failed to adduce any evidence establishing that Defendant Paolano, a supervisor, was personally involved in any of the constitutional violations alleged; (2) Plaintiff has failed to adduce any evidence establishing that Defendant Nesmith was deliberately indifferent to any of Plaintiff's serious medical needs; (3) at the very least, Defendant Nesmith is protected from liability by the doctrine of qualified immunity, as a matter of law; and (4) Plaintiff has failed to adduce any evidence establishing that he exhausted his available administrative remedies with respect to his assault claim, before filing that claim in federal court. (Dkt. No. 78, Part 13, at 2, 4-13 [Defs.' Mem. of Law].)

In addition, Defendants argue that, during his deposition in this action, Plaintiff asserted, for the first time, a claim that the medical staff at Great Meadow C.F. violated his rights under the Eighth Amendment by failing to honor non-life-sustaining medical prescriptions written at a former facility. (*Id.* at 3.) As a threshold matter, Defendants argue, this claim should be dismissed since Plaintiff never included the claim in his Second Amended Complaint, nor did Plaintiff ever file a motion for leave to file a Third Amended Complaint. (*Id.*) In any event, Defendants argue, even if the Court were to reach the merits of this claim, the Court should dismiss the claim because Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that Defendants were personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided such allegations or evidence indicating the policy is even unconstitutional. (*Id.*)

***3** Defendants' motion is accompanied by a Statement of Material Facts, submitted in accordance with Local Rule 7.1(a)(3) ("Rule 7.1 Statement"). (Dkt. No. 78, Part 12.) Each of the 40 paragraphs contained in Defendants' Rule 7.1 Statement is supported by an accurate citation to the record evidence. (*Id.*) It is worth mentioning that the record evidence consists of (1) the affirmations of Defendants Nesmith and Paolano, and exhibits thereto, (2) the affirmation of the Inmate Grievance Program Director for DOCS, and exhibits thereto, (3) affirmation of the Legal Liaison between Great Meadow C.F. and the New York State Attorney General's Office during the time in question, and exhibits thereto, and (4) a 155-page excerpt from Plaintiff's deposition transcript. (Dkt. No. 78.)

### B. Plaintiff's Response

After being specifically notified of the consequences of failing to properly respond to Defendants' motion (*see* Dkt. No. 78, Part 1), and after being granted *three* extensions of the deadline by which to do so (*see* Dkt. Nos. 79, 80, 83), Plaintiff submitted a barrage of documents: (1) 49 pages of exhibits, which are attached to neither an affidavit nor a memorandum of law (Dkt. No. 84); (2) 113 pages of exhibits, attached to a 25-page affidavit (Dkt. No. 85); (3) 21 pages of exhibits, attached to a 12-page supplemental affidavit (Dkt. No. 86); and (4) a 29-page memorandum of law (Dkt. No. 86); and a 13-page supplemental memorandum of law (Dkt. No. 88).

Generally in his Memorandum of Law and Supplemental Memorandum of Law, Plaintiff responds to the legal arguments advanced by Defendants. (*See* Dkt. No. 86, Plf.'s Memo. of Law [responding to Defs.' exhaustion argument]; Dkt. No. 88, at 7-13 [Plf.'s Supp. Memo. of Law, responding to Defs.' arguments regarding the personal involvement of Defendant Paolano, the lack of evidence supporting a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

deliberate indifference claim against Defendant Nesmith, the applicability of the qualified immunity defense with regard to Plaintiff's claim against Defendant Nesmith, and the sufficiency and timing of Plaintiff's prescription-review claim against Defendant Paolano].) Those responses are described below in Part IV of this Report-Recommendation.

However, unfortunately, not among the numerous documents that Plaintiff has provided is a *proper* response to Defendants' Rule 7.1 Statement. (*See* Dkt. No. 85, Part 2, at 45-52 [Ex. N to Plf.'s Affid.].) Specifically, Plaintiff's Rule 7.1 Response (which is buried in a pile of exhibits) fails, with very few exceptions, to "set forth ... specific citation[s] to the record," as required by Local Rule 7.1(a)(3). (*Id.*) I note that the notary's "sworn to" stamp at the end of the Rule 7.1. Statement does not transform Plaintiff's Rule 7.1 Response into record evidence so as to render that Response compliant with Local Rule 7.1. First, Local Rule 7.1 expressly states, "The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits." N.D.N.Y. L.R. 7.1(a)(3). In this way, the District's Local Rule, like similar local rules of other districts, contemplates citations to a record that is independent of a Rule 7.1 Response. *See, e.g., Vaden v. GAP, Inc.,* 06-CV-0142, 2007 U.S. Dist. LEXIS 22736, at *3-5, 2007 WL 954256 (M.D.Tenn. March 26, 2007) (finding non-movant's verified response to movant's statement of material facts to be deficient because it did cite to affidavit or declaration, nor did it establish that non-movant had actual knowledge of matters to which he attested); *Waterhouse v. District of Columbia,* 124 F.Supp.2d 1, 4-5 (D.D.C.2000) (criticizing party's "Verified Statement of Material Facts," as being deficient in citations to independent record evidence, lacking "firsthand knowledge," and being purely "self-serving" in nature). Moreover, many of Plaintiff's statements in his Rule 7.1 Response are either argumentative in nature or lacking in specificity and personal knowledge, so as to disqualify those statements from having the effect of sworn testimony for purposes of a summary judgment motion. *See, infra,* notes 10-12 of this Report-Recommendation.

## III. GOVERNING LEGAL STANDARD

***4** Under Fed.R.Civ.P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine issue of material fact exists,[FN1] the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[FN2]

FN1. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN2. *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997) [citation omitted]; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." [FN3] The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." [FN4] Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." [FN5]

FN3. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

mere allegations ... of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

FN4. Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations ... of the [plaintiff's] pleading ...."); *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

FN5. *Ross v. McGinnis,* 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar.29, 2004) [internal quotations omitted] [emphasis added].

What this burden-shifting standard means when a plaintiff has failed to *properly* respond to a defendant's Rule 7.1 Statement of Material Facts is that the facts as set forth in that Rule 7.1 Statement will be accepted as true [FN6] to the extent that (1) those facts are supported by the evidence in the record,[FN7] and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[FN8]

FN6. *See* N.D.N.Y. L.R. 7.1(a)(3) (*"Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."* ) [emphasis in original].

FN7. *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,* 373 F.3d 241, 243 (2d Cir.2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement. It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted].

FN8. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

Implied in the above-stated standard is the fact that a district court has no duty to perform an *independent* review of the record to find proof of a factual dispute, even if the non-movant is proceeding *pro se.*[FN9] In the event the district court chooses to conduct such an independent review of the record, any affidavit submitted by the non-movant, in order to be sufficient to create a factual issue for purposes of a summary judgment motion, must, among other things, not be conclusory.[FN10] (An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.) [FN11] Finally, even where an affidavit is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." [FN12]

FN9. *See Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso,* No. 04-1921, 2004 U.S.App. LEXIS 21432, 2004 WL 2309715 (2d Cir. Oct. 14, 2004), *aff'g,* 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N .Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak,* 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4, 2006 WL 395269 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell,* 289 F.Supp.2d 289, 295 (N.D.N.Y. Oct.29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan,* 253 F.Supp.2d 369, 371-372 (N.D.N.Y.2003) (Hurd, J.).

FN10. *See* Fed.R.Civ.P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson,* 375 F.3d at 219 (2d. Cir.2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.,* 425 F.2d 92, 97 (2d Cir.1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

FN11. *See, e.g., Bickerstaff v. Vassar Oil,* 196 F.3d 435, 452 (2d Cir.1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.,* 78 F.3d 61, 63 (2d Cir.1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon,* 759 F.2d 989, 997 (2d Cir.1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places.... It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e] ); *Applegate,* 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

FN12. *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554-55 (2d Cir.2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner,* 03-CV-3789, 2006 WL 357824, at *3-4 & n. 7, 14, 16, 21 (S.D.N.Y. Feb.15, 2006) (prisoner's verified complaint, which recounted specific state-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)
**(Cite as: 2008 WL 2522324 (N.D.N.Y.))**

ments by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.,* 332 F.Supp.2d 599, 612 (S.D.N.Y.2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd,* 136 F. App'x 383 (2d Cir.2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

## IV. ANALYSIS

### A. Whether Plaintiff Has Adduced Evidence Establishing that Defendant Paolano Was Personally Involved in the Constitutional Violations Alleged

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 [2d Cir.1991] ).[FN13] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN14] If the defendant is a supervisory official, such as a correctional facility superintendent or a facility health services director, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN15] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN16] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN17]

FN13. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

FN14. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN15. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN16. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN17. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986) (setting forth four prongs).

***5** Defendants argue that Plaintiff has not adduced evidence establishing that Defendant Paolano,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Great Meadow C.F. Health Services Director during the time in question, was personally involved in the constitutional violations alleged. (Dkt. No. 78, Part 13, at 2 [Defs.' Memo. of Law].) In support of this argument, Defendants point to the record evidence establishing that, during the time in which Plaintiff was incarcerated at Great Meadow C.F. (i . e., from early August of 2000 to late November of 2000), Defendant Paolano never treated Plaintiff for any medical condition, much less a broken wrist on August 17, 2000. (*Id.; see also* Dkt. No. 78, Part 4, ¶¶ 7-8 [Paolano Affid.]; Dkt. No. 78, Part 5 [Ex. A to Paolano Affid.]; Dkt. No. 78, Part 11, at 32-33 [Plf.'s Depo.].)

Plaintiff responds that (1) Defendant Paolano was personally involved since he "treated" Plaintiff on August 17, 2000, by virtue of his supervisory position as the Great Meadow C.F.'s Health Services Director, and (2) Defendant Paolano has the "final say" regarding what medications inmates shall be permitted to retain when they transfer into Great Meadow C.F. (Dkt. No. 88, at 7-8 [Plf.'s Supp. Memo. of Law].) In support of this argument, Plaintiff cites a paragraph of his Supplemental Affidavit, and an administrative decision, for the proposition that Defendant Paolano, as the Great Meadow C.F. Health Services Director, had the "sole responsibility for providing treatment to the inmates under [the Facility's] care." (*Id.; see also* Dkt. No. 86, Suppl. Affid., ¶ 5 & Ex. 14.)

**1. Whether Defendant Paolano Was Personally Involved in Plaintiff's Treatment on August 17, 2000**

With respect to Plaintiff's first point (regarding Defendant Paolano's asserted "treatment" of Plaintiff on August 17, 2000), the problem with Plaintiff's argument is that the uncontrovered record evidence establishes that, as Defendants' assert, Defendant Paolano did not, in fact, treat Plaintiff on August 17, 2000 (or at any time when Plaintiff was incarcerated at Great Meadow C.F.). This was the fact asserted by Defendants in Paragraphs 38 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶ 38 [Defs.' Rule 7.1 Statement].) Defendants supported this factual assertion with record evidence. (*Id.* [providing accurate record citations]; *see also* Dkt. No. 78, Part 12, ¶¶ 37-38 [Defs.' Rule 7.1 Statement, indicating that it was Defendant Nesmith, not Defendant Paolano, who treated Plaintiff on 8/17/00].) Plaintiff has failed to specifically controvert this factual assertion, despite having been given an adequate opportunity to conduct discovery, and having been specifically notified of the consequences of failing to properly respond to Defendants' motion (*see* Dkt. No. 78, Part 1), and having been granted *three* extensions of the deadline by which to do so (*see* Dkt. Nos. 79, 80, 83). Specifically, Plaintiff fails to cite any record evidence in support of his denial of Defendants' referenced factual assertion. (*See* Dkt. No. 85, Part 2, at 50 [Ex. N to Plf.'s Affid.].) As a result, under the Local Rules of Practice for this Court, Plaintiff has effectively "admitted" Defendants' referenced factual assertions. N.D.N.Y. L.R. 7.1(a)(3).

***6** The Court has no duty to perform an independent review of the record to find proof disputing this established fact. *See, supra,* Part III and note 9 of this Report-Recommendation. Moreover, I decline to exercise my discretion, and I recommend that the Court decline to exercise its discretion, to perform an independent review of the record to find such proof for several reasons, any one of which is sufficient reason to make such a decision: (1) as an exercise of discretion, in order to preserve judicial resources in light of the Court's heavy caseload; (2) the fact that Plaintiff has already been afforded considerable leniency in this action, including numerous deadline extensions and liberal constructions; and (3) the fact that Plaintiff is fully knowledgeable about the requirements of a non-movant on a summary judgment motion, due to Defendants' notification of those requirements, and due to Plaintiff's extraordinary litigation experience.

With regard to this last reason, I note that federal courts normally treat the papers filed by *pro se* civil rights litigants with special solicitude. This is because, generally, *pro se* litigants are unfamiliar with legal

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

terminology and the litigation process, and because the civil rights claims they assert are of a very serious nature. However, "[t]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded [the] special solicitude" that is normally afforded *pro se* litigants.[FN18] Generally, the rationale for diminishing special solicitude (at least in the Second Circuit) is that the *pro se* litigant's extreme litigiousness demonstrates his *experience,* the lack of which is the reason for extending special solicitude to a *pro se* litigant in the first place.[FN19] The Second Circuit has diminished this special solicitude, and/or indicated the acceptability of such a diminishment, on several occasions.[FN20] Similarly, I decide to do so, here, and I recommend the Court do the same.

FN18. *Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *3 & n. 17 (N.D.N.Y. Sept.26, 2007) (Kahn, J., adopting Report-Recommendation) [citations omitted].

FN19. *Koehl,* 2007 WL 2846905, at *3 & n. 18 [citations omitted].

FN20. *See, e.g., Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *see also Raitport v. Chem. Bank,* 74 F.R.D. 128, 133 (S.D.N.Y.1977)[citing *Ackert v. Bryan,* No. 27240 (2d Cir. June 21, 1963) (Kaufman, J., concurring).

Plaintiff is no stranger to the court system. A review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") System reveals that Plaintiff has filed at least 15 other federal district court actions, [FN21] and at least three federal court appeals.[FN22] Furthermore, a review of the New York State Unified Court System's website reveals that he has filed at least 20 state court actions,[FN23] and at least two state court appeals.[FN24] Among these many actions he has had at least one victory, resulting in the payment of $20,000 to him in settlement proceeds.[FN25]

FN21. *See Murray v. New York,* 96-CV-3413 (S.D.N.Y.); *Murray v. Westchester County Jail,* 98-CV-0959 (S.D.N.Y.); *Murray v. McGinnis,* 99-CV-1908 (W.D.N.Y.); *Murray v. McGinnis,* 99-CV-2945 (S.D.N.Y.); *Murray v. McGinnis,* 00-CV-3510 (S.D.N.Y.); *Murray v. Jacobs,* 04-CV-6231 (W.D.N.Y.); *Murray v. Bushey,* 04-CV-0805 (N.D.N.Y.); *Murray v. Goord,* 05-CV-1113 (N.D.N.Y.); *Murray v. Wissman,* 05-CV-1186 (N.D.N.Y.); *Murray v. Goord,* 05-CV-1579 (N.D.N.Y.); *Murray v. Doe,* 06-CV-0205 (S.D.N.Y.); *Murray v. O'Herron,* 06-CV-0793 (W.D.N.Y.); *Murray v. Goord,* 06-CV-1445 (N.D.N.Y.); *Murray v. Fisher,* 07-CV-0306 (W.D.N.Y.); *Murray v. Escrow,* 07-CV-0353 (W.D.N.Y.).

FN22. *See Murray v. McGinnis,* No. 01-2533 (2d Cir.); *Murray v. McGinnis,* No. 01-2536 (2d Cir.); *Murray v. McGinnis,* No. 01-2632 (2d Cir.).

FN23. *See Murray v. Goord,* Index No. 011568/1996 (N.Y. Sup.Ct., Westchester County); *Murray v. Goord,* Index No. 002383/1997 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002131/1998 (N.Y. Sup.Ct., Chemung

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)
**(Cite as: 2008 WL 2522324 (N.D.N.Y.))**

County); *Murray v. Goord,* Index No. 002307/1998 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002879/1998 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002683/2004 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002044/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. McGinnis,* Index No. 002099/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Sullivan,* Index No. 002217/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002421/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002495/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002496/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. Goord,* Index No. 002888/2006 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002008/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002009/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002010/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. LeClaire,* Index No. 002011/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. Fisher,* Index No. 002762/2007 (N.Y. Sup.Ct., Chemung County); *Murray v. New York,* Claim No. Claim No. 108304, Motion No. 67679 (N.Y.Ct.Cl.); *Murray v. New York,* Motion No. M-67997 (N.Y.Ct.Cl.).

FN24. *See Murray v. Goord,* No. 84875, 709 N.Y. S.2d 662 (N.Y.S.App.Div., 3d Dept.2000); *Murray v. Goord,* No. 83252, 694 N.Y.S .2d 797 (N.Y.S.App.Div., 3d Dept.1999).

FN25. *See Murray v. Westchester County Jail,* 98-CV-0959 (S.D.N.Y .) (settled for $20,000 in 2002).

I will add only that, even if I were inclined to conduct such an independent review of the record, the record evidence that Plaintiff cites regarding this issue in his Supplemental Memorandum of Law does not create such a question of fact. (*See* Dkt. No. 88, at 7-8 [Plf.'s Supp. Memo. of Law, citing Dkt. No. 86, Suppl. Affid., ¶ 5 & Ex. 14].) It appears entirely likely that Defendant Paolano had the ultimate responsibility for providing medical treatment to the inmates at Great Meadow C.F.[FN26] However, this duty arose solely because of his supervisory position, i.e., as the Facility Health Services Director. It is precisely this sort of supervisory duty that does *not* result in liability under 42 U.S.C. § 1983, as explained above.

FN26. To the extent that Plaintiff relies on this evidence to support the proposition that Defendant Paolano had the “sole” responsibility for such health care, that reliance is misplaced. Setting aside the loose nature of the administrative decision's use of the word “sole,” and the different context in which that word was used (regarding the review of Plaintiff's grievance about having had his prescription discontinued), the administrative decision's rationale for its decision holds no preclusive effect in this Court. I note that this argument by Plaintiff, which is creative and which implicitly relies on principles of estoppel, demonstrates his facility with the law due to his extraordinary litigation experience.

***7** As for the other ways through which a supervisory official may be deemed “personally involved” in a constitutional violation under 42 U.S.C. § 1983, Plaintiff does not even argue (or allege facts plausibly suggesting) [FN27] that Defendant Paolano *failed to remedy* the alleged deliberate indifference to Plaintiff's serious medical needs on August 17, 2000, after learning of that deliberate indifference through a re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

port or appeal. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano created, or allowed to continue, *a policy or custom* under which the alleged deliberate indifference on August 17, 2000, occurred. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano had been *grossly negligent* in managing subordinates (such as Defendant Nesmith) who caused the alleged deliberate indifference. Nor does Plaintiff argue (or allege facts plausibly suggesting) that Defendant Paolano exhibited *deliberate indifference* to the rights of Plaintiff by failing to act on information indicating that Defendant Nesmith was violating Plaintiff's constitutional rights.

FN27. *See Bell Atl. Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (holding that, for a plaintiff's complaint to state a claim upon which relief might be granted under Fed.R.Civ.P. 8 and 12, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," or, in other words, there must be "plausible grounds to infer [actionable conduct]"), *accord, Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ... requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ) [emphasis in original].

In the alternative, I reach the same conclusion (that Plaintiff's claim against Defendant Paolano arising from the events of August 17, 2000, lacks merit) on the ground that there was no constitutional violation committed by Defendant Nesmith on August 17, 2000, in which Defendant Paolano could have been personally involved, for the reasons discussed below in Part IV.B. of this Report-Recommendation.

**2. Whether Defendant Paolano Was Personally Involved in the Review of Plaintiff's Prescriptions in Early August of 2000**

With respect to Plaintiff's second point (regarding Defendant Paolano's asserted "final say" regarding what medications inmates shall be permitted to retain when they transfer into Great Meadow C.F.), there are three problems with this argument.

First, the argument regards a claim that is not properly before this Court for the reasons explained below in Part IV.E. of this Report-Recommendation.

Second, as Defendants argue, even if the Court were to reach the merits of this claim, it should rule that Plaintiff has failed to adduce evidence establishing that Defendant Paolano was personally involved in the creation or implementation of DOCS' prescription-review policy. It is an uncontroverted fact, for purposes of Defendants' motion, that (1) the decision to temporarily deprive Plaintiff of his previously prescribed pain medication (i.e., pending the review of that medication by a physician at Great Meadow C.F.) upon his arrival at Great Meadow C.F. was made by an "intake nurse," not by Defendant Paolano, (2) the nurse's decision was made pursuant to a policy instituted by DOCS, not by Defendant Paolano, and (3) Defendant Paolano did not have the authority to alter that policy. These were the facts asserted by Defendants in Paragraphs 6 through 9 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶¶ 6-9 [Defs.' Rule 7.1 Statement].) Defendants supported these factual assertions with record evidence. (*Id.* [providing accurate record citations].) Plaintiff expressly admits two of these factual assertions, and fails to support his denial of the remaining factual assertions with citations to record evidence that actually controverts the facts asserted. (Dkt. No. 85, Part 2, at 46-47 [Ex. N to Plf.'s Affid.].)

***8** For example, in support of his denial of De-

fendants' factual assertion that "[t]his policy is not unique to Great Meadow, but applies to DOCS facilities generally," Plaintiff says that, at an unidentified point in time, "Downstate CF honored doctors proscribed [sic] treatment and filled by prescriptions from Southport Correctional Facility .... Also I've been transferred to other prisons such as Auburn [C.F.] in which they honored doctors prescribe[d] orders." (*Id.*) I will set aside the fact that Defendants' factual assertion is not that the policy applies to every single DOCS facility but that it applies to them as a general matter. I will also set aside the fact that Plaintiff's assertion is not supported by a citation to independent record evidence. The main problem with this assertion is that it is not specific as to what year or years he had these experiences, nor does it even say that his prescriptions were immediately honored without a review by a physician at the new facility.

The other piece of "evidence" Plaintiff cites in support of this denial is "Superintendent George B. Duncan's 9/22/00 decision of Appeal to him regarding [Plaintiff's Grievance No.] GM-30651-00." (*Id.*) The problem is that the referenced determination states merely that Defendant Paolano, as the Great Meadow C.F. Health Services Director, had the "sole responsibility for providing treatment to the inmates under [the Facility's] care, and has the final say regarding all medical prescriptions." (Dkt. No. 86, at 14 [Ex. 14 to Plf.'s Suppl. Affid.].) For the sake of much-needed brevity, I will set aside the issue of whether an IGP Program Director's broadly stated *rationale* for an appellate determination with respect to a prisoner's grievance can ever constitute evidence sufficient to create proof of a genuine issue of fact for purposes of a summary judgment motion. The main problem with this "evidence" is that there is absolutely nothing inconsistent between (1) a DOCS policy to temporarily deprive prisoners of non-life-sustaining prescription medications upon their arrival at a correctional facility, pending the review of those medical prescriptions by a physician at the facility, and (2) a DOCS policy to give Facility Health Service Directors the "final say" regarding the review of those medical prescriptions.

Because Plaintiff has failed to support his denial of these factual assertions with citations to record evidence that actually controverts the facts asserted, I will consider the facts asserted by Defendants as true. N.D.N.Y. L.R. 7.1(a)(3). Under the circumstances, I decline, and I recommend the Court decline, to perform an independent review of the record to find proof disputing this established fact for the several reasons described above in Part IV.A.1. of this Report-Recommendation.

Third, Plaintiff has failed to adduce evidence establishing that the policy in question is even unconstitutional. I note that, in his Supplemental Memorandum of Law, Plaintiff argues that "deliberate indifference to serious medical needs is ... shown by the fact that prisoners are denied access to a doctor and physical examination upon arrival at [Great Meadow] C.F. to determine the need for pain medications which aren't life sustaining ...." (Dkt. No. 88, at 10 [Plf.'s Supp. Memo. of Law].) As a threshold matter, Plaintiff's argument is misplaced to the extent he is arguing about the medical care other prisoners may not have received upon their arrival at Great Meadow C.F. since this is not a class-action. More importantly, to the extent he is arguing about any medical care that he (allegedly) did not receive upon his arrival at Great Meadow C.F., he cites no record evidence in support of such an assertion. (*Id.*) Indeed, he does not even cite any record evidence establishing that, upon his arrival at Great Meadow C.F. in early 2000, either (1) he asked a Defendant in this action for such medical care, or (2) he was suffering from a serious medical need for purposes of the Eighth Amendment. (*Id.*)

***9** If Plaintiff is complaining that Defendant Paolano is liable for recklessly causing a physician at Great Meadow C.F. to excessively delay a review Plaintiff's pain medication upon his arrival at Great Meadow C.F., then Plaintiff should have asserted that

allegation (and some basic facts supporting it) in a pleading in this action so that Defendants could have taken adequate discovery on it, and so that the Court could squarely review the merits of it. (Dkt. No. 78, Part 11, at 53 [Plf.'s Depo.].)

For all of these reasons, I recommend that Plaintiff's claims against Defendant Paolano be dismissed with prejudice.

**B. Whether Plaintiff Has Adduced Evidence Establishing that Defendant Nesmith Was Deliberately Indifferent to Plaintiff's Serious Medical Needs**

Generally, to state a claim for inadequate medical care, a plaintiff must allege facts plausibly suggesting two things: (1) that he had a sufficiently serious medical need; and (2) that the defendants were deliberately indifferent to that serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).

Defendants argue that, even assuming that Plaintiff's broken wrist constituted a sufficiently serious medical condition for purposes of the Eighth Amendment, Plaintiff has not adduced evidence establishing that, on August 17, 2000, Defendant Nesmith acted with deliberate indifference to that medical condition. (Dkt. No. 78, Part 13, at 4-9 [Defs.' Memo. of Law].) In support of this argument, Defendants point to the record evidence establishing that Defendant Nesmith sutured lacerations in Plaintiff's forehead, ordered an x-ray examination of Plaintiff's wrist, and placed that wrist in a splint (with an intention to replace that splint with a cast once the swelling in Plaintiff's wrist subsided) within 24 hours of the onset of Plaintiff's injuries. (*Id.* at 7-9 [providing accurate record citations].) Moreover, argue Defendants, Plaintiff's medical records indicate that he did not first complain of an injury to his wrist until hours after he experienced that injury. (*Id.* at 8 [providing accurate record citation].)

Plaintiff responds that “[he] informed P.A. Nesmith that his wrist felt broken and P.A. Nesmith ignored plaintiff, which isn't reasonable. P.A. Nesmith didn't even care to do a physical examination to begin with[,] which would've revealed [the broken wrist] and is fundamental medical care after physical trauma.” (Dkt. No. 88, at 11 [Plf.'s Supp. Memo. of Law].) In support of this argument, Plaintiff cites *no* record evidence. (*Id.* at 11-12.)

The main problem with Plaintiff's argument is that the uncontroverted record evidence establishes that, as Defendants have argued, Defendant Nesmith (1) sutured lacerations in Plaintiff's forehead within hours if not minutes of Plaintiff's injury and (2) ordered an x-ray examination of Plaintiff's wrist, and placed that wrist in a splint (with an intention to replace that splint with a cast once the swelling in Plaintiff's wrist subsided) within 24 hours of the onset of Plaintiff's injuries. These facts were asserted by Defendants in Paragraphs 27 through 32 of their Rule 7.1 Statement. (*See* Dkt. No. 78, Part 12, ¶¶ 27-32 [Defs.' Rule 7.1 Statement].) Defendants supported these factual assertions with record evidence. (*Id.* [providing accurate record citations].) Plaintiff expressly admits most of these factual assertions, and fails to support his denial of the remaining factual assertions with citations to record evidence that actually controverts the facts asserted. (Dkt. No. 85, Part 2, at 48-50 [Ex. N to Plf.'s Affid.].)

***10** The only denial he supports with a record citation is with regard to when, within the referenced 24-hour period, Defendant Nesmith ordered his wrist x-ray. This issue is not material, since I have assumed, for purposes of Defendants' motion, merely that Defendant Nesmith ordered Plaintiff's wrist x-ray within 24 hours of the onset of Plaintiff's injury.[FN28] (Indeed, whether the wrist x-ray was ordered in the late evening of August 17, 2000, or the early morning of August 18, 2000, would appear to be immaterial for the additional reason that it would appear unlikely that any

x-rays could be conducted in the middle of the night in Great Meadow C.F.)

FN28. Furthermore, I note that the record evidence he references (in support of his argument that the x-ray was on the morning of August 18, 2000, not the evening of August 17, 2000) is "Defendants exhibit 20," which he says "contains [an] 11/20/00 Great Meadow Correctional Facility Investigation Sheet by P. Bundrick, RN, NA, and Interdepartmental Communication from defendant Ted Nesmith P.A. that state [that the] X ray was ordered on 8/18/00 in the morning." (*Id.*) I cannot find, in the record, any "exhibit 20" having been submitted by Defendants, who designated their exhibits by letter, not number. (*See generally* Dkt. No. 78.) However, at Exhibit G of Defendant Nesmith's affidavit, there is the "Investigation Sheet" to which Plaintiff refers. (Dkt. No. 78, Part 3, at 28 [Ex. G to Nesmith Affid.].) The problem is that document does not say what Plaintiff says. Rather, it says, "Later that evening [on August 17, 2000] ... [a]n x-ray was ordered for the following morning ...." (*Id.*) In short, the document says that the x-ray was not ordered *on* the morning of August 18, 2007, but *for* that morning. Granted, the second document to which Plaintiff refers, the "Interdepartmental Communication" from Defendant Nesmith, does say that "I saw him the next morning and ordered an xray ...." (*Id.* at 29.) I believe that this is a misstatement, given the overwhelming record evidence to the contrary.

Moreover, in confirming the accuracy of Defendants' record citations contained in their Rule 7.1 Statement, I discovered several facts further supporting a finding that Defendant Nesmith's medical care to Plaintiff was both prompt and responsive. In particular, the record evidence cited by Defendants reveals the following specific facts:

(1) at approximately 10:17 a.m. on August 17, 2000, Plaintiff was first seen by someone in the medical unit at Great Meadow C.F. (Nurse Hillary Cooper);

(2) at approximately 10:40 a.m. on August 17, 2000, Defendant Nesmith examined Plaintiff; during that examination, the main focus of Defendant Nesmith's attention was Plaintiff's complaint of the lack of feeling in his lower extremities; Defendant Nesmith responded to this complaint by confirming that Plaintiff could still move his lower extremities, causing Plaintiff to receive an x-ray examination of his spine (which films did not indicate any pathology), and admitting Plaintiff to the prison infirmary for observation;

(3) at approximately 11:00 a.m. on August 17, 2000, Defendant Nesmith placed four sutures in each of two 1/4" lacerations on Plaintiff's left and right forehead;

(4) by 11:20 a.m. Plaintiff was given, or at least prescribed, Tylenol by a medical care provider;

(5) Plaintiff's medical records reflect no complaint by Plaintiff of any injury to his wrist at any point in time other than between 4:00 p.m. and midnight on August 17, 2000;

(6) at some point after 9:00 p.m. on August 17, 2000, and 9:00 a.m. on the morning of August 18, 2000, Defendant Nesmith ordered that Plaintiff's wrist be examined by x-ray, in response to Plaintiff's complaint of an injured wrist; that x-ray examination occurred at Great Meadow C.F. at some point between 9:00 a.m. on August 17, 2000, and 11:00 a.m. on August 18, 2000, when Defendant Nesmith personally performed a "wet read" of the x-rays before sending them to Albany Medical Center for a formal reading

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

by a radiologist;

(7) at approximately 11:00 a.m. on August 18, 2000, Defendant Nesmith placed a splint on Plaintiff's wrist and forearm with the intent of replacing it with a cast in a couple of days; the reason that Defendant Nesmith did not use a cast at that time was that Plaintiff's wrist and forearm were swollen, and Defendant Nesmith believed, based on 30 years experience treating hundreds of fractures, that it was generally not good medical practice to put a cast on a fresh fracture, because the cast will not fit tightly once the swelling subsides;

***11** (8) on August 22, 2000, Defendant Nesmith replaced the splint with a cast;

(9) on August 23, 2000, Plaintiff was discharged from the infirmary at Great Meadow C.F.; and

(10) on August 30, 2000, Defendant Nesmith removed the sutures from Plaintiff's forehead. (*See generally* Dkt. No. 78, Part 2, ¶¶ 3-15 [Affid. of Nesmith]; Dkt. No. 78, Part 3, Exs. A-E [Exs. to Affid. of Nesmith].)

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," [FN29] one that is "equivalent to criminal recklessness." [FN30] There is no evidence of such criminal recklessness on the part of Defendant Nesmith, based on the uncontroverted facts before the Court, which show a rather prompt and responsive level of medical care given by Defendant Nesmith to Plaintiff, during the hours and days following the onset of his injuries.

FN29. *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted].").

FN30. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *cf. Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

In his argument that his treatment in question constituted deliberate indifference to a serious medical need, Plaintiff focuses on the approximate 24-hour period that appears to have elapsed between the onset of his injury and his receipt of an x-ray examination of his wrist. He argues that this 24-hour period of time constituted a delay that was unreasonable and reckless. In support of his argument, he cites two cases. *See Brown v. Hughes,* 894 F.2d 1533, 1538-39 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). However, the facts of both cases are clearly distinguishable from the facts of the case at hand.

In *Brown v. Hughes,* the Eleventh Circuit found a genuine issue of material fact was created as to whether a correctional officer knew of a prisoner's foot injury during the four hours in which no medical care was provided to the prisoner, so as to preclude summary judgment for that officer. *Brown,* 894 F.2d at 1538-39. However, the Eleventh Circuit expressly stated that the question of fact was created because the prisoner had "submitted affidavits stating that [the officer] was called to his cell because there had been a fight, that while [the officer] was present [the prisoner] began to limp and then hop on one leg, that his foot began to swell severely, that he told [the officer] his foot felt as though it were broken, and that [the officer] promised to send someone to look at it but never did." *Id.* Those are *not* the facts of this case.

In *Loe v. Armistead,* the Fourth Circuit found merely that, in light of the extraordinary leniency with which *pro se* complaints are construed, the court was unable to conclude that a prisoner had failed to state a claim upon which relief might be granted for purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) because the prisoner had alleged that the defendants-*despite being (at some point) "notified" of the prisoner's injured arm*-had inexplicably delayed for 22 hours in giving him medical treatment for the injury. *Loe,* 582 F.2d at 1296. More specifically, the court expressly construed the prisoner's complaint as alleging that, following the onset of the plaintiff's injury at 10:00 a.m. on the day in question, the plaintiff was immediately taken to the prison's infirmary where a nurse, while examining the prisoner's arm, heard him complain to her about pain. *Id.* at 1292. Furthermore, the court construed the prisoner's complaint as alleging that, "[t]hroughout the day, until approximately 6:00 p.m., [the prisoner] repeatedly requested that he be taken to the hospital. He was repeatedly told that only the marshals could take him to a hospital and that they had been notified of his injury." *Id.* at 1292-93. Again, those are *not* the facts of this case.

***12** Specifically, there is no evidence in the record of which I am aware that at any time before 4:00 p.m. on August 17, 2000, Defendant Nesmith either (1) heard Plaintiff utter a complaint about a wrist injury sufficient to warrant an x-ray examination or (2) observed physical symptoms in Plaintiff's wrist (such as an obvious deformity) that would place him on notice of such an injury. As previously stated, I decline, and I urge the Court to decline, to tediously sift through the 262 pages of documents that Plaintiff has submitted in the hope of finding a shred of evidence sufficient to create a triable issue of fact as to whether Plaintiff made, and Defendant Nesmith heard, such a complaint before 4:00 p.m. on August 17, 2000.

I note that, in reviewing Plaintiff's legal arguments, I have read his testimony on this issue. That testimony is contained at Paragraphs 8 through 12, and Paragraph 18, of his Supplemental Affidavit. (*See* Dkt. No. 86, at ¶¶ 8-10, 18 [Plf.'s Supp. Affid., containing two sets of Paragraphs numbed "5" through "11"].) In those Paragraphs, Plaintiff swears, in pertinent part, that "[w]hile I was on the x-ray table I told defendant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Ted Nesmith, P.A. and/or Bill Redmond RN ... that my wrist felt broken, and was ignored.” (*Id.* at ¶ 9.) Plaintiff also swears that “I was [then] put into a room in the facility clinic[,] and I asked defendant Ted Nesmith, PA[,] shortly thereafter for [an] x-ray of [my] wrist[,] pain medication and [an] ice pack but wasn't given it [sic].” (*Id.* at ¶ 10.) Finally, Plaintiff swears as follows: “At one point on 8/17/00 defendant Nesmith told me that he didn't give a damn when I kept complaining that my wrist felt broken and how I'm going to sue him cause I'm not stupid [enough] to not know he's supposed to do [a] physical examination [of me], [and not] to ignore my complaints about [my] wrist feeling broke and feeling extreem [sic] pain. He told me [to] stop complaining [and that] he's done with me for the day.” (*Id.* at ¶ 18.)

This last factual assertion is important since a response of “message received” from the defendant appears to have been critical in the two cases cited by Plaintiff. It should be emphasized that, according to the undisputed facts, when Plaintiff made his asserted wrist complaint to Defendant Nesmith during the morning of August 17, 2000, Defendant Nesmith was either suturing up Plaintiff's forehead or focusing on Plaintiff's complaint of a lack of feeling in his lower extremities. (This complaint of lack of feeling, by the way, was found to be inconsistent with Defendant Nesmith's physical examination of Plaintiff.)

In any event, Defendant Nesmith can hardly be said to have, in fact, “ignored” Plaintiff since he placed him under *observation* in the prison's infirmary (and apparently was responsible for the prescription of Tylenol for Plaintiff). [FN31] Indeed, it was in the infirmary that Plaintiff was observed by a medical staff member to be complaining about his wrist, which resulted in an x-ray examination of Plaintiff's wrist.

FN31. In support of my conclusion that this fact alone is a sufficient reason to dismiss Plaintiff's claims against Defendant Nesmith, I rely on a case cited by Plaintiff himself. *See Brown,* 894 F.2d at 1539 (“Although no nurses were present [in the hospital] at the jail that day, the procedure of sending [the plaintiff] to the hospital, once employed, was sufficient to ensure that [the plaintiff's broken] foot was treated promptly. Thus, [the plaintiff] has failed to raise an issue of deliberate indifference on the part of these defendants, and the order of summary judgment in their favor must be affirmed.”).

***13** Even if it were true that Plaintiff made a wrist complaint directly to Defendant Nesmith (during Defendant Nesmith's examination and treatment of Plaintiff between 10:40 a.m. and 11:00 a.m. on August 17, 2000), and Defendant Nesmith heard that complaint, and that complaint were specific and credible enough to warrant an immediate x-ray examination, there would be, at most, only some *negligence* by Defendant Nesmith in not ordering an x-ray examination until 9:00 p.m. that night.

As the Supreme Court has observed, “[T]he question of whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice.....” *Estelle,* 429 U.S. at 107.[FN32] For this reason, this Court has actually held that a *17-day* delay between the onset of the prisoner's apparent wrist fracture and the provision of an x-ray examination and cast did not constitute deliberate indifference, as a matter of law. *Miles v. County of Broome,* 04-CV-1147, 2006 U.S. Dist. LEXIS 15482, at *27-28, 2006 WL 561247 (N.D.N.Y. Mar. 6, 2006) (McAvoy, J.) (granting defendants' motion for summary judgment with regard to prisoner's deliberate indifference claim).

FN32. *See also Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001) (prisoner's “disagreements

over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention [with regard to the treatment of his broken finger], are not adequate grounds for a section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.") [citation omitted]; *cf. O'Bryan v. Federal Bureau of Prisons*, 07-CV-0076, 2007 U.S. Dist. LEXIS 65287, at *24-28 (E.D.Ky. Sept. 4, 2007) (holding no deliberate indifference where prisoner wore wrist brace/bandage on his broken wrist for two months even though he had asked for a cast; finding that "the type of wrap would only go the difference of opinion between a patient and doctor about what should be done, and the Supreme Court has stated that a difference of opinion regarding the plaintiff's diagnosis and treatment does not state a constitutional claim.").

As I read Plaintiff's complaints about the medical care provided to him by Defendant Nesmith in this action, I am reminded of what the Second Circuit once observed:

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[ ] understandably seeks .... We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution.... The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves ....

*Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986) [internal quotations and citations omitted].

For all of these reasons, I recommend that Plaintiff's claims against Defendant Nesmith be dismissed with prejudice.

**C. Whether Defendant Nesmith Is Protected from Liability by the Doctrine of Qualified Immunity, As a Matter of Law**

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " [FN33] In determining whether a particular right was *clearly established,* courts in this Circuit consider three factors:

> FN33. *Williams,* 781 F.2d at 322 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ).

> ***14** (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.[FN34]

> FN34. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted).

Regarding the issue of whether *a reasonable person would have known* he was violating a clearly established right, this "objective reasonableness" [FN35] test is met if "officers of reasonable competence could

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

disagree on [the legality of defendant's actions]." FN36 As the Supreme Court explained,

FN35. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (quoting *Harlow,* 457 U.S. at 819); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

FN36. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

> [T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law .... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.FN37

FN37. *Malley,* 475 U.S. at 341.

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law." FN38

FN38. *Malsh,* 901 F.Supp. at 764 (citing *Cartier v. Lussier,* 955 F.2d 841, 844 [2d Cir.1992] [citing Supreme Court cases].)

Here, I agree with Defendants that, based on the current record, it was not clearly established that, between August 17, 2000, and August 22, 2000, Plaintiff possessed an Eighth Amendment right to receive an x-ray examination and casting of his wrist any sooner than he did. (Dkt. No. 78, Part 13, at 9-11 [Defs.' Memo. of Law].) I note that neither of the two decisions cited by Plaintiff (discussed earlier in this Report-Recommendation) were controlling in the Second Circuit. *See Brown v. Hughes,* 894 F.2d 1533, 1538-39 (11th Cir.), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). I also note that what was controlling was the Supreme Court's decision in *Estelle v. Gamble,* holding that "the question of whether an X-ray-or additional diagnostic techniques or forms of treatment-is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice....." *Estelle,* 429 U.S. at 107.

Furthermore, I agree with Defendants that, at the very least, officers of reasonable competence could have believed that Defendant Nesmith's actions in conducting the x-ray examination and casting when he did were legal.FN39 In his memorandum of law, Plaintiff argues that Defendant Nesmith *intentionally* delayed giving Plaintiff an x-ray for 12 hours, and that the four-day delay of placing a hard cast on Plaintiff's wrist caused Plaintiff *permanent injury* to his wrist. (Dkt. No. 88, at 12-13 [Plf.'s Supp. Memo. of Law].) He cites no portion of the record for either assertion. (*Id.*) Nor would the fact of permanent injury even be enough to propel Plaintiff's Eighth Amendment claim to a jury.FN40 I emphasize that it is an undisputed fact, for purposes of Defendants' motion, that the reason that Defendant Nesmith placed a splint and not a cast on Plaintiff's wrist and arm on the morning of August

18, 2000, was that Plaintiff's wrist and forearm were swollen, and Defendant Nesmith's medical judgment (based on his experience) was that it was not good medical practice to put a cast on a fresh fracture, because the cast will not fit tightly once the swelling subsides.[FN41] Officers of reasonable competence could have believed that decision was legal.

FN39. (*Id.*)

FN40. This particular point of law was recognized in one of the cases Plaintiff himself cites. *Loe,* 582 F.2d at 1296, n. 3 ("[Plaintiff's] assertion that he suffered pain two and one-half weeks after the injury and that the fracture had not healed do not establish deliberate indifference or lack of due process. Similarly, his allegation that he has not achieved a satisfactory recovery suggests nothing more than possible medical malpractice. It does not assert a constitutional tort.").

FN41. (Dkt. No. 78, Part 12, ¶¶ 31-33 [Defs.' Rule 7.1 Statement]; *see also* Dkt. No. 78, Part 2, ¶¶ 11-13 [Affid. of Nesmith]; Dkt. No. 78, Part 3, Ex. C [Exs. to Affid. of Nesmith] )

***15** As a result, I recommend that, in the alternative, the Court dismiss Plaintiff's claims against Defendant Nesmith based on the doctrine of qualified immunity.

**D. Whether Plaintiff Has Adduced Evidence Establishing that He Exhausted His Available Administrative Remedies with Respect to His Assault Claim**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [FN42] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." [FN43] The Department of Correctional Services ("DOCS") has available a well-established three-step inmate grievance program.[FN44]

FN42. 42 U.S.C. § 1997e.

FN43. *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

FN44. 7 N.Y.C.R.R. § 701.7.

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure.[FN45] *First,* an inmate must file a complaint with the facility's IGP clerk within fourteen (14) calendar days of the alleged occurrence. A representative of the facility's inmate grievance resolution committee ("IGRC") has seven working days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within seven (7) working days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within four (4) working days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within ten (10) working days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within four (4) working days of receipt of the superintendent's written decision. CORC is to render a written decision within twenty (20) working days of receipt of the appeal. It is important to emphasize that *any failure by the IGRC or the super-*

*intendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.* FN46

FN45. 7 N.Y.C.R.R. § 701.7; *see also White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

FN46. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g ., Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. FN47 However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.FN48 *First,* "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." FN49 *Second,* if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." FN50 *Third,* if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." FN51

FN47. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

FN48. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).

FN49. *Hemphill,* 380 F.3d at 686 (citation omitted).

FN50. *Id.* [citations omitted].

FN51. *Id.* [citations and internal quotations omitted].

***16** Defendants argue that Plaintiff never exhausted his available administrative remedies with regard to his claim arising out of the assault that allegedly occurred on August 17, 2000. (Dkt. No. 78, Part 13, at 9-11 [Defs.' Memo. of Law].)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 22

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)
**(Cite as: 2008 WL 2522324 (N.D.N.Y.))**

Plaintiff responds with four different legal arguments. First, he appears to argue that he handed a written grievance to an unidentified corrections officer but never got a response from the IGRC, and that filing an appeal under such a circumstance is merely optional, under the PLRA (Dkt. No. 86, at 23-25, 44 [Plf.'s Memo. of Law].) Second, he argues that Defendants “can't realistically show” that Plaintiff never sent any grievances or appeals to the Great Meadow C.F. Inmate Grievance Clerk since that facility did not (during the time in question) have a grievance “receipt system.” (*Id.* at 25-29.) In support of this argument, he cites unspecified record evidence that, although he sent a letter to one “Sally Reams” at some point and received a letter back from her on May 5, 2003, she later claimed that she had never received a letter from Plaintiff. (*Id.* at 29.) Third, he argues that the determination he received from CORC (at some point) satisfied the PLRA's exhaustion requirement. (*Id.* at 30-38.) Fourth, he argues that Defendants rendered any administrative remedies “unavailable” to Plaintiff, for purposes of the Second Circuit's above-described three-part exhaustion inquiry, by (1) failing to cause DOCS to provide proper “instructional provisions” in its directives, (2) failing to cause Great Meadow C.F. to have a grievance “receipt system,” and (3) “trash [ing]” Plaintiff's grievances and appeals. (*Id.* at 39-45.) FN52

FN52. I note that the breadth of Plaintiff's creative, thoughtful and well-developed legal arguments further demonstrates his extraordinary experience as a litigant.

For the reasons set forth below, I reject each of these arguments. However, I am unable to conclude, for another reason, that Plaintiff has failed to exhaust his administrative remedies as a matter of law, based on the current record.

**1. Plaintiff's Apparent Argument that an Appeal from His Lost or Ignored Grievance Was “Optional” Under the PLRA**

Plaintiff apparently argues that filing an appeal to CORC when one has not received a response to one's grievance is merely optional under the PLRA. (Dkt. No. 86, at 23-25, 44 [Plf.'s Memo. of Law].) If this is Plaintiff's argument, it misses the point.

It may be true that the decision of whether or not to file an appeal in an action is always “optional”-from a metaphysical standpoint. However, it is also true that, in order to satisfy the PLRA's exhaustion requirement, one *must* file an appeal when one has not received a response to one's grievance (unless one of the exceptions contained in the Second Circuit's three-party inquiry exists). *See, supra,* note 46 of this Report-Recommendation.

**2. Plaintiff's Argument that Defendants “Can't Realistically Show” that Plaintiff Never Sent any Grievances or Appeals to the Great Meadow C.F. Inmate Grievance Clerk**

Plaintiff also argues that Defendants “can't realistically show” that Plaintiff never sent any grievances or appeals to the Great Meadow C.F. Inmate Grievance Clerk since that facility did not (during the time in question) have a grievance “receipt system.” (Dkt. No. 86, at 25-29 [Plf.'s Memo. of Law].) This argument also fails.

***17** Plaintiff appears to misunderstand the parties' respective burdens on Defendants' motion for summary judgment. Even though a failure to exhaust is an affirmative defense that a defendant must plead and prove, once a defendant has met his initial burden of establishing the absence of any genuine issue of material fact regarding exhaustion (which initial burden has been appropriately characterized as “modest”), FN53 the burden then shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial regarding exhaustion. *See, supra,* Part III of this Report-Recommendation.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN53. *See Ciaprazi v. Goord,* 02-CV-0915, 2005 WL 3531464, at *8 (N.D.N.Y. Dec.22, 2005) (Sharpe, J.; Peebles, M.J.) (characterizing defendants' threshold burden on a motion for summary judgment as "modest") [citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ]; *accord, Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *9 & n. 60 (N.D.N.Y. Oct.18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.), *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *17 & n. 109 (N.D.N.Y. Apr.24, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.).

Here, it is an uncontroverted fact, for purposes of Defendants' motion, that (1) grievance records at Great Meadow C.F. indicate that Plaintiff never filed a timely grievance alleging that he had been assaulted by corrections officers at Great Meadow C.F. in 2000, and (2) records maintained by CORC indicate that Plaintiff never filed an appeal (to CORC) regarding any grievance alleging that he had been so assaulted. (*See* Dkt. No. 78, Part 12, ¶¶ 39-40 [Defs.' Rule 7.1 Statement, providing accurate record citations].) Plaintiff has failed to properly controvert these factual assertions with specific citations to record evidence that actually creates a genuine issue of fact. (*See* Dkt. No. 85, Part 2, at 50-51 [Ex. N to Plf.'s Affid.].) As a result, under the Local Rules of Practice for this Court, Plaintiff has effectively "admitted" Defendants' referenced factual assertions. N.D.N.Y. L.R. 7.1(a)(3).

With respect to Plaintiff's argument that the referenced factual assertions are basically meaningless because Great Meadow C.F. did not (during the time in question) have a grievance "receipt system," that argument also fails. In support of this argument, Plaintiff cites unspecified record evidence that, although he sent a letter to Sally Reams (the IGP Supervisor at Great Meadow C.F. in May 2003) at some point and received a letter back from her on May 5, 2003, she later claimed that she had never received a letter from Plaintiff. (*Id.* at 29.) (*See* Dkt. No. 86, at 29 [Plf.'s Memo. of Law].) After examining Plaintiff's original Affidavit and exhibits, I located and carefully read the documents in question. (Dkt. No. 85, Part 1, ¶ 23 [Plf.'s Affid.]; Dkt. No. 85, Part 2 [Exs. F and G to Plf.'s Affid.].)

These documents do not constitute sufficient evidence to create a triable question of fact on the issue of whether, in August and/or September of 2000, Great Meadow C.F. did not have a grievance "receipt system." At most, they indicate that (1) at some point, nearly three years after the events at issue, Plaintiff (while incarcerated at Attica C.F.) wrote to Ms. Reams complaining about the alleged assault on August 17, 2000, (2) she responded to Plaintiff, on May 5, 2003, that he must grieve the issue at Attica C .F., where he must request permission to file an untimely grievance, and (3) at some point between April 7, 2003, and June 23, 2003, Ms. Reams informed Mr. Eagen that she did not "remember" receiving "correspondence" from Plaintiff. (*Id.*) The fact that Ms. Reams, after the passing of several weeks and perhaps months, did not retain an independent memory (not record) of receiving a piece of "correspondence" (not grievance) from Plaintiff (who was not an inmate currently incarcerated at her facility) bears little if any relevance on the issue of whether Great Meadow C.F. had, in April and/or May of 2003, a mechanism by which it recorded its receipt of *grievances.* Moreover, whether or not Great Meadow C.F. had a grievance "receipt system" in April and/or May of 2003 bears little if any relevance to whether it had a grievance "receipt system" in August and/or September of 2000.

***18** It should be emphasized that Defendants have adduced record evidence specifically establishing that, in August and September 2000, Great Meadow C.F. had a *functioning* grievance-recording process through which, when a prisoner (and specifically Plaintiff) filed a grievance, it was "assign[ed] a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

number, title and code" and "log[ged] ... into facility records." (Dkt. No. 78, Part 6, ¶¶ 7-9 [Bellamy Decl.]; Dkt. No. 78, Part 7, at 2 [Ex. A to Bellamy Decl.] Dkt. No. 78, Part 8, ¶ 4 [Brooks Decl.]; Dkt. No. 78, Part 9, at 6 [Ex. B to Brooks Decl.].)

Finally, even if Great Meadow C.F. did not (during the time in question) have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level. *See, supra,* note 46 of this Report-Recommendation.

**3. Plaintiff's Argument that the Determination He Received from CORC Satisfied the PLRA's Exhaustion Requirement**

Plaintiff argues that the determination he received from CORC (at some point) satisfied the PLRA's exhaustion requirement. (Dkt. No. 86, at 30-38 [Plf.'s Memo. of Law].) This argument also fails.

Plaintiff does not clearly articulate the specific portion of the record where this determination is located. (*See id.* at 30 [Plf .'s Affid., referencing merely "plaintiff's affidavit and exhibits"].) Again, the Court has no duty to *sua sponte* scour the 209 pages that comprise Plaintiff's "affidavit and exhibits" for proof of a dispute of material fact, and I decline to do so (and recommend the Court decline to do so) for the reasons stated above in Part IV.A.1. of this Report-Recommendation. I have, however, in analyzing the various issues presented by Defendants' motion, reviewed what I believe to be the material portions of the documents to which Plaintiff refers. I report that Plaintiff appears to be referring to a determination by the Upstate C.F. Inmate Grievance Program, dated June 20, 2003, stating, "After reviewing [your June 11, 2003, Upstate C.F.] grievance with CORC, it has been determined that the grievance is unacceptable. It does not present appropriate mitigating circumstances for an untimely filing." (Dkt. No. 85, Part 2, at 37 [Ex. J to Plf.'s Affid.]; *see also* Dkt. No. 85, Part 1, ¶¶ 22-34 [Plf.'s Affid.].)

There are two problems for Plaintiff with this document. First, this document does *not* constitute a written determination by *CORC* on a written appeal by Plaintiff to *CORC* from an Upstate C.F. written determination. (*See* Dkt. No. 85, Part 2, at 37 [Ex. J to Plf.'s Affid.].) This fact is confirmed by one of Plaintiff's own exhibits, wherein DOCS IGP Director Thomas Eagen advises Plaintiff, "Contrary to the IGP Supervisor's assertion in his memorandum dated June 20, 2003, the IGP Supervisor's denial of an extension of the time frames to file your grievance from Great Meadow in August 2000 has not been reviewed by the Central Office Review Committee (CORC). The IGP Supervisor did review the matter with Central Office staff who is [sic] not a member of CORC." (*See* Dkt. No. 85, Part 2, at 39 [Ex. K to Plf.'s Affid.].) At best, the document in question is an indication by Upstate C.F. that the success of an appeal by Plaintiff to CORC would be unlikely.

***19** Second, even if the document does somehow constitute a written determination by CORC on appeal by Plaintiff, the grievance to which the determination refers is a grievance filed by Plaintiff on June 11, 2003, at Upstate C.F., not a grievance filed by Plaintiff on August 30, 2000, at Great Meadow C.F. (Dkt. No. 85, Part 2, at 32-35 [Ex. I to Plf.'s Affid.].) Specifically, Plaintiff's June 11, 2003, grievance, filed at Upstate C.F., requested permission to file an admittedly *untimely* grievance regarding the injuries he sustained during the assault on August 17, 2000. (*Id.*)

A prisoner has not exhausted his administrative remedies with CORC when, years after failing to file a timely appeal with CORC, the prisoner requests *and is denied* permission to file an untimely (especially, a two-year-old) appeal with CORC due to an unpersuasive showing of "mitigating circumstances." *See Burns v. Zwillinger,* 02-CV-5802, 2005 U.S. Dist. LEXIS 1912, at *11 (S.D.N .Y. Feb. 8, 2005) ("Since [plaintiff] failed to present mitigating circumstances

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 25

Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)
**(Cite as: 2008 WL 2522324 (N.D.N.Y.))**

for his untimely appeal to the IGP Superintendent, the CORC, or this Court, [defendant's] motion to dismiss on the grounds that [plaintiff] failed to timely exhaust his administrative remedies is granted."); *Soto v. Belcher,* 339 F.Supp.2d 592, 595 (S.D.N.Y.2004) ("Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies.") [collecting cases]. If the rule were to the contrary, then, as a practical matter, no prisoner could ever be said to have failed to exhaust his administrative remedies because, immediately before filing suit in federal court, he could perfunctorily write to CORC asking for permission to file an untimely appeal, and whatever the answer, he could claim to have completed the exhaustion requirement. The very reason for requiring that a prisoner obtain permission before filing an untimely appeal presumes that the permitted appeal would be required to complete the exhaustion requirement. Viewed from another standpoint, a decision by CORC to refuse the filing of an untimely appeal does not involve a review of the merits of the appeal.

**4. Plaintiff's Argument that Defendants Rendered any Administrative Remedies "Unavailable" to Plaintiff**

Plaintiff also argues that Defendants rendered any administrative remedies "unavailable" to Plaintiff, for purposes of the Second Circuit's above-described three-part exhaustion inquiry, by (1) failing to cause DOCS to provide proper "instructional provisions" in its directives, (2) failing to cause Great Meadow C.F. to have a grievance "receipt system," and (3) "trash [ing]" Plaintiff's grievances and appeals. (Dkt. No. 86, at 39-45 [Plf.'s Memo. of Law].) This argument also fails.

In support of this argument, Plaintiff "incorporates by reference all the previously asserted points, Plaintiff's Affidavit in Opposition with supporting exhibits, as well as[ ] the entire transcripts of Defendants['] deposition on [sic] Plaintiff ...." (*Id.* at 40, 45.) Again, the Court has no duty to *sua sponte* scour the 265 pages that comprise Plaintiff's Affidavit, Supplemental Affidavit, exhibits, and deposition transcript for proof of a dispute of material fact, and I decline to do so (and recommend the Court decline to do so) for the reasons stated above in Part IV.A.1. of this Report-Recommendation. I have, however, in analyzing the various issues presented by Defendants' motion, reviewed the documents to which Plaintiff refers, and I report that I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.

***20** For example, Plaintiff has adduced no evidence that he possesses any *personal knowledge* (only speculation) of any Defendant in this action having "trashed" his alleged grievance(s) and appeal(s),[FN54] nor has he even adduced evidence that it was *one of the named Defendants in this action* to whom he handed his alleged grievance(s) and appeal(s) for delivery to the Great Meadow C.F. Inmate Grievance Program Clerk on August 30, 2000, September 13, 2000, and September 27, 2000.[FN55] Similarly, the legal case cited by Plaintiff appears to have nothing to do with any Defendant to this action, nor does it even have to do with Great Meadow C.F.[FN56]

FN54. (*See* Dkt. No. 85, Part 1, ¶¶ 13-14, 16-17 [Plf.'s Affid., asserting, "Prison officials trashed my grievances and appeals since they claim not to have them despite [the] fact I sent them in a timely manner. It's [the] only reason they wouldn't have them.... Prison officials have a history of trashing grievances and appeals.... I've been subjected to having my grievances and appeals trashed prior to and since this matter and have spoken to alot [sic] of other prisoners whom [sic] said that they were also subjected to having their grievances and appeals trashed before and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

after this incident, in alot [sic] of facilities.... Suspecting foul play with respect to my grievances and appeals, I wrote, and spoke to[,] prison officials and staff that did nothing to rectify the matter, which isn't surprising considering [the] fact that it's an old problem ....”].)

FN55. (*See* Dkt. No. 85, Part 1, ¶ 6 [Plf.'s Affid., asserting only that “[o]n August 30th, 2000 plaintiff handed the correction officer collecting the mail in F Block SHU in the Great Meadow Correctional Facility an envelope addressed to the inmate grievance clerk ... which contained the grievances relative to this action at hand ....”]; Dkt. No. 85, Part 1, ¶ 9 [Plf.'s Affid., asserting only that “[o]n September 13, 2000, I appealed said grievances to [the] Superintendent by putting them in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail, in F-Block SHU [at] Great Meadow CF ....”]; Dkt. No. 85, Part 1, ¶ 11 [Plf.'s Affid., asserting only that “[o]n September 27th, 2000, I appealed said grievance ... to C.O.R.C. by putting them [sic] in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail in F-Block SHU [at] Great Meadow CF ....”].)

FN56. (*See* Dkt. No. 85, Part 1, ¶ 15 [Plf.'s Affid., referencing case]; Dkt. No. 85, Part 2, at 16-17 [Ex. B to Plf.'s Affid., attaching a hand-written copy of case, which mentioned a prisoner's grievances that had been discarded in *1996* by an *unidentified* corrections officer at *Sing Sing Correctional Facility* ].)

**5. Record Evidence Creating Genuine Issue of Fact**

Although I decline to *sua sponte* scour the lengthy record for proof of a triable issue of fact regarding exhaustion, I have, while deciding the many issues presented by Defendants' motion, had occasion to review in detail many portions of the record. In so doing, I have discovered evidence that I believe is sufficient to create a triable issue of fact on exhaustion.

Specifically, the record contains Plaintiff's testimony that (1) on August 30, 2000, he gave a corrections officer a grievance regarding the alleged assault on August 17, 2000, but he never received a response to that grievance, (2) on September 13, 2000, he gave a corrections officer an appeal (to the Superintendent) from that non-response, but again did not receive a response, and (3) on September 27, 2000, he gave a corrections officer an appeal (to CORC) from that non-response, but again did not receive a response.[FN57]

FN57. (*See* Dkt. No. 85, Part 1, ¶ 6 [Plf.'s Affid., asserting only that “[o]n August 30th, 2000 plaintiff handed the correction officer collecting the mail in F Block SHU in the Great Meadow Correctional Facility an envelope addressed to the inmate grievance clerk in which contained [sic] the grievances relative to this action at hand ....”]; Dkt. No. 85, Part 1, ¶ 9 [Plf.'s Affid., asserting only that “[o]n September 13, 2000, I appealed said grievances to [the] Superintendent by putting them in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail; in F-Block SHU [at] Great Meadow CF....”]; Dkt. No. 85, Part 1, ¶ 11 [Plf.'s Affid ., asserting only that “[o]n September 27h, 2000, I appealed said grievance ... to C.O.R.C. by putting them [sic] in [an] envelope addressed to [the] inmate grievance clerk and handing it to [the] correction officer collecting the mail in F-Block SHU [at] Great Meadow CF ....”].)

The remaining issue then, as it appears to me, is

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

whether or not this affidavit testimony is so self-serving and unsubstantiated by other direct evidence that "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint." FN58 Granted, this testimony appears self-serving. However, based on the present record, I am unable to find that the testimony is so wholly unsubstantiated by other direct evidence as to be incredible. Rather, this testimony appears corroborated by two pieces of evidence. First, the record contains what Plaintiff asserts is the grievance that he handed to a corrections officer on August 30, 2000, regarding the alleged assault on August 17, 2000. (Dkt. No. 85, Part 2, at 65-75 [Ex. Q to Plf.'s Affid.].) Second, the record contains two pieces of correspondence between Plaintiff and legal professionals *during or immediately following the time period in question* containing language suggesting that Plaintiff had received no response to his grievance. (Dkt. No. 85, Part 2, at 19-21 [Exs. C-D to Plf.'s Affid .].)

FN58. *See, supra,* note 12 of this Report-Recommendation (collecting cases).

Stated simply, I find that sufficient record evidence exists to create a genuine issue of fact as to (1) whether Plaintiff's administrative remedies were, with respect to his assault grievance during the time in question, "available" to him, for purposes of the first part of the Second Circuit's three-part exhaustion inquiry, and/or (2) whether Plaintiff has shown "special circumstances" justifying his failure to comply with the administrative procedural requirements, for purposes of the third part of the Second Circuit's three-part exhaustion inquiry.

***21** As a result, I recommend that the Court deny this portion of Defendants' motion for summary judgment.

**E. Whether Plaintiff Has Sufficiently Alleged, or Established, that Defendants Were Liable for the Policy to Review the Non-Life-Sustaining Medical Prescriptions of Prisoners Upon Arrival at Great Meadow C.F.**

As explained above in Part II.A. of this Report-Recommendation, Defendants argue that, during his deposition in this action, Plaintiff asserted, for the first time, a claim that the medical staff at Great Meadow C.F. violated his rights under the Eighth Amendment by failing to honor non-life-sustaining medical prescriptions written at a former facility. (Dkt. No. 78, Part 13, at 3 [Defs.' Mem. of Law].) As a threshold matter, Defendants argue, this claim should be dismissed since Plaintiff never included the claim in his Second Amended Complaint, nor did Plaintiff ever file a motion for leave to file a Third Amended Complaint. (*Id.*) In any event, Defendants argue, even if the Court were to reach the merits of this claim, the Court should dismiss the claim because Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that Defendants were personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided such allegations or evidence indicating the policy is even unconstitutional. (*Id.*)

Plaintiff responds that "[he] didn't have to get in particular [sic] about the policy [of] discontinuing all incoming prisoners['] non[-]life[-]sustaining medications without examination and indiscriminently [sic] upon arrival at [Great Meadow] C.F. in [his Second] Amended Complaint. Pleading[s] are just supposed to inform [a] party about [a] claim[,] and plaintiff informed defendant [of] the nature of [his] claims including [the claim of] inadequate medical care. And discovery revealed [the] detail[s] [of that claim] as [Plaintiff had] intended." (Dkt. No. 88, at 10 [Plf.'s Supp. Memo. of Law].) In addition, Plaintiff responds that Defendant Paolano must have been personally involved in the creation and/or implementation of the policy in question since he was the Great Meadow Health Services Director. (*Id.* at 10.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

I agree with Defendants that this claim is not properly before this Court. Plaintiff's characterization of the notice-pleading standard, and of the contents of his Amended Complaint, are patently without support (both legally and factually). It has long been recognized that a "claim," under Fed.R.Civ.P. 8, denotes "the aggregate of operative facts which give rise to a right enforceable in the courts." [FN59] Clearly, Plaintiff's Second Amended Complaint alleges no facts whatsoever giving rise to an asserted right to be free from the application of the prescription-review policy at Great Meadow C.F. Indeed, his Second Amended Complaint-which asserts Eighth Amendment claims arising *solely* out of events that (allegedly) transpired on August 17, 2000-says nothing at all of the events that transpired immediately upon his arrival at Great Meadow C.F. in early August of 2000, nor does the Second Amended Complaint even casually mention the words "prescription," "medication" or "policy." (*See generally* Dkt. No. 10 [Second Am. Compl.].)

FN59. *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.,* 133 F.2d 187, 189 (2d Cir.1943); *United States v. Iroquois Apartments, Inc.,* 21 F.R.D. 151, 153 (E.D.N.Y.1957); *Birnbaum v. Birrell,* 9 F.R.D. 72, 74 (S.D.N.Y.1948).

***22** Furthermore, under the notice-pleading standard set forth by Fed.R.Civ.P. 8(a)(2), to which Plaintiff refers in his Supplemental Memorandum of Law, Defendants are entitled to *fair notice* of Plaintiff's claims.[FN60] The obvious purpose of this rule is to protect defendants from undefined charges and to facilitate a proper decision on the merits. [FN61] A complaint that fails to provide such fair notice "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN62] This fair notice does not occur where, as here, news of the claim first springs up in a deposition more than two years after the action was commenced, approximately seven months after the amended-pleading deadline expired, and approximately two weeks before discovery in the action was scheduled to close. (*Compare* Dkt. No. 1 [Plf.'s Compl., filed 8/14/03] *with* Dkt. No. 42, at 1-2 [Pretrial Scheduling Order setting amended-pleading deadline as 2/28/05] *and* Dkt. No. 78, Part 11, at 52-53 [Plf.'s Depo. Transcript, dated 9/30/05] *and* Dkt. No. 49 [Order setting discovery deadline as 10/14/05].)

FN60. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (the statement required by Fed.R.Civ.P. 8 [a][2] must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

FN61. *Ruffolo v. Oppenheimer & Co., Inc.,* 90-CV-4593, 1991 WL 17857, at *2 (S.D.N.Y. Feb.5, 1991); *Howard v. Koch,* 575 F.Supp. 1299, 1304 (E.D.N.Y.1982); *Walter Reade's Theatres, Inc. v. Loew's Inc.,* 20 F.R.D. 579, 582 (S.D.N.Y.1957).

FN62. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

Under the circumstances, the mechanism by which to assert such a late-blossoming claim was a motion to reopen the amended-pleading filing dead-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

line (the success of which depended on a showing of cause), coupled with a motion for leave file a Third Amended Complaint (the success of which depended, in part, on a showing of lack of prejudice to Defendants, as well as a lack of futility). Plaintiff never made such motions, nor showed such cause.

I acknowledge that, generally, the liberal notice-pleading standard set forth by Fed.R.Civ.P. 8 is applied with even greater force where the plaintiff is proceeding *pro se.* In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally construed with an *extra* degree of liberality. As an initial matter, I have already concluded, based on my review of Plaintiff's extensive litigation experience, that he need not be afforded such an extra degree of leniency since the rationale for such an extension is a *pro se* litigant's inexperience with the court system and legal terminology, and here Plaintiff has an abundance of such experience. *See, supra,* notes 21-25 of this Report-Recommendation. Moreover, even if he were afforded such an extra degree of leniency, his phantom prescription-review claim could not be read into his Second Amended Pleading, for the reasons discussed above. (I note that, even when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended.") [FN63]

FN63. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

Nor could Plaintiff's late-blossoming prescription-review claim properly be read into his papers in opposition to Defendants' motion for summary judgment. Granted, a *pro se* plaintiff's papers in opposition to a *motion to dismiss* may sometimes be read as effectively amending a pleading (e.g., if the allegations in those papers are consistent with those in the pleading). However, a *pro se* plaintiff's papers in opposition to a *motion for summary judgment* may not be so read, in large part due to prejudice that would inure to the defendants through having the pleading changed after discovery has occurred and they have gone through the expense of filing a motion for summary judgment.[FN64]

FN64. *See Auguste v. Dept. of Corr.,* 424 F.Supp.2d 363, 368 (D.Conn.2006) ("Auguste [a *pro se* civil rights plaintiff] cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment.") [citations omitted].

***23** Finally, in the event the Court decides to construe Plaintiff's Second Amended Complaint as somehow asserting this claim, I agree with Defendants that the Court should dismiss that claim, also for the reasons discussed above in Part IV.A.2. of this Report-Recommendation. Specifically, Plaintiff has

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

failed to adduce evidence establishing that Defendant Paolano (or any named Defendant in this action) was personally involved in the creation or implementation of DOCS' prescription-review policy, nor has Plaintiff provided evidence establishing that the policy is even unconstitutional. *See, supra,* Part IV.A.2. of this Report-Recommendation.

**ACCORDINGLY,** it is

**ORDERED** that the Clerk's Office shall, in accordance with note 1 of this Order and Report-Recommendation, correct the docket sheet to remove the names of Defendants Englese, Edwards, Bump, Smith, Paolano, and Nesmith as "counter claimants" in this action; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 78) be ***GRANTED* in part** (i.e., to the extent that it requests the dismissal with prejudice of Plaintiff's claims against Defendants Paolano and Nesmith) and ***DENIED* in part** (i.e., to the extent that it requests dismissal of Plaintiff's claims against the remaining Defendants on the grounds of Plaintiff's failure to exhaust available administrative remedies) for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2008.
Murray v. Palmer
Not Reported in F.Supp.2d, 2008 WL 2522324 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.


Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry; F. Englese; Sergeant Edwards; K. Bump; and K.H. Smith, Defendants.

No. 9:03-CV-1010 (GTS/GHL).
March 31, 2010.

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome, NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Timothy Mulvey, Esq., James Seaman, Esq., Assistant Attorneys General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

***1** The trial in this prisoner civil rights action, filed *pro se* by James Murray ("Plaintiff") pursuant to 42 U.S.C. § 1983, began with an evidentiary hearing before the undersigned on March 1, 2010, regarding the affirmative defense of seven employees of the New York State Department of Correctional Services-R. Palmer, S. Griffin, M. Terry, F. Englese, Sergeant Edwards, K. Bump, and K.H. Smith ("Defendants")-that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act, before filing this action on August 14, 2003. At the hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as Defendants' witnesses (Darin Williams, Sally Reams, and Jeffery Hale), whom Plaintiff was able to cross-examine through *pro bono* trial counsel. At the conclusion of the hearing, the undersigned indicated that a written decision would follow. This is that written decision. For the reasons stated below, Plaintiff's Second Amended Complaint is dismissed because of his failure to exhaust his available administrative remedies.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e. The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard, exhaustion serves two major purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 548 U.S. 81, 89, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b)

"even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford,* 548 U .S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[FN1] *First,* an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[FN2] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

FN1. *See also White v. The State of New York,* 00-CV-3434, 2002 U . S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

FN2. The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

***2** Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[FN3] Moreover, any failure by the IGRC or the superintendent to timely

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

respond to a grievance or first-level appeal, respectively, can-and must-be appealed to the next level, including CORC, to complete the grievance process.[FN4] There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.[FN5] After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative.[FN6] The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

FN3. *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

FN4. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198 F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step.); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y. Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,* 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies

as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

FN5. *Compare* *Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number*, administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with* *Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

FN6. *See, e.g.,* *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf.* *Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to

the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

***3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d 670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004).[FN7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[FN8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[FN9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim,[FN10] (b) the inmate was specifically informed that the claim in question was grievable,[FN11] (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC,[FN12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[FN13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[FN14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim,[FN15] and/or (b) the inmate did not appeal his disciplinary hearing conviction.[FN16]

FN7. The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's *Giano-Testman* line of cases.

FN8. *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

FN9. *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia.* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

FN10. *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F. App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

FN11. *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2

(S.D.N.Y. Aug.30, 2007); *Reynoso,* 423 F.Supp.2d at 75-76.

FN12. *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

FN13. *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

FN14. *See, e.g., Benjamin v. Comm'r N.Y. State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question]."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

FN15. *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

FN16. *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by appealing from a disciplinary

Page 8

Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)
**(Cite as: 2010 WL 1235591 (N.D.N.Y.))**

hearing decision ..., plaintiff did not do so here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

***4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *4 (S.D.N.Y. July 25, 2008). However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances." [FN17]

FN17. *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.' "); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa. Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court.[FN18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury.[FN19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law.[FN20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.) [FN21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also on the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

several reasons articulated by Judge Richard A. Posner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied,* --- U.S. ----, 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury.[FN22]

FN18. *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

FN19. *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326747, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

FN20. *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326747, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing be held" before a judge, to resolve this issue); *Dukes v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*S.H.U. C.O. John Doe # 1,* 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); *Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakeably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.") [internal quotation marks and citation omitted]; *Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

FN21. *See, e.g., Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), *accord, Mojias v. Johnson,* 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from *Snider v. Melindez,* and later stating that a district court could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v. Moriarty,* 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); *Pierre v. County of Broome,* 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); *Hill v. Chanalor,* 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); *Raines v. Pickman,* 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

FN22. *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir.2006); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003); *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 682-83 (4th Cir.2005); *Dillon v.*

*Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

### A. Availability of Administrative Remedies

***5** New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587, 2007 WL 389003, at *8 (E.D.N.Y. Jan.31, 2007) (internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Hemphill,* 380F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [FN23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [FN24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [FN25]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN23. The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

FN24. In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restrains against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.;* see also Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

FN25. For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

**B. Estoppel**

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.[FN26]

FN26. *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.") [emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation "that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided ... a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004) ] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

plaintiff could have accomplished on his own.").

**C. Special Circumstances**

***6** There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at *8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances" justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations,[FN27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order.[FN28]

FN27. *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

FN28. The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days

(i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the IGRC's failure to decide his grievance (i.e., by September 11, 2000). (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)

***7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED*** **in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

N.D.N.Y.,2010.
Murray v. Palmer
Not Reported in F.Supp.2d, 2010 WL 1235591 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Antonio SAUNDERS, Plaintiff,
v.
Commissioner Glenn S. GOORD, et al., Defendants.

No. 98 CIV. 8501(JGK).
July 29, 2002.

Inmate filed action pursuant to §1983 against number of corrections officers and medical personnel at correctional facility and their supervisors, alleging that they harassed him on a number of occasions, used excessive force against him, created and/or allowed for prison conditions that failed to protect him from several attacks by other inmates, and failed to provide him with adequate medical treatment after these attacks and for other illnesses. Corrections officers filed motion to dismiss. The District Court, Koeltl, J., held that inmate failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, as prerequisite to bringing §1983 claims.

Ordered accordingly.

West Headnotes

**Civil Rights 78 1311**

78 Civil Rights
78III Federal Remedies in General
78k1306 Availability, Adequacy, Exclusivity, and Exhaustion of Other Remedies
78k1311 k. Criminal Law Enforcement; Prisons. Most Cited Cases
(Formerly 78k194)

Inmate failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, as prerequisite to bringing §1983 claims against corrections officers and medical personnel at correctional facility and their supervisors, alleging that they harassed him, used excessive force against him, created and/or allowed for prison conditions that failed to protect him from several attacks by other inmates, and failed to provide him with adequate medical treatment after these attacks and for other illnesses; inmate either did not file grievances relating to a number of his complaints or did not appeal a number of adverse determinations of grievances. 42 U.S.C.A. §1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); 7 NYCRR §701.1-.16.

OPINION AND ORDER

KOELTL, District J.

***1** Antonio Saunders, an inmate at the Green Haven Correctional Facility ("GHFC"), brings this action pursuant to 42 U.S.C. § 1983 against a number of corrections officers and medical personnel at the GHFC and their supervisors, alleging that they harassed him on a number of occasions, used excessive force against him, created and/or allowed for prison conditions that failed to protect him from several attacks by other inmates, and failed to provide him with adequate medical treatment after these attacks and for other illnesses.[FN1] The plaintiff alleges that the supervisory defendants failed to properly train and/or supervise the staff at the GHFC, and failed to intervene to prevent the violations alleged in the Amended Complaint.

FN1. These illnesses allegedly include one that the plaintiff claims he developed from using an antibiotic that one of the medical provider defendants at the GHFC had pre-

scribed for him for an unrelated illness.

The defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing all of the claims in this action.

I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also* *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The substantive law governing the case will determine those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party, the defendants in this case. *See* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also* *Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See* *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

***2** Finally, although the plaintiff brought this action *pro se,* he subsequently obtained counsel, and, through counsel, he has submitted an appropriate response to the defendants' motion in this case, together with supporting affirmations.

II.

The defendants move to dismiss the Amended Complaint without prejudice on the ground that the plaintiff allegedly failed fully to exhaust the administrative remedies available to him on a number of his claims before filing his complaint in federal court. The Prison Litigation Reform Act of 1995 (the "PLRA") amended 42 U.S.C. § 1997e(a) to state that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also* *Booth v. Churner,* 532 U.S. 731, 736, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "Once within the discretion of the district court, exhaustion in cases covered by 1997e(a) is now mandatory." *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002). Moreover, "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Id.* (quoting *Booth,* 532 U.S. at 739). A plaintiff must also meet the PLRA's exhaustion requirements at the time a complaint is filed,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2002 WL 1751341 (S.D.N.Y.)
**(Cite as: 2002 WL 1751341 (S.D.N.Y.))**

and cannot cure a failure of exhaustion by pursuing administrative remedies while a federal action is pending. *Neal v. Goord,* 267 F.3d 116, 121-23 (2d Cir.2001).

To fully exhaust administrative remedies, the plaintiff must "go beyond the first step," seeking further stages of administrative review until the plaintiff has availed himself of the final stages of the administrative process. *Booth,* 532 U.S. at 735; *see also Kearsey v. Williams,* No. 99 Civ. 8646, 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002); *Waters v. Schneider,* No. 01 Civ. 5217, 2002 WL 727025, at *1 (S.D.N.Y. Apr.23, 2002). Where, as here, an inmate is being held in federal prison under the auspices of the New York Department of Corrections, the inmate must exhaust the formal or informal grievance procedures set forth in 7 N.Y.C.R.R. §§ 701.1-.16. *See, e.g. Byas v. New York,* No. 99 Civ. 1673, 2002 WL 1586963, at *2 (S.D.N.Y. Jul.17, 2002).

The PLRA's exhaustion requirement applies to all inmate suits about prison life, as opposed to suits that challenge either the fact or duration of a confinement, whether the suits involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Nussle,* 122 S.Ct at 992. In this case, the plaintiff raises a broad range of claims relating to prison conditions at the GHFC, including claims for the use of excessive force, harassment, provision of inadequate medical treatment and failure to intervene or supervise, as against the supervisory defendants. The plaintiff filed his Amended Complaint *pro se*, but the plaintiff subsequently obtained counsel, who has submitted a letter dated April 20, 2001, which attempts to outline and condense the plaintiff's claims and damages. *See* Letter from David J. Eskin, Esq. to Lee Alan Adlerstein, Attorney General, State of New York dated April 20, 2001 ("Eskin Letter"), attached as Ex. 1 to Affirmation of Lee Alan Adlerstein dated January 18, 2002 ("Adlerstein Aff."). The defendants have produced the formal records of the plaintiff's grievances and appeals, *see* Adlerstein Aff. Exs. 3 & 4, and these records indicate that the plaintiff either did not file grievances relating to a number of his current complaints or did not appeal a number of adverse determinations of grievances. *See, e.g.* Eskin Letter ¶¶ 8, 9, 13, 14 (no grievance filed); Exs. A, C, D (no appeal taken). The plaintiff cannot pursue such claims in federal court without first having exhausted his administrative remedies.

***3** The plaintiff has submitted an affidavit stating that he "grieved each incident mention[ed] in the complaint and others that are not mention[ed]," but that after receiving no response on some, he began to "write [his] grievances directly to the commissioner, who did respond by saying that [the plaintiff] did not grieve" and that no grievances pertaining to those complaints were "on file." *See* Affidavit of Antonio Saunders dated February 17, 2002, attached as Ex. 1 to Pl.'s Opp. The plaintiff also maintains that officers at the GHFC interfered with his filing of grievances when he was on keeplock status, where he had to file his grievances by placing them in an outbox on the door of his prison cell. However, there is no general futility exception the exhaustion requirement under the PLRA, *see Booth,* 532 U.S. at 740-41 & n. 6, and the plaintiff was still required to exhaust his administrative remedies as set forth in 7 N.Y.C.R.R. §§ 7.01.1-.16. *See, e.g., Byas,* 2002 WL 1586963, at *2; *cf. also Benjamin v. Goord,* No. 02 Civ. 1703, 2002 WL 1586880, at *2 (S.D.N.Y. Jul.17, 2002). It is well established that "[p]laintiffs may not bypass this procedure by sending letters directly to the superintendent." *Byas,* 2002 WL 158694, at *2 (collecting cases). Even if the plaintiff did not receive responses directed toward some grievances, the plaintiff was required, at minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court, and the plaintiff does not even allege that he attempted to appeal any of the alleged grievances that do not appear on his formal record of grievances. *See, e.g., Waters,* 2002 WL 727025, at *2, 2002 WL 1332883; *Reyes v. Punzal,* No. 01-CV-6350L, 2002 WL 1332883, at *2-3 (W.D.N.Y.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

June 3, 2002). In any event, the plaintiff's contention that prison officers were obstructing his grievances is significantly undercut by the fact that his official record lists numerous grievances, both while the plaintiff was on keeplock status and when he was not. Counsel for the plaintiff also conceded at oral argument that the petitioner was not in keeplock during the time when all of the alleged incidents about which he complains occurred. In these circumstances, there is no genuine issue of material fact-the plaintiff failed to exhaust his administrative remedies on a broad range of claims raised in this action.

The plaintiff argues that some of his other claims have been exhausted, and the record of the plaintiff's grievances supports this position. However, the plain language of 42 U.S.C. § 1997e(a) says that "[n]o *action* shall be brought with respect to prison conditions under section 1983 of this title ...until such administrative remedies as are available are exhausted." (Emphasis added.) It is plain that this action includes a number of unexhausted claims. Moreover, the defendants seek only to dismiss the Amended Complaint without prejudice to refiling if and when the plaintiff seeks to file a complaint that is limited to viable claims that have been fully exhausted. It is also unclear from the record whether the plaintiff can, or will seek to, exhaust any of the other claims that he has sought to raise in this action. *See generally Benjamin,* 2002 WL 1586880, at *2 n. 5. In these circumstances, it is appropriate to dismiss this action without prejudice to repleading any viable claims that have been fully exhausted. *See, e.g., Neal,* 267 F.3d at 121-23; *Benjamin,* 2002 WL 1586880, at *2 & n. 5; *Santiago v. Meinsen,* 89 F.Supp.2d 435, 441 (S.D.N.Y.2000); *see also Graves v. Norris,* 218 F.3d 884, 885-86 (8th Cir.2000) (per curiam) ("When multiple prison condition claims have been joined, as in this case, the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims.").

III.

***4** The defendants raise a number of other arguments for dismissal of the claims in this case, which are moot in light the dismissal of this action. The Court has considered all of the parties other arguments and finds them to be either moot or without merit. The defendant's motion is therefore granted. The plaintiff's Amended Complaint is dismissed without prejudice, and the Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

S.D.N.Y.,2002.
Saunders v. Goord
Not Reported in F.Supp.2d, 2002 WL 1751341 (S.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.